UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

WADE PARK LAND HOLDINGS, LLC; WADE
PARK LAND, LLC; and THE THOMAS
FAMILY TRUST, by and through its Trustees,
acting in their official capacities,

       Plaintiffs,

     v.

JONATHAN KALIKOW;
WP DEVELOPMENT PARTNERS LLC;
GAMMA LENDING OMEGA LLC; GAMMA
REAL ESTATE CAPITAL LLC; GRE WP LLC;
and BLAKE GOODMAN,

       Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

Case No. 1:21-cv-01657-LJL-RWL

 

**MEMORANDUM OF LAW OF DEFENDANTS JONATHAN KALIKOW,
WP DEVELOPMENT PARTNERS LLC, GAMMA LENDING OMEGA
LLC, GAMMA REAL ESTATE CAPITAL LLC AND GRE WP LLC
IN SUPPORT OF THEIR MOTION TO DISMISS THE AMENDED COMPLAINT**

KL3 3336287.1

## TABLE OF CONTENTS

**Page**

Table of Authorities ................................................................................................... iv

PRELIMINARY STATEMENT ...................................................................................... 1

STATEMENT OF FACTS .............................................................................................. 2

    A.    GRE Lent $82.75 Million to WPH and WPL ......................................... 2

    B.    Omega Repeatedly Extended the Gamma Loan and Granted Forbearances .......... 4

    C.    Plaintiffs Filed Their Initial Complaint Followed by an Amended Complaint ......................................................................................... 5

    D.    The Northern District of Georgia Granted Defendants' Motion to Transfer and Mr. Goodman's Motion to Dismiss ................................. 6

ARGUMENT ................................................................................................................ 7

I.    PLAINTIFFS HAVE RELEASED THEIR CLAIMS ........................................ 7

II.    THE TRUST LACKS STANDING TO BRING ITS CLAIMS ........................... 9

III.    COUNT I SHOULD BE DISMISSED ........................................................... 10

IV.    COUNT II SHOULD BE DISMISSED .......................................................... 11

    A.    Plaintiffs Do Not Plausibly Allege a RICO Enterprise ....................... 11

        1.    No Plausible Allegation of a Fraudulent Purpose ................. 12

        2.    No Plausible Allegation of a RICO Enterprise ...................... 13

    B.    Plaintiffs Fail to Plausibly Allege the Collection of an Unlawful Debt ............... 14

    C.    Plaintiffs Fail to Plausibly Allege a Pattern of Racketeering ............... 15

        1.    No Plausible Wire Fraud Allegation ...................................... 15

        2.    No Plausible Allegation of Theft of Trade Secrets ................ 17

        3.    No Plausible Allegation of Money Laundering ...................... 19

    D.    Plaintiffs Fail to Plausibly Allege Continuing Criminal Conduct ....... 19

V.    COUNT III SHOULD BE DISMISSED ......................................................... 20

VI.     COUNTS IV, V and VI SHOULD BE DISMISSED ........................................................ 21

VII.    COUNT VII SHOULD BE DISMISSED .......................................................................... 23

VIII.   COUNT VIII SHOULD BE DISMISSED ........................................................................ 27

IX.     COUNT IX SHOULD BE DISMISSED ........................................................................... 29

X.      COUNT X SHOULD BE DISMISSED ............................................................................ 30

XI.     COUNT XI SHOULD BE DISMISSED ........................................................................... 32

XII.    COUNT XII SHOULD BE DISMISSED .......................................................................... 32

XIII.   COUNT XIII SHOULD BE DISMISSED ......................................................................... 36

XIV.    COUNT XV SHOULD BE DISMISSED .......................................................................... 36

XV.     COUNT XVI SHOULD BE DISMISSED ........................................................................ 38

XVI.    COUNT XVII SHOULD BE DISMISSED ....................................................................... 39

XVII.   COUNT XVIII SHOULD BE DISMISSED ...................................................................... 39

CONCLUSION ....................................................................................................................... 40

## TABLE OF AUTHORITIES

**Cases**                                                                    **Page(s)**

*Adyb Engineered For Life, Inc. v. Edan Admin. Servs. Ltd.*,
  2021 WL 1177532 (S.D.N.Y. Mar. 29, 2021) ........................................................28

*AEI Life LLC v. Lincoln Benefit Life Co.*,
  892 F.3d 126 (2d Cir. 2018)..........................................................................30 n.17

*In re AgFeed USA, LLC*,
  558 B.R. 116 (Bankr. D. Del. 2016) ............................................................34

*Al-Abood v. El-Shamari*,
  217 F.3d 225 (4th Cir. 2000) ........................................................................20 n.11

*Am. Family Life Assur. Co. v. U.S. Fire Co.*,
  885 F.2d 826 (11th Cir. 1989) ......................................................................39, 40

*Anatian v. Coutts 223 Bank (Switzerland) Ltd.*,
  193 F.3d 85 (2d Cir. 1999)...........................................................................11

*In re AppliedTheory Corp.*,
  330 B.R. 362 (S.D.N.Y. 2005)......................................................................34, 35

*Arfa v. Zamir*,
  17 N.Y.3d 737 (2011) ...................................................................................8

*Argos USA LLC v. Young*,
  2019 WL 4125968 (N.D. Ga. June 28, 2019) ..............................................38

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009).......................................................................................7, 21

*Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. Of Texas*,
  571 U.S. 49 (2013)........................................................................................23 n.13

*Atuahene v. City of Hartford*,
  10 F. App'x 33 (2d Cir. 2001) ......................................................................16 n.8

*Aviles v. S&P Glob., Inc.*,
  380 F. Supp. 3d 221 (S.D.N.Y. 2019)...........................................................20

*Baltus-Michaelson v. Credit Suisse First Boston, LLC*,
  116 F. App'x 308 (2d Cir. 2004) ..................................................................10

*Bell Atl. Corp. v. Twombly*,
  500 U.S. 544 (2007)......................................................................................6, 7

KL3 3336287.1

*In re Bernard L. Madoff Inv. Sec. LLC.*,
  976 F.3d 184 (2d Cir. 2020)..................................................................................32

*BFP v. Resolution Tr. Corp.*,
  511 U.S. 531 (1994)..............................................................................................35

*Bigio v. Coca-Cola Co.*,
  675 F.3d 163 (2d Cir. 2012)..................................................................................37

*Briarpatch Ltd., L.P. v. Geisler Roberdeau, Inc.*,
  2007 WL 1040809 (S.D.N.Y. Apr. 2, 2007), *aff'd*, 312 F. App'x 433 (2d Cir.
  2009) ......................................................................................................................36

*Cap. Ventures Int'l v. Republic of Argentina*,
  652 F.3d 266 (2d Cir. 2011)..................................................................................25

*Carvel Corp. v. Noonan*,
  3 N.Y.3d 182 (2004)..............................................................................................28

*Centro Empresarial Cempresa S.A. v. América Móvil, S.A.B. de C.V.*,
  17 N.Y.3d 269 (2011) .............................................................................................8

*Chambers v. Time Warner, Inc.*,
  282 F.3d 147 (2d Cir. 2002)....................................................................................2

*Chorches v. Catholic Univ. of Am.*,
  2017 WL 4638589 (D. Conn. Oct. 16, 2017) ........................................................33

*Christianson v. Colt Indus. Operating Corp.*,
  486 U.S. 800 (1988)..........................................................................................7 n.4

*Cisneros v. Petland, Inc.*,
  972 F.3d 1204 (11th Cir. 2020) ..........................................................15 n.7, 18 n.10, 21

*Cofacredit, S.A. v. Windsor Plumbing Supply Co.*,
  187 F.3d 229 (2d Cir. 1999)..................................................................................19

*Conopco, Inc. v. Wein*,
  2007 WL 9818902 (S.D.N.Y. Aug. 31, 2007) .......................................................16

*Coppelson v. Serhant*,
  2021 WL 148088 (S.D.N.Y. Jan. 15, 2021) .........................................................30

*Corsello v. Verizon New York, Inc.*,
  18 N.Y.3d 777 (2012) ............................................................................................31

*Crawford v. Franklin Credit Mgmt. Corp.*,
  758 F.3d 473 (2d Cir. 2014)............................................................................15 n.7

*In re CRC Parent Corp.*,
    2013 WL 781603 (Bankr. D. Del. Mar. 1, 2013) ................................................... 33

*Crigger v. Fahnestock & Co.*,
    443 F.3d 230 (2d Cir. 2006) ............................................................................ 23 n.12

*Cronos Grp. Ltd. v. XComIP, LLC*,
    156 A.D.3d 54 (1st Dep't 2017) ................................................................................ 24

*Cruz v. FXDirectDealer, LLC*,
    720 F.3d 115 (2d Cir. 2013) ...................................................................................... 13

*In re Cyr*,
    602 B.R. 315 (Bankr. W.D. Tex. 2019) ..................................................................... 33

*Demetre v. HMS Holdings Corp.*,
    127 A.D.3d 493 (1st Dept. 2015) ............................................................................... 24

*Democratic Nat'l Comm. v. Russian Fed'n*,
    392 F. Supp. 3d 410 (S.D.N.Y. 2019) ........................................................................ 19

*Durante Bros. & Sons, Inc. v. Flushing Nat'l Bank*,
    755 F.2d 239 (2d Cir. 1985) ...................................................................................... 14

*Edmondson & Gallagher v. Alban Towers Tenance Ass'n*,
    48 F.3d 1260 (D.C. Cir. 1995) .............................................................................. 20 n.11

*Efron v. Embassy Suites*,
    223 F.3d 12 (1st Cir. 2000) ................................................................................... 20 n.11

*Eurycleia Partners, LP v. Seward & Kissel, LLP*,
    12 N.Y.3d 553 (2009) ................................................................................................. 24

*Fin. Guar. Ins. Co. v. Putnam Advisory Co.*,
    783 F.3d 395 (2d Cir. 2015) ...................................................................................... 26

*First Capital Asset Mgmt. v. Satinwood, Inc.*,
    385 F.3d 159 (2d Cir. 2004) ...................................................................................... 19

*First Nationwide Bank v. Gelt Funding Corp.*,
    27 F.3d 763 (2d Cir. 1994) ................................................................................... 11, 18

*Foster v. 2001 Real Estate*,
    2015 WL 7587360 (S.D.N.Y. Nov. 24, 2015) ........................................................... 21

*In re Fyre Festival Litig.*,
    399 F. Supp. 3d 203 (S.D.N.Y. 2019) ........................................................................ 31

- vi -

*Ganino v. Citizens Utils. Co.*,
    228 F.3d 154 (2d Cir. 2000).................................................................................23 n.12

*Geo-Grp. Commc'ns, Inc. v. Chopra*,
    2018 WL 362498 (S.D.N.Y. July 30, 2018) ........................................................35

*In re Glob. Link Telecom Corp.*,
    327 B.R. 711 (Bankr. D. Del. 2005) ...................................................................33

*In re Global Ship Sys. LLC*,
    391 B.R. 193 (Bankr. S.D. Ga. 2007)..................................................................15

*GlobalNet Financial.com, Inc. v Frank Crystal & Co.*,
    449 F.3d 377 (2d Cir. 2006)................................................................................23 n.13

*Grace Int'l Assembly of God v. Festa*,
    797 F. App'x 603 (2d Cir. 2019) ...................................................................15, 20

*Guard-Life Corp. v. S. Parker Hardware Mfg. Corp.*,
    50 N.Y.2d 183 (1980) ...................................................................................28, 29

*Hassan v. Deutsche Bank A.G.*,
    515 F. Supp. 2d 426 (S.D.N.Y. 2007), *aff'd*, 336 F. App'x 21 (2d Cir 2009).................28, 29

*Hoatson v. New York Archdiocese*,
    2007 WL 431098 (S.D.N.Y. Feb. 8, 2007).........................................................10

*HSM Holdings, LLC v. Mantu I.M. Mobile Ltd.*,
    2021 WL 918556 (S.D.N.Y. Mar. 10, 2021) ......................................................26

*Interpharm, Inc. v. Wells Fargo Bank, Nat. Ass'n*,
    655 F.3d 136 (2d Cir. 2011)................................................................................24

*Johnson v. Nextel Commc'ns, Inc.*,
    763 F. App'x 53 (2d Cir. 2019) ..........................................................................20

*JRK Franklin, LLC v. 164 E. 87th St. LLC*,
    27 A.D.3d 392 (1st Dep't 2006) .........................................................................33 n.21

*Kirch v. Liberty Media Corp.*,
    449 F.3d 388 (2d Cir. 2006)................................................................................36

*Ledford v. Peeples*,
    568 F.3d 1258 (11th Cir. 2009) ..........................................................................22

*Lerner v. Fleet Bank, N.A.*,
    459 F.3d 273 (2d Cir. 2006)................................................................................16

*In re LIBOR-Based Fin. Instruments Antitrust Litig.*,
   299 F. Supp. 3d 430 (S.D.N.Y. 2018) ................................................................30 n.18

*Malyar Egerique v. Chowaiki*,
   2020 WL 1974228 (S.D.N.Y. Apr. 24, 2020) ................................................................14

*Mancuso v L'Oreal USA, Inc.*,
   2021 WL 1240328 (S.D.N.Y. Apr. 2, 2021) ................................................................23 n.13

*Mandarin Trading Ltd. v. Wildenstein*,
   16 N.Y.3d 173 (2011) ................................................................31

*Estate of Mautner v. Alvin H. Glick Irrevocable Grantor Tr.*,
   2019 WL 6311520 (S.D.N.Y. Nov. 25, 2019) ................................................................8

*Mecum v. Becker*,
   166 A.D. 793 (1st Dep't 1915) ................................................................16

*In re Merhi*,
   518 B.R. 705 (Bankr. E.D.N.Y. 2014) ................................................................32

*Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Young*,
   1994 WL 88129 (S.D.N.Y. Mar. 15, 1994) ................................................................21

*Miller v. Brunner*,
   164 A.D.3d 1228 (2nd Dep't 2018) ................................................................8

*Mills v. Polar Molecular Corp.*,
   12 F.3d 1170 (2d Cir. 1993) ................................................................15

*Morgan Stanley Grp. Inc. v. New England Ins. Co.*,
   225 F.3d 270 (2d Cir. 2000) ................................................................25 n.14

*Nelson v. Publishers Circulation Fulfillment, Inc.*,
   2012 WL 760335 (S.D.N.Y. Mar. 7, 2012) ................................................................17

*NML Capital v. Republic of Argentina*,
   621 F.3d 230 (2d Cir. 2010) ................................................................32

*In re Old Carco LLC*,
   509 F. App'x 77 (2d Cir. 2013) ................................................................34

*One Step Up, Ltd. v. Webster Bus. Credit Corp.*,
   87 A.D.3d 1 (1st Dep't 2011) ................................................................31

*Option One Mortg. Corp. v. Allstate Ins. Co.*,
   2006 WL 2285358 (N.D. Ga. Aug. 3, 2006) ................................................................17

KL3 3336287.1

*Opus Fund Servs. (USA) LLC v. Theorem Fund Servs., LLC,*
  2018 WL 1156246 (N.D. Ill. Mar. 5, 2018).................................................................19

*Pacella v. RSA Consultants, Inc.,*
  164 A.D.3d 806 (2nd Dep't 2018) .................................................................23 n.12

*Palm Beach Strategic Income, LP v. Salzman,*
  2011 WL 441778 (E.D.N.Y. Feb. 7, 2011).................................................................10

*Pashian v. Eccelston Props., Ltd.,*
  88 F.3d 77 (2d Cir. 1996) .................................................................35

*Pope v. Rice,*
  2005 WL 613085 (S.D.N.Y. Mar. 14, 2005) .................................................................36

*Rand v. Anaconda-Ericsson, Inc.,*
  794 F.2d 843 (2d Cir. 1986).................................................................10

*RFP LLC v. SCVNGR, Inc.,*
  788 F. Supp. 2d 191 (S.D.N.Y. 2011).................................................................28

*Rivergate Corp. v. Atlanta Indoor Advert. Concepts Inc.,*
  210 Ga. App. 501 (1993) .................................................................40

*Rodrigues v. City of New York,*
  835 F. App'x 615 (2d Cir. 2020) .................................................................24

*Samsung Display Co. v. Acacia Research Corp.,*
  2014 WL 6791603 (S.D.N.Y. Dec. 3, 2014).................................................................29 n.16

*San Leandro Emergency Med. Grp. Profit Sharing Plan v. Philip Morris Cos.,*
  75 F.3d 801 (2d Cir. 1996).................................................................2

*Slotkin v. Citizens Cas. Co. of N.Y.,*
  614 F.2d 301 (2d Cir. 1979).................................................................7 n.4

*Soter Techs. v. Ip Video Corp.,*
  2021 WL 744511 (S.D.N.Y. Feb. 26, 2021).................................................................16 n.8

*In re Think Retail Sols., LLC,*
  2019 WL 2912717 (Bankr. N.D. Ga. July 5, 2019).................................................................36

*U.S. Capital Funding VI, Ltd. v. Patterson Bankshares, Inc.,*
  137 F. Supp. 3d 1340 (S.D. Ga. 2015).................................................................36 n.22

*United States v. Greenberg,*
  835 F.3d 295 (2d Cir. 2016).................................................................15

KL3 3336287.1

*Valley Lane Indus. Co. v. Victoria's Secret Direct Brand Mgmt., L.L.C.*,
   455 F. App'x 102 (2d Cir. 2012) .............................................27

*Wade Park Land Holdings v. Kalikow*,
   2021 WL 728185 (N.D. Ga. Feb. 24, 2021) ................................. *passim*

*WGJ Holdings, Inc. v. Greenberg*,
   2008 WL 809321 (S.D.N.Y. Jan. 8, 2008) .....................................9

*World Micro Components, Inc. v. Crestwood Tech. Grp. Corp.*,
   2014 Ga. Super. LEXIS 2520 (Ga. Super. Feb. 10, 2014).....................39

*Zamora v. Fit Int'l Grp. Corp.*,
   834 F. App'x 622 (2d Cir. 2020) ..........................................12, 20

## Statutes & Rules

11 U.S.C. § 548 ...................................................................32

11 U.S.C. § 550 ...................................................................32

11 U.S.C. § 551 ...................................................................32

18 U.S.C. § 1343 ..................................................................15

18 U.S.C. § 1832 ...............................................................17, 18

18 U.S.C. § 1956 ..................................................................19

18 U.S.C. § 1961(1) ...............................................................15

18 U.S.C. § 1961(4) ...............................................................11

18 U.S.C. § 1961(5) ...............................................................15

18 U.S.C. § 1962(c) ..........................................................11, 15, 20

28 U.S.C. § 1404 ..............................................................23 n.13

Fed. R. Bankr. P. 7009............................................................1, 16

Fed. R. Bankr. P. 7012.............................................................1

Fed. R. Civ. 8 ................................................................16 n.8

Fed. R. Civ. 9(b) ............................................................1, 16, 24

Fed. R. Civ. 12(b)(1).............................................................1

Fed. R. Civ. 12(b)(6) ........................................................................................................1

Georgia Uniform Voidable Transfers Act ......................................................................36

N.Y. Gen. Obl. Law § 5-501(6)(b) ................................................................................32

N.Y. Pen. Law § 190.40 .................................................................................................32

O.C.G.A. § 10-1-760 ................................................................................................6, 37

O.C.G.A. § 10-1-761 ......................................................................................................39

O.C.G.A. § 10-5-50 ........................................................................................................22

O.C.G.A. § 13-6-11 ..................................................................................................39, 40

O.C.G.A. § 16-8-3 ..........................................................................................................23

O.C.G.A. § 16-14-4(a) ...................................................................................................21

O.C.G.A. § 51-12-5.1 .....................................................................................................39

Texas Property Code Section 51.002 .............................................................................35

KL3 3336287.1

Defendants Jonathan Kalikow, WP Development Partners LLC ("WP"), Gamma Lending Omega LLC ("Omega"), Gamma Real Estate Capital LLC ("GRE") and GRE WP LLC ("GWL" and together with the other moving defendants, "Defendants") respectfully submit this memorandum in support of their motion, pursuant to Fed. R. Bankr. P. 7009 and 7012 (which incorporate Fed. R. Civ. 12(b)(1), 12(b)(6) and 9(b)), to dismiss with prejudice the Amended Complaint (the "AC") of Plaintiffs Wade Park Land Holdings, LLC ("WPH"), Wade Park Land, LLC ("WPL" and together with WPH, the "Wade Park Plaintiffs") and the Thomas Family Trust (the "Trust").

## PRELIMINARY STATEMENT

This is a case that should never have been brought. WPH and WPL borrowed $82.75 million from GRE as a four-month bridge loan (the "Gamma Loan") to refinance land they owned in Frisco, Texas, known as Wade Park (the "Property"). They never repaid it, even after many forbearances and extensions, and have no basis to sue Defendants.

The AC alleges WPH and WPL were operated by Stanley Thomas, a sophisticated developer with decades of experience in real estate financing. He also has a long history of defaults, litigation and bankruptcy filings. Thomas ran WPH and WPL into the ground and now seeks to blame Defendants for his own failures. GRE made the Gamma Loan to WPH and WPL when nobody else would. It enabled WPH and WPL to pay off another loan that was already in default. But they repeatedly defaulted on the Gamma Loan. Omega, to which GRE transferred the loan on the day it was made, extended forbearance after forbearance, *seven times,* that gave WPH and WPL substantial additional time to pay. It was only after more than two years, when they once again defaulted, that Omega finally would forbear no longer and obtained the Property through deeds in lieu of foreclosure. This was all done in accordance with detailed commercial contracts WPH and WPL negotiated and signed that were and are fully

enforceable.  Plaintiffs repeatedly released the claims they now assert against Defendants, in consideration for the many opportunities they were given to cure their defaults.  There is simply no basis for the AC and its eighteen utterly false, illogical, implausible, conclusory and throw-everything-against-the-wall-in-the-desperate-hope-that-something-will-stick claims.

In a well-reasoned, 51-page, February 24, 2021 Opinion and Order (the "Order"), Judge Batten of the Northern District of Georgia granted Defendants' motion to transfer this action here, and the motion of the other defendant, Blake Goodman, a Georgia resident, to dismiss the AC as to him.  Judge Batten found Plaintiffs failed properly to allege any of the eight claims they brought against Mr. Goodman.  Plaintiffs do not properly allege any of their claims against Defendants either.  This case should be dismissed now, with prejudice.

## STATEMENT OF FACTS

The AC concerns a heavily documented real estate financing, but does not provide the Court with any of the dispositive agreements.  Plaintiffs cannot so easily avoid their terms.  "Even where a document is not incorporated by reference, the court may nevertheless consider it where the complaint relies heavily upon its terms and effect, which renders the document integral to the complaint."  *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002); *see also San Leandro Emergency Med. Grp. Profit Sharing Plan v. Philip Morris Cos.*, 75 F.3d 801, 808-09 (2d Cir. 1996) (documents "integral" to the complaint were properly considered on a motion to dismiss).  The agreements ("Ex. _") are attached to the November 12, 2020 Declaration of Jonathan Kalikow (Dkt. Nos. 17-1 to 17-16).[1]

### A.      GRE Lent $82.75 Million to WPH and WPL

The AC asserts Thomas's affiliates, Lebanon 390WR and WPL, borrowed to

---

[1] Mr. Kalikow's declaration and exhibits are exhibits to the Declaration of Michael Dell dated April 16, 2021. Exhibits to the Dell Declaration are referred to as "D-Ex. _."  The AC is Exhibit 1 to the Dell Declaration.

acquire the Property.  (AC ¶¶ 3, 25.5, 34, 37, 38.)  By the spring 2016, Lebanon 390WR owed

$45 million to Bridge Capital (which was in default), and WPL owed $48 million to BAMCAP.

(*Id.* ¶¶ 30-31, 43.)  The loans were due to mature in early 2017.  (*Id.* ¶ 44.)  Bridge Capital said

"it could not continue to extend the maturity date."  (*Id.* ¶ 46.)  Thomas needed more financing.

(*Id.* ¶¶ 44-45.)

   According to the AC, GRE was the only lender willing to lend Thomas enough

and close the deal quickly.  (*Id.* ¶ 47.)  On October 20, 2016, Thomas signed a non-binding term

sheet.  (*Id.* ¶¶ 57-58)[2]  Based on facts GRE learned about Thomas during the underwriting of the

loan, GRE insisted that its affiliate, GWL, acquire a 75% Class B membership interest in a new

entity, Wade Park Ventures, LLC ("Ventures"), to deter Thomas from filing for bankruptcy, as

his affiliates had done many times in the past.  (*See* D-Ex. 4 (August 27, 2020 Declaration of

WPL and WPH's bankruptcy counsel, David L. Bury, Jr.) ¶ 3 (listing other Chapter 11

bankruptcy cases).)  Ventures would become the sole member of WPL and WPH and be

governed by a Limited Liability Company Agreement (the "LLCA," Ex. A).  GWL's non-voting

interest in Ventures would have no economic value if the loan was repaid within 60 days after its

maturity.  Thomas's Trust would own a 25% class A interest.  (AC ¶¶ 70, 72, 82.)  In the

meantime, Bridge Capital refused to extend its loan, and Thomas's efforts to obtain other loans

were unsuccessful.  (*Id.* ¶¶ 79-81.)  WPL and WPH decided to borrow from GRE.  (*Id.* ¶ 82.)

   On January 17, 2017, GRE, WPH and WPL signed a Construction Loan

Agreement (the "CLA"), and GRE assigned its interest in the Agreement to Omega.  (*Id.* ¶ 84.)

The Agreement gave WPH and WPL an option to extend the four-month term up to three times,

---

[2]  Plaintiffs allege Thomas later agreed to several changes GRE requested, including reducing the loan amount
(because the underwriting revealed material misstatements by Thomas) and granting a second lien behind
BAMCAP.  (*Id.* ¶¶ 63, 65, 69.)

for three months each.  (*Id.* ¶ 82; Ex. C.)

**B.    Omega Repeatedly Extended the Gamma Loan and Granted Forbearances**

In May, August and November 2017, WPH and WPL asked to exercise their option to extend the loan three times.  (AC ¶ 109.)  Thomas could not meet the CLA's terms for the May extension.  But Omega still agreed to modify those terms in a Loan Modification Agreement ("LMA") that gave WPH and WPL more time to make the required payments. WPH, WPL, Thomas and their affiliates agreed the Loan Documents are their "valid and binding obligations," "[t]here exist no defenses or claims of set-off with respect to any sums owing," and "[a]ll agreements regarding the Property . . . and . . . the Loan . . . have been reduced to writing." (Ex. C § 4(c), (e) and (f).)  They gave Omega and its affiliates very broad releases.  (*Id.* § 8.)

In January 2018, WPL was about to default on the BAMCAP Loan.  For a one-month extension, BAMCAP required a $530,000 fee, which BAMCAP would allow WPL to add to its loan.  (AC ¶¶ 117-18.)  Having already extended three times, Omega did not consent to a larger first lien ahead of its second lien.  (*Id.* ¶ 123.)  WPL did not pay the fee in cash, and BAMCAP declared WPL in default.  Omega subsequently declared the Gamma Loan in default. (*Id.* ¶¶ 129-30.)  Nevertheless, on March 5, 2018, Omega entered into a Forbearance Agreement with WPH and WPL.  WPL, WPH and Thomas (i) acknowledged their $88,664,248.48 debt; (ii) agreed they had "no defenses against [their] obligation to pay"; (iii) acknowledged Omega "acted in good faith" and "a commercially reasonable manner;" (iv) waived and released any contrary claim; (v) broadly released Omega and its affiliates; and (vi) reaffirmed their prior agreements.  (*Id.* ¶ 136; Ex. D ¶¶ 1, 5, 8, 9, 14, 19.)  On July 30, 2018, Omega bought the BAMCAP Loan.  (AC ¶ 176.)

WPH and WPL continued to default.  Omega wanted the Gamma Loan and the BAMCAP Loan to be repaid and gave WPH and WPL every opportunity to do so.  Omega

- 4 -

signed *five* more Forbearance Agreements, the last in December 2018.  (*Id.* ¶¶ 177-78.)  Each

extension included the same representations, waivers and releases by WPH, WPL, Thomas and

their affiliates.  (Exs. E-I.)  The Agreements gave Plaintiffs almost eleven months beyond the

already nine-months-extended final maturity date.  Over-leveraged and unable to pay, on

February 4, 2019, WPH, WPL, Thomas and their affiliates signed a deed-in-lieu of foreclosure

agreement with Omega (the "DIL"), that provided for the Property to be given to Omega or its

designee and Thomas to be conditionally released from his loan guaranty.  (AC ¶ 179; Ex. J ¶¶ 6,

12, 15, 18.)[3]

On February 21, 2019, less than three weeks later, WPH and WPL failed to meet

the conditions for Omega to delay releasing the deeds from escrow.  (AC ¶ 192.)  Omega then

released the deeds and its affiliate, WP, recorded them.  (*Id.*)  On March 6, 2019, WP gave WPH

and WPL's affiliate, Wade Park Frisco Holdings, LLC ("WPF"), the option to purchase the

Property for $150 million (par plus accrued interest) on or before April 15, 2019 (the "Buy-Back

Agreement").  (Ex. K; AC ¶ 196-97.)  WPF did not exercise the option.  (AC ¶ 198.)

## C.    Plaintiffs Filed Their Initial Complaint Followed by an Amended Complaint

More than sixteen months later, on August 27, 2020, Plaintiffs filed their

complaint in the Northern District of Georgia.  That court referred the lawsuit to the bankruptcy

court, where WPH and WPL had filed chapter 11 petitions the day before.  Plaintiffs moved to

withdraw the reference.  The Court did so on consent.  (Dkt. No. 4.)  On October 16, 2020,

Plaintiffs filed their AC.  (Dkt. No. 5.)

---

[3]  Plaintiffs also agreed to an integration clause and represented they entered into the DIL "of their own free will" "pursuant to arms'-length negotiations," were "represented by competent legal counsel of their own choosing," and Omega did "not take[] advantage of [them] by threats, duress, intimidation, overreaching conduct, unconscionable conduct, bad faith or otherwise."  (Ex. J ¶¶ 9(k).)

**D.    The Northern District of Georgia Granted Defendants' Motion to Transfer and Mr. Goodman's Motion to Dismiss**

On November 13, 2020, Defendants moved to transfer the action to this Court, and to dismiss the AC because the claims have been released and for failure to state a claim and lack of standing.  (Dkt. Nos.  14, 16.)  The one other defendant, Mr. Goodman, moved to dismiss the AC for failure to state a claim against him.  (Dkt. No. 13.)

On February 24, 2021, the Court granted Mr. Goodman's motion to dismiss and Defendants' motion to transfer the action to this Court.  *Wade Park Land Holdings v. Kalikow*, 2021 WL 728185 (N.D. Ga. Feb. 24, 2021) (Dkt. No. 30) ("*Wade Park I*").

The Order dismissed Plaintiffs' claims against Mr. Goodman for reasons that apply equally to Plaintiffs' claims against Defendants:

- In dismissing Plaintiffs' federal RICO claims, Judge Batten held:

    o  Plaintiffs' "allegations do not show a RICO enterprise" but merely "describe an ambitious business model in which all Defendants aimed to achieve professional success through the acquisition of valuable real estate." *Wade Park I*, 2021 WL 728185, at *5.

    o  "Plaintiffs allege that Defendants engaged only in a single scheme—fraudulent acquisition of Wade Park—aimed at a singular victim—Thomas—through manipulation of a single loan—the Gamma Bridge loan," and this "does not constitute a closed-ended pattern of racketeering." *Id.* at *6.

- In dismissing Plaintiffs' claims alleging breach of fiduciary duty and conspiracy to breach fiduciary duties, Judge Batten held:

    o  These claims depend on an allegation "that at the same time the parties were negotiating the terms of a complex business agreement that their lawyers were reducing to writing, they were simultaneously negotiating a separate, broader, *oral* agreement," which "is so inherently implausible as to fail the *Twombly* standard." *Id.* at *9.

    o  Plaintiffs therefore, failed plausibly to allege that Blake Goodman "breached or conspired to breach [any fiduciary] duties." *Id.* at *10.

- In dismissing Plaintiffs' claim alleging misappropriation of trade secrets under the Georgia Trade Secrets Act ("GTSA"), Judge Batten held Plaintiffs "fail to plausibly

allege that any disclosure occurred," *id.* at \*9, because they "do not plausibly allege that Goodman shared trade secrets with the remaining Defendants," *id.*[4]

## **ARGUMENT**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 500 U.S. 544, 570 (2007)). A claim is plausible if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," and does not state a claim if it consists of "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Id.* Determining the plausibility of allegations is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

## I.   **PLAINTIFFS HAVE RELEASED THEIR CLAIMS**

The AC refers to eight contracts WPH and WPL signed, and four the Trust signed, that release their claims in this action against Defendants. On February 4, 2019, Plaintiffs signed the DIL and released Defendants from all claims, known or unknown, under any federal or state laws, or in contract or in tort, resulting from the Gamma Loan and related transactions, including any claim to invalidate or otherwise avoid the transactions, except fraud relating to that agreement. (Ex. J § 6.) Between May 2017 and December 2018, WPH and WPL signed six Forbearance Agreements, and in January 2019 they signed the LMA, all of which

---

[4] "'[T]he law of the case' does not constitute a limitation on the court's power," but it reflects a "general practice of refusing to reopen what has been decided." *Slotkin v. Citizens Cas. Co. of N.Y.*, 614 F.2d 301, 312 (2d Cir. 1979). It "promotes the finality and efficiency of the judicial process by protecting against the agitation of settled issues." *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 816 (1988)). Those objectives would be served by applying it here. Nothing has happened since Judge Batten's careful and well-reasoned opinion to disturb his rulings.

contain similar releases of Defendants, each without the fraud exclusion.  (Exs. C-H at § 9 and I at § 8).  The Trust signed the last two Forbearance Agreements and the LMA.

Under New York law, "a valid release constitutes a complete bar to an action on a claim which is the subject of the release."  *Estate of Mautner v. Alvin H. Glick Irrevocable Grantor Tr.*, 2019 WL 6311520, at *4 (S.D.N.Y. Nov. 25, 2019); *see also Arfa v. Zamir*, 17 N.Y.3d 737, 738-39 (2011) (dismissing claims as barred under general release); *Miller v. Brunner*, 164 A.D.3d 1228, 1231 (2nd Dep't 2018) (reversing trial court and enforcing release as presumptively valid).  A party's release of "any and all claims" related to an agreement or event extinguishes all claims, including unknown claims that are discovered later.  *See Centro Empresarial Cempresa S.A. v. América Móvil, S.A.B. de C.V.*, 17 N.Y.3d 269, 276 (2011).

"[A]n executed release shifts the burden to plaintiff to establish that the release was invalid."  *Estate of Mautner*, 2019 WL 6311520, at *4.  The AC does not allege facts that meet that burden.  The AC alleges Defendants fraudulently induced Plaintiffs to agree to the Forbearance Agreements and the DIL by stating the lender would not unreasonably withhold consent to a modification of the BAMCAP loan.  (AC ¶ 96.)  As shown in Point VII below, that does not state a fraudulent inducement claim, for several reasons.  But even if it did state such a claim, it would not nullify the releases.  A release will be invalidated for fraud only if plaintiff "identif[ies] a separate fraud from the subject of the release."  *Estate of Mautner*, 2019 WL 6311520, at *4; *see also Centro Empresarial Cempresa S.A.*, 17 N.Y.3d at 276 (dismissing fraud claim where general release did not contain a fraud exclusion and plaintiff did not allege fraud specific to the release).  Where the alleged fraud "falls squarely within the scope of the release, then that fraud cannot nullify the release."  *Estate of Mautner*, 2019 WL 6311520, at *4.  Here, the alleged fraud is squarely within the scope of the release.  The AC alleges Omega

- 8 -

unreasonably withheld its consent to the BAMCAP Loan modification, contrary to "Defendants'" purported representation, and WPH and WPL were aware that Omega did so, "in late January 2018," importantly *before* WPH and WPL signed not only the first Forbearance Agreement (and its release) on March 5, 2018, but also the other five Forbearance Agreements, the LMA and the DIL.  (AC ¶¶ 122-23, 130.)  Moreover, Plaintiffs specifically "acknowledge[d] in their releases that "in executing this agreement, [they have] not relied upon any representations or warranties of the lender, lender's attorneys or any other entity."  (Exs. C-H §9)

Plaintiffs also executed some or all of the releases *after* the other acts they complain of, which they allege occurred before February 2019.  (AC ¶¶ 123, 150, 159, 171, 237-39, 265, 310).  Plaintiffs assert Omega released the Wade Park Deeds from escrow on February 21, 2019, shortly after the last release, but do not deny that Omega had a right to release the deeds for failure to pay or that they failed to pay.  (*Id.* ¶ 192.)  Moreover, when the Plaintiffs executed the DIL, they released "any claim to invalidate or otherwise avoid the transactions contemplated herein." (Ex. J §6.)  Those transactions included the release and recording of the deeds.  (*Id.* at Recital O, §3.)  A release that covers foreseeable future claims is enforceable. *WGJ Holdings, Inc. v. Greenberg*, 2008 WL 809321, at *2 (S.D.N.Y. Jan. 8, 2008).

## II.    THE TRUST LACKS STANDING TO BRING ITS CLAIMS

The Trust lacks standing to bring its claims other than Count I, which does not state a claim.  The AC's only particularized allegations concerning the Trust that do not lump all Plaintiffs together are:  (a) the Trust holds a 25% interest in Ventures (AC ¶ 9), and (b) AC references to Thomas-affiliated entities are not to the Trust (*id.* ¶ 25.5 n.3).  Any injury the Trust purportedly suffered as a result of the conduct alleged in the AC is derivative of the Trust's interest in Ventures, or Ventures' interest in WPH and WPL, and is based on a purported injury to one or more of those three entities.  The Trust lacks standing to bring such claims.  "It is well-

- 9 -

settled that shareholders lack standing to assert individual claims based on injury to the corporation." *Baltus-Michaelson v. Credit Suisse First Boston, LLC*, 116 F. App'x 308, 309 (2d Cir. 2004); *see also Palm Beach Strategic Income, LP v. Salzman*, 2011 WL 441778, at *7 (E.D.N.Y. Feb. 7, 2011) (shareholder lacks RICO standing to sue for harm to a corporation). The Trust does not assert any direct injury from the alleged RICO predicate acts, tortious acts, or other alleged breaches or wrongdoing. *See Rand v. Anaconda-Ericsson, Inc.*, 794 F.2d 843, 849 (2d Cir. 1986) (no standing without direct injury); *Hoatson v. New York Archdiocese*, 2007 WL 431098, at *6 (S.D.N.Y. Feb. 8, 2007) (no standing without a direct injury of the sort "RICO intended to prevent"). The Trust's contract claim also fails because the Trust was not a party to the CLA or any of the allegedly usurious agreements. *Palm Beach*, 2011 WL 441778, at *4.

## III.   COUNT I SHOULD BE DISMISSED

Plaintiffs assert in Count I *they* violated LLCA Section 2.4(d) by entering into the August, October, and December 2018 Forbearance Agreements and the DIL, and by delivering the Property to GWL (the "Transactions"). Their Count I request to declare the Transactions void fails to state a claim. *First,* Plaintiffs ignore the final sentence of Section 2.4(d), which states "the Initial Loan shall be deemed permitted under this section." The LLCA defines the "Initial Loan," to include "as the same may be amended, modified [or] supplemented." (Ex. A, at 4.) The Transactions are permitted because they amend, modify or supplement the Initial Loan. Thus, the Lender agreed in the Forbearance Agreements to forbear from exercising its rights concerning the Initial Loan. (*E.g.*, Ex. D ¶ 2.) The DIL was entered into "to resolve [Plaintiffs'] obligations to Lender under the GRE Loan Documents," including the conditional release of Thomas's guaranty. (Ex. J at Recital N.) The deeds were delivered pursuant to the CLA and DIL. (AC ¶¶ 185, 191-92; Ex. J ¶ 3.) Moreover, Plaintiffs acknowledge the Transactions were modifications or supplements to the Initial Loan, by including in their

calculation of their "interest payments" the "extension and forbearance fees on" the Loan and "the value of the land" WPH and WPL transferred to WP.  (AC ¶ 413.)

Second, Ventures' manager, Thomas, was authorized to take "any act in contravention of" the LLCA with "the written consent" of "the Initial Lender," which is defined as GRE "together with its . . . assigns."  (Ex. A, at 4 § 3.3.)  Omega is GRE's assignee (AC ¶ 84), and consented to the Transactions by signing the agreements.  (Exs. G at 14; H at 15; I at 14; J at 18.)  Plaintiffs represented in the DIL they had "full power and authority to execute, deliver and perform" that agreement.  (Ex. J ¶ 9(f).)

## IV.   COUNT II SHOULD BE DISMISSED

To state a claim for violation of RICO, 18 U.S.C. § 1962(c), as Plaintiffs purport to do in Count II, a plaintiff must plausibly plead "(1) conduct, (2) of an enterprise, (3) through a pattern (4) of racketeering activity," *Anatian v. Coutts 223 Bank (Switzerland) Ltd.*, 193 F.3d 85, 88 (2d Cir. 1999), (5) injury to plaintiff's business or property; and (6) the violation caused the injury.  *See First Nationwide Bank v. Gelt Funding Corp.*, 27 F.3d 763, 767 (2d Cir. 1994).  Plaintiffs fall far short of plausibly alleging these elements.  Their claim concerns a commercial real estate financing loan.  The borrowers were sophisticated and experienced and represented by sophisticated counsel.

### A.   Plaintiffs Do Not Plausibly Allege a RICO Enterprise

A RICO enterprise is "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity."  18 U.S.C. § 1961(4).  The AC fails to allege such an "enterprise."  Plaintiffs contend Defendants and Mr. Goodman formed an "association in fact" — the "Gamma Enterprise" — for "the purpose [of] enriching themselves and defrauding Plaintiffs" by "taking Wade Park."  (AC

¶¶ 252, 263-64.)  But Plaintiffs fail to allege facts that support a plausible inference that Defendants did so.

### 1.      No Plausible Allegation of a Fraudulent Purpose

To plead an "association in fact" enterprise, as Plaintiffs purport to do here, they must allege that a group shares:  "a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose." *Zamora v. Fit Int'l Grp. Corp.*, 834 F. App'x 622, 625 (2d Cir. 2020).  To satisfy the purpose requirement, they "must demonstrate that the members of the association 'share a common purpose to engage in a particular *fraudulent* course of conduct and work together to achieve such purposes.'"  *Id.*  The AC fails to do so.

As Judge Batten held, "Plaintiffs have 'alleged no facts to plausibly support the inference that the defendants were collectively trying to make money . . . by fraud, . . . as opposed to the obvious' alternative explanation, . . . that they were simply trying to make money."  *Wade Park I*, 2021 WL 728185, at *4.  Although Plaintiffs assert that Defendants worked together "with the purpose [of] enriching themselves and defrauding Plaintiffs by taking Wade Park" (AC ¶ 252), their "allegations do not show a RICO enterprise;" instead they "describe an ambitious business model in which all Defendants aimed to achieve professional success through the acquisition of valuable real estate."  *Wade Park I,* 2021 WL 728185, at *5.

The AC does not allege facts that plausibly support the inference that Defendants shared a common purpose of "defrauding Plaintiffs."  Instead, the facts and agreements Plaintiffs allege support the obvious alternative explanation that Defendants were simply trying to protect their capital or make money in real estate financing.  Thus, Plaintiffs admit in the AC, and the underlying agreements show, GRE made a short term loan to WPH and WPL pursuant to the detailed CLA; after the loan became due, GRE's assignee, Omega, gave Plaintiffs multiple

extensions and forbearances, in detailed agreements that gave them far more time to pay their debt than initially contemplated; but WPH and WPL failed to cure their defaults and consensually deeded the Property to WP on account of their antecedent debt and other obligations to Omega.  If Omega wanted the Property, it could have foreclosed at numerous times along the way, and did not need to sign the Forbearance Agreements, the LMA, the DIL or the Buy-Back Agreement.

In a tacit admission of Plaintiffs' inability to make specific factual allegations against each defendant, the AC also repeatedly lumps the four corporate defendants together as the "Gamma Defendants."  (AC ¶ 14 n.2.)[5]  Other allegations lump all Defendants together.[6]  But the AC does not allege any wrongdoing by WP or GWL.  Indeed, it does not allege any conduct by WP other than receiving the Property (*id.* ¶¶ 419, 422, 427, 433) or by GWL other than acquiring an interest in Ventures.  (*Id.* ¶ 87.)  That is not a basis for a RICO claim.

### 2.    No Plausible Allegation of a RICO Enterprise

The Second Circuit has "long since rejected the idea that a RICO enterprise may consist 'merely of a corporate defendant associated with its own employees or agents carrying on the regular affairs of the defendant.'"  *Cruz v. FXDirectDealer, LLC*, 720 F.3d 115, 121 (2d Cir. 2013).  But that is all that Plaintiffs purport to allege here.  They allege the "enterprise" includes all defendants (AC ¶ 254), Mr. Kalikow was an officer of the "Gamma Defendants," he "directed the[ir] actions," and "[a]t all relevant times, the Gamma Defendants acted through" him.  (*Id.* ¶¶ 10, 387.)  The AC does not allege any conduct by him other than as their officer.  (*Id.*)  Nor do

---

[5] *See, e.g.,* AC ¶¶ 5, 23, 52-54, 56, 57, 60-61, 65, 72-77, 81, 83, 91, 95-107, 121-37, 139-41, 142-43, 145-47, 150, 152-55, 155 n.6, 157-59, 161-63, 165-69, 170-71, 173-76, 179, 182-99, 202-05, 207-09, 235-49, 251, 252, 254-56, 259, 261-62, 264-68, 270, 276-78, 285-86, 294-95, 297, 303, 306-07, 310, 312-13, 316-18, 322, 327, 338-41, 345-46, 373-76, 383-85, 387-94, 404-06, 438-39, 443, 446-47, 449-52, 458, 460-61, 463, 467-68, 470.

[6] *See, e.g.,* AC ¶¶ 263, 264, 265, 269, 305, 308-09, 311, 315, 319-21, 323-25, 348, 350-51, 353-54, 358-59, 361, 363-65, 367-70.

Plaintiffs make any factual allegation that could support the inference that any "Gamma Defendant" formed a RICO enterprise with any other "Gamma Defendant." The AC does not allege WP or GWL did so, nor plausibly show an enterprise between GRE and Omega.

Plaintiffs make the conclusory allegation that Mr. Goodman, "the Executive Director of Real Estate Investments at non-party Chick-fil-A, Inc." (*id*. ¶ 15), "secretly work[ed]" with Defendants for "the purpose [of] enriching themselves and defrauding Plaintiffs." (*Id*. ¶¶ 155 n.6, 252.) But Plaintiffs do not allege facts that support this conclusion. They allege he gave confidential information to Defendants (*id*. ¶¶ 224-27, 236-41, 246, 249-51), but do not identify what it was or allege he had anything to do with Wade Park. Thus, as Judge Batten held, "Plaintiffs do not plausibly allege that Goodman shared trade secrets with the remaining Defendants." *Wade Park I*, 2021 WL 728185, at *9.

## B.   Plaintiffs Fail to Plausibly Allege the Collection of an Unlawful Debt

To state a claim under RICO for unlawful debt collection, the plaintiff must allege that "each defendant was lending money or a thing of value at a rate usurious under State or Federal law" and that "each defendant was in the business of doing so." *Malyar Egerique v. Chowaiki*, 2020 WL 1974228, at *19 (S.D.N.Y. Apr. 24, 2020) (dismissing RICO claim where plaintiff alleged only one usurious loan). The AC fails to do so. The single Gamma Loan that is the subject of this lawsuit is not enough. *Id.* Nor are "occasional usurious transactions by one not in the business of loan sharking." *Durante Bros. & Sons, Inc. v. Flushing Nat'l Bank*, 755 F.2d 239, 250 (2d Cir. 1985).

Moreover, Plaintiffs do not allege any facts that show there was anything unlawful about the Gamma Loan. (AC ¶¶ 257-61.) They acknowledge they consulted legal and regulatory advisors as appropriate. (Ex. B § 11.15(i)(B).) Their allegations that the loan was usurious (¶¶ 258, 260, 413, 414) are "spurious" and "flatly wrong" under the CLA's governing

- 14 -

New York law.  *See In re Global Ship Sys. LLC,* 391 B.R. 193, 203 (Bankr. S.D. Ga. 2007);

Point XI below.

### C.    Plaintiffs Fail to Plausibly Allege a Pattern of Racketeering

Plaintiffs also fail to plead a "pattern of racketeering activity," which requires "at

least two acts of racketeering."  18 U.S.C. §§ 1962(c), 1961(5).  Even independently chargeable

acts of wire fraud under 18 U.S.C. § 1961(1) are not a "pattern of racketeering activity" when, as

here, they arise from a single transaction, the financing of Wade Park.[7]  Moreover, Plaintiffs do

not plausibly allege enough facts to properly plead a "predicate act."  *See Mills v. Polar*

*Molecular Corp.*, 12 F.3d 1170, 1176 (2d Cir. 1993) (affirming dismissal of RICO claim where

plaintiff did not properly plead predicate acts).

### 1.    No Plausible Wire Fraud Allegation

Plaintiffs purport to allege Defendants committed wire fraud in violation of 18

U.S.C. § 1343, which requires:  "(1) a scheme to defraud, (2) money or property as the object of

the scheme, and (3) use of the mails or wires to further the scheme."  *United States v. Greenberg*,

835 F.3d 295, 305 (2d Cir. 2016).  "RICO claims premised on mail or wire fraud must be

particularly scrutinized because of the relative ease with which a plaintiff may mold a RICO

pattern from allegations that, upon closer scrutiny, do not support it."  *Grace Int'l Assembly of*

*God v. Festa*, 797 F. App'x 603, 605 (2d Cir. 2019).  Plaintiffs' allegations do not support it

here.

*The first purported act of "wire fraud"* Plaintiffs allege is that "on or around

December 2, 2016," Defendants falsely stated "they did not want to own the Wade Park project."

---

[7]  *See Crawford v. Franklin Credit Mgmt. Corp.*, 758 F.3d 473, 489 (2d Cir. 2014) (multiple acts to further a one-victim fraud concerning one transaction are not a "pattern"); *see also Cisneros v. Petland, Inc.*, 972 F.3d 1204, 1212 (11th Cir. 2020) (affirming dismissal of RICO claim arising from single transaction).

(AC ¶ 265.)  That is not actionable fraud, for several reasons.  *First*, Rule 9(b) (incorporated by Fed. R. Bankr. P. 7009) requires Plaintiffs to "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent."  *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 290 (2d Cir. 2006).  Plaintiffs fail to do so.  They do not even specify which defendant made the statement.[8]

Second, Plaintiffs do not allege facts that plausibly show the purported statement was untrue.  (AC ¶¶ 75-76.)  On the contrary, the facts Plaintiffs allege strongly support the opposite inference — that Defendants wanted the loan repaid.  Omega extended forbearances six times and then entered into the DIL and the Buy-Back Agreement.  (*Id.* ¶¶ 177, 178.)

Third, Plaintiffs could not reasonably have relied on Defendants' preference not to own the Wade Park project to mean they could not foreclose on the Property if WPH and WPL defaulted, because the CLA expressly allowed GRE to do so.  (*Id.* ¶ 265.)  It is "established law that a party cannot claim fraud based on an alleged representation that is clearly contradicted by an express term of the contract."  *Conopco, Inc. v. Wein*, 2007 WL 9818902, at *8 n.14 (S.D.N.Y. Aug. 31, 2007).

Fourth, any comment about not wanting "to own the Wade Park project" would state a desire or expectation, not a material fact.  *See Mecum v. Becker*, 166 A.D. 793, 801 (1st Dep't 1915) ("[T]he only theory upon which a recovery could be had was that material false representations were made with respect to *existing facts*, as distinguished from estimates,

---

[8] *See Atuahene v. City of Hartford*, 10 F. App'x 33, 34 (2d Cir. 2001) (lumping all defendants together and providing no factual basis to distinguish their conduct fails to meet even the minimum pleading standard of Rule 8); *Soter Techs. v. IP Video Corp.*, 2021 WL 744511, at *14 (S.D.N.Y. Feb. 26, 2021) (Liman, J.) ("A complaint may not simply 'lump[] all the defendants together in each claim and provid[e] no factual basis to distinguish their conduct.'").

expectations, opinions or conjectures with respect to the future."); *Option One Mortg. Corp. v. Allstate Ins. Co.*, 2006 WL 2285358, at *9 (N.D. Ga. Aug. 3, 2006) (statement of desire cannot be the basis for a fraud claim).

     *The second alleged act of "wire fraud"* is that, in 2019, Mr. Kalikow purportedly "made false statements about the Gamma Defendants' willingness to agree" to "Thomas's efforts to obtain financing from" Columbia Pacific to pay off the existing loans on the Property.  (AC ¶¶ 163-64, 266.)  That too is implausible and insufficient.  *First*, the CLA, Forbearance Agreements and DIL show that WPH and WPL did not need Defendants' agreement to repay the loans. Moreover, WPH and WPL were free to borrow from Columbia Pacific to repay the loans without Defendants' consent.  Indeed, the AC (¶ 166) concedes Defendants encouraged Thomas to do so. *Second,* Plaintiffs contend Mr. Kalikow made the alleged statements to Jake Sharp, "a broker with whom Thomas worked," not to any Plaintiff.  (*Id*. ¶ 164, 167, 266.)  *Third,* fraud requires the misrepresentation or concealment of a material fact.  The alleged statements were mere puffery or sales talk that is insufficient to sustain a wire fraud allegation.  *See Nelson v. Publishers Circulation Fulfillment, Inc*., 2012 WL 760335, at *4 (S.D.N.Y. Mar. 7, 2012) ("Under both New York common law and the federal mail and wire fraud statutes, 'opinions and puffery or ultimately unfulfilled promises' are not actionable as fraud.").[9]

### 2.    No Plausible Allegation of Theft of Trade Secrets

     Plaintiffs' allegation that Defendants stole trade secrets in violation of 18 U.S.C. § 1832 also fails.  Plaintiffs allege Mr. Goodman obtained Thomas's plans for Wade Park and three other properties — "Orlando," "Tennessee," and "Ashley Park" — that were "trade

---

[9] Plaintiffs also refer generally to "[o]ther instances of false statements" citing paragraphs 158, 183, 186, 189, 194 and 198 of their AC.  (AC ¶ 267.)  Those paragraphs do not state a RICO claim for the reasons described in this Point.

secrets" and had a duty to keep them confidential.  (*Id*. ¶¶ 223-27.)  They allege Mr. Goodman shared the plans with Defendants, who used the plans when they (1) "withdrew the $148 million loan they had offered to Thomas for [the Orlando] property, and instead bought the existing loan on the property," and (2) bought loans on the Tennessee and Ashley Park properties.  (AC ¶¶ 243-45.)  These allegations are insufficient for several reasons.

       *First*, as Judge Batten has already found, Plaintiffs do not plausibly allege that Mr. Goodman owed them any fiduciary duty or shared trade secrets with Defendants.  *Wade Park I*¸ 2021 WL 728185 at *9-10.

       *Second,* according to the AC (at ¶¶ 7-8), WPH and WPL's only interests were in Wade Park.  And the AC does not allege the Trust had an interest in the other three properties. The AC alleges those properties were owned by Thomas or "Thomas-affiliated entities" (AC ¶ 148) that do not include the Trust.  (*Id*. ¶ 25.5 n.3.)  Thus, Plaintiffs lack standing to complain about the theft of trade secrets concerning those properties.  *See* 18 U.S.C. § 1832 (requiring intent to injure, or knowledge of injury to "owner" of trade secret); *First Nationwide Bank v. Gelt Funding Corp.*, 27 F.3d 763, 769 (2d Cir. 1994) ("RICO provides a civil remedy only to those persons injured 'by reason of' the defendant's predicate acts.").[10]

       *Third*, Plaintiffs allege Defendants knew Mr. Goodman was the manager of Thomas's Fourth Quarter Properties, "a holding company for certain portions of the Orlando project." (AC ¶¶ 217, 235.)  However, the AC does not allege facts that support its conclusory

---

[10]  Plaintiffs' allegation that Defendants relied on Orlando "trade secrets" stolen by Mr. Goodman is also wholly implausible because Plaintiffs acknowledge Thomas himself "shared extensive confidential and proprietary information" with Defendants about that property.  (*Id*. ¶ 152.)  Thus, the "obvious alternative explanation" is that Defendants did not make their decisions based on information Mr. Goodman was not permitted to share.  *See Cisneros,* 972 F.3d at 1212 (affirming dismissal of RICO claim where "obvious alternative explanation" was more plausible than poorly pleaded allegations of unlawful conduct).  In an effort to avoid this ineluctable explanation Plaintiffs added new allegations to their AC that the stolen trade secrets were different from the information Thomas provided.  (AC ¶¶ 230-34.)  That tacked-on allegation fails because it is conclusory and not plausible.

allegation (at ¶ 235) that Defendants "knew" he had confidential information about Wade Park or a fiduciary duty to WPH and WPL. *See Democratic Nat'l Comm. v. Russian Fed'n*, 392 F. Supp. 3d 410, 443 (S.D.N.Y. 2019) (dismissing RICO theft of trade secrets claim; no predicate act where plaintiff "does not provide any plausible factual allegations that any of these defendants knew that there were trade secrets among the stolen documents."). Moreover, as noted, Judge Batten has already held that Plaintiffs failed plausibly to allege that Mr. Goodman owed them any such duty. *Wade Park I*, 2021 WL 728185, at *9-10. *Fourth*, the allegations improperly lump Defendants together. *See Opus Fund Servs. (USA) LLC v. Theorem Fund Servs., LLC,* 2018 WL 1156246, at *3 (N.D. Ill. Mar. 5, 2018).

### 3.    No Plausible Allegation of Money Laundering

Plaintiffs' allegations of "money laundering" in violation of 18 U.S.C. § 1956 (AC ¶¶ 305-15) do not plead a predicate act because they rest entirely on the premise that Defendants "obtained proceeds" from "wire fraud" and "theft of trade secrets." (*Id.* ¶ 307.) As just shown, Plaintiffs do not adequately allege that, let alone that Defendants "obtained proceeds" therefrom.

### D.    Plaintiffs Fail to Plausibly Allege Continuing Criminal Conduct

Plaintiffs' RICO claim fails for another, independent reason. Plaintiffs must plausibly allege Defendants' racketeering activities "amount to or pose a threat of continued criminal activity." *Cofacredit, S.A. v. Windsor Plumbing Supply Co.*, 187 F.3d 229, 242 (2d Cir. 1999). To meet this "continuity" requirement, a "plaintiff in a RICO action must allege either an open-ended pattern of racketeering activity (*i.e.*, past criminal conduct coupled with a threat of future criminal conduct) or a closed-ended pattern of racketeering activity (i.e., past criminal conduct extending over a substantial period of time)." *First Capital Asset Mgmt. v. Satinwood, Inc.*, 385 F.3d 159, 180 (2d Cir. 2004).

- 19 -

Plaintiffs have not met this requirement.  They argue "the continuity element is satisfied by allegations that the predicate acts committed by the *enterprise* extended over a period of thirty months."  *Wade Park I*, 2021 WL 728185, at *6.  Judge Batten correctly rejected that argument.  Moreover, as he explained, "Plaintiffs allege that Defendants engaged only in a single scheme—fraudulent acquisition of Wade Park—aimed at a singular victim—Thomas—through manipulation of a single loan—the Gamma Bridge loan.  This does not constitute a closed-ended pattern of racketeering."  *Id; accord, Grace Int'l Assembly of God*, 797 F. App'x at 605-06 (plaintiff failed to allege closed-ended continuity where the purported scheme allegedly lasted 29 months and had the limited goal of defrauding the plaintiff); *Aviles v. S&P Glob., Inc.*, 380 F. Supp. 3d 221, 269 (S.D.N.Y. 2019) (no closed-end continuity where the supposed pattern "represents the efforts of a single group of actors to execute a one-time scheme against a single set of victims through a single means.").[11]

## V.      COUNT III SHOULD BE DISMISSED

Count III contends Defendants conspired to violate 18 U.S.C. § 1962(c).  (AC ¶¶ 352-55.)  It fails to state a claim.  Where a plaintiff does not allege a substantive violation of RICO, a RICO conspiracy claim also fails.  *See Zamora*, 834 F. App'x at 626 ("Plaintiffs' failure to state a claim for a substantive RICO violation is fatal to their RICO conspiracy claim."); *Johnson v. Nextel Commc'ns, Inc.*, 763 F. App'x 53, 56 (2d Cir. 2019) (summary order)

---

[11] *See also* the three decisions Judge Batten cited in finding that the single scheme Plaintiffs allege does not constitute a pattern of closed-end racketeering: *Efron v. Embassy Suites*, 223 F.3d 12 (1st Cir. 2000) (no closed-end continuity where the plaintiff, a limited partner in a hotel development project, alleged the defendants, his partners, schemed to diminish the value of his investment so they could obtain ownership of the project); *Al-Abood v. El-Shamari*, 217 F.3d 225 (4th Cir. 2000) (RICO claims dismissed where the defendant carried out three schemes over several years to defraud a close family friend of a significant amount of money); *Edmondson & Gallagher v. Alban Towers Tenance Ass'n*, 48 F.3d 1260 (D.C. Cir. 1995) (no closed-end continuity where developer seeking to purchase apartment building alleged tenants stalled sale of the building for three years, because allegations involved a single scheme, with a single injury and only a few victims).

(dismissing plaintiffs' RICO conspiracy claim for the same reasons that their substantive RICO claim was deficient).

Even if Plaintiffs had alleged a substantive violation of RICO (and they have not), their RICO conspiracy claim would still fail.  Plaintiffs make the conclusory allegation that "[d]efendants intentionally conspired" to "invest income that is derived from the collection of unlawful debt and from a pattern of racketeering activity in an interstate enterprise."  (AC ¶ 354.) But Plaintiffs do not allege any facts that support that allegation.  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to state a claim.  *Iqbal*, 556 U.S. at 678.  "[N]umerous district courts within this circuit have dismissed conclusory allegations of agreement as insufficient to state a RICO conspiracy claim."  *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Young*, 1994 WL 88129, at \*30 (S.D.N.Y. Mar. 15, 1994) (citing cases); *see also Foster v. 2001 Real Estate*, 2015 WL 7587360, at \*6 (S.D.N.Y. Nov. 24, 2015) (RICO conspiracy allegations "fail on the merits, since the Complaint lacks sufficiently specific factual allegations to support the conclusion that each of the defendants consciously agreed to commit the predicate acts alleged.").

## VI.    COUNTS IV, V AND VI SHOULD BE DISMISSED

Because the federal and Georgia RICO statutes are "essentially identical," *Cisneros v. Petland, Inc.*, 972 F.3d 1204, 1212 (11th Cir. 2020), Plaintiffs' three Georgia RICO claims fail to state a claim for the reasons discussed in Points IV and V above.  Count V purports to allege a violation of O.C.G.A. § 16-14-4(a), which prohibits the use of racketeering proceeds to acquire an interest in property and, unlike the federal RICO statute, does not require proof of an enterprise.  However, Plaintiffs' allegation that Defendants violated § 16-14-4(a) is no more than a "formulaic recitation of the elements of a cause of action" that is insufficient to survive a motion to dismiss.  *See Iqbal*, 556 U.S. at 678.  Moreover, as demonstrated in Points IV.C and D

above, Count V fails plausibly to allege Defendants engaged in a pattern of racketeering activity or criminal conduct of a continuing nature.

The AC adds two additional predicate acts for the Georgia RICO claims, but neither states a claim. Plaintiffs lack standing to assert the first — fraud in connection with the purchase of a security in violation of the Georgia Uniform Securities Act, O.C.G.A. § 10-5-50 — because only a buyer or seller of a security has standing to sue under Georgia's version of Rule 10b-5, *Ledford v. Peeples*, 568 F.3d 1258, 1288 n.86 (11th Cir. 2009), and Plaintiffs do not allege that any Plaintiff purchased or sold any security. Plaintiffs point to GWL's "purchase of a 75% membership interest in Wade Park Ventures" (AC ¶ 318), but GWL purchased that interest from Ventures (*id.* ¶¶ 13, 82, 87), not Plaintiffs. And the other Defendants were not sellers.

Moreover, Plaintiffs fail to allege any fraud in connection with that purchase. Plaintiffs ground their claim on Defendants' alleged failure to disavow a purported October 2016 statement by John Porter (the broker who introduced Mr. Kalikow to Thomas) that he was Defendants' partner on a Savannah project (*id.* ¶ 318.1); Defendants' purported December 2016 statement that "they did not want to own the Wade Park project" (*id.* ¶ 318.2); their January 2017 representation that they intended to comply with GRE's CLA obligation not to unreasonably withhold consent to a modification of the BAMCAP Loan (*id.* ¶ 318.3); and Mr. Kalikow's purported January 2019 statements about their willingness to agree to a Columbia Pacific loan proposal (*id.* ¶ 318.4). These are not predicate acts, for the reasons described in Points IV.B and VII.[12]

---

[12] In addition, Plaintiffs do not allege facts that plausibly suggest Mr. Porter's purported statement that he was Defendants' partner (which was accurate) was material or WPH and WPL reasonably relied on Mr. Kalikow's "body language and facial expressions" as agreement. (AC ¶ 52.) (There is no allegation the Trust relied.) It is not plausible that Plaintiffs borrowed tens of millions of dollars, secured by property purportedly worth hundreds of millions of dollars, based on "body language" concerning a partnership with a third party on a different project. The AC acknowledges the true reason Plaintiffs borrowed from GRE — it was the only lender available. (*Id.* ¶ 47.) A court may dismiss a fraud claim when "the alleged misstatements or omissions . . . are so obviously unimportant to a

KL3 3336287.1

The second additional purported predicate act, theft by deception in violation of O.C.G.A. § 16-8-3, does not plead a predicate act for the same reasons that their allegations of mail and wire fraud do not plead a predicate act and their allegations of fraud fail to state a claim. *See* Points IV.C above and VII below.

## VII.   COUNT VII SHOULD BE DISMISSED

Count VII alleges that, in January 2017, Defendants fraudulently induced Plaintiffs to enter into the CLA by making the representation — in the CLA itself — that lender would not unreasonably withhold consent to modify the BAMCAP Loan, when they "did not intend to comply with th[at] contractual obligation."  (AC ¶ 99; *see also id.* ¶¶ 373-84).[13]

Plaintiffs' fraud claim fails because it impermissibly attempts to convert their Count IX breach of contract claim into a tort.  A fraud claim is "properly dismissed" as "duplicative of the breach of contract claim" where the plaintiff alleges the defendant "misrepresented its intent to perform the contractual obligations at the time they were made."

---

reasonable investor that reasonable minds could not differ on the question of their importance." *Ganino v. Citizens Utils. Co.*, 228 F.3d 154, 162 (2d Cir. 2000).  Moreover, had Plaintiffs considered the relationship between Mr. Porter and Defendants material, they would have had to inquire further, especially in light of their sophistication. (AC ¶¶ 3, 25.1, 25.2, 25.3, 34, and 77.)  "Where sophisticated businessmen engaged in major transactions enjoy access to critical information but fail to take advantage of that access, New York courts are particularly disinclined to entertain claims of justifiable reliance." *Crigger v. Fahnestock & Co.*, 443 F.3d 230, 235 (2d Cir. 2006).  Thomas could have asked Mr. Porter or Mr. Kalikow about the nature of their purported partnership.  *See Pacella v. RSA Consultants, Inc.*, 164 A.D.3d 806, 809 (2nd Dep't 2018) (plaintiffs "failed to adequately allege reasonable reliance on the defendants' silence" because they could have asked the relevant question).

[13] New York law applies because this case was transferred under 28 U.S.C. § 1404 pursuant to a valid and enforceable forum selection clause.  *Wade Park I*, 2021 WL 728185, at *15-16.  New York choice of law rules therefore apply.  *Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. Of Texas*, 571 U.S. 49, 64 (2013) ("when a party bound by a forum-selection clause flouts its contractual obligation and files suit in a different forum, a § 1404(a) transfer of venue will not carry with it the original venue's choice-of-law rules"); *Mancuso v L'Oreal USA, Inc.*, 2021 WL 1240328, at *2, *5-6 (S.D.N.Y. Apr. 2, 2021) (Liman, J.) (applying New York law to tort claims following transfer of venue pursuant to 28 U.S.C. § 1404).  Under New York's interest analysis, the law of the jurisdiction where the tort occurred will generally apply because that state "has the greatest interest in regulating behavior within its borders."  *GlobalNet Financial.com, Inc. v Frank Crystal & Co.*, 449 F.3d 377, 385 (2d Cir. 2006) (citing *Cooney v. Osgood Mach., Inc.*, 81 N.Y.2d 66, 72 (1993)) (affirming application of New York law to tort that occurred in New York).  Here, the parties agreed that New York is the locus of the relevant events.  (*E.g.*, Ex. C § 11.5; Exs. D-H § 15; Ex I § 13; Ex. J § 18.)  Accordingly New York has the strongest interest.

*Demetre v. HMS Holdings Corp.*, 127 A.D.3d 493, 494 (1st Dept. 2015) (citing *New York Univ. v Cont'l Ins. Co.*, 87 N.Y.2d 308, 318 (1995)).

In addition, Plaintiffs have not alleged with particularity a "material misrepresentation of a fact, knowledge of its falsity, an intent to induce reliance, justifiable reliance by the plaintiff, and damages," *Eurycleia Partners, LP v. Seward & Kissel, LLP*, 12 N.Y.3d 553, 559 (2009), as required, in accordance with Rule 9(b).  *See Rodrigues v. City of New York*, 835 F. App'x 615, 619 (2d Cir. 2020).

*First*, Plaintiffs have not pled a plausible basis to show they reasonably relied on the representation.  They could not reasonably rely on any pre-CLA representation because the CLA has a merger clause (Ex. B § 11.8), which "require[s] the full application of the parol evidence rule in order to bar the introduction of extrinsic evidence to alter, vary or contradict the terms of the writing." *Interpharm, Inc. v. Wells Fargo Bank, Nat. Ass'n*, 655 F.3d 136, 145 (2d Cir. 2011) (quoting *Jarecki v. Louie*, 95 N.Y.2d 665, 669 (2001)).

*Second*, Plaintiffs' allegation that, when GRE entered into the CLA as of January 17, 2017, Defendants "did not intend to comply with the contractual obligation not to unreasonably withhold consent," is merely conclusory.  (AC ¶ 96.)  The only factual support Plaintiffs allege is that one year later, in January 2018, a different defendant, Omega, withheld consent to a modification.  (*Id*. ¶¶ 117-119, 124.)  Such "[g]eneral allegations that defendant entered into a contract while lacking the intent to perform it are insufficient to support the (fraud) claim." *Cronos Grp. Ltd. v. XComIP, LLC*, 156 A.D.3d 54, 67–68 (1st Dep't 2017) (quoting *New York Univ.*, 87 N.Y.2d at 318).

*Third,* Plaintiffs ground their claim on their allegation that Omega's refusal in January 2018 to consent to a $530,000 increase in WPL's debt to BAMCAP was unreasonable and violated CLA Section 6.19.  But CLA Section 8.2 expressly permitted Omega to withhold its consent — it states WPL "shall not, without the prior consent of Lender, incur any Indebtedness," and does not impose any obligation on Omega not to "unreasonably withhold its consent."  That "specific provision," governing only WPL's incurring of additional indebtedness, "prevails over" the "general" provision in CLA Section 6.19 concerning loan amendments on which Plaintiffs misplace reliance.  *Cap. Ventures Int'l v. Republic of Argentina*, 652 F.3d 266, 271 (2d Cir. 2011) (citing *Muzak Corp. v. Hotel Taft Corp.*, 1 N.Y.2d 42, 46 (1956)) (general provision must give way to more specific provision).  Section 6.19 is more general because it applies to any amendment, modification or termination; Section 8.2 applies only to incurring indebtedness.[14]

*Fourth,* even if Omega's decision to deny consent had to be reasonable, the inference that the decision *was* reasonable is far more compelling than Plaintiffs' contrary conclusory allegation.  The most plausible inference from Plaintiffs' allegation that WPL needed an extension of the BAMCAP Loan (AC ¶ 117) is that WPL was unwilling or unable to meet that obligation.  And the most plausible inference from Plaintiffs' allegation that the $530,000 extension fee would be capitalized into that loan (*id*. ¶ 118) is that WPL could not pay even that allegedly small fee.  If Omega nevertheless consented to WPL borrowing the additional $530,000, which would have been senior to WPL's debt to Omega and secured by the same collateral, the risk to Omega that WPL would default on Omega's loan would have increased.

---

[14] Under New York law, "[t]he initial interpretation of a contract 'is a matter of law for the court to decide.'" *Morgan Stanley Grp. Inc. v. New England Ins. Co.*, 225 F.3d 270, 275 (2d Cir. 2000) (quoting *K. Bell & Assocs. v. Lloyd's Underwriters*, 97 F.3d 632, 637 (2d Cir. 1996)).

*Fifth*, "In bringing claims of fraud against multiple defendants, 'the plaintiff must inform each defendant of the nature of his alleged participation in the fraud.'" *HSM Holdings, LLC v. Mantu I.M. Mobile Ltd.*, 2021 WL 918556, at *5 (S.D.N.Y. Mar. 10, 2021) (Liman, J.) (quoting *DiVittorio v. Equidyne Extractive Indus., Inc.*, 822 F.2d 1242, 1247 (2d Cir. 1987)). Plaintiffs have simply "conflat[ed] defendants in vague collective allegations." *Id.*  (*See, e.g.*, AC ¶¶ 82, 98, 373.)  Plaintiffs do not allege any misrepresentation by WP, GWL or Omega.

*Sixth,* the AC's allegations of scienter are deficient because they are grounded on speculation that the Property had great value and that Defendants intended, when GRE entered into the CLA, to manufacture a default on the BAMCAP Loan to acquire the Property.  (*Id*. ¶¶ 2, 36, 75-77.)  Those allegations are implausible and are not sufficient to infer fraudulent intent. The fact that Omega gave WPH and WPL numerous opportunities to retain the Property support a far more compelling inference that there was no such intent.  Omega entered into six Forbearance Agreements, the LMA, the DIL and the Buy-Back Agreement that gave WPL (and WPH) more than thirteen additional months to refinance the debt to retain the Property.  (*Id*. ¶¶ 177-78; Exs. D-K.)  But WPH, WPL and WPF were unable to obtain alternative financing even for the $150 million buy-back option after more than nineteen months of looking.  (AC ¶ 197.) And there are no scienter allegations as to WP, GWL and Omega.

*Finally*, Plaintiffs do not plausibly allege that "the [alleged] misrepresentations directly caused the loss" of which they complain. *Fin. Guar. Ins. Co. v. Putnam Advisory Co.*, 783 F.3d 395, 402 (2d Cir. 2015) (quoting *Laub v. Faessel*, 297 A.D.2d 28 (1st Dep't 2002)) "To plead loss causation, [plaintiff] must allege that the subject of the fraudulent statement or omission was the cause of the actual loss suffered." *Id.*  As explained above, WPH and WPL themselves agreed to Section 8.2, which authorized Omega to withhold consent to the increase in

Indebtedness for any reason, and not just for a "reasonable" reason.  Moreover, while Plaintiffs allege the purported misrepresentation caused WPL to default on the BAMCAP Loan in January 2018 (AC ¶¶ 123, 128), and that that default allowed Omega to declare a default on the Gamma Loan (*id.* ¶¶ 129-30), Omega did not foreclose on the Property at that juncture.  Instead, it repeatedly offered WPL (and WPH) opportunities to avoid losing the Property by entering into forbearance agreements, beginning in March 2018.  (*Id.* ¶ 136; Ex E.)  BAMCAP too did not foreclose on its loan.  Instead, in July 2018, it sold the loan to Omega (*id.* ¶ 176), which still did not foreclose.  Omega granted WPL (and WPH) three more forbearance agreements.  That extended WPL's (and WPH's) reprieve from foreclosure through February 4, 2019, more than a year after the initial defaults.  (*Id.* ¶¶ 177-78, Exs. G-I.)  On February 4, 2019, Omega signed the DIL, giving WPL (and WPH) a further opportunity to retain the Property. (AC ¶ 178, Ex. J.)  It was only after WPL (and WPH) failed to satisfy the DIL's conditions that Omega released the deeds from escrow and they were recorded.  (AC ¶ 192.)  That failure by WPL (and WPH), not the alleged misrepresentation, caused WPL's (and WPH's) alleged loss.

## VIII.   COUNT VIII SHOULD BE DISMISSED

Count VIII alleges Defendants tortiously interfered with Plaintiffs' business relations "with various non-party lenders, including Bluebell, Columbia Pacific, and others." (AC ¶ 388.)  To state a claim for tortious interference with business relations, a plaintiff must allege "(1) the plaintiff had business relations with a third party; (2) the defendant interfered with those business relations; (3) the defendant acted for a wrongful purpose or used dishonest, unfair, or improper means; and (4) the defendant's acts injured the relationship."  *Valley Lane Indus. Co. v. Victoria's Secret Direct Brand Mgmt., L.L.C.*, 455 F. App'x 102, 105 (2d Cir. 2012).  Plaintiffs have not done that.

*First*, Plaintiffs do not allege facts showing *they* "had business relations" with any

of the "various non-party lenders," let alone that any Defendant interfered with any such relations.  The AC alleges *Thomas* had the "prospective contracts and business relationships" with which Defendants purportedly interfered (*e.g.*, AC ¶¶ 388-90), but he is not a Plaintiff.

*Second*, Plaintiffs do not allege facts showing GRE, WP or GWL engaged in any conduct that interfered with any relationships.  Plaintiffs merely "lump" them in as "Defendants."  Moreover, Plaintiffs do not even purport to allege that any Defendant interfered with a relationship with any prospective lender other than Bluebell and Columbia Pacific. Plaintiffs' reference to unnamed "others" (*id.* ¶ 388) does not state a claim.

*Third*, Plaintiffs have not made a plausible allegation that Defendants acted "solely out of malice."  *Hassan v. Deutsche Bank A.G.*, 515 F. Supp. 2d 426, 429 (S.D.N.Y. 2007), *aff'd*, 336 F. App'x 21 (2d Cir 2009).  "The requirement that the defendant acted for a wrongful purpose or used improper means sets a high bar."  *Adyb Engineered For Life, Inc. v. Edan Admin. Servs. Ltd.*, 2021 WL 1177532, at *20 (S.D.N.Y. Mar. 29, 2021).  To plead malice, Plaintiffs must allege facts showing Defendants' "sole purpose [was] inflicting intentional harm."  *Carvel Corp. v. Noonan*, 3 N.Y.3d 182, 190 (2004).  A defendant does not act with malice if it was even partially motivated by its "normal economic self-interest."  *Guard-Life Corp. v. S. Parker Hardware Mfg. Corp.*, 50 N.Y.2d 183, 191 (1980); *see also RFP LLC v. SCVNGR, Inc.*, 788 F. Supp. 2d 191, 196 (S.D.N.Y. 2011) (dismissing tortious interference claim against defendants "motivated at least in part by their own economic interest").  The AC alleges Mr. Kalikow insulted Bluebell, and yelled at Columbia (AC ¶¶ 159-161, 171) and Defendants' rejected their terms to pay off the loans on the Wade Park property (*id.* ¶¶ 164, 159).  But even if that were true, it would not show that Mr. Kalikow or any other Defendant had the sole (or any) purpose to harm Thomas, let alone Plaintiffs, or that he or any other Defendant was not

motivated by his or its economic self-interest.  Indeed, the AC alleges Defendants are real estate

investors.  (*Id.* ¶ 5.)  Omega merely exercised its contractual right to protect its interest by

entering into negotiations with Synovus or "any other potential or prospective lender, investor or

other capital provider."  (Ex. L § 3, Exs. D-I §13.).[15]

        *Fourth*, Plaintiffs have not plausibly alleged any Defendant used "wrongful

means."  Generally, this requires that "conduct must amount to a crime or an independent tort,"

and "persuasion alone," even if "knowingly directed at interference with the contract," is

insufficient.  *Hassan*, 515 F. Supp. 2d at 429-30.  "Where the interference is intended at least in

part to advance the competing interest of the interferer, no unlawful restraint of trade is effected,

and the means employed are not wrongful."  *Guard-Life Corp.*, 50 N.Y.2d at 191.  As explained

above, the exercise of a contractual right to communicate with prospective lenders does not

constitute wrongful means.  Even if there was yelling, insulting comments, or rejection of terms

to pay off the Wade Park loans, that would not constitute wrongful means.[16]

        Finally, Plaintiffs make the conclusory allegation that but for the interference they

"would have obtained financing," but they do not (and cannot) allege facts that show that.  If

Bluebell or Columbia wanted to advance funds to WPH and WPL to pay off the Gamma and

BAMCAP Loans in accordance with their terms, neither Omega nor any other Defendant could

have prevented it.  And WPH and WPL had no right to require Omega to take anything less.

## IX.    COUNT IX SHOULD BE DISMISSED

        Count IX alleges that in January 2018, GRE and Omega breached their purported

---

[15]  The AC also refers to loans "Defendants" bought from Synovus and Ardent (AC ¶¶ 144-155), but does not identify the Defendant that did so or allege any malicious or wrongful conduct.  Buying real estate development loans was part of Defendants' business and furthered their economic interest.

[16] This Court is not required to accept Plaintiffs' conclusory allegation to the contrary.  *See Samsung Display Co. v. Acacia Research Corp.*, 2014 WL 6791603, at *5 (S.D.N.Y. Dec. 3, 2014).

agreement in the CLA not to unreasonably withhold consent to the modification of the

BAMCAP Loan (AC ¶ 126), by withholding consent to a proposed modification.  That fails to

state a claim for the reasons explained in Point VII.[17]  *First*, GRE and Omega were entitled to

withhold consent under CLA Section 8.2, which prohibited Borrower from increasing its

indebtedness without Lender's consent, which could be withheld for *any* reason.  *Second*, even if

CLA Section 6.19 required Lender not to unreasonably withhold consent, Plaintiffs have not

plausibly alleged Omega's decision to withhold consent was unreasonable.  *Third*, Plaintiffs have

not plausibly alleged they suffered any damages as a result of the purported breach.  *Fourth*,

there is no claim against GRE because it assigned the CLA to Omega on January 17, 2017.  (AC

¶ 84.)  The CLA states "Upon such assignment, all references to lender in this Agreement and in

any Loan Document shall be deemed to refer to such assignee or successor in interest and such

assignee or successor in interest shall thereafter stand in the place of lender in all respects."  (Ex.

C §11.4.)

## X.  COUNT X SHOULD BE DISMISSED

Plaintiffs' unjust enrichment claim should be dismissed for several reasons.  *First*,

"[w]here a contract exists between the parties, a claim for unjust enrichment does not lie."

*Coppelson v. Serhant*, 2021 WL 148088, at *9 (S.D.N.Y. Jan. 15, 2021) (Liman, J.)  Here, the

AC alleges many such contracts.  Plaintiffs appear to acknowledge this.  They explain this Count

is pled only in the alternative, if the Court finds there is no contract.  (AC ¶ 401 n. 7.)[18]

---

[17] The CLA states New York law "shall govern the construction, validity and enforceability of all loan documents and all of the obligations arising hereunder or thereunder." (Ex. C § 11.5.)  Borrower "unconditionally and irrevocably waives any claim to assert that the law of any other jurisdiction governs." (*Id.*)  "Under New York law, "courts will generally enforce choice-of-law clauses." *AEI Life LLC v. Lincoln Benefit Life Co.*, 892 F.3d 126, 132 (2d Cir. 2018) (quoting *Ministers & Missionaries Benefit Bd. v. Snow*, 26 N.Y.3d 466, 470 (2015)).

[18] New York's interest analysis governs the choice of law for the unjust enrichment claim unless the claim is closely related to an enforceable contract, in which case contract rules apply.  *In re LIBOR-Based Fin. Instruments Antitrust Litig.,* 299 F. Supp. 3d 430, 600 (S.D.N.Y. 2018).  New York law applies under either analysis.

*Second*, Count X should be dismissed as duplicative of their tort claims.  "An unjust enrichment claim is not available where it simply duplicates, or replaces, a conventional contract or tort claim."  *Ccorsello v. Verizon New York, Inc.*, 18 N.Y.3d 777, 790 (2012) ("[U]njust enrichment is not a catchall cause of action to be used when others fail."); *see also In re Fyre Festival Litig.*, 399 F. Supp. 3d 203, 222 (S.D.N.Y. 2019).  Plaintiffs allege Defendants were unjustly enriched as a result of their "wrongful conduct."  Plaintiffs do not explain to what conduct they are referring.  (AC ¶ 402).  To the extent they rely on the alleged conduct that forms the basis for their contract and tort claims, their unjust enrichment claim is duplicative.

*Third*, Plaintiffs have not stated a claim because they have not alleged facts showing what was the wrongful conduct, or that Defendants were enriched, to Plaintiffs' detriment, and "it is against equity and good conscience to permit [Defendants] to retain what is sought to be recovered."  *Mandarin Trading Ltd. v. Wildenstein*, 16 N.Y.3d 173, 182 (2011).  A defendant is not unjustly enriched when "[i]t merely received . . . the benefit of its bargain."  *One Step Up, Ltd. v. Webster Bus. Credit Corp.*, 87 A.D.3d 1, 14 (1st Dep't 2011).  That is true here. Plaintiffs ask the Court to undo their business deal because their business failed.  *That* is against equity and good conscience.

*Fourth*, the claim against Mr. Kalikow, GRE or GWL should be dismissed for the additional reason that Plaintiffs have not alleged they were enriched.[19]

---

[19] Plaintiffs allege "the Gamma Defendants have obtained a . . . substantial amount of money and of valuable real property approximating a total of $625 million," but do not allege facts that plausibly support a valuation even close to that or show that allowing WP to retain the Property would be unjust.  (AC ¶ 402.)  The parties' agreements referred to in the AC show Plaintiffs agreed to any Defendant's receipt of any money or property it received. Plaintiffs acknowledge Omega extended the May 17, 2017 maturity of the Loan ten times, to February 21, 2019, and do not allege they repaid one penny of the principal.  (*Id.* ¶¶ 109, 178, 192.)  Plaintiffs allege they "paid more than $26.6 million in interest payments" (*id.* ¶ 413), but do not allege that was not due under the CLA.  Plaintiffs also allege they paid for the six Forbearance Agreements, but those agreements gave Plaintiffs repeated reprieves from foreclosure.  (*Id.* ¶¶ 138, 413.)  Plaintiffs acknowledged the sufficiency of the consideration they received.  *See, e.g.*, Ex. E at 2 ("for and in consideration of the terms conditions, covenants and agreements set forth herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged and

## XI.      COUNT XI SHOULD BE DISMISSED

Count XI alleges the CLA's "effective rate of interest . . . exceeds the maximum rate authorized by applicable law." (AC ¶ 414) (citing N.Y. Pen. Law § 190.40).[20]  But § 190.40 excludes loans in excess of $2.5 million, such as the $82.75 million Gamma Loan here.  (AC ¶ 409.)  *See* N.Y. Gen. Obl. Law § 5-501(6)(b); *NML Capital v. Republic of Argentina*, 621 F.3d 230, 238 (2d Cir. 2010).  Moreover, this claim should be dismissed because "there is no private cause of action for violations of § 190.40;" private parties can only use this section defensively, and not offensively to void an agreement.  *In re Merhi*, 518 B.R. 705, 719 (Bankr. E.D.N.Y. 2014).  Finally, Plaintiffs have not stated a usury claim against GRE because it assigned its interest in the Gamma Loan to Omega on the day the CLA was signed.  Plaintiffs have not plausibly alleged that GRE received any interest.

## XII.     COUNT XII SHOULD BE DISMISSED

Count XII alleges that WPH and WPL's transfer of the Property to WP was constructively fraudulent under 11 U.S.C. §§ 548, 550 and 551.  To state a claim, a plaintiff must allege (1) "the debtor was insolvent on the date of the transfer or became insolvent as a result of the transfer," and (2) "the debtor received less than 'a reasonably equivalent value in exchange for such transfer.'"  *In re Bernard L. Madoff Inv. Sec. LLC.*, 976 F.3d 184, 190 (2d Cir. 2020) (quoting 11 U.S.C. § 548(a)(1)(B)).  Plaintiffs have not met those requirements.

*First,* WPH and WPL have not pled facts that plausibly satisfy the "insolvency prong."  11 U.S.C. § 548(a)(1)(B)(ii)(I-IV).  They "fail[] to plead more than [a] conclusory

---

confessed").  Finally, Plaintiffs allege they exchanged $4 million in property for a seventh reprieve, in the DIL (AC ¶ 191), but acknowledge they gave "the release contained" there in consideration for "lender's agreement to delay Recording."  (Ex. K at Recital O.)

[20] Plaintiffs cannot rely on Georgia and Texas usury statutes because the loan documents were formed under New York law, which "shall govern the construction, validity and enforceability of all loan documents and all of the obligations arising hereunder or thereunder."  (Ex. C at § 11.5; Exs. D-H § 15; Ex. I § 13; Ex. J § 18).)

iteration of the statutory standard." *Chorches v. Catholic Univ. of Am.*, 2017 WL 4638589, at *3 (D. Conn. Oct. 16, 2017).  For example, WPH and WPL allege the transfers rendered them insolvent because they were left without assets "to satisfy their respective remaining obligations and debts to their other creditors" and with "unreasonably small capital."  (AC ¶ 424-25.)  But they fail to allege facts about the other obligations and debts or that show their capital was unreasonably small.  *See In re Cyr*, 602 B.R. 315, 332 (Bankr. W.D. Tex. 2019) (trustee failed to allege insolvency for the purposes of a constructive fraud claim because it "presented no allegations regarding the value of the [debtor's] debt relative to the value of the [debtor's] assets at the time the transfers were made."); *In re CRC Parent Corp.*, 2013 WL 781603, at *5 (Bankr. D. Del. Mar. 1, 2013) ("To adequately plead insolvency, the Trustee must present some information of the Debtor's financial status at the time of the transfer"); *In re Glob. Link Telecom Corp.*, 327 B.R. 711, 718 (Bankr. D. Del. 2005) (insolvency allegations were insufficient where "The Trust presents no information on the Debtors' financial status or the value of what was received in exchange.").  Any allegation of "insolvency" is also not plausible because, on or around February 21, 2019, after the AC alleges Omega recorded the deeds to the Property (AC ¶ 192), WPH and WPL swore, in their Affidavit and Estoppel Certificate "for the protection and benefit of" Omega, that they are "solvent."  (Ex. M, at 1.)  WPH and WPL are estopped from taking a different position now.  They have not pled facts that warrant a different outcome.[21]

---

[21]  *See JRK Franklin, LLC v. 164 E. 87th St. LLC*, 27 A.D.3d 392, 393 (1st Dep't 2006) ("The motion court err[s] in failing to enforce the estoppel certificate . . . [where] the record evidence establishes that defendant made representations in the certificate contrary to those it asserts here, that defendant intended such representations be acted upon, that [the party seeking enforcement] detrimentally relied upon those representations, and that [the party opposing enforcement] at least had constructive, if not actual, knowledge of the true state of affairs.'").

*Second*, WPH and WPL have not pled facts that plausibly show they received less than reasonably equivalent value.  WPH and WPL also swore in the Affidavit and Estoppel Certificate they signed on or around February 21, 2019, "that the consideration [for the deeds] represents the fair market value of the property so deeded" and they "irrevocably waive any claim or right they may have to challenge the adequacy of such consideration."  (Ex. M at 1.)  About two weeks later, WP, in detrimental reliance, executed the Buy-Back Agreement that was being negotiated when WPH and WPL signed their Estoppel Certificate.  (AC ¶ 196.)  That Agreement gave WPF the option to repurchase for $150 million the Property that Plaintiffs now assert was worth "*in excess of $550 million*."  (AC ¶¶ 36, 197; Ex. K § 3(a).)  The Estoppel Certificate and its irrevocable waiver of the claim in Count XII should be enforced.  Plaintiffs have not pled non-conclusory facts to the contrary.

Plaintiffs' allegation that the value of the Property "greatly exceeded" their debt to Defendants (AC ¶ 423) is merely conclusory and not plausible.  *See In re AgFeed USA, LLC*, 558 B.R. 116, 130 (Bankr. D. Del. 2016) (trustee "ma[de] no allegations, other than conclusory ones, as to why the[] payments are in fact excessive").  Plaintiffs fail to allege the amount of the debt and ignore some of the value the DIL explains was provided in exchange for the Property, including giving WPH and WPL more time to satisfy their debt.  (Ex. J at 7.)  *See In re AppliedTheory Corp.*, 330 B.R. 362, 364 (S.D.N.Y. 2005) (giving "breathing room" to "avoid bankruptcy," even if "short-lived" can be an aspect of reasonably equivalent value).  Furthermore, the Property value Plaintiffs allege is implausible.  *See In re Old Carco LLC*, 509 F. App'x 77, 79 (2d Cir. 2013) (affirming dismissal of fraudulent transfer claim where complaint "appl[ied] implausible values to certain assets and [omitted] other key assets").  Plaintiffs allege the Property had an appraised value of *$550 million*.  (AC ¶ 36.)  That is implausible because it

contradicts their statement in their Estoppel Certificate that they received its fair market value. Moreover, on March 6, 2019 — one month after the DIL was signed, weeks after the deeds were recorded, and after Defendants had given WPH and WPL plenty of time to refinance the debt — WP gave WPF an option to buy the Property back for $150 million, not *$550 million*, but Thomas did not pay that.  (AC ¶¶ 196-97; Ex. K.)  The $150 million Thomas and WPF did not pay is about the same as the DIL's statement of the principal owed on the Gamma Loan and the two BAMCAP Loans — $82,750,000, $42,000,000 and $6,000,000, for a total of $130,750,000 — plus accrued interest.  (Ex. J at Recitals C, G, I.).  Thomas's failure to pay the $150 million would be inexplicable if the Property was worth $550 million, or any material amount above $150 million.  Beyond that, by the time the DIL was signed, Defendants had already begun advertising the foreclosure, as required by Texas Property Code Section 51.002.  (AC ¶ 139.)  The Supreme Court has explained a property subject to foreclosure "is simply *worth less*" than "real estate that could be sold at leisure and pursuant to normal marketing techniques."  *BFP v. Resolution Tr. Corp.*, 511 U.S. 531, 539 (1994).

*Third*, Plaintiffs' fraudulent conveyance claim fails because courts have held that when a transfer is made to pay an antecedent debt, the transfer may not be set aside as constructively fraudulent.  *See In re AppliedTheory Corp.*, 330 B.R. at 363 (referencing the "per se rule consistently applied in this District, which provides that a debtor's grant of a security interest in its assets to a lender who has previously given the debtor a cash loan may not be considered a fraudulent conveyance."); *see also Pashian v. Eccelston Props., Ltd.*, 88 F.3d 77, 86 (2d Cir. 1996) (under New York law a payment made in "satisfaction of a preexisting debt qualifies as fair consideration for a transfer of property[.]"); *Geo-Grp. Commc'ns, Inc. v. Chopra*, 2018 WL 362498, at *10 (S.D.N.Y. July 30, 2018) (same).  Here, the AC alleges the

transfer was made to satisfy the debt.  (AC ¶ 423; *see also* Ex. J at § 5(a).)  Plaintiffs' allegation that the value of the transfer "greatly exceeded" their indebtedness to Defendants (AC ¶ 423) does not change that.

## XIII.   COUNT XIII SHOULD BE DISMISSED

Count XIII, for avoidance, presentation and return of constructively voidable transfers under the Georgia Uniform Voidable Transfers Act, fails to state a claim for the same reasons as Count XII.[22]  "The analysis of alleged fraudulent transfers under [Georgia] law and bankruptcy law is substantially the same."  *In re Think Retail Sols., LLC*, 2019 WL 2912717, at *11 (Bankr. N.D. Ga. July 5, 2019).

## XIV.   COUNT XV SHOULD BE DISMISSED

Count XV fails to state a claim that Defendants conspired with Mr. Goodman in the "summer" and "fall of 2018" to breach fiduciary duties he allegedly owed to Plaintiffs.  (AC ¶¶ 237-39, 442-52.)

*First*, "to sustain an allegation of civil conspiracy that involves a conspiracy to breach a fiduciary duty, all members of the alleged conspiracy must independently owe a fiduciary duty to the plaintiff."  *Briarpatch Ltd., L.P. v. Geisler Roberdeau, Inc.*, 2007 WL 1040809, at *26 (S.D.N.Y. Apr. 2, 2007), *aff'd*, 312 F. App'x 433 (2d Cir. 2009); *Pope v. Rice*, 2005 WL 613085, at *13 (S.D.N.Y. Mar. 14, 2005).  But Plaintiffs do not allege (nor could they) that Defendants owed them any such duty.

*Second,* where a plaintiff fails to state a claim for the tort underlying the alleged conspiracy, "it necessarily fails to state an actionable claim for civil conspiracy."  *Kirch v.*

---

[22] Georgia law applies to this claim.  However, "given the dearth of Georgia case law construing the UVTA's provisions, 'Georgia courts look to the decisions of other jurisdictions for guidance.'"  *U.S. Capital Funding VI, Ltd. v. Patterson Bankshares, Inc.*, 137 F. Supp. 3d 1340, 1364-65 (S.D. Ga. 2015).

*Liberty Media Corp.*, 449 F.3d 388, 401 (2d Cir. 2006).  Here, the tort underlying the conspiracy is Mr. Goodman's purported breach of his fiduciary duty.  However, Judge Batten has already held that Plaintiffs have not stated a claim for breach of fiduciary duty against Mr. Goodman because they do not plausibly allege *either* that he owed them a fiduciary duty *or* that he breached or even conspired to breach any such duty.  *Wade Park I*, 2021 WL 728185, at \*9-10.  Plaintiffs' allegation that Mr. Goodman owed them a fiduciary duty depends on their "inherently implausible" allegation, *id.* at \*9, that at the same time they negotiated, through attorneys, a complex written joint venture agreement concerning Wade Park that did *not* include Mr. Goodman, they *also* entered into a broader *oral* joint venture agreement for the same property that *did* include Mr. Goodman.  Moreover, Plaintiffs' allegation that Mr. Goodman breached any such duties (if he had them, which he did not) is entirely conclusory.  *Id.* at \*8-9.

   *Third*, to state a claim for civil conspiracy under New York law, a plaintiff, in addition to alleging an underlying tort, must make factual allegations that plead "(1) an agreement between two or more parties; (2) an overt act in furtherance of the agreement; (3) the parties' intentional participation in the furtherance of a plan or purpose; and (4) resulting damage or injury."  *Bigio v. Coca-Cola Co.*, 675 F.3d 163, 176 (2d Cir. 2012).  Plaintiffs fail to do so.  The only "facts" Plaintiffs allege to support their claim are that Defendants spoke to and met with Mr. Goodman (AC ¶¶ 237, 239) and "discussed [his] purchase of Wade Park from the Gamma Defendants" if they "were successful in their scheme to take the properties."  (*Id.* ¶ 251.)  That is not enough.

   Plaintiffs' remaining conspiracy allegations are also merely conclusory — that Mr. Goodman and Defendants, lumped together, "had a common design, purpose and scheme" (*id.* ¶¶ 446, 447), and Defendants, lumped together, "knowingly conspired with Goodman to use

- 37 -

the Thomas-Wade Park Trade Secrets" (*id.* ¶ 277).  Such allegations would be insufficient even

if they differentiated among Defendants.  Moreover, Judge Batten has already held Plaintiffs

"fail to plausibly allege that any disclosure [of those Trade Secrets] occurred."  *Wade Park I*,

2021 WL 728185, at *9.

## XV.    COUNT XVI SHOULD BE DISMISSED

Count XVI alleges "on information and belief" that Mr. Goodman conveyed

Plaintiffs' "Thomas-Wade Park Trade Secrets" (the "TWPTS") to Defendants and they used

them in the "summer" and "fall of 2018" (AC ¶¶ 237-39) in violation of the Georgia Trade

Secrets Act, O.C.G.A. § 10-1-760, to "gain an unfair advantage against and leverage" over

Plaintiffs (*id.* ¶ 242).  Plaintiffs lack standing to bring this claim because the only specifics they

allege as to how Defendants purportedly "used" the TWPTS concern *other* properties in which

Plaintiffs do not allege they had an interest, not Wade Park.  (*Id.* ¶ 243 (Orlando), ¶ 244

(Tennessee), ¶ 245 (Ashley Park).)

Plaintiffs also fail to state a claim.  As Judge Batten held in dismissing this claim

against Mr. Goodman, Plaintiffs "fail to plausibly allege that any disclosure occurred."  *Wade
Park I,* 2021 WL 728185, at *9.

Plaintiffs' allegation that Mr. Goodman shared the TWPTS with Defendants is

made only on "information and belief."  (AC ¶¶ 238-39.)  That is insufficient.  *See Argos USA
LLC v. Young*, 2019 WL 4125968, at *8 (N.D. Ga. June 28, 2019) (dismissing claim for

misappropriation of trade secrets based on conclusory allegations on "information and belief.").

Moreover, Plaintiffs do not allege facts that support their conclusory allegation

that Defendants "knew or had reason to know" that any information Mr. Goodman had about

Wade Park "was acquired under circumstances giving rise to a duty to maintain their secrecy or

limit their use."  (AC ¶ 459.)  Plaintiffs allege Defendants were aware Mr. Goodman was the

manager of Fourth Quarter Properties, "a holding company for certain portions of the *Orlando* projects" (*id.* ¶¶ 217, 235) (emphasis added), but do not allege Defendants "knew or had reason to know" Mr. Goodman had information about *Wade Park* that was "[a]cquired under circumstances giving rise to a duty to maintain its secrecy or limit its use."  O.C.G.A. § 10-1-761(2)(B)(ii)(II).

Plaintiffs also do not adequately allege the TWPTS were "the subject of efforts that are reasonable under the circumstances to maintain [their] secrecy," as O.C.G.A. § 10-1-761 requires.  Plaintiffs make the conclusory allegation that they "took reasonable steps to maintain the confidentiality of the" TWPTS.  (AC ¶ 229.)  But the only fact they allege to support that conclusion — that they "would not share the Trade Secrets with others without an agreement or obligation to maintain the trade secrets' confidentiality" (*id.*) — is insufficient because they do not allege they entered into such an agreement with Mr. Goodman.  Plaintiffs assert he had an "obligation" to maintain the confidentiality (*id.*), but that is not enough to allege they made a reasonable effort to maintain confidentiality.  *See World Micro Components, Inc. v. Crestwood Tech. Grp. Corp.*, 2014 Ga. Super. LEXIS 2520, at *11-12 (Ga. Super. Feb. 10, 2014).

## XVI.   COUNT XVII SHOULD BE DISMISSED

Court XVII seeks punitive damages pursuant to O.C.G.A. § 51-12-5.1, but that statute does not apply to Plaintiffs' breach of contract claims (*id*. § 13-6-10) and RICO and tort claims, which that do not arise under Georgia law.  *See Am. Family Life Assur. Co. v. U.S. Fire Co.*, 885 F.2d 826, 834 (11th Cir. 1989).  That leaves only their Georgia statutory claims, which should be dismissed for the reasons explained above.

## XVII.   COUNT XVIII SHOULD BE DISMISSED

Count XVIII seeks attorneys' fees, pursuant to O.C.G.A. § 13-6-11, but that statute does not create an independent cause of action, and it applies only to Plaintiffs' claims

- 39 -

under Georgia law.  *See Am. Family Life Assur. Co. of Columbus, Ga.*, 885 F.2d at 834.

Plaintiffs' claims under Georgia law should be dismissed for the reasons discussed above.  But

even if any of those claims survives, Count XVIII should be dismissed because Plaintiffs have

not alleged facts showing Defendants "acted in bad faith," were "stubbornly litigious," or caused

"unnecessary trouble and expense," as required to state a claim for attorneys' fees.  O.C.G.A. §

13-6-11.  Section 13-6-11 is designed to penalize defendants for abusing the legal system, and

does not apply to a "mere refusal to pay a disputed claim."  *Rivergate Corp. v. Atlanta Indoor*

*Advert. Concepts Inc.*, 210 Ga. App. 501, 503 (1993).

## **CONCLUSION**

For all the foregoing reasons, the Court should dismiss the AC with prejudice and

without leave to amend.

Dated:  April 16, 2021

Respectfully submitted,

KRAMER LEVIN NAFTALIS & FRANKEL LLP

By: */s/ Michael J. Dell*
    Michael J. Dell
    Adam Rogoff
1177 Avenue of the Americas
New York, New York 10036
Telephone: (212) 715-9100
Facsimile: (212) 715-8000
Email: mdell@kramerlevin.com
arogoff@kramerlevin.com

*Counsel for Defendants Jonathan Kalikow, WP Development*
*Partners LLC, Gamma Lending Omega LLC, Gamma Real*
*Estate Capital LLC and GRE WP LLC*

KL3 3336287.1