**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

WADE PARK LAND HOLDINGS, LLC; WADE
PARK LAND, LLC; and
THE THOMAS FAMILY TRUST, by and through
its Trustees, acting in their official capacities,

              Plaintiffs,

v.

JONATHAN KALIKOW;
WP DEVELOPMENT PARTNERS LLC;
GAMMA LENDING OMEGA LLC; GAMMA
REAL ESTATE CAPITAL LLC; GRE WP LLC;
and BLAKE GOODMAN,

              Defendants.

CIVIL ACTION FILE

NO. 1:21-cv-01657-LJL-RWL

JURY TRIAL DEMANDED

**PLAINTIFFS' RESPONSE IN OPPOSITION TO THE MOTION TO DISMISS FILED
BY DEFENDANTS JONATHAN KALIKOW, WP DEVELOPMENT PARTNERS LLC,
GAMMA LENDING OMEGA LLC, GAMMA REAL ESTATE CAPITAL LLC, AND
<u>GRE WP LLC</u>**

James W. Cobb
Julia Blackburn Stone
Jessica A. Caleb

**CAPLAN COBB LLP**
75 Fourteenth Street NE, Suite 2750
Atlanta, Georgia 30309
Tel: (404) 596-5600
Fax: (404) 596-5604

Counsel for Plaintiffs

Ward Stone, Jr.
David L. Bury, Jr.

**STONE & BAXTER, LLP**
577 Mulberry Street, Suite 800
Macon, Georgia 31201
Tel: (478) 750-9898
Fax: (478) 750-9899

Counsel for Debtors and Plaintiffs
Wade Park Land, LLC and Wade
Park Land Holdings, LLC

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ iii

INTRODUCTION ................................................................................................................ 1

BACKGROUND .................................................................................................................. 1

PROCEDURAL HISTORY ................................................................................................. 4

ARGUMENT AND CITATION TO AUTHORITIES........................................................ 6

I.      Plaintiffs have not released their claims. .................................................................. 6

II.     Plaintiffs state a claim for declaratory relief............................................................. 8

III.    The Complaint states a claim under the federal RICO statute.................................. 9

        A. Plaintiffs allege a RICO enterprise. ................................................................. 10

                1.      Plaintiffs allege that the enterprise had a purpose. ................................. 10

                2.      Plaintiffs sufficiently allege a distinct enterprise.................................... 13

        B. Plaintiffs allege collection of unlawful debt. .................................................. 14

        C. Plaintiffs allege a pattern of racketeering. ...................................................... 15

                1.      Plaintiffs allege Gamma Defendants engaged in
                        multiple acts of wire fraud......................................................... 15

                2.      Plaintiffs allege theft of trade secrets..................................................... 18

                3.      Plaintiffs allege the Gamma Defendants engaged
                        in money laundering. ................................................................. 20

                4.      Plaintiffs allege continuity..................................................................... 21

IV.     Plaintiffs state a RICO conspiracy claim.................................................................. 22

V.      Plaintiffs state a Georgia RICO claim. ..................................................................... 23

VI.     The Complaint adequately alleges tort claims........................................................... 24

        A. The Complaint adequately alleges a claim for fraud. ...................................... 24

1.      Georgia law applies to Plaintiffs' fraud claim. ........................................ 25

2.      Plaintiffs have sufficiently alleged a fraud claim. ................................... 27

B. Plaintiffs state a claim for tortious interference. ........................................ 29

C. Plaintiffs state a claim for punitive damages and attorneys' fees. .............................. 32

VII.    Plaintiffs state a claim for misappropriation of trade secrets. ........................................... 32

VIII.   Plaintiffs state a claim for breach of contract. .................................................. 34

IX.     Plaintiffs state a claim for unjust enrichment. ................................................ 36

X.      Plaintiffs state a usury claim. ................................................................... 37

XI.     Plaintiffs state a fraudulent-transfer claim under
        bankruptcy and Georgia law. ........................................................... 37

CONCLUSION .................................................................................. 40

# TABLE OF AUTHORITIES

**Cases**

*1800 W. Lake St. LLC v. Am. Chartered Bank*,
  No. 14 C 420, 2014 WL 7330924 (N.D. Ill. Dec. 22, 2014)................................................... 39

*ABB Turbo Sys. AG v. Turbousa, Inc.*,
  774 F.3d 979 (Fed. Cir. 2014)............................................................................................... 19

*Absalom Absalom Tr. v. Saint Gervais LLC*,
  No. CV 2018-0452-TMR, 2019 WL 2655787 (Del. Ch. June 27, 2019) ................................ 9

*Anwar v. Fairfield Greenwich Ltd.*,
  728 F. Supp. 2d 372 (S.D.N.Y. 2010).............................................................................. 29, 30

*Argos USA LLC v. Young*,
  1:18-CV-02797-ELR, 2019 WL 4125968 (N.D. Ga. June 28, 2019)..................................... 33

*Arista Recs., LLC v. Doe 3*,
  604 F.3d 110 (2d Cir. 2010).................................................................................................. 20

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2008) .............................................................................................................. 6

*Automated Teller Machine Advantage LLC v. Moore*,
  No. 08 Civ. 3340(RMB)(FM), 2009 WL 2431513 (S.D.N.Y. Aug. 6, 2009)......................... 10

*Bangladesh Bank v. Rizal Com. Banking Corp.*,
  No. 19 Civ. 983 (LGS), 2020 WL 1322275 (S.D.N.Y. Mar. 20, 2020)................................. 21

*Barber-Colman Co. v. Trend Grp., Ltd.*,
  85 C 4434, 1986 WL 2024 (N.D. Ill. Feb. 7, 1986) .............................................................. 29

*Batchelor v. Tucker*,
  184 Ga. App. 761 (1987)....................................................................................................... 27

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) .............................................................................................................. 6

*Bergeron v. Philip Morris, Inc.*,
  100 F. Supp. 2d 164 (E.D.N.Y. 2000).................................................................................... 26

*Boyle v. United States*,
  556 U.S. 938 (2009) .............................................................................................................. 10

*Bridge v. Phoenix Bond & Indem. Co.*,
    553 U.S. 639 (2008) ........................................................................................................ 16, 18

*Bridgestone/ Firestone, Inc. v. Recovery Credit Servs., Inc.*,
    98 F.3d 13 (2d Cir. 1996) ........................................................................................................ 17

*Britt/Paulk Ins. Agency, Inc. v. Vadroff Ins. Agency, Inc.*,
    952 F. Supp. 1575 (N.D. Ga. 1996) ........................................................................................ 29

*BTL COM Ltd. v. Vachon*,
    278 Ga. App. 256 (2006)......................................................................................................... 28

*CBS, Inc. v. Ahern*,
    108 F.R.D. 14 (S.D.N.Y. 1985) .............................................................................................. 29

*Cespuglio v. Ward*,
    03 Civ. 8603 (SAS), 2004 WL 1088235 (S.D.N.Y. May 13, 2004)....................................... 30

*Chambers v. Time Warner, Inc.*,
    282 F.3d 147 (2d Cir. 2002)..................................................................................................... 39

*Charron v. Sallyport Glob. Holdings, Inc.*,
    No. 12 Civ. 6837(WHP), 2014 WL 464649 (S.D.N.Y. Feb. 3, 2014)....................................... 8

*Chhina Family P'ship, L.P. v. S-K Grp. of Motels, Inc.*,
    275 Ga. App. 811 (2005)......................................................................................................... 28

*Cisneros v. Petland, Inc*,
    972 F.3d 1204 (11th Cir. 2020)......................................................................................... 11, 16

*City of New York v. LaserShip, Inc.*,
    33 F. Supp. 3d 303 (S.D.N.Y. 2014)....................................................................................... 22

*Colangelo v. Champion Petfoods USA, Inc.*,
    No. 6:18-CV-1228-LEK/ML, 2020 WL 777462 (N.D.N.Y. Feb. 18, 2020) .......................... 18

*CompoSecure, L.L.C. v. CardUX, LLC*,
    206 A.3d 807 (Del. 2018)........................................................................................................... 9

*Cooney v. Osgood Mach., Inc.*,
    81 N.Y.2d 662 (1993) .............................................................................................................. 26

*Cowart v. Gay*,
    223 Ga. 635 (1967)..................................................................................................................... 7

*D. Penguin Bros. Ltd. v. City Nat'l Bank*,
    587 F. App'x 663 (2d Cir. 2014).................................................................... 10, 12

*Dae Hyuk Kwon v. Santander Consumer USA*,
    742 F. App'x 537 (2d Cir. 2018)........................................................................ 15

*DiLaura v. Power Auth. of N.Y.*,
    982 F.2d 73 (2d Cir. 1992)................................................................................... 5

*Dotson v. Dish Network L.L.C.*,
    No. 2:19-CV-00021, 2019 WL 9093522 (S.D. Ga. June 25, 2019)........................ 32

*Dover v. State*,
    192 Ga. App. 429 (1989)..................................................................................... 23

*Elkon v. Am. Reliable Ins. Co.*,
    No. 08-CV-3717 (TCP), 2010 WL 11629550 (E.D.N.Y. Feb. 23, 2010)............... 36

*Fazio v. Ranestorm Ent., LLC*,
    No. 14-cv-7234 (JSR), 2016 WL 3144376 (S.D.N.Y. May 23, 2016) ................... 17

*Fed. Express Corp. v. Petlechkov*,
    1:15-CV-2565-TWT, 2017 WL 6460261 (N.D. Ga. Dec. 18, 2017)...................... 29

*First Nationwide Bank v. Gelt Funding Corp.*,
    27 F.3d 763 (2d Cir. 1994)................................................................................. 18

*Fuji Photo Film USA, Inc. v. McNulty*,
    640 F. Supp. 2d 300 (S.D.N.Y. 2009)................................................................. 11

*GEM Advisors, Inc. v. Corporacion Sidenor, S.A.*,
    667 F. Supp. 2d 308 (S.D.N.Y. 2009)................................................................. 35

*GlobalNet Financial.Com, Inc. v. Frank Crystal & Co.*,
    449 F.3d 377 (2d Cir. 2006)............................................................................... 26

*Guard-Life Corp. v. S. Parker Hardware Mfg. Corp.*,
    50 N.Y.2d 183 (1980) ....................................................................................... 31

*Guzik v. Albright*,
    16-CV-2257 (JPO), 2018 WL 4386084 (S.D.N.Y. Sept. 14, 2018) ....................... 29

*H.J. Inc v. Nw. Bell Tel. Co.*,
    492 U.S. 229 (1989) ........................................................................................... 21

*Hamilton v. Accu-Tek,*
  47 F. Supp. 2d 330 (E.D.N.Y. 1999)................................................................. 26

*Hassan v. Deutsche Bank A.G.,*
  515 F. Supp. 2d 426 (S.D.N.Y. 2007), *aff'd* 336 F. App'x 21 (2d Cir. 2009) ........................ 31

*Hassett v. Zimmerman (In re O.P.M. Leasing Servs., Inc.),*
  32 B.R. 199, 203 (Bankr. S.D.N.Y. 1983) ................................................. 38

*Hengle v. Asner,* 433 F. Supp. 3d 825 (E.D. Va. 2020)................................................. 37

*Howe v. Bank of N.Y. Mellon,*
  783 F. Supp. 2d 466 (S.D.N.Y. 2011)................................................................. 36

*In re Aphton Corp.,* 423 B.R. 76 (Bankr. D. Del. 2010)................................................. 38

*In re AppliedTheory Corp.,*
  330 B.R. 362 (S.D.N.Y. 2005) ................................................................. 40

*In re Northlake Foods, Inc.,*
  715 F.3d 1251 (11th Cir. 2013)................................................................. 38

*In re Webb Mtn, LLC,*
  420 B.R. 418 (E.D. Tenn. 2010) ................................................................. 39

*J&R Multifamily Grp., Ltd. v. U.S. Bank Nat'l Ass'n as Tr. for Registered*
  *Holders of UBS-Barclays Com. Mortg. Tr. 2012-C4, Com. Mortg.*
  *Pass-Through Certificates, Series 2012-C4,*
  No. 19-cv-1878 (PKC), 2019 WL 6619329 (S.D.N.Y. Dec. 5, 2019)............................... 25, 27

*Jiajia Luo v. Sogou, Inc.,*
  465 F. Supp. 3d 393 (S.D.N.Y. 2020) ................................................................. 6, 11

*JRK Franklin, LLC v. 164 E. 87th St. LLC,*
  27 A.D.3d 392 (1st Dep't 2006)................................................................. 39

*Kamyr, Inc. v. Combustion Eng'g, Inc.,*
  603 N.Y.S.2d 451 (1993) ................................................................. 26

*Klaxon Co. v. Stentor Elec. Mfg. Co.,*
  313 U.S. 487 (1941) ................................................................. 25

*L-7 Designs, Inc. v. Old Navy, LLC,*
  647 F.3d 419 (2d Cir. 2011)................................................................. 6, 20

*Longino v. Bank of Elijay*,
    228 Ga. App. 37 (1997) ............................................................................................ 24

*Monterey Bay Mil. Hous., LLC v. Ambac Assurance Corp.*,
    No. 19 Civ. 9193 (PGG), 2021 WL 1226984 (S.D.N.Y. Mar. 31, 2021) ............................... 12

*Nash v. Roberts Ridge Funding, LLC*,
    305 Ga. App. 113 (2010) .......................................................................................... 25

*Nichols v. Mahoney*,
    608 F. Supp. 2d 526 (S.D.N.Y. 2009) ............................................................................ 11

*Optionality Consulting PTE. LTD. v. Edge Tech. Grp. LLC*,
    No. 18-CV-5393 (ALC), 2021 WL 310942 (S.D.N.Y. Jan. 29, 2021) .................................... 34

*Pacrim Assocs. v. Turner Home Ent., Inc.*,
    235 Ga. App. 761 (1998) ....................................................................................... 7, 25

*Partner Servs., Inc. v. Avanade, Inc.*,
    No. 1:13-CV-0001-AT, 2013 WL 12180442 (N.D. Ga. Aug. 26, 2013) .................................. 27

*Pereira v. WWRD US, LLC (In re Waterford Wedgwood USA, Inc.)*,
    500 B.R. 371, 381 (Bankr. S.D.N.Y. 2013) .................................................................... 40

*Phillips v. Reed Grp., Ltd.*,
    955 F. Supp. 2d 201 (S.D.N.Y. 2013) ........................................................................... 36

*Related Cos., L.P. v. Ruthling*,
    No. 17-CV-4175, 2017 WL 6507759 (S.D.N.Y. Dec. 18, 2017) ......................................... 22

*Russul Corp. v. Zim Am. Integrated Shipping Servs. Co.*,
    No. 06 Civ. 0037(JCF), 2009 WL 3247141 (S.D.N.Y. Oct. 5, 2009) ..................................... 5

*Sack v. Low*,
    478 F.2d 360 (2d Cir. 1973) ...................................................................................... 26

*Schultz v. Boy Scouts of Am., Inc.*,
    65 N.Y.2d 189 (1985) .............................................................................................. 26

*Securitron Magnalock Corp. v. Schnabolk*,
    65 F.3d 256 (2d Cir. 1995) ........................................................................................ 13

*Sergeants Benevolent Ass'n Health & Welfare Fund v. Sanofi-Aventis U.S. LLP*,
    806 F.3d 71 (2d Cir. 2015) ........................................................................................ 16

*Sluka v. Est. of Herink*,
No. 94 CV 4999, 1996 WL 612462 (E.D.N.Y. Aug. 13, 1996)..............................................14

*Sound Video Unlimited, Inc. v. Video Shack Inc.*,
700 F. Supp. 127 (S.D.N.Y. 1988)..........................................................................................26

*State Wide Photocopy, Corp. v. Tokai Fin. Servs., Inc.*,
909 F. Supp. 137 (S.D.N.Y. 1995)..........................................................................................22

*State Wide Photocopy, Corp.*, 909 F. Supp. at 140....................................................................22

*Tardibuono-Quigley v. HSBC Mortg. Corp. (USA)*,
No. 15-CV-6940 (KMK), 2017 WL 1216925 (S.D.N.Y. Mar. 30, 2017) ............................12

*TD Bank, N.A. v. Miller*,
18 Civ. 10608 (VM), 2020 WL 5441323 (S.D.N.Y. Sept. 9, 2020) .......................................25

*Tischer v. Bank of Am. Corp.*,
No. 1:12-CV-4185-CAP, 2014 WL 11822767 (N.D. Ga. Feb. 19, 2014) ........................17, 27

*TRS & Assocs., Inc. v. Document Imaging Techs., Inc.*,
No. 1:08-cv-03264-JOF, 2010 WL 11610232 (N.D. Ga. Sept. 15, 2010) ..............................34

*United States ex rel. Chorches for Bankr. Est. of Fabula v. Am. Med. Response, Inc.*,
865 F.3d 71 (2d Cir. 2017)......................................................................................................33

*United States v. Grote*,
961 F.3d 105 (2d Cir. 2020)....................................................................................................15

*Wade Park Land Holdings, LLC v. Kalikow*,
No. 3:20-cv-176-TCB, 2021 WL 728185 (N.D. Ga. Feb. 24, 2021)............................4, 19, 21

*Williams v. Strategic Distrib., Inc.*,
1:06-cv-1361-BBM, 2007 WL 9710188 (N.D. Ga. Nov. 7, 2007)........................................35

*Williams v. Affinion Grp., LLC*,
889 F.3d 116 (2d Cir. 2018)....................................................................................................16

**Statutes**

18 U.S.C. § 1961(4) ....................................................................................................................10

18 U.S.C. § 1962(c) ...........................................................................................................9, 14, 22

28 U.S. § 2201 ..............................................................................................................................8

O.C.G.A. § 7-4-18 ........................................................................................................... 37

Tex. Fin. Code Ann. § 303.002 ...................................................................................... 37

**Rules**

Fed. R. Bankr. P. 7001 ..................................................................................................... 8

Fed. R. Civ. P. 57 .............................................................................................................. 8

Fed. R. Civ. P. 8(a)(3) ..................................................................................................... 36

Fed. R. Civ. P. 9(b) ........................................................................................................... 6

Plaintiffs respectfully file this response in opposition to Defendants' Motion to Dismiss (dkt. 41). For the reasons explained below, the Court should deny the Motion in its entirety.[1]

## INTRODUCTION

The First Amended Complaint (the "Complaint") contains more than 350 paragraphs of allegations laying out, in detail, how Defendants undertook a coordinated effort to defraud Plaintiffs out of more than $625 million in cash and property. Starting with an initial loan of about $83 million, Defendants lied to Plaintiffs, manufactured a default on the loan, engaged in *ultra vires* transactions, executed a stranglehold on Plaintiffs' ability to raise capital, extracted increasingly onerous and usurious fees and interest from Plaintiffs, and ultimately gained title to extremely valuable real property. Plaintiffs now bring twelve claims to recover their losses.

Defendants argue that Plaintiffs have not pled a single adequate claim against them. In fact, Defendants appear to attack nearly every element of every claim. But it takes only a scratch at the surface of Defendants' arguments to reveal them as meritless. Defendants argue that nearly every fact in the Complaint—no matter how detailed—is "conclusory." But these arguments are really just Defendants' view of disputed factual issues—which, as the Court well knows, is irrelevant at this stage of the litigation. When Plaintiffs' factual allegations are accepted as true, as they must be on a 12(b)(6) motion, the only reasonable conclusion is that the Complaint sufficiently pleads each of the claims. The Court should deny the Motion.

## BACKGROUND[2]

This case arises out of a real-estate development in Frisco, Texas, known as the Wade Park project. Dkt. 5 at ¶¶ 32–36. Between 2012 and 2015, various entities acquired approximately 176

---

[1] In the alternative, if the Court is inclined to grant the Defendants' Motion in part or in full, Plaintiffs respectfully request an opportunity to amend the Complaint to address any issues identified by the Court.

[2] It would be impossible here to detail all the allegations made in the Complaint. This brief provides only a high-level summary of Plaintiffs' allegations.

acres of land ("Wade Park"), with Plaintiffs Wade Park Land Holdings and Wade Park Land ultimately holding title. *Id.* ¶¶ 37–38. Loans from non-parties BAMCAP and Bridge Capital were used to acquire and initially construct the property. *Id.* ¶ 43. Those loans were set to mature in early 2017, but approximately $825 million more was needed to complete the project. *Id.* ¶ 44. Because that exceeded the funding capacities of BAMCAP and Bridge Capital, Stan Thomas—the brains of the development—discussed a permanent financing plan with a number of potential lenders, including JP Morgan and USAA. *Id.* ¶¶ 44–45. But those deals would take a significant amount of time and due diligence, and Thomas needed to find a bridge loan to pay back the BAMCAP and Bridge Capital loans while the process for the larger, permanent funding could be completed. *Id.* ¶ 46.

Enter Defendant Gamma Real Estate Capital. *Id.* ¶ 47. In October 2016, Thomas met with its principal Jonathan Kalikow (also a defendant here) and ultimately agreed to move forward with an $83 million bridge loan (the "Gamma Bridge Loan"). *Id.* ¶¶ 48–55. While Gamma Real Estate Capital offered a loan of that amount, it insisted (1) on an intercreditor agreement that would cross-default the BAMCAP loan with the Gamma Bridge Loan, and (2) that a related Gamma entity acquire a 75% interest in non-party Wade Park Ventures, LLC, which itself would become the sole member of Plaintiffs Wade Park Land and Wade Park Land Holdings. *See id.* ¶¶ 56–73. While Thomas was concerned about these terms, Kalikow and Gamma Real Estate Capital assured him that they did not want to own Wade Park; instead, they just wanted to be lenders. *Id.* ¶ 265. So Plaintiffs signed the Gamma Bridge Loan agreement, which, importantly, included a promise that Gamma Real Estate Capital would not unreasonably withhold consent to modifications of the BAMCAP loan if those modifications did not materially increase the BAMCAP loan's principal amount. *Id.* ¶ 82.

2

But in the months that followed, the Gamma Defendants showed their true intent—they lied to Plaintiffs about their promise not to unreasonably withhold consent to a modification of the BAMCAP loan. Instead, from the beginning, the Gamma Defendants intended to withhold consent to any such modification, to extract money from Plaintiffs illegally, and to take Wade Park for themselves. All this became clear through the Gamma Defendants' conduct. For example, when the BAMCAP loan was set to mature in January 2018, Thomas negotiated a one-month extension for a fee of $530,000 that would be added to the loan's principal—an immaterial increase to the loan amount of about 1%. *Id.* ¶¶ 117–18. Yet the Gamma Defendants withheld consent. *Id.* ¶¶ 118–25. Because the Gamma Defendants would not consent, and because Plaintiffs' permanent financing on Wade Park had not yet closed, Wade Park Land was unable to pay the BAMCAP loan by its maturity date. *Id.* ¶¶ 118–24, 127. BAMCAP therefore declared default, which allowed Gamma Lending Omega (to whom Gamma Real Estate Capital had assigned its rights under the Gamma Bridge Loan) to declare its own default on the Gamma Bridge Loan—even though Wade Park Land and Wade Park Land Holdings had paid every dollar due up to that date on the Gamma Bridge Loan. *Id.* ¶¶ 128–30.

After the Gamma Defendants declared default, Wade Park Land and Wade Park Land Holdings signed a series of forbearance agreements to avoid a foreclosure. *Id.* ¶ 136. Under those agreements, Wade Park Land and Wade Park Land Holdings paid more than $38 million in fees to the Gamma Defendants—more than 40% of the Gamma Bridge Loan's principal. *Id.* ¶ 138.

While extracting these fees, Defendants interfered with Plaintiffs' ability to obtain permanent financing that would allow them to complete the project and pay off the Gamma Bridge Loan. For example, the Gamma Defendants purchased a loan from a non-party on related properties to prevent Thomas from using the significant equity on those properties to repay the

Gamma Bridge Loan. *Id.* ¶¶ 145–47. Another time, Kalikow called Bluebell International's principal a "thief" and a "scumbag" and said he would never allow financing from Bluebell to move forward. *Id.* ¶ 159. Yet another time, Kalikow yelled at Columbia Pacific executives and said he would never allow Columbia Pacific to refinance the Gamma Bridge Loan. *Id.* ¶¶ 171–72. This intentional interference scared the potential lenders off of the Wade Park project.

The Gamma Defendants' wrongdoing did not end there, as alleged in detail in the Complaint. *See id.* ¶¶ 176–251. The Gamma Defendants ultimately walked away with more than $76.6 million in cash and property and complete ownership of Wade Park—which itself has an appraised value of over ***$550 million***. *Id.* ¶ 207. In all, the Gamma Defendants received more than $625 million on a loan of about $83 million. Plaintiffs bring this case to recover this illegal windfall and put the parties back in their proper positions.

## PROCEDURAL HISTORY

Plaintiffs filed this case in August 2020, as an adversary proceeding in the U.S. Bankruptcy Court for the Northern District of Georgia. Dkt. 1-3. On the parties' consent, U.S. District Judge Timothy C. Batten, Sr. withdrew the reference to the bankruptcy court, and the action proceeded in the Northern District of Georgia. Dkt. 4. On October 16, 2020, Plaintiffs filed their First Amended Complaint. Dkt. 5.

All Defendants moved with respect to the Complaint. Defendant Blake Goodman filed a motion to dismiss (dkt. 13), while the Gamma Defendants filed a motion to dismiss (dkt. 16) and a motion to transfer (dkt. 14). Judge Batten issued an Order on two of the three motions on February 24, 2021. Dkt. 30, *Wade Park Land Holdings, LLC v. Kalikow*, No. 3:20-cv-176-TCB, 2021 WL 728185 (N.D. Ga. Feb. 24, 2021). Judge Batten granted Goodman's motion to dismiss and the Gamma Defendants' motion to transfer. *Id.* But importantly, he did not rule on the Gamma

4

Defendants' motion to dismiss. *Id.*

Notwithstanding the limited scope of Judge Batten's Order, the Gamma Defendants now argue that the Order applies equally to them and dictates dismissal of this action entirely. *See, e.g.*, dkt. 41 at 6, 7 n.4. But that is wrong, for at least three reasons. First, the law-of-the-case doctrine serves only to prevent a later court from "reopen[ing] what has been decided." *Id.* at 7 n.4 (quoting *Slotkin v. Citizens Cas. Co. of N.Y.*, 614 F.2d 301, 312 (2d Cir. 1979)). But here, there is nothing to "reopen[]" because Judge Batten did not rule on the Gamma Defendants' Motion. There is simply no "law of the case" that could apply to this Motion.

Second, to the extent that Judge Batten's Order contains dicta about the Gamma Defendants or Plaintiffs' claims against them, that dicta is irrelevant. The law-of-the-case doctrine "does not apply to dicta, but only a prior court's rulings of law." *Russul Corp. v. Zim Am. Integrated Shipping Servs. Co.*, No. 06 Civ. 0037(JCF), 2009 WL 3247141, at *4 (S.D.N.Y. Oct. 5, 2009) (citing *Arizona v. California*, 460 U.S. 605, 618 (1983)).

And third, Judge Batten's Order does not dictate the outcome here for the simple reason that his Order was wrong. Judge Batten, for example, declined to accept certain of Plaintiffs' factual allegations as true, and he improperly applied a heightened pleading standard to Plaintiffs' claims. "[T]he doctrine of law of the case permits a change of position if it appears the court's original ruling was erroneous." *DiLaura v. Power Auth. of N.Y.*, 982 F.2d 73, 77 (2d Cir. 1992).[3] Plaintiffs have viable claims against Goodman, and they intend to move, at an appropriate time, for leave to amend the Complaint to restate their claims against him here.

Ultimately, it is likely that Judge Batten chose not to rule on the Gamma Defendants' motion because they are situated differently from Goodman. It was the Gamma Defendants who

---

[3]     Internal quotation marks are omitted unless otherwise noted.

entered into the various agreements at issue, manufactured a default, engaged in *ultra vires* transactions, thwarted Plaintiffs' ability to raise capital, extracted usurious fees and interest, and wrongfully gained title to the Property. And while Goodman played an important part in the Gamma Defendants' scheme, the Gamma Defendants committed most of the misdeeds. This Court can, and should, conduct its own independent evaluation of the Gamma Defendants' arguments. And as the Court will see when it does so, the Motion should be denied.

## ARGUMENT AND CITATION TO AUTHORITIES

"[A] complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2008). A plaintiff generally need not plead "detailed factual allegations." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Nor must the plaintiff show a probability of liability—plausibility is all that is required. *Iqbal*, 556 U.S. at 678. "Plausibility . . . depends on a host of considerations: the full factual picture presented by the complaint, the particular cause of action and its elements, and the existence of alternative explanations so obvious that they render plaintiff's inferences unreasonable." *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 430 (2d Cir. 2011). Only where a complaint alleges fraud is the pleading standard heightened, in which case "a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b).

"In reviewing a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the Court 'accept[s] all factual allegations as true, and draw[s] all reasonable inferences in the plaintiff's favor.'" *Jiajia Luo v. Sogou, Inc.*, 465 F. Supp. 3d 393, 405 (S.D.N.Y. 2020) (Liman, J.) (quoting *Austin v. Town of Farmington*, 826 F.3d 622, 625 (2d Cir. 2016)). Each count satisfies these standards.

## I.     Plaintiffs have not released their claims.

As a threshold matter, the Gamma Defendants argue that the entire Complaint should be

dismissed because Plaintiffs supposedly released their claims in a May 17, 2017 loan modification agreement, a February 4, 2019 deed-in-lieu-of-foreclosure agreement, and a series of forbearance agreements.[4] Dkt. 41 at 7-8. But the releases do not apply because the agreements within which they are contained are the product of inceptive fraud. Under Georgia law,[5] inceptive fraud exists when a party enters a contract with no intent to perform. *See, e.g.*, *Pacrim Assocs. v. Turner Home Ent., Inc.*, 235 Ga. App. 761, 767 (1998). Here, Plaintiffs allege the Gamma Defendants entered the Gamma Bridge Loan agreement with no intent to perform their obligation not to unreasonably withhold consent to the BAMCAP loan. Dkt. 5 at ¶¶ 95–96. That fraud directly resulted in the forbearance agreements and the deed-in-lieu agreements that contain the releases. *Id.* ¶ 102. But for Defendants' inceptive fraud, in other words, Plaintiffs would not have entered the agreements. *Id.* ¶ 140. The agreements were the result of fraud, and the releases in them are invalid and unenforceable. *See, e.g.*, *Cowart v. Gay*, 223 Ga. 635, 637 (1967) (inceptive fraud is grounds to set aside the terms of a written instrument).[6]

Additionally, the releases do not bar Plaintiffs' claims because the claims did not accrue until *after* the releases' effective dates. The releases bar only those claims that accrued before the agreements' effective dates. *See* dkt. 17-4 at § 8; dkt. 17-5–17-10 at § 9; dkt. 17-11 at § 6. The

---

[4]    The release in the deed-in-lieu agreement has no bearing on the claims here. It carves out fraud from the scope of the release. Dkt. 41 at 7-8; *see also* dkt. 17-11 at § 6. And Plaintiffs' claims are, of course, based directly on the Gamma Defendants' fraudulent misrepresentations and actions. Likewise, any releases in the August, October, or December 2018 forbearance agreements or the deed-in-lieu agreement cannot bar Plaintiffs' claims now because Plaintiffs have stated a claim for declaratory relief that each of these agreements is void. *See infra* at § II. If Plaintiffs prevail, none of the releases in these agreements will have any effect.

[5]    As explained in detail *infra* at § VI.A.1. Georgia law applies to Plaintiffs' fraud claims.

[6]    The result is the same under New York law. Although New York law generally does not recognize inceptive fraud, there are certain instances in which "parallel fraud and contract claims may be brought," such as when a plaintiff seeks "special damages that are unrecoverable as contract damages." *Merrill Lynch & Co. v. Allegheny Energy, Inc.*, 500 F.3d 171, 183 (2d Cir. 2007). Here, the releases, if read as the Gamma Defendants suggest, would exculpate them from all liability. Plaintiffs therefore seek relief that is not recoverable under those agreements and is instead premised on fraud for misrepresentations in the contracts. *VTech Holdings Ltd. v. Lucent Techs. Inc.*, 172 F. Supp. 2d 435, 441 (S.D.N.Y. 2001) (noting that a plaintiff could maintain fraud duplicative of their breach of contract claim where such a claim sought "additional damages" above a contractual limitation).

latest "effective date" of any of the agreements cited by the Gamma Defendants is February 4, 2019. *See* dkt. 17-11 at 1. And each of Plaintiffs' claims accrued after that date because it was not until after that date that the Gamma Defendants ultimately obtained title to Wade Park and caused injuries to Plaintiffs. *See* Dkt. 5 at ¶ 198. *See Charron v. Sallyport Glob. Holdings, Inc.*, No. 12 Civ. 6837(WHP), 2014 WL 464649, at *4 (S.D.N.Y. Feb. 3, 2014) (agreement's release applied only to claims arising out of events preceding a closing and there were disputed facts about whether events occurred before or after the closing).

## II.    Plaintiffs state a claim for declaratory relief.

Count I seeks a declaration that the August, October, and December 2018 forbearance agreements, the deed-in-lieu agreements, and the delivery of deeds to the Wade Park Property (the "Transactions") are *ultra vires* and void. Dkt. 5 ¶¶ 326–41. Defendants concede that an actual and present dispute exists on this issue.[7] *See* 28 U.S.C. § 2201; Fed. R. Bankr. P. 7001; Fed. R. Civ. P. 57. They nevertheless argue about the merits of the requested relief and offer their own interpretation of the contracts at issue. *See* dkt. 41 at 10-11. But that is a factual question that is inappropriate for consideration at the motion-to-dismiss stage.

In any event, the Gamma Defendants' view of the merits is wrong. As alleged in the Complaint, the Transactions are *ultra vires* because they purport to be between members of Wade Park Ventures (Plaintiffs Wade Park Land and Wade Park Land Holdings) and affiliates of members of Wade Park Ventures (Defendant Gamma Omega Lending, LLC—an affiliate and related party of Defendant GRE WP, which is a member of Wade Park Ventures). Dkt. 5 at ¶¶ 335–36. Under § 2.4(d) of the Wade Park Ventures Limited Liability Agreement, this type of

---

[7]    The Gamma Defendants acknowledge that Plaintiff The Thomas Family Trust (the "Trust") has standing to bring this claim. Dkt. 41 at 9–10.

related-party transaction is void.[8] *Id.* ¶ 337; Dkt. 17-2 at § 2.4(d).

The Gamma Defendants disagree, contending that the Transactions do not violate § 2.4(d) because that section carves the "Initial Loan," *i.e.*, the Gamma Bridge Loan, as it "may be amended, modified [or] or supplemented," out of the related-party prohibition. *See* dkt. 41 at 10; dkt. 17-2 at 4, § 2.4(d). But this argument ignores an indisputable fact—that the Transactions relate not to only the Gamma Bridge Loan, but also to the ***BAMCAP loan***. *See, e.g.*, dkt. 17-08– 17-11 (recitals). And the BAMCAP loan is not covered by the "Initial Loan" carve-out. Dkt. 17-2 at 4, § 2.4(d).

On July 30, 2018, Gamma Lending Omega acquired the BAMCAP loan. Dkt. 5 at ¶ 331. The BAMCAP loan was separate and distinct from the Gamma Bridge Loan. After Gamma Lending Omega's acquisition of the BAMCAP loan, each of the Transactions related to both the Gamma Bridge Loan ***and*** the BAMCAP loan. *See, e.g.*, dkt. 17-08–17-11 (recitals). The Transactions, therefore, are void, and the "Initial Loan" provision does not change that result.

### III.    The Complaint states a claim under the federal RICO statute.

Count II of the Complaint states a claim under the federal RICO statute, 18 U.S.C. § 1962(c), which prohibits a person "employed or associated with an enterprise . . . to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." Plaintiffs have adequately stated both types of RICO claims—a pattern of racketeering activity and collection of an unlawful debt.

---

[8]    The Gamma Defendants suggest that Plaintiffs ratified the illegal related-party Transactions by being parties to the Transactions. *See* dkt. 41 at 10 ("Plaintiffs assert in Count I *they* violated LLCA Section 2.4(d)") (emphasis in original). But under Delaware law (which governs the Limited Liability Agreement), *ultra vires* agreements are void, not voidable, so there can be no ratification. *See, e.g.*, *CompoSecure, L.L.C. v. CardUX, LLC*, 206 A.3d 807, 816 (Del. 2018) ("The common law rule is that void acts are *ultra vires* and generally cannot be ratified."); *Absalom Absalom Tr. v. Saint Gervais LLC*, No. CV 2018-0452-TMR, 2019 WL 2655787, at *3 (Del. Ch. June 27, 2019) ("Equitable defenses can validate voidable acts but not void acts").

A.        Plaintiffs allege a RICO enterprise.

Gamma first argues that Plaintiffs' federal RICO claims fail because Plaintiffs do not

allege an enterprise. Dkt. 41 at 11-14. An "enterprise" includes "any union or group of individuals

associated in fact although not a legal entity." 18 U.S.C. § 1961(4). Here, Plaintiffs sufficiently

allege that the Defendants formed an association-in-fact enterprise. Dkt. 5 at ¶ 252.

"[T]he very concept of an association in fact is expansive." *Boyle v. United States*, 556

U.S. 938, 944 (2009). Moreover, RICO's terms "are to be liberally construed to effectuate its

remedial purposes." *Id.* A plaintiff adequately alleges an association-in-fact enterprise if it pleads

"a purpose, relationships among those associated with the enterprise, and longevity sufficient to

permit these associates to pursue the enterprise's purpose." *Id.* at 946. "This test establishes a low

threshold for pleading an association-in-fact enterprise." *Automated Teller Machine Advantage*

*LLC v. Moore*, No. 08 Civ. 3340(RMB)(FM), 2009 WL 2431513, at *6 (S.D.N.Y. Aug. 6, 2009).

Plaintiffs' allegations meet these standards.

1.   Plaintiffs allege that the enterprise had a purpose.

The members of an association-in-fact enterprise must "share a common purpose to engage

in a particular fraudulent course of conduct and work together to achieve such purposes . . . ." *D.*

*Penguin Bros. Ltd. v. City Nat'l Bank*, 587 F. App'x 663, 668 (2d Cir. 2014). Plaintiffs allege that

Defendants formed an enterprise for the purpose of defrauding Plaintiffs and taking Wade Park.

Dkt. 5 at ¶ 252. The Complaint contains dozens of detailed facts to support this allegation. *See id.*

¶¶ 257–325. For example, the Complaint details usurious loans; multiple misrepresentations and

lies by Defendants; the erratic and tortious behavior of Kalikow and the Gamma Defendants to

prevent other financers from paying off the Gamma Bridge Loan; Defendants' unreasonable

withholding of consent to a small modification of the BAMCAP loan; their theft of trade secrets

and other property; and their money laundering. *See* dkt. 5 at ¶¶ 257–325.

Defendants contend that these facts show only that they were "trying to protect their capital or make money in real estate financing," which they claim is insufficient to meet the common-purpose element. Dkt. 41 at 12. But this argument relies solely on Judge Batten's Order (dkt. 30), which, in turn, relies solely on the Eleventh Circuit's recent decision in *Cisneros v. Petland, Inc*, 972 F.3d 1204 (11th Cir. 2020). That case has not been adopted—or even cited—by any court in this circuit.[9] Indeed, courts in this circuit take a much broader view of the common-purpose element and hold that it is sufficient to allege that an enterprise's common purpose is to defraud a plaintiff. *See, e.g.*, *Fuji Photo Film USA, Inc. v. McNulty*, 640 F. Supp. 2d 300, 314 (S.D.N.Y. 2009) ("The Complaint . . . alleges that the association-in-fact was united by a common purpose, namely that of defrauding [plaintiff]."). Courts in this district have gone so far as to hold that allegations that the defendants "entered into [an] association to make money . . . are enough to satisfy the 'common purpose' requirement." *Nichols v. Mahoney*, 608 F. Supp. 2d 526, 533 (S.D.N.Y. 2009).[10]

At bottom, the Gamma Defendants argue that inferences from the facts alleged in the Complaint should be made in ***their*** favor. Dkt. 41 at 12–13. But, of course, that is not the standard on a 12(b)(6) motion. *Jiajia Luo*, 465 F. Supp. 3d at 405. And the inference to be drawn in

---

[9]     Even if this Court considers *Cisneros*, Plaintiffs' allegations against the Gamma Defendants are far more detailed than what was at issue in that case. There, the plaintiff attempted to plead an association-in-fact enterprise between a franchisor pet store, its franchisees, and a consulting company. 972 F.3d at 1211–13. But the allegations about the enterprise were sparse. For example, as to the franchisor and franchisee, the plaintiff alleged only that the franchisor insisted upon uniform standards. *Id.* at 1212. But "allegations like these could be made about countless law-abiding companies, and nothing about the allegations remotely suggests fraud." *Id.* What's more, the complaint "contain[ed] no allegations about specific interactions between . . . the . . . defendants, nor allegations regarding the origins or scope of the alleged scheme." *Id.* at 1213. In contrast, here, Plaintiffs pled (i) that the Gamma Defendants did not act as typical lenders, (ii) details about specific interactions between them and Goodman, and (iii) the origins and scope of the enterprise. Dkt. 5 at ¶¶ 257–325.
[10]     The Eleventh Circuit directly rejected this type of common purpose in *Cisneros*, 972 F.3d at 1211–12, which highlights the difference between Second Circuit and Eleventh Circuit law on this issue.

11

Plaintiffs' favor is that the Gamma Defendants were not engaging in typical real-estate financing. If that had been the case, Kalikow would not have called a principal of another potential lender a "thief" and a "scumbag" to stop a loan from that lender moving forward. *See* dkt. 5 at ¶¶ 158–62. He would not have yelled at the executives from yet another lender to scare them off. *See id.* ¶¶ 171–73. Defendants would not have misrepresented that they would not unreasonably withhold consent to a modification of the BAMCAP loan. *See id.* ¶¶ 117–41. And they would not have extracted tens of millions of dollars in fees from Plaintiffs. *See id.* ¶¶ 138, 413. *See Monterey Bay Mil. Hous., LLC v. Ambac Assurance Corp.*, No. 19 Civ. 9193 (PGG), 2021 WL 1226984, at *38 (S.D.N.Y. Mar. 31, 2021) (common purpose was "one to defraud the Projects of money through, *inter alia*, inflated interest rates, expenses, and other charges."). When considered in the light most favorable to Plaintiffs—as the Court must at this stage—these facts lead to the plausible conclusion that the Gamma Defendants formed an enterprise with the common purpose of defrauding Plaintiffs and taking Wade Park.

Finally, the Gamma Defendants contend that the Complaint does not allege a common purpose because it supposedly "lump[s] all Defendants together." Dkt. 41 at 13. To the contrary, Plaintiffs allege each Defendant's role in the enterprise. *Infra* at § III.A.2. In any event, this argument relies on Rule 9(b)'s particularity requirement, which does not apply to RICO's enterprise element. *See D. Penguin Bros. Ltd.*, 587 F. App'x at 665 (citing *Hecht v. Commerce Clearing House, Inc.*, 897 F.2d 21, 26 n.4 (2d Cir.1990) (evaluating nonfraud elements of RICO conspiracy allegation under Rule 8(a)); *Tardibuono-Quigley v. HSBC Mortg. Corp. (USA)*, No. 15-CV-6940 (KMK), 2017 WL 1216925, at *8 (S.D.N.Y. Mar. 30, 2017) (rejecting argument that plaintiff impermissibly grouped defendants together in pleading RICO purpose because "nothing in Rule 8 prohibits collectively referring to multiple defendants where the complaint alerts [the]

defendants that identical claims are asserted against each defendant").

Accepting Plaintiffs' allegations as true and drawing inferences in Plaintiffs' favor, the Complaint plausibly alleges the enterprise's purpose was to defraud Plaintiffs and take Wade Park.

### 2. Plaintiffs sufficiently allege a distinct enterprise.

The Gamma Defendants next argue that Plaintiffs failed to allege a RICO enterprise because a RICO enterprise may not consist "merely of a corporate defendant associated with its own employees or agents carrying on the regular affairs of the defendant." Dkt. 41 at 13 (quoting *Cruz v. FXDirectDealer, LLC*, 720 F.3d 115, 121 (2d Cir. 2013)). But Plaintiffs have not alleged an enterprise solely between a corporation and its employees.

First, Plaintiffs have alleged a distinct enterprise between Kalikow and each of the Gamma entities. Separate legal entities can form a RICO enterprise, even if they are affiliated or wholly owned by the same person. *See Securitron Magnalock Corp. v. Schnabolk*, 65 F.3d 256, 263–64 (2d Cir. 1995). Similar to the parties in *Securitron*, each of the Gamma entities are "separate and distinct . . . . While [Kalikow] was an officer or agent of each corporation, each was an independent entity that could benefit from his nefarious activities." *Id.* at 263. Each of the Gamma entities, in other words, "is an entity distinct from [the other], and [all entities] are distinct from [Kalikow]." *Id.*[11]

Plaintiffs go even further here, describing each entity's role in the enterprise in detail. For example, Plaintiffs allege Gamma Real Estate Capital lied about its desire to own Wade Park. Dkt. 5 at ¶¶ 75, 265. Gamma Real Estate Capital also signed the Bridge Loan Agreement with no intent to comply with the agreement's terms. *Id.* ¶ 96. It required that Plaintiffs form non-party Wade

---

[11]     *See also Buyers & Renters United to Save Harlem v. Pinnacle Grp. N.Y. LLC*, 575 F. Supp. 2d 499, 511 (S.D.N.Y. 2008) (association-in-fact enterprise was adequately pled between entities and individual defendant who was part owner of some of the entities).

Park Ventures to give it a 75% ownership in the project and appointed Defendant GRE WP as the related entity to hold that 75% interest. *Id.* ¶¶ 72–73. It then assigned its interests in the Gamma Bridge Loan to Gamma Lending Omega, who then manufactured a default on the loan by improperly withholding consent to a modification of the BAMCAP loan. *Id.* ¶¶ 84, 118–26. Gamma Lending Omega also entered into various forbearance agreements and the deed-in-lieu agreement to extract usurious interest and fees from Plaintiffs, while simultaneously lying about its intent to allow for a reasonable buy-back period. *Id.* ¶¶ 138, 186–93. And Gamma Lending Omega ultimately directed that Wade Park be transferred to WP Development Partners LLC. *Id.* ¶¶ 419, 433. *Cf. Sluka v. Est. of Herink*, No. 94 CV 4999, 1996 WL 612462, at *6 (E.D.N.Y. Aug. 13, 1996) (finding no enterprise where plaintiff did not allege corporate members of the enterprise were separate and distinct or allege their precise functions).

Second, Plaintiffs allege that each of the Defendants—Kalikow, WP Development Partners, Gamma Lending Omega, Gamma Real Estate Capital, GRE WP, and Blake Goodman—formed the enterprise. Dkt. 5 at ¶ 252. Goodman shared trade secrets directly with Kalikow. *Id.* at ¶¶ 252–325. And contrary to the Gamma Defendants' assertion, the Complaint identifies (i) the precise trade secrets Goodman shared with Kalikow, (ii) that Goodman shared the trade secrets with the goal of defrauding Plaintiffs, (iii) that Goodman was motivated by his desire to set up a competing business, and (iv) that Goodman succeeded in achieving his goals. *Id.* ¶¶ 210–51. The Complaint plausibly alleges an enterprise, and the Court should reject Defendants' arguments.

### B.    Plaintiffs allege collection of unlawful debt.

Having sufficiently alleged an enterprise, the Complaint states a RICO claim. A defendant violates RICO if it is associated with an enterprise and engages in a "collection of unlawful debt." 18 U.S.C. § 1962(c). "[T]o state a RICO claim based on the collection of an unlawful debt, a

plaintiff must allege that (1) the debt was unenforceable in whole or in part because of state or federal laws relating to usury, (2) the debt was incurred in connection with the business of lending money . . . at a [usurious] rate, and (3) the usurious rate was at least twice the enforceable rate." *Dae Hyuk Kwon v. Santander Consumer USA*, 742 F. App'x 537, 539 (2d Cir. 2018). Contrary to the Gamma Defendants' arguments, dkt. 41 at 14, "RICO offenses may be predicated on a ***single instance*** of collection of unlawful debt, as well as on a pattern of racketeering activity." *United States v. Grote*, 961 F.3d 105, 119 (2d Cir. 2020) (emphasis added).

Here, Plaintiffs' allegations meet these requirements. Plaintiffs allege that the Gamma Bridge Loan is unenforceable under usury laws[12] and was incurred at a usurious rate that was at least twice the enforceable rate, and that the Gamma Defendants and Kalikow were in the business of lending money. *See* dkt. 5 at ¶¶ 257–61. Moreover, Plaintiffs have alleged the Gamma Defendants' roles with respect to the usurious transaction.[13] These allegations are sufficient.

### C.    Plaintiffs allege a pattern of racketeering.

Plaintiffs also plausibly allege that the Gamma Defendants engaged in a pattern of racketeering activity, including multiple predicate acts.

#### 1.    Plaintiffs allege Gamma Defendants engaged in multiple acts of wire fraud.

First, the Complaint plausibly alleges Gamma Defendants committed wire fraud under 18 U.S.C. § 1343. "The elements of mail or wire fraud are (i) a scheme to defraud (ii) to get money or property (iii) furthered by the use of interstate mail or wires." *Williams v. Affinion Grp., LLC*, 889

---

[12]    Plaintiffs have properly pled that the loan is usurious under both Georgia law and Texas law. Dkt. 5 at ¶¶ 408–17; O.C.G.A. § 7-4-18; Tex. Fin. Code Ann. § 303.002. *See infra* at § X.

[13]    *See, e.g.*, dkt. 5 at ¶ 96 (Gamma Real Estate Capital signed the Bridge Loan Agreement with no intent to comply with its terms and its prior representations); *id.* ¶¶ 84, 118–26 (Gamma Real Estate Capital assigned its interests in the Gamma Bridge Loan to Gamma Lending Omega, who manufactured a default on the loan by improperly withholding reasonable consent to a modification of the BAMCAP loan); *id.* ¶ 138, 419, 433 (Gamma Lending Omega entered into various forbearance agreements and the deed-in-lieu agreement to extract usurious interest and fees from Plaintiffs and directed that Wade Park be transferred to WP Development Partners LLC).

F.3d 116, 124 (2d Cir. 2018). Defendants' Motion focuses solely on the first element. *See* dkt. 41 at 15−17. As to that element, a scheme or artifice to defraud exists if there has been "a material misrepresentation." *Williams*, 889 F.3d at 124.

The Complaint details the Gamma Defendants' numerous material misrepresentations. For example, in a phone call in December 2016, they falsely stated to Thomas and others that they did not want to own the Wade Park project. *See* dkt. 5 at ¶¶ 75, 76, 265. Kalikow also made false statements in phone conversations in January 2019 to Thomas and others about the Gamma Defendants' willingness to agree to a loan proposal made by Columbia Pacific. *See id.* ¶¶ 166, 167, 172, 173, 266. And they allege that Kalikow and the Gamma Defendants falsely promised that they would give a six-month buy-back period for Wade Park. *Id.* ¶¶ 186–89, 194.[14]

The Gamma Defendants argue that these material misrepresentations are insufficient because Plaintiffs could not have reasonably relied on them. *See* dkt. 41 at 16. But reasonable reliance is not an element of wire fraud: "a plaintiff asserting a RICO claim predicated on [wire] fraud need not show, either as an element of its claim or as a prerequisite to establishing proximate causation, that ***it*** relied on the defendant's alleged misrepresentations." *Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639, 661 (2008) (emphasis added). Rather, the question is whether "***someone***—whether the plaintiffs themselves or third parties—relied on the defendant's misrepresentation." *Sergeants Benevolent Ass'n Health & Welfare Fund v. Sanofi-Aventis U.S. LLP*, 806 F.3d 71, 87 (2d Cir. 2015) (emphasis added). *See also Bridge*, 553 U.S. 639 at 661.

---

[14]     The Gamma Defendants contend that multiple wire frauds are not a pattern of racketeering activity when "they arise from a single transaction." Dkt. 41 at 15 n.7. But this argument ignores the many other predicate acts alleged in the Complaint. It also that the Gamma Defendants committed wire fraud not just in connection with the initial Gamma Bridge Loan, but also in connection with Plaintiffs' efforts to obtain alternate financing and in discussions about a buy-back agreement. Dkt. 5 at ¶¶ 186–89, 194. These are separate misrepresentations about separate events that took place over years, as opposed to the misrepresentations all within the same month at issue in *Cisneros*, 972 F.3d at 1216–17, and as opposed to a single transaction at issue in *Crawford v. Franklin Credit Management. Corp.*, 758 F.3d 473, 489 (2d Cir. 2014).

Nevertheless, Plaintiffs have alleged that they relied on the Gamma Defendants' misrepresentations about their desire to own Wade Park, about their willingness to agree to a modification of the BAMCAP loan, and about a promised six-month buy back by agreeing to, among other things, the Gamma Bridge Loan, the various forbearance agreements, and the deed-in-lieu agreement. *See* dkt. 5 at ¶¶ 140–41, 193, 382–83. Had they known Defendants' true intent, Plaintiffs would not have agreed to the forbearance or deed-in-lieu agreements. *Id.* ¶¶ 140–41.[15]

Finally, Defendants argue that the alleged misrepresentations were statements of "desire, not a material fact" and "were mere puffery or sales talk." Dkt. 41 at 16-17. But this argument fails for multiple reasons. First, statements as to future actions are actionable if there is a present intent not to perform. *See, e.g.*, *Fazio v. Ranestorm Ent., LLC*, No. 14-cv-7234 (JSR), 2016 WL 3144376, at *2 (S.D.N.Y. May 23, 2016) ("the failure to fulfill a promise to perform future actions is not grounds for a fraud action ***unless there existed an intent not to perform at the time the promise was made***.");[16] *Tischer v. Bank of Am. Corp.*, No. 1:12-CV-4185-CAP, 2014 WL 11822767, at *2–3 (N.D. Ga. Feb. 19, 2014) (same). And that is what Plaintiffs have alleged here. *See* dkt. 5 at ¶¶ 95–96 (at the time Gamma Defendants executed Gamma Bridge Loan agreements, they did not intend to comply with their promise not to unreasonably withhold consent to a

---

[15]     The Gamma Defendants also confusingly argue that "Plaintiffs could not reasonably have relied on Defendants' preference not to own the Wade Park project to mean they could not foreclose on the Property" because the loan agreement allowed for foreclosure. Dkt. 41 at 16. But Plaintiffs do not allege that the Gamma Defendants misrepresented whether they would ever foreclose. Rather, Defendants misrepresented their intent to own Wade Park, their willingness to agree to a modification of the BAMCAP loan, and whether a six-month buy-back period would be available. The foreclosure represents a portion of Plaintiffs' damages from the fraud, but not the fraudulent statements themselves.

[16]     To be clear, New York law allows a claim for fraud based on a present intent not to perform at the time the promise is made when the fraudulent misrepresentation is collateral or extraneous to the contract. *Bridgestone/ Firestone, Inc. v. Recovery Credit Servs., Inc.*, 98 F.3d 13, 20 (2d Cir. 1996). In other words, a fraud claim can be premised on an intent not to perform when it is made outside of a contract, which is the case here with respect to Plaintiffs' wire fraud allegation. Plaintiffs' wire fraud allegation is separate and distinct from Plaintiffs' fraud claim, which is based on a present intent not to perform a promise the Gamma Defendants *made in the contract*—known as inceptive fraud under Georgia law but generally not recognized under New York law. *See infra* at § VI.A.1.

modification of the BAMCAP loan).

Second, while puffery cannot amount to fraud, the Gamma Defendants have not shown how or why their statements were mere puffery. And whether a statement amounts to puffery is generally a question for the jury—not an issue to be decided on a motion to dismiss. *See, e.g.*, *Colangelo v. Champion Petfoods USA, Inc.*, No. 6:18-CV-1228-LEK/ML, 2020 WL 777462, at *8 (N.D.N.Y. Feb. 18, 2020) (courts are reluctant to rule that statements cannot be deceptive and are non-actionable puffery on a motion to dismiss). Plaintiffs have adequately alleged wire fraud.

### 2. Plaintiffs allege theft of trade secrets.

Plaintiffs also allege that Defendants committed the predicate act of theft of trade secrets under 18 U.S.C. § 1832. *See* dkt. 5 at ¶¶ 270–305. The Gamma Defendants make three points in response. First, they contend that Plaintiffs own only the Wade Park Trade Secrets and thus only have standing to sue about those trade secrets. *See* dkt. 41 at 18. Second, they argue that Plaintiffs have not sufficiently alleged the Gamma Defendants knew that Defendant Goodman owed fiduciary duties to Plaintiffs or that Goodman had trade-secret information about Wade Park. *Id.* at 18–19. And third, they contend that Judge Batten's Order already ruled that Goodman did not owe any fiduciary duties to Plaintiffs or share any trade secrets. *Id.* All these arguments fail.

First, the Gamma Defendants point to no law that only the owner of a trade secret has standing to bring a RICO claim predicated on theft of that trade secret. Nor could they. To have standing under RICO, the plaintiff must allege only "that the defendant's violations were a proximate cause of the plaintiff's injury, *i.e.*, that there was a direct relationship between the plaintiff's injury and the defendant's injurious conduct." *First Nationwide Bank v. Gelt Funding Corp.*, 27 F.3d 763, 769 (2d Cir. 1994). *See also Bridge*, 553 U.S. at 647. And here, Plaintiffs allege they were injured by the theft of trade secrets related to all the properties because the theft

allowed the Gamma Defendants to interfere with Plaintiffs' prospective investors and lenders for Wade Park. Dkt. 5 at ¶¶ 242–48. Moreover, even if Plaintiffs have RICO standing only with respect to the Wade Park Trade Secrets, Plaintiffs still alleged theft of those trade secrets, which they indisputably own. *Id.* ¶¶ 270–78. This is enough to state the claim.

Second, Plaintiffs explicitly alleged that the Gamma Defendants knew the information at issue was a trade secret. Dkt. 5 at ¶ 235. That allegation must be accepted as true on a 12(b)(6) motion, and the Gamma Defendants cannot just ignore it. *See ABB Turbo Sys. AG v. Turbousa, Inc.*, 774 F.3d 979, 988 (Fed. Cir. 2014) (defendant's knowledge "may be distinctively in the defendant's possession, requiring that the threshold standard of plausibility be applied to more circumstantial evidence."). In any event, the trade secrets consisted of plans, financing options, and information about potential business partners that the Gamma Defendants did not receive from Plaintiffs but still obtained. Dkt. 5 at ¶¶ 223–26. It is implausible that the Gamma Defendants would have gone around Plaintiffs to get that information had they not known the information to be confidential trade secrets. Plaintiffs have plausibly alleged the Gamma Defendants' knowledge.

Finally, the Gamma Defendants contend that Judge Batten's Order already resolved this issue by holding that Plaintiffs did not plausibly allege Goodman owed them a fiduciary duty or shared trade secrets with the Gamma Defendants. Dkt. 41 at 18 (citing *Wade Park Land Holdings, LLC*, 2021 WL 728185, at *9–10). But again, Judge Batten did not decide the Gamma Defendants' Motion. His Order focused solely on whether Goodman committed the predicate act of theft of trade secrets, not whether the Gamma Defendants did.

Contrary to that Order and under Second Circuit law, Plaintiffs have adequately alleged that Goodman shared trade secrets with the Gamma Defendants and owed Plaintiffs fiduciary duties. Plaintiffs pled the existence of specific meetings and conversations where trade secrets

were shared. Dkt. 5 at ¶¶ 237–39. It was proper to plead some of these allegations on "information

and belief" to reflect the obvious fact that Plaintiffs were not at the meetings or involved in the

discussions. *Id.* The reasonable inference based on the Gamma Defendants' later possession and

use of trade secrets—when Plaintiffs did not themselves share the information—is that Goodman

shared them with Kalikow. *Arista Recs., LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010) (plaintiff

may plead facts "upon information and belief where the facts are peculiarly within the possession

and control of the defendant or where the belief is based on factual information that makes the

inference of culpability plausible") (citation omitted).[17] Further, the Gamma Defendants admit that

"Plaintiffs allege Defendants knew Mr. Goodman was the manager of Thomas's Fourth Quarter

Properties . . . ." Dkt. 41 at 18. It was this role—along with his role as a participant in the joint

venture—that gave rise to Goodman's fiduciary duties. Dkt. 5 at ¶¶ 214–15, 217–18. When

construed in the light most favorable to Plaintiffs, Plaintiffs have adequately alleged the Gamma

Defendants engaged in the predicate act of theft of trade secrets.[18]

### 3.   Plaintiffs allege the Gamma Defendants engaged in money laundering.

Plaintiffs also allege the Gamma Defendants committed the predicate act of money

laundering under 18 U.S.C. § 1956. *See* dkt. 5 at ¶¶ 306–15. The Gamma Defendants' only

argument here is to incorporate their arguments related to wire fraud and theft of trade secrets;

Defendants do not challenge any other money-laundering element. Dkt. 41 at 19. Therefore, for

---

[17]     The Gamma Defendants contend that the "obvious alternative explanation" to Goodman sharing trade secrets
was that Thomas himself shared them. Dkt. 41 at 18 n.10. But that is a fact question that contradicts Plaintiffs' well-
pled allegations that Goodman, not Thomas, shared trade-secret information with the Gamma Defendants. Dkt. 5 at ¶¶
230–34. These allegations do not make the Gamma Defendants' alternative explanation "so obvious." *See L-7
Designs, Inc.*, 647 F.3d at 430. When Plaintiffs' factual allegations are viewed in the light most favorable to Plaintiffs,
the information-and-belief pleadings "raise a reasonable expectation that discovery will reveal evidence" to prove
Plaintiffs' claims. *Twombly*, 550 U.S. at 556.

[18]     Even if this Court finds that the theft of trade secrets as a predicate act for RICO is not sufficiently alleged,
Plaintiffs have sufficiently alleged other predicate acts for the RICO claim, including money laundering and multiple
predicate acts of wire fraud.

the reasons explained *supra*, Plaintiffs adequately allege that the Gamma Defendants committed money laundering.

### 4.   Plaintiffs allege continuity.

Finally, the Gamma Defendants contend that the Complaint does not allege a "pattern of racketeering activity" because it does not allege the acts took place over a substantial period. *See* dkt. 41 at 19–20. A pattern of racketeering activity can be shown by a "closed-ended" scheme, consisting of a "series of related predicates extending over a substantial period of time. . . ." *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 242 (1989).

Here, Plaintiffs allege a closed-ended scheme with the purpose of defrauding Plaintiffs and acquiring Wade Park. *See* dkt. 5 at ¶ 252. "To determine close-ended continuity, courts weigh[ ] a variety of non-dipositive factors, including, *inter alia*, the length of time over which the alleged predicate acts took place, the number and variety of acts, the number of participants, the number of victims, and the presence of separate schemes." *Bangladesh Bank v. Rizal Com. Banking Corp.*, No. 19 Civ. 983 (LGS), 2020 WL 1322275, at *6 (S.D.N.Y. Mar. 20, 2020). The Gamma Defendants rely on Judge Batten's Order to argue that "Plaintiffs allege that Defendants engaged only in a single scheme—fraudulent acquisition of Wade Park—aimed at a singular victim— Thomas—through manipulation of a single loan—the Gamma Bridge loan." Dkt. 41 at 20 (quoting *Wade Park Land Holdings, LLC*, 2021 WL 728185, at *6). But again, this finding was incorrect, and, in any event, is not binding on this Court.

Plaintiffs' allegations establish closed-ended continuity under the factors to be considered by this Court. Plaintiffs allege a scheme that lasted over 30 months, beginning as early as October 2016 and continuing until at least April 2019. Dkt. 5 at ¶¶ 49, 198. Plaintiffs allege a variety of predicate acts that took place during that period. *Id.* ¶¶ 262–325. Indeed, Defendants' scheme

involved much more than just taking the Wade Park property through the Gamma Bridge loan. At the end of their scheme, the Gamma Defendants walked away with the title to Wade Park (*id.* ¶ 192); title to 125 acres of property in Texas (*id.* ¶ 310); ownership of loans on property in Newnan, Georgia, Orlando, Florida, and Franklin, Tennessee (*id.* ¶¶ 154, 245); and possession of Plaintiffs' valuable trade secrets (*id.* ¶¶ 238–39, 242).[19]

The Gamma Defendants' acts were not "sporadic" with a "limited goal." *State Wide Photocopy, Corp. v. Tokai Fin. Servs., Inc.*, 909 F. Supp. 137, 140 (S.D.N.Y. 1995). Instead, they were "repeated, related and continuous[,]" aimed at putting a stranglehold over Plaintiffs and securing as much property from Plaintiffs as possible. *Id.* at 141; *see generally* dkt. 5. These specific factual allegations are sufficient to state a close-ended continuity scheme. *See, e.g.*, *City of New York v. LaserShip, Inc.*, 33 F. Supp. 3d 303, 311 (S.D.N.Y. 2014) (finding close-ended continuity where plaintiffs' allegations involved numerous predicate acts, participants, and victims over 26 months).[20] The Court should deny Defendants' Motion.

**IV.     Plaintiffs state a RICO conspiracy claim.**

Count III alleges Defendants conspired to violate 18 U.S.C. § 1962(c). The Gamma Defendants argue this claim should be dismissed because Plaintiffs have failed to state a substantive RICO violation. Dkt. 41 at 20. But as shown above, Plaintiffs have sufficiently alleged a substantive RICO claim. Defendants next argue that "Plaintiffs do not allege any facts that support" their conspiracy allegation, contending that Plaintiffs' allegations are conclusory. *Id.* at 21. But this argument ignores the dozens of facts offered to support the conspiracy, including

---

[19]     Further, the Wade Park property itself is not even a singular piece of property. It is 176 acres divided into two different tracts. Dkt. 5 at ¶¶ 37–38.
[20]     *See also Related Cos., L.P. v. Ruthling*, No. 17-CV-4175, 2017 WL 6507759, at *19 (S.D.N.Y. Dec. 18, 2017) (noting that "it may turn out that, ultimately, plaintiffs cannot prove continuity," but finding that allegations— including scant facts on pre-fraudulent activity—were enough to withstand motion to dismiss); *State Wide Photocopy, Corp.*, 909 F. Supp. at 140.

numerous communications among Defendants as part of their agreement to misappropriate trade secrets. Dkt. 5 at ¶¶ 155, 210–51. The Gamma Defendants were aware of Goodman's role in the conspiracy. *Id.* ¶¶ 235, 240. And they each worked together to defraud Plaintiffs out of Wade Park. *Supra* at § III.A.2. Plaintiffs have alleged a conspiracy, and the Motion should be denied.

**V.      Plaintiffs state a Georgia RICO claim.**

Counts IV through VI arise under the Georgia RICO statute, O.C.G.A. § 16-14-5(a)-(c). The Gamma Defendants move to dismiss these Counts for the same reasons that they move to dismiss the federal RICO claims. *See* dkt. 41 at 21–22. And the Motion should be denied for all the same reasons. But even if the Court were to agree that Plaintiffs have not stated a claim under the federal RICO statute, the claims under the Georgia RICO statute would still survive. The Georgia RICO Act, after all, is ***different*** from the federal RICO Act in several key ways. Perhaps most importantly, the Georgia RICO Act does not require the existence of an enterprise, meaning that Plaintiffs do not have to allege a criminal purpose, distinctiveness, or longevity to state a claim under the Georgia RICO statute. *Dover v. State*, 192 Ga. App. 429 (1989). Likewise, continuity is not an element of Georgia RICO claims. *Id.* Thus, the only question under Georgia RICO is whether Plaintiffs alleged a pattern of racketeering activity.

And even if the Court finds that Plaintiffs failed to allege a pattern of racketeering for the federal claim, Plaintiff have alleged two ***more*** predicate acts under the Georgia RICO Act. First, Plaintiffs allege that the Gamma Defendants violated the Georgia Uniform Securities Act, O.C.G.A. § 10-5-50 (the "GUSA"), in connection with GRE WP's purchase of a 75% membership interest in Wade Park Ventures. Dkt. 5 at ¶¶ 318–318.4. The Gamma Defendants contend this predicate act is insufficient because Plaintiffs do not have standing under the GUSA because they were neither the purchasers nor sellers of GRE WP's membership interest. *See* Dkt. 41 at 22. But

once again, Defendants misunderstand how RICO standing works. Plaintiffs have brought a claim under the Georgia RICO statute, not the GUSA. The issue, therefore, is not whether Plaintiffs purchased or sold a security, but rather whether Plaintiffs' RICO injuries "flow from the commission of the predicate acts." *See Longino v. Bank of Elijay*, 228 Ga. App. 37, 40 (1997) (quotation omitted). And here, Plaintiffs' injuries do. Had the Gamma Defendants not misrepresented their intent, Plaintiffs would not have agreed to GRE WP's acquisition of a 75% interest in Wade Park Ventures. Dkt. 5 at ¶¶ 101–02.

The *Longino* decision is instructive. There, the plaintiff brought a Georgia RICO claim alleging violations of the GUSA as predicate acts. 228 Ga. App. at 40–41. The plaintiff was not the security's purchaser, but rather was the purchaser's attorney, hired after the sale of the securities had been completed. *Id.* The court of appeals granted summary judgment to the defendants—but not because the attorney was not the purchaser; rather, the court concluded that for other reasons, his injuries did not flow directly from the RICO violations. *Id.* Had the court wanted to create a bright-line rule that only purchasers or sellers could predicate a Georgia RICO claim on violations of the GUSA, it could have done so. But it did not, and that is telling.

Plaintiffs also allege theft by deception under O.C.G.A. § 16-8-3. Dkt. 5 at ¶¶ 321-325. The Gamma Defendants' only argument with respect to this predicate act is to incorporate their prior arguments concerning wire fraud. *See* dkt. 41 at 23. So, for all the reasons that Plaintiffs adequately allege wire fraud, they allege that Defendants committed theft by deception. *Supra* at § III.C.1.

## VI.    The Complaint adequately alleges tort claims.

### A.    The Complaint adequately alleges a claim for fraud.

In Count VII, Plaintiffs allege the Gamma Defendants entered the Gamma Bridge Loan

agreement with no intent to honor the promise not to unreasonably withhold consent to a modification of the BAMCAP loan. Dkt. 5 ¶¶ 95–96. Their intent became apparent later on, when they unreasonably withheld consent and engaged in other misconduct. *Id.* ¶¶ 117–26. Defendants throw up a slew of arguments as to why this claim should be dismissed under New York law, but New York law does not apply. Georgia law does.

### 1. Georgia law applies to Plaintiffs' fraud claim.

Federal courts apply the choice-of-law rules of the forum state. *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941). The first step of New York's choice-of-law analysis is "to determine whether there is an actual conflict between the laws of the jurisdictions involved." *J&R Multifamily Grp., Ltd. v. U.S. Bank Nat'l Ass'n as Tr. for Registered Holders of UBS-Barclays Com. Mortg. Tr. 2012-C4, Com. Mortg. Pass-Through Certificates, Series 2012-C4*, No. 19-cv-1878 (PKC), 2019 WL 6619329, at *5 (S.D.N.Y. Dec. 5, 2019). An actual conflict exists if "the applicable law from each jurisdiction provides different substantive rules, and the differences have a significant possible effect on the outcome." *TD Bank, N.A. v. Miller*, 18 Civ. 10608 (VM), 2020 WL 5441323, at *7 (S.D.N.Y. Sept. 9, 2020).

Here, there is an actual conflict between Georgia's and New York's law of fraud. Plaintiffs allege the Gamma Defendants entered the Gamma Bridge Loan agreement with no intent to honor the agreement's promise not to unreasonably withhold consent to a modification of the BAMCAP loan. Dkt. 5 at ¶¶ 95–96. Under Georgia law, this is inceptive fraud. *See, e.g.*, *Pacrim Assocs.*, 235 Ga. App. at 767; *see also Nash v. Roberts Ridge Funding, LLC*, 305 Ga. App. 113, 116 (2010) ("To establish a claim for . . . inceptive fraud to enter into a contract, a plaintiff must prove both that the defendant failed to perform a promised act and that the defendant had no intention of performing when the promise was made."). New York law, by contrast, generally does not

recognize fraud based on a defendant's promises to perform under a contract. *Kamyr, Inc. v. Combustion Eng'g, Inc.*, 603 N.Y.S.2d 451, 452 (1993) ("An allegation that one did not intend to perform a contract does not amount to a cause of action for fraud."). Although exceptions exist,[21] New York's differing substantive rules have a significant possible impact on the outcome of the claim. An actual conflict therefore exists.

If there is a conflict between states' law as to a tort claim, New York applies an "interest-analysis" choice-of-law test. *See GlobalNet Financial.Com, Inc. v. Frank Crystal & Co.*, 449 F.3d 377, 384 (2d Cir. 2006). As applied to torts such as the ones alleged in the Complaint, the "law of the jurisdiction where the tort occurred will generally apply." *Id.*[22] And "where the defendant's tortious conduct and the plaintiff's injury occur in different states, 'the place of the wrong is considered to be the place were the last event necessary to make the actor liable occurred.'" *Hamilton v. Accu-Tek*, 47 F. Supp. 2d 330, 337 (E.D.N.Y. 1999) (quotation omitted). Under this rule, New York courts routinely find that "[f]or actions sounding in fraud and deceit, the substantive law of the state in which the injury is suffered, rather than the state where the fraudulent conduct was initiated, usually governs." *Bergeron v. Philip Morris, Inc.*, 100 F. Supp. 2d 164, 170 (E.D.N.Y. 2000).[23] Plaintiffs are entities with their principal places of business in Georgia, and they suffered and felt injury in Georgia. Dkt. 5 at ¶¶ 7–9. The tort therefore occurred

[21]   *See supra* at 7, n.6.

[22]   New York law divides application of the interest-analysis test into two types of laws: (1) those involving appropriate standards of conduct (e.g., "rules of the road"); and (2) those allocating losses (e.g., rules about vicarious liability or immunities from suit). *Schultz v. Boy Scouts of Am., Inc.*, 65 N.Y.2d 189, 197 (1985). If conflicting conduct-regulating laws are at issue, the jurisdiction where the tort occurred will generally apply because that state has the greatest interest in regulating conduct within its borders. *Cooney v. Osgood Mach., Inc.*, 81 N.Y.2d 66, 72 (1993). Here, the latter laws allocating losses are not at issue.

[23]   *See also Sack v. Low*, 478 F.2d 360, 365 (2d Cir. 1973) ("[W]hen a person sustains loss by fraud, the place of wrong is where the loss is sustained, not where fraudulent representations are made."); *Sound Video Unlimited, Inc. v. Video Shack Inc.*, 700 F. Supp. 127, 134 (S.D.N.Y.1988).

in Georgia, and Georgia law applies.[24]

### 2.   Plaintiffs have sufficiently alleged a fraud claim.

Plaintiffs properly allege fraud against the Gamma Defendants for entering an agreement despite having no intention to honor its promise not to unreasonably withhold consent to a modification of the BAMCAP loan. Dkt. 5 at ¶¶ 95–96. *Batchelor v. Tucker*, 184 Ga. App. 761, 762 (1987) ("When failure to perform a promised act is coupled with evidence that the promisor made the promise with the intention not to perform, inceptive fraud is shown."). None of Defendants' arguments change that conclusion.

First, Defendants contend that the fraud claim is duplicative of the breach-of-contract claim. Dkt. 41 at 23. But Plaintiffs do not contend that Defendants committed fraud simply because they breached the contract. Rather, they claim that Defendants committed fraud by entering into a contract with no intention of performing. Dkt. 5 at ¶¶ 95–96. Such claims are cognizable under Georgia law. *See, e.g.*, *Tischer*, 2014 WL 11822767, at *2–3.

Second, Defendants argue there cannot be reasonable reliance because the Gamma Bridge Loan agreement contains a merger clause. Dkt. 41 at 24. But again, the Gamma Defendants misunderstand Plaintiffs' allegations. The Gamma Bridge Loan agreement ***itself*** contains the fraudulent misrepresentation. The merger clause is not a barrier when the false representation is in the contract itself. *See, e.g.*, *Partner Servs., Inc. v. Avanade, Inc.*, No. 1:13-CV-0001-AT, 2013 WL 12180442, at *5 (N.D. Ga. Aug. 26, 2013) ("In Georgia, a valid merger clause will not bar

---

[24]       In a footnote in their Motion, Defendants rely on contractual choice-of-law provisions to argue that "the parties agreed that New York is the locus of the relevant events." Dkt. 41 at 23 n.13. But there is "a reluctance on the part of New York courts to construe contractual choice-of-law clauses broadly to encompass extra-contractual causes of action." *J&R Multifamily Grp., Ltd.*, 2019 WL 6619329, at *4 (quotation omitted). "Under New York law, then, tort claims are outside the scope of contractual choice-of-law provisions that specify what law governs construction of the terms of the contract." *Id.* (quotation omitted). Indeed, in *J&R Multifamily*, the court rejected the defendants' argument that a nearly-identical choice-of-law clause in a contract applied to the plaintiff's tort claims, including fraud and tortious interference. *Compare id.* at *3 *with* dkt. 17-3 at § 11.5, 17-4 at § 13, 17-5–17-10 at § 15, 17-11 at § 18. Here, just as in *J&R Multifamily*, the choice-of-law provisions do not apply to tort claims. Georgia law applies.

claims based on misrepresentations made in the contract itself."); *Chhina Family P'ship, L.P. v. S-K Grp. of Motels, Inc.*, 275 Ga. App. 811, 812–13 (2005) (same).

Third, Defendants argue that Plaintiffs' allegation that the Gamma Defendants did not intend to comply with the Gamma Bridge Loan agreement is conclusory, citing New York law that such allegations are insufficient. Dkt. 41 at 24. But again, such claims are cognizable under Georgia law. Moreover, the allegations are far from conclusory. "Fraudulent intent at the time of contracting can be inferred based on subsequent conduct of the defendant that is unusual, suspicious, or inconsistent with what would be expected from a contracting party who had been acting in good faith." *BTL COM Ltd. v. Vachon*, 278 Ga. App. 256, 261 (2006). And here, as discussed below, Plaintiffs pled factual details demonstrating the Gamma Defendants' later misconduct, which evidences their fraudulent intent. Dkt. 5 at ¶¶ 117–26.

Fourth, Defendants argue that there was, in fact, no obligation not to unreasonably withhold consent to a modification of the Gamma Bridge Loan. Dkt. 41 at 25. But that argument ignores the plain language of the contract: the "Lender shall not unreasonably withhold its consent to an amendment to the [BAMCAP loan] documents . . . provided that such amendment does not materially increase" the amount of debt. Dkt. 17-3 at § 6.19.[25]

Fifth, Defendants argue that the facts alleged do not support the intent or injury elements of a fraud claim. Dkt. 41 at 26–27. But this argument is just a dispute about the well-pled facts, which must be accepted as true. And those allegations show that (1) Defendants represented that they would not withhold consent to a modification of the BAMCAP loan; (2) only a few months after agreeing not to withhold consent, they withheld consent; (3) the modification involved only a

---

[25]    Defendants also argue that (1) this provision does not apply because another provision in the agreement prohibits increases in debt without the lender's consent, and (2) even if it did apply, the decision was reasonable. Dkt. 41 at 25. Both arguments are wrong for the reasons discussed *infra* at § VIII.

1% increase in indebtedness; and (4) the withholding of consent allowed them to declare a default

and extract nearly $40 million in fees from the Plaintiffs—far in excess of the proposed $530,000

increase to the BAMCAP loan. *See, e.g.*, dkt. 5 at ¶¶ 118, 413. These allegations satisfy Plaintiffs'

pleading burden. *See, e.g.*, *BTL COM Ltd.*, 278 Ga. App. at 261.

Finally, Defendants contend the Complaint does not allege any misrepresentation by WP

Development Partners, GRE WP LLC, or Gamma Lending Omega.[26] Dkt. 41 at 26. But Plaintiffs

allege that Kalikow, acting as representative for **each** of the Defendant entities, made

misrepresentations. Dkt. 5 at ¶ 10. Thus, each time Kalikow made one of his many

misrepresentations, he made it on behalf all of the related entities. *Id.* That is sufficient.[27]

### B.      Plaintiffs state a claim for tortious interference.

In Count VIII, Plaintiffs allege Defendants tortiously interfered with their relationships

with third-party lenders. Dkt. 5 at ¶¶ 386–94. "As a general rule, the determination as to whether a

defendant has tortiously interfered with a plaintiff's contractual, or business relations is a question

. . . for the jury." *Britt/Paulk Ins. Agency, Inc. v. Vadroff Ins. Agency, Inc.*, 952 F. Supp. 1575,

1582 (N.D. Ga. 1996); *CBS, Inc. v. Ahern*, 108 F.R.D. 14, 27 (S.D.N.Y. 1985) ("[w]hether

defendants maliciously interfered with the negotiations or contract is a factual question" that

"must await determination in later proceedings").[28] Defendants make several meritless arguments

---

[26]      Defendants do not raise this argument with respect to Kalikow or Gamma Real Estate Capital LLC. Dkt. 41 at 26.

[27]      To hold otherwise would allow the Gamma Defendants to take unfair advantage of their choice to conduct business through an interrelated web of entities. Several courts have allowed group pleading in such circumstances. *See, e.g.*, *Anwar v. Fairfield Greenwich Ltd.*, 728 F. Supp. 2d 372, 405–06 (S.D.N.Y. 2010) (group pleading in securities fraud case satisfies pleading standards where a complaint "alleges a tight weave of connections between the [defendants]"); *Barber-Colman Co. v. Trend Grp., Ltd.*, 85 C 4434, 1986 WL 2024, at *3 (N.D. Ill. Feb. 7, 1986) (Rule 9(b) is satisfied when defendants are related "corporate insiders . . . if the complaint sufficiently describes the fraudulent acts and provides the individuals with sufficient information to answer the allegations.").

[28]      Tortious interference is substantially the same under both New York and Georgia law. *Compare Fed. Express Corp. v. Petlechkov*, 1:15-CV-2565-TWT, 2017 WL 6460261, at *5 (N.D. Ga. Dec. 18, 2017) (elements under Georgia law) *with Guzik v. Albright*, 16-CV-2257 (JPO), 2018 WL 4386084, at *5 (S.D.N.Y. Sept. 14, 2018) (elements under New York law).

in an attempt to have this claim dismissed. Dkt. 41 at 27–29. Each fails.

First, Defendants argue that Thomas, not Plaintiffs, had the relationship with the non-party lenders. Dkt. 41 at 27–28. But this argument ignores well-pled allegations to the contrary. Plaintiffs, for example, allege that there was a plan for one of the lenders to "pay[] off the existing loans on the Wade Park properties." Dkt. 5 at ¶ 164. That is, the third-party lender planned to pay off loans on the properties owned by Plaintiffs. *Id.* And Plaintiffs allege that they—not Thomas individually—would have received a loan from a third-party lender but for Defendants' interference. *Id.* at ¶ 175 ("But for . . . the Gamma Defendants' interference, Columbia Pacific would have proceeded with a loan to Wade Park Land and Wade Park Land Holdings . . . ."). From these facts, the reasonable inference—which must be drawn in Plaintiffs' favor—is that Plaintiffs had a business relationship with the non-party lenders.

Second, Defendants argue that the allegations "lump[]" Defendants together. Dkt. 41 at 28. But this is an argument under Rule 9(b), which does not apply to a tortious-interference claim. *See Cespuglio v. Ward*, 03 Civ. 8603 (SAS), 2004 WL 1088235, at *6 (S.D.N.Y. May 13, 2004) (evaluating tortious-interference claim under Rule 8(a)). The Complaint provides Defendants with adequate notice of the claims against them, which is all that is required at this stage. *See id.* And as discussed above, even if Rule 9(b) does apply do the tortious-interference claim, group pleading is allowed when there is "a tight weave of connections" among the defendants. *See Anwar*, 728 F. Supp. 2d at 405–06.

Third, Defendants argue there are no allegations that they interfered with lenders "other than" Bluebell and Columbia Pacific. Dkt. 41 at 28. But this argument goes too far, as it suggests it would be acceptable for Defendants to tortiously interfere with Plaintiffs' relationships with two lenders so long as they did not interfere with any more. That is obviously not the law. And if

Plaintiffs sufficiently allege that Defendants tortiously interfered with their relationship with Bluebell and Columbia Pacific, as Defendants appear to concede, Plaintiffs have stated a claim for tortious interference.[29]

Fourth, Defendants contend that the tortious-interference claim fails because Plaintiffs have not pled that Defendants acted "solely out of malice." Dkt. 41 at 28 (citing *Hassan v. Deutsche Bank A.G.*, 515 F. Supp. 2d 426, 429 (S.D.N.Y. 2007), *aff'd* 336 F. App'x 21 (2d Cir. 2009)). But Defendants omit the very next line from *Hassan*, which explains that a defendant may be liable for tortious interference if it acted "solely out of malice, *or* used dishonest, unfair, or improper means." *Hassan*, 515 F. Supp. 2d at 429 (emphasis added). Plaintiffs thus do not need to plead that the Defendants acted "solely out of malice"; they can state a claim by alleging the use of dishonest, unfair, or improper means. Plaintiffs have satisfied this element by alleging that Defendants leveraged a fraudulent scheme to seize Plaintiffs' property. Dkt. 5 at ¶¶ 48–209, 236–325.

Fifth, Defendants argue Plaintiffs have not alleged that they engaged in wrongful means. Dkt. 41 at 29. Under New York law, "wrongful means" includes acts such as "fraud or misrepresentation," or "some degrees of economic pressure." *Guard-Life Corp. v. S. Parker Hardware Mfg. Corp.*, 50 N.Y.2d 183, 191 (1980). And that is exactly what Plaintiffs allege happened here. Dkt. 5 at ¶¶ 48–209, 236–325.

Sixth, Defendants claim Plaintiffs have not alleged an injury because the allegation Plaintiffs would have obtained financing from the lenders but for Defendants' interference is "conclusory." Dkt. 41 at 29. But again, Defendants are just disputing well-pled allegations. For

---

[29] In any event, Defendants are flat-out wrong that Plaintiffs alleged interference only with Bluebell and Columbia Pacific. They also allege that the Gamma Defendants interfered with their relationships with Synovus and Ardent Financial. *See, e.g.*, Dkt. 5 at ¶¶ 147, 155.

example, Plaintiffs allege that Bluebell International agreed to a term sheet that would provide a

$725 million loan for Wade Park. Dkt. 5 at ¶ 157. Then, the Gamma Defendants called Bluebell's

principal and called him a "thief" and a "scumbag." *Id.* ¶ 159. Only after those wrongful actions

did the Bluebell loan fall apart. *Id.* ¶¶ 160–61. The reasonable inference to draw based on those

facts is that Plaintiffs would have obtained financing but for the Gamma Defendants' tortious

interference. Plaintiffs have stated a claim, and the Court should deny the Motion.

> **C.   Plaintiffs state a claim for punitive damages and attorneys' fees.**

Counts XVII and XVIII state claims for punitive damages and attorneys' fees under

O.C.G.A. §§ 51-12-5.1 and 13-6-11. Dkt. 5 at ¶¶ 466–71. The Gamma Defendants argue that those

statutes do not apply when tort claims do not arise under Georgia law. Dkt. 41 at 39. But as

discussed above, the tort claims at issue here ***do*** arise under Georgia law. *Supra* at §§ VI.A.1,

VI.B. The Gamma Defendants' argument is therefore meritless. Further, because Plaintiffs have

alleged plausible claims for relief, their punitive damages and attorneys' fees survive dismissal.

Finally, whether the Gamma Defendants have acted in bad faith or been stubbornly litigious under

§ 13-6-11 is a jury question not appropriate for resolution at the motion-to-dismiss stage. *See*

*Dotson v. Dish Network L.L.C.*, No. 2:19-CV-00021, 2019 WL 9093522, at *2 (S.D. Ga. June 25,

2019).

> **VII.   Plaintiffs state a claim for misappropriation of trade secrets.**

Count XVI alleges that Defendants violated the Georgia Trade Secrets Act, O.C.G.A. § 10-

1-760, by misappropriating the Thomas-Wade Park Trade Secrets. Dkt. 5 at ¶¶ 453–65. The

Gamma Defendants lob a handful of arguments in favor of dismissal, all of which are meritless.

First, Defendants begin with the confusing argument that "the only specifics [Plaintiffs]

allege as to how Defendants purportedly 'used' the [Thomas-Wade Park Trade Secrets] concern

other properties in which Plaintiffs do not allege they had an interest, not Wade Park." Dkt. 41 at

38. But that is wrong: Plaintiffs explicitly allege the Gamma Defendants "used the [Thomas-Wade

Park Trade Secrets] to interfere with Plaintiffs' prospective investors and lenders for Wade Park."

Dkt. 5 at ¶ 248; *see also id.* ¶¶ 143–75 (detailing use and interference).

      Second, Defendants argue that the Court can ignore that Goodman shared the trade secrets

because the allegations are pled "on information and belief." Dkt. 41 at 38.[30] But "[p]leading on

information and belief is a desirable and essential expedient when matters that are necessary to

complete the statement of a claim are not within the knowledge of the plaintiff but he has

sufficient data to justify interposing an allegation on the subject." *United States ex rel. Chorches*

*for Bankr. Est. of Fabula v. Am. Med. Response, Inc.*, 865 F.3d 71, 82 (2d Cir. 2017). It is thus

proper for Plaintiffs to plead on information and belief specific communications, including an in-

person meeting between Goodman and Kalikow, where the Thomas-Wade Park Trade Secrets

were shared, to reflect the fact that Plaintiffs were not at these meetings or involved in these

discussions. Dkt. 5 at ¶¶ 237–39.[31]

      Third, Defendants repeat their prior argument that there are not enough facts pled to

support the conclusion that they knew Goodman had a duty to maintain the secrecy of the trade

secrets. Dkt. 41 at 38–39. They argue that their knowledge of Goodman's role as manager of

Fourth Quarter Properties was insufficient because Fourth Quarter Properties was a holding

company for portions of the Orlando property, not Wade Park. *Id.* But Defendants wholly ignore

that Goodman ***also*** had a duty to maintain secrecy under the joint venture, which was formed to

develop Wade Park. Dkt. 5 at ¶¶ 214–15, 217–18. And they ignore the allegations that they knew

---

[30]     Defendants cite *Argos*, but the complaint in that case included only "conclusory allegations." *Argos USA LLC v. Young*, 1:18-CV-02797-ELR, 2019 WL 4125968, at *8 (N.D. Ga. June 28, 2019). Here, Plaintiffs pled specific communications. Dkt. 5 at ¶¶ 237–39.

[31]     *See also supra* at 19–20 (alleging the sharing of trade secrets on "information and belief").

about the joint venture. *Id.* at ¶ 235. These allegations are sufficient to state a claim.

Next, Defendants argue that Plaintiffs have not alleged reasonable efforts to maintain confidentiality. Dkt. 41 at 39. But they cite only to an inapplicable decision from a Georgia superior court. *Id.* (citing *World Micro Components, Inc. v. Crestwood Tech. Grp. Corp.*, No. 1301245-49 (Cobb Sup. Ct. Feb. 10, 2014)). Contrary to the Gamma Defendants' arguments, there is extensive case law that allegations just like those at issue here are sufficient to state a claim under the GTSA. *See, e.g.*, *Optionality Consulting PTE. LTD. v. Edge Tech. Grp. LLC*, No. 18-CV-5393 (ALC), 2021 WL 310942, at *7 (S.D.N.Y. Jan. 29, 2021); *TRS & Assocs., Inc. v. Document Imaging Techs., Inc.*, No. 1:08-cv-03264-JOF, 2010 WL 11610232, at *8 (N.D. Ga. Sept. 15, 2010). The Court should deny the Motion.[32]

### VIII.   Plaintiffs state a claim for breach of contract.

Count IX of the Complaint is a straight-forward contract claim against Gamma Real Estate Capital and Gamma Lending Omega for breaching the Gamma Bridge Loan. Dkt. 5 at ¶¶ 395–400. Plaintiffs allege Gamma Real Estate and Gamma Lending Omega agreed not to unreasonably withhold consent to a modification of the BAMCAP loan but breached that agreement when they unreasonably withheld their consent.[33] *Id.* ¶¶ 396–98.

The Gamma Defendants' arguments for dismissal fail. First, the Gamma Defendants contend they were allowed to withhold consent for any reason. Dkt. 41 at 30. But that ignores the plain language of the Gamma Bridge Loan, which says that the "Lender shall not unreasonably withhold its consent to an amendment to the [BAMCAP loan] documents . . . ." Dkt. 17-3 at

---

[32]     The Gamma Defendants also repeat their argument that Judge Batten already found that Goodman did not disclose any trade secrets. Dkt. 41 at 38. But once again, the Gamma Defendants' Motion was not before Judge Batten. This Court should independently evaluate the misappropriation of trade secrets with respect to the Gamma Defendants.

[33]     Gamma Real Estate entered into the Gamma Bridge Loan Agreement and then assigned its interests to Gamma Lending Omega. Dkt. 5 at ¶ 84.

§ 6.19. Gamma Real Estate Capital and Gamma Lending Omega breached this provision by

unreasonably withholding consent.

Nevertheless, the Gamma Defendants contend that this obligation did not apply to them

because a ***different*** section of the contract states that Plaintiffs "shall not, without the prior consent

of Lender, incur any Indebtedness." Dkt. 41 at 30 (quoting dkt. 17-3 at § 8.2). According to

Defendants, § 8.2 is more specific and therefore prevails over the supposedly more general one in

§ 6.19. *Id.* But that is wrong. Section 6.19, which explicitly refers to modifications of the

BAMCAP loan and contemplates non-material increases in debt, is much more specific than the

general prohibition on incurring additional debt in § 8.2. At a minimum, which section prevails is

a question of the parties' intent that cannot be decided on a motion to dismiss. *See, e.g.*, *Williams*

*v. Strategic Distrib., Inc.*, 1:06-cv-1361-BBM, 2007 WL 9710188, at *5 (N.D. Ga. Nov. 7, 2007);

*GEM Advisors, Inc. v. Corporacion Sidenor, S.A.*, 667 F. Supp. 2d 308, 328 (S.D.N.Y. 2009).

Defendants also argue that Plaintiffs have not "plausibly alleged Omega's decision to

withhold consent was unreasonable" or that they suffered injury. Dkt. 41 at 30. But the Complaint

specifically alleges "[t]he Gamma Defendants acted unreasonably in withholding consent." Dkt. 5

at ¶ 124. And the allegations are detailed: Plaintiffs sought a one-month extension of the

BAMCAP loan that would have increased the loan's amount by about 1% to allow Thomas time

to finalize permanent financing. *Id.* ¶¶ 117–18. The Gamma Defendants refused consent. *Id.* ¶ 123.

Their refusal meant that Plaintiffs could not secure permanent financing, sending the BAMCAP

loan into default and allowing Defendants to declare a cross-default on the Gamma Bridge Loan—

even though Plaintiffs had paid every dollar due up to that date on that loan. *Id.* ¶¶ 128–31.

Defendants used the manufactured default to extract more than $38 million in additional cash and

property from Plaintiffs (when the proposed modification was $530,000). *Id.* ¶¶ 118, 133–38.

These allegations are sufficient to state a claim.

### IX.    Plaintiffs state a claim for unjust enrichment.

Count X alleges unjust enrichment. Dkt. 5 at ¶¶ 401-407. Defendants' first arguments for dismissal here are that a claim for unjust enrichment is not viable in the face of an express contract or, under New York law, when it is duplicative of a breach-of-contract claim. Dkt. 41 at 30–31. First, Georgia law applies.[34] Second, even if New York law applies, Count X is pled in the *alternative* to Plaintiffs' breach of contract claim—not duplicative of it.[35] *Id.*; dkt. 5 at ¶ 407. Alternative pleading is allowed, Fed. R. Civ. P. 8(a)(3), and the Gamma Defendants do not contend otherwise. This argument is no basis for dismissal.

Next, Defendants argue that it would be against equity and good conscience to grant relief. Dkt. 41 at 31. But that is a factual issue. *See, e.g.*, *Phillips*, 955 F. Supp. 2d at 216 (denying motion to dismiss unjust enrichment claim, where the defendant disputed the facts because the plaintiff was permitted to pursue this claim in the alternative and had factually supported it); *Elkon v. Am. Reliable Ins. Co.*, No. 08-CV-3717 (TCP), 2010 WL 11629550, at *8 (E.D.N.Y. Feb. 23, 2010); *Howe v. Bank of N.Y. Mellon*, 783 F. Supp. 2d 466, 486 (S.D.N.Y. 2011) (whether equity and good conscience militate against allowing a defendant to retain what the plaintiff is seeking to recover was an issue of fact). Plaintiffs have pled that they paid Defendants $76.6 million in cash and property and that Defendants gained title to Wade Park, valued at over $550 million, as a result of their fraudulent, tortious, and criminal conduct. Dkt. 5 at ¶¶ 402–03. While Defendants challenge the accuracy of that valuation (dkt. 41 at 31 n.19), they are not entitled to ignore these

---

[34]    The Gamma Defendants offer no analysis of why New York law applies. Dkt. 41 at 30 n.18. But under these rules, Georgia law applies because Plaintiffs are domiciled in Georgia, negotiated the agreements from Georgia, and the agreements were delivered to Georgia. Dkt. 5 at ¶¶ 7−9. *See Phillips v. Reed Grp., Ltd.*, 955 F. Supp. 2d 201, 238–39 (S.D.N.Y. 2013) (applying "center of gravity test" to quasi-contract claims including unjust enrichment).

[35]    No contract would exist if, for example, the Court finds in favor of Plaintiffs on their claim for declaratory relief.

well-pled allegations at this stage. Plaintiffs allege unjust enrichment, and Defendants have not shown otherwise.

## X.      Plaintiffs state a usury claim.

In Count XI, Plaintiffs allege that Gamma Real Estate Capital and Gamma Lending Omega charged usurious interest on the Gamma Bridge Loan, at an effective rate of $280.37% per annum. Dkt. 5 at ¶¶ 409–17. In their Motion, the Gamma Defendants do not claim that such interest is not usurious. Rather, they argue only that New York law exempts loans in excess of $2.5 million from usury limits. Dkt. 41 at 32.

But New York law does not apply because application of the New York choice-of-law provision would violate public policy by allowing Defendants to circumvent usury laws. *See Hengle v. Asner*, 433 F. Supp. 3d 825 (E.D. Va. 2020) (declining to apply choice of law provision when application would allow lender to avoid usury laws).[36] And because the loan is usurious under both Georgia law (where plaintiffs reside and where the contract was delivered) and Texas law (where the property at issue is located), Plaintiffs have stated a plausible usury claim. Dkt. 5 at ¶¶ 408–17; O.C.G.A. § 7-4-18; Tex. Fin. Code Ann. § 303.002.

## XI.     Plaintiffs state a fraudulent-transfer claim under bankruptcy and Georgia law.

Finally, Counts XII and XIII allege that the transfer of Wade Park to Gamma Lending Omega and WP Development Partners was constructively fraudulent under 11 U.S.C. §§ 544, 548, 550, and 551 and O.C.G.A. § 18-2-70, *et seq.* because it left Plaintiffs with no assets and because Plaintiffs did not get reasonably equivalent value in exchange. Dkt. 5 at ¶¶ 418–34. There are two elements to this claim: (1) that a debtor became insolvent as a result of the transfer, and (2) that the

---

[36]      Further, the New York choice-of-law provision is invalid and unenforceable because the Gamma Bridge Loan is the product of inceptive fraud. *See supra* at § VI.A.

debtor "received less than a reasonable equivalent value in exchange for [the] transfer." *See* 11 U.S.C. § 548(a)(1).[37] Defendants challenge both of these elements. Dkt. 41 at 32–36.

First, Defendants argue that Plaintiffs failed to plead the insolvency prong. *Id.* at 32–33. But the Complaint explains that Plaintiffs Wade Park Land and Wade Park Land Holdings' nearly sole asset was the Wade Park property. Dkt. 5 at ¶¶ 7, 8, 419. Plaintiffs also had substantial remaining intercompany loans and continued third-party liabilities for property construction and development. *Id.* ¶¶ 4, 42, 67, 108, 206. When Wade Park was transferred away, Plaintiffs were left with virtually no assets and became insolvent—unable to repay any of their remaining creditors. *Id.* ¶¶ 424, 432. When Defendants received the Estoppel Certificate, they understood better than anyone that Plaintiffs had millions of dollars in remaining project debts. These allegations provide Defendants with the sufficient and fair notice at the pleadings stage. *Hassett v. Zimmerman (In re O.P.M. Leasing Servs., Inc.*), 32 B.R. 199, 203 (Bankr. S.D.N.Y. 1983).

Second, Defendants argue that Plaintiffs have not sufficiently pled the reasonably equivalent value element because they dispute the valuation of Wade Park. Dkt. 41 at 34. But the value of the property is a factual allegation that must be accepted as true at this stage. *See, e.g.*, *In re Aphton Corp.*, 423 B.R. 76, 93 (Bankr. D. Del. 2010) (holding it was inappropriate to determine on a motion to dismiss whether the value alleged was accurate; "[a]ll that is needed at this stage is an allegation that there was a transfer for less than reasonably equivalent value at a time when the Debtors were insolvent."). And Plaintiffs did not simply pick the value out of thin air. Instead, they pled that Wade Park's ***appraised*** value was over $550 million and at least $417.25 million more than the Gamma loan balances when transferred. Dkt. 5 at ¶¶ 36, 413.

Thus, the value Plaintiffs received ($130 million in debt satisfaction) was worth less than

---

[37]     "The analysis of alleged fraudulent transfers under [Georgia] law and bankruptcy law is substantially the same." Dkt. 41 at 36. *See also infra* at 40 (New York law is inapplicable and altogether different).

24% of the value they gave up (property with an appraised value of over $550 million). *Id.* ¶ 413. Courts regularly find that there is not a reasonably equivalent value exchanged when the disparity is far less than at issue here. *See, e.g.*, *In re Webb Mtn, LLC*, 420 B.R. 418, 444–45 (E.D. Tenn. 2010) (providing examples of when the test is met in debt satisfaction cases, with the 87% and 78% examples passing the test and the 38.5% and 40.5% examples failing it); *1800 W. Lake St. LLC v. Am. Chartered Bank*, No. 14 C 420, 2014 WL 7330924, at *4 (N.D. Ill. Dec. 22, 2014) (no reasonable equivalence because the "disparity between the discharged debt and the property value [was] greater by several orders of magnitude"). Plaintiffs' allegations must be accepted as true, and show that Plaintiffs obtained far less than a reasonable equivalent value for the transfer.

Defendants, though, urge the Court to ignore these well-pled allegations based on an Estoppel Certificate made around the time of the transfer. Dkt. 41 at 34. This argument misses the mark. First, the Estoppel Certificate was not attached or referred to in the Complaint, nor does the Complaint rely heavily upon it, and, therefore, it is not properly before the Court on a motion to dismiss. *See, e.g.*, *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002). Second, the case on which Defendants rely to argue that the estoppel certificate controls, *JRK Franklin, LLC v. 164 E. 87th St. LLC*, 27 A.D.3d 392, 393 (1st Dep't 2006), provides that estoppel certificates do not apply where "the certifying party can show a defense to the making of the document, such as fraud or duress, or that the assignee accepted the certificate with knowledge of the contrary, and true, state of the facts." *Id*. Here, of course, Plaintiffs allege that the Gamma Defendants were engaged in fraud. *See generally* dkt. 5; *id.* at Count VII. Plaintiffs also allege facts from which a reasonable person could infer that, despite the Estoppel Certificate, Defendants had knowledge of

the true state of facts regarding insolvency and value, including by way of GRE WP's 75% membership interest in Wade Park Ventures.[38]

Finally, Defendants, relying on New York law, argue that the fraudulent transfer claims should be dismissed *per se* because the transfers were in payment of an antecedent debt. Dkt. 41 at 35–36. However, the cases on which they rely each deal solely with N.Y. McKinney's Debtor and Creditor Law § 273, which is inapplicable to Plaintiffs' federal and Georgia fraudulent transfer counts.[39] Additionally, unlike in *In re AppliedTheory Corp.*, 330 B.R. 362, 363 (S.D.N.Y. 2005), Plaintiffs do not seek to unwind the grant of a security interest to Defendants. Rather, they seek to unwind the deed-in-lieu. Dkt. 5 at ¶ 419. To make the reasonably equivalent value determination under the Bankruptcy Code and Georgia law, the Court must "examine the totality of the circumstances surrounding the transfer in question." *Pereira v. WWRD US, LLC* (*In re Waterford Wedgwood USA, Inc.*), 500 B.R. 371, 381 (Bankr. S.D.N.Y. 2013). Under this standard, it would be inappropriate to dismiss the fraudulent transfer claims solely because the transfer satisfied a preexisting debt, and the Motion should be denied.

## CONCLUSION

For all these reasons, the Motion to Dismiss should be denied. In the alternative, Plaintiffs request leave to amend the Complaint to address any issues identified by the Court. Respectfully submitted, this 14th day of May, 2021.

---

[38]     Defendants do not cite cases involving estoppel certificates in the fraudulent transfer context; supporting the idea that a pre-petition debtor can bind a post-petition debtor-in-possession/trustee to alienate bankruptcy causes of action; or permitting parties to insulate themselves from avoidance actions via self-serving documents. Even if the Estoppel Certificate was properly before the Court, it merely raises additional fact issues, including whether Defendants insisted on the Certificate, regardless of its accuracy, knowing full well of their avoidance exposure

[39]     Defendants' cases depend on *HBE Leasing Corp. v. Frank*, 48 F.3d 623 (2d Cir. 1995), in which the Second Circuit explained that, "[u]nlike the Bankruptcy Code, [New York's] UFCA is a set of legal rather than equitable doctrines, whose purpose is not to provide equal distribution of a debtor's estate among creditors, but to aid specific creditors who have been defrauded by the transfer of a debtor's property . . . Thus, the UFCA does not bestow a broad power to reorder creditor claims or to invalidate transfers that were made for fair consideration, at least where no actual intent to hinder, delay, or defraud creditors has been shown." *Id.* at 634.

*/s/ James W. Cobb*

James W. Cobb *(admitted pro hac vice)*
jcobb@caplancobb.com
Julia Blackburn Stone *(admitted pro hac vice)*
jstone@caplancobb.com
Jessica A. Caleb *(admitted pro hac vice)*
jcaleb@caplancobb.com

**CAPLAN COBB LLP**
75 Fourteenth Street NE, Suite 2750
Atlanta, Georgia 30309
Tel: (404) 596-5600
Fax: (404) 596-5604

Counsel for Plaintiffs

**STONE & BAXTER, LLP**
By:

*/s/ David L. Bury, Jr.*

Ward Stone, Jr. *(admitted pro hac vice)*
wstone@stoneandbaxter.com
David L. Bury, Jr. *(admitted pro hac vice)*
dbury@stoneandbaxter.com
577 Mulberry Street, Suite 800
Macon, Georgia 31201
(478) 750-9898; (478) 750-9899 (fax)

Counsel for Debtors and Plaintiffs
Wade Park Land, LLC and Wade Park
Land Holdings, LLC