# Kramer Levin

Michael J. Dell
Partner
T 212.715.9129
F 212.715.8000
mdell@kramerlevin.com

1177 Avenue of the Americas
New York, NY 10036
T 212.715.9100
F 212.715.8000

The Honorable Judge Lewis J. Liman  **February 17, 2022**
United States District Court
Southern District of New York
500 Pearl Street, Room 701
New York, NY 10007 (VIA ECF)

Re:   *Wade Park, et al. v. Kalikow, et al.*, No. 1:21-cv-01657-LJL-RWL

Dear Judge Liman:

     Defendants respectfully submit this letter to address whether 8 Del. C. § 124 applies to Count I. As shown below, if the ultra vires doctrine applies to LLCs, then Delaware law, including Section 124, bars Count I.

     Count I is a paradigmatic example of why the ultra vires doctrine has been abolished in Delaware except in limited circumstances spelled out in Section 124 that are not present here. Plaintiffs, Stanley Thomas, and Wade Park Ventures, LLC ("Ventures"), the LLC in question here (all four together, the "Obligors"), executed the August, October and December 2018 Forbearance Agreements and the DIL (together with the deed transfers, the "Transactions") that gave WPH and WPL more time to repay their loans in exchange for, among other things, releases. In August 2020, long after receiving the benefit of those forbearances, plaintiffs filed their complaint, which seeks a declaration, in equity, that the Transactions to which they themselves agreed were "ultra vires."[1] As Section 124 recognizes, that "have-your-cake-and-eat-it-too" ploy to try to avoid their releases and other obligations would be totally inequitable. If the ultra vires doctrine has any remaining purpose, it is to protect plaintiffs from unauthorized transactions to which they were *not* parties. The doctrine is not a means for parties to escape contracts to which they agreed, and particularly not after they have obtained the benefits of those contracts.

     The ultra vires doctrine was a "double-edged sword, available under certain circumstances to both corporations and those contracting with corporations to escape from their contractual liabilities." *SEPTA v. Volgenau*, 2012 WL 4038509, at *2 n.8 (Del. Ch. Aug. 31, 2012), *aff'd*, 91 A.3d 562 (Del. 2014). Section 124, first enacted in 1967, "abolishes the doctrine of ultra vires in Delaware, except in three narrow circumstances." *Id.* at *3 n.10; *see also* Balotti & Finkelstein, Del. L. of Corp. & Bus. Org. § 2.3 (2022) (same). The purpose of Section 124 was "to prevent both corporations and those contracting with them from avoiding contracts that could be classified as outside the scope of the corporation's authorized powers." *Volgenau*, 2012 WL 4038509, at *2. "Predictability and confidence in the efficacy of an agreement were the commercially reasonable objectives" of the statute. *Id.*[2]

---

[1] The Obligors agreed in the DIL they are *not* entitled to equitable relief "in connection with this Agreement, the transactions contemplated herein, the loan or the GRE loan documents or BAMCAP loan documents." (Ex. J § 12).

[2] "The codification [of Section 124] was consistent with then existing Delaware law and American law generally." Balotti § 2.3; *see also* David A. Drexler, *et al.*, Del. Corp. Law & Prac. § 11.05 (2021) (before Section 124, "the case law in Delaware was such that the doctrine had

**The Honorable Judge Lewis J. Liman**
February 17, 2022



It is not clear that the ultra vires doctrine even applies outside the corporation context. *See Obeid v. La Mack*, 2016 WL 5719779, at *11 (S.D.N.Y. Sept. 30, 2016) ("Neither the parties' submissions nor the Court's own research has identified case law applying the ultra vires doctrine outside of the corporation context" to LLCs). But if the doctrine does apply to LLCs, then Section 124 also applies to limit its scope. *See id* (in case concerning LLC, §124 "narrowly" limited "application [of the ultra vires doctrine] to three circumstances outlined by statute"); *In re Micron Devices, LLC*, 2021 WL 2021468, at *11-12 (Bankr. S.D. Fla. May 20, 2021) (§124 "barred" LLC from "asserting lack of authority as a basis to set aside the Transfer Agreements" it executed). There is no reason why the doctrine would be abolished for corporations but kept alive for LLCs. Parties contracting with LLCs deserve the same "[p]redictability and confidence" as parties contracting with corporations. As the Court explained in *CMI II, LLC v. Interactive Brand Development, Inc.*, 2006 WL 2770095 (N.Y. Sup. Ct. Sept. 26, 2006), involving a Georgia LLC: "[T]he defense of ultra vires has no application to plaintiff's claims against iBill, a Georgia limited liability company, because the defense of ultra vires has essentially been abolished in Georgia." *Id.* at *10-11.

Section 124 was enacted to prevent the type of argument WPL and WPH make here — that their own purported lack of authority invalidates their own Forbearance Agreements, DIL and deed transfers — because that would "create injustice." *Kuratle Contracting, Inc. v. Linden Green Condo., Ass'n*, 2013 WL 6140000, at *9-10 (Del. Super Ct. Nov. 19, 2013) ("Linden Green's failure to follow its own internal procedures is not a proper basis for this Court to find the 2010 Agreement invalid."). If it were otherwise, "[t]he party who failed to follow its own procedures could wait until the contract was no longer beneficial to it, and then come to the Court with evidence of that deficiency and ask to have the contract held invalid." *Id.* at *9; *see also Reliable Mfg. Corp. v. Leigh*, 703 F.2d 996, 1003 (7th Cir. 1983) (under Delaware law company could not "escape its liability … by arguing that a contract it executed was beyond its power"). That is just what WPH and WPL are trying to do here. They did not complain when the Forbearance Agreements and DIL gave them more time to try to find financing to pay back the four-month bridge loan. As the court explained in *Chattanooga-Hamilton Cnty. Hosp. Auth. v. Hosp. Auth. of Walker, Dade, & Catoosa Cntys.*, "a party may not use the ultra vires defense and retain the benefits of the transaction": "Defendants received and retained funds from Plaintiff under the Line of Credit Note and the Joinder Agreement at issue in this action, and they consequently could not assert the ultra vires defense." 2014 WL 12489763, at *4 (N.D. Ga. Aug. 28, 2014) (applying Georgia law).[3]

The court in *Micron Devices* referenced a distinction between "void" and "voidable" acts of an LLC. *See* 2021 WL 2021468, at *11-12. However, as Delaware recently confirmed in amending its Limited Liability Act as of August 1, 2021, both "void" and "voidable" acts may be ratified. *See* 6 Del. C. § 18-106(e). The Delaware Bill Summary, 2021 Reg. Sess. S.B. 114 (June 30, 2021, Del. General Assembly, 151st General Assembly, 2021), explains that "New subsection (e) is intended to provide a rule different from the rule applied in *Compo[S]ecure, L.L.C. v. Cardux*,

---

very little scope"); Edward P. Welch, *et al.*, Folk on Del. Gen. Corp. Law § 124.01 (2021) ("Even before adoption of section 124, however, Delaware case law had limited its application."). For example, Delaware courts had held that "*ultra vires* was not a defense … to a fully executed contract." Folk § 124.01 (citing *Delmarva Poultry Corp. v. Showell Poultry Corp.*, 179 A.2d 796, 799 (Del. 1962)).

[3] Thomas "cannot cause" Ventures, WPH and WPL "to deny the validity of an action he took on [their] behalf," namely, signing the Forbearance Agreements and the DIL and causing the deeds to be transferred, "on the grounds that he lacked corporate authority." *Carriage Realty P'ship v. All-Tech Auto Auto., Inc.*, 2001 WL 1526301, at *7 (Del. Ch. Nov. 27, 2001).

**The Honorable Judge Lewis J. Liman**
February 17, 2022



*LLC*, 206 A.3d 807 (Del. 2018), and *Absalom Absalom Trust v. Saint Gervais LLC*, 2019 WL 2655787 (Del. Ch. June 27, 2019), that acts or transactions determined to be void generally may not be ratified." *See also* Folk § 18-106.02 (same).

The Delaware legislature determined that *CompoSecure* and *Absalom* were wrongly decided. Those cases would not help plaintiffs in any event. In both, the LLC agreements expressly state that particular actions are "void and of no force or effect whatsoever," *CompoSecure*, 206 A.3d at 816-17, and "null and void," *Absalom*, 2019 WL 2655787, at *3.[4] Here, in contrast, the LLCA contains no such language, the Transactions were not void under the LLCA, and the Transactions were ratified by plaintiffs and Ventures. Section 3.3 authorized Thomas, Ventures' manager (AC ¶ 86), to cause Ventures, WPH or WPL to take "any act in contravention of this Agreement" with "the written consent" of "the Initial Lender" (Ex. A § 3.3(vi)), namely GRE and its "assigns." (Ex. A § 1.1). Omega, GRE's assignee (AC ¶ 84), consented to the Transactions by signing the Forbearance Agreements and the DIL. (Exs. G at 14; H at 15; I at 14; J at 8). And Section 3.3 trumps Section 2.4(d) when the Initial Lender consents. If it were otherwise, Sections 3.3(v) and (vi) would be mere surplusage.[5] Section 2.4(d) did not prohibit the Transactions in any event, because it states "the Initial Loan shall be deemed permitted under this section," and that term is defined to include "as the same may be amended, modified, [or] supplemented." (Ex. A at 4, 10). The Transactions amended, modified, and/or supplemented the Initial Loan. (*E.g.*, Ex. D ¶ 2; Ex. J. at Recital N; AC ¶ 413). Furthermore, Ventures (with Thomas signing as its manager), plaintiffs, and Thomas ratified the Transactions by signing the agreements. *See* 6 Del. C. § 18-106(e). And all of the Obligors represented, warranted and covenanted that they had full power and authority to execute and perform the DIL, it was their valid and binding obligation, and it would not breach any agreement to which they were parties, including the LLCA. (Ex. J. ¶ 9(f)). The Obligors also acknowledged and agreed that their execution and performance of the Forbearance Agreements would not violate or breach any agreement to which they were party, again including the LLCA. (Exs. G, H, I §5(d)).[6]

Respectfully yours,

/s/ Michael J. Dell

cc (via ECF):  James W. Cobb

---

[4] The *CompoSecure* court had no need to determine whether Section 124 applies to LLCs because the parties agreed the issue to be decided was whether the act in question was "void" or "voidable."  *See CompoSecure*, 206 A.3d at 816-17.  The parties do not appear to have raised Section 124 in *Absalom*.

[5] *See Osborn v. Kemp*, 991 A.2d 1153, 1159 (Del. 2010) ("We will read a contract as a whole and we will give each provision and term effect, so as not to render any part of the contract mere surplusage. We will not read a contract to render a provision or term meaningless or illusory.").

[6] Even had the BAMCAP Loan acquired by Omega not supplemented the Initial Loan, as it did, and even had Section 3.3(vi) not trumped Section 2.4(d), as it did, Section 2.4(d) would not bar the Transactions insofar as they applied to WPH because WPH was not an obligor on the BAMCAP Loan. (AC ¶ 43).