**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

WADE PARK LAND HOLDINGS, LLC; WADE
PARK LAND, LLC; and
THE THOMAS FAMILY TRUST, by and through
its Trustees, acting in their official capacities,

          Plaintiffs,

v.

JONATHAN KALIKOW;
WP DEVELOPMENT PARTNERS LLC;
GAMMA LENDING OMEGA LLC; GAMMA
REAL ESTATE CAPITAL LLC; GRE WP LLC;
and BLAKE GOODMAN,

          Defendants.

CIVIL ACTION FILE

NO. 1:21-cv-01657-LJL-RWL

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO**
**AMEND THE JUDGMENT AND FOR LEAVE TO FILE A SECOND AMENDED**
**COMPLAINT**

James W. Cobb
Julia Blackburn Stone
Jessica A. Caleb
**CAPLAN COBB LLC**
75 Fourteenth Street NE, Suite 2700
Atlanta, Georgia 30309
Tel: (404) 596-5600
Fax: (404) 596-5604

Counsel for Plaintiffs

Ward Stone, Jr.
David L. Bury, Jr.
**STONE & BAXTER, LLP**
577 Mulberry Street, Suite 800
Macon, Georgia 31201
Tel: (478) 750-9898
Fax: (478) 750-9899

Counsel for Debtors and Plaintiffs
Wade Park Land, LLC and Wade
Park Land Holdings, LLC

Renee Bea
**SLARSKEY LLC**
420 Lexington Avenue, Suite 2525
New York, New York 10170
Tel: (212) 658-0661

Counsel for Plaintiffs

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................ ii

INTRODUCTION ......................................................................................................... 1

RELEVANT FACTUAL AND PROCEDURAL BACKGROUND ............................. 2

STANDARD OF REVIEW .......................................................................................... 5

ARGUMENT AND CITATION TO AUTHORITIES................................................. 6

I.      The Court should amend the judgment pursuant to Rule 59(e)
        to correct clear error or prevent manifest injustice. ........................................ 6

II.     The Court should grant Plaintiffs leave to file the PSAC because
        the more specifically pleaded allegations cure the deficiencies the
        Court identified. ............................................................................................. 10

        A.      The PSAC states claims for fraudulent transfer.................................. 11

                1.      The PSAC alleges that the transfers were for other
                        than reasonably equivalent value. ........................................... 11

                        a.      Debtors received value in the form of
                                *satisfaction* of antecedent debt—not the
                                *securing* of antecedent debt. ...................................... 12

                        b.      The satisfaction of Debtors' debt was not
                                reasonably equivalent to the value of the
                                property transferred....................................................... 13

                        c.      The Estoppel Certificate does not render
                                the PSAC futile. ............................................................ 17

                2.      The Debtors were rendered insolvent by the transfers............. 19

        B.      The PSAC states a claim for fraudulent inducement
                under New York law. ........................................................................... 21

CONCLUSION............................................................................................................ 24

## TABLE OF AUTHORITIES

**Cases**

*Am. Federated Title Corp. v. GFI Mgmt. Servs., Inc.*,
   716 F. App'x 23 (2d Cir. 2017) ............................................................................. 14

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ............................................................................................... 10

*Atlanta Shipping Corp. v. Chem. Bank*,
   818 F.2d 240 (2d Cir. 1987) .................................................................................. 14

*Ballard v. Parkstone Energy, LLC*,
   No. 06 Civ. 13099 (RWS), 2008 WL 4298572 (S.D.N.Y. Sept. 19, 2008) ...... 6, 10

*Bethlehem Steel Corp v. Moran Towing Corp. (In re Bethlehem Steel Corp.)*,
   390 B.R. 784 (Bankr. S.D.N.Y. 2008) ................................................................. 17

*BFP v. Resol. Tr. Corp.*,
   511 U.S. 531 (1994) ............................................................................................... 16

*Bongiorno v. Baquet*,
   No. 20-cv-7288 (LJL), 2021 WL 4311169 (S.D.N.Y. Sept. 20, 2021) ................. 18

*Brecher v. Citigroup Inc.*,
   No. 09 Civ. 7359 (SHS), 2011 WL 5525353 (S.D.N.Y. Nov. 14, 2011) .............. 10

*Brown v. Kerry Inc.*,
   No. 20-CV-9730 (PGG) (JLC), 2021 WL 5446007 (S.D.N.Y. Nov. 22, 2021),
   *report and recommendation adopted* 2022 WL 669880 (S.D.N.Y. Mar. 7, 2022) ........... 8

*Cardwell v. Davis Polk & Wardwell LLP*,
   No. 12 Civ. 3638 (ALC) (DCF), 2021 WL 4434935 (S.D.N.Y. Sept. 23, 2021) .............. 7

*Channel Master Corp. v. Aluminum Ltd. Sales, Inc.*,
   4 N.Y.2d 403 (1958) .......................................................................................... 21, 23

*Cohen v. Ernst & Young, LLP (In re Friedman's, Inc.)*,
   372 B.R. 530 (Bankr. S.D. Ga. 2007) ................................................................... 18

*Continental Bank N.A. v. Modansky*,
   159 B.R. 129 (S.D.N.Y. 1993) .............................................................................. 16

ii

*Coppelson v. Serhant*,
   No. 19-cv-8481 (JLJ), 2021 WL 2650393 (S.D.N.Y. June 28, 2021) ................................... 21

*Corzin v. Fordu (In re Fordu)*,
   201 F.3d 693 (6th Cir. 1999).................................................................................................... 18

*Cresci v. Mohawk Valley Cmty. Coll.*,
   693 F. App'x 21 (2d Cir. 2017)................................................................................................... 8

*Cruz v. TD Bank, N.A.*,
   742 F.3d 520 (2d Cir. 2013)........................................................................................................ 7

*Dempsey v. Vieau*,
   No. 13 CV 6883-LTS, 2016 WL 3351081 (S.D.N.Y. June 15, 2016) ................................... 10

*Dynamic Worldwide Logistics, Inc. v. Exclusive Expressions, LLC*,
   No. 19 Civ 1370 (ER), 2015 WL 5439217 (S.D.N.Y. Sept. 14, 2015)............................. 9, 10

*Faulkner v. Beer*,
   463 F.3d 130 (2nd Cir. 2006) ................................................................................................... 19

*Fogel v. Wal-Mart de Mexico SAB de CV*,
   No. 13 Civ. 2282, 2018 WL 1033227 (S.D.N.Y. Feb. 21, 2018),
   *aff'd sub nom.*, 759 F. App'x 18 (2d Cir. 2018)......................................................................... 5

*Foman v. Davis*,
   371 U.S. 178 (1962) ............................................................................................................... 6, 9

*Geron v. Schulman (In re Manshul Constr. Corp.)*,
   No. 97 Civ. 8851, 2000 WL 1228866 (S.D.N.Y. Aug. 30, 2000)........................................... 19

*HBE Leasing Corp. v. Frank*,
   61 F.3d 1054 (2d Cir. 1995)................................................................................................ 14, 16

*Honig v. Hansen*,
   No. 20 Civ 5872 (ACH), 2021 WL 5518207 (S.D.N.Y. Nov. 24, 2021) .................................. 9

*Icebox-Scoops v. Finanz St. Honoré, B.V.*,
   676 F. Supp. 2d 100 (E.D.N.Y. 2009)....................................................................................... 24

*In re AppliedTheory Corp.*,
   323 B.R. 838 (Bankr. S.D.N.Y. 2005) ...................................................................................... 14

*In re AppliedTheory Corp.*,
   330 B.R. 362 (S.D.N.Y. 2005) .................................................................................................. 15

*In re Centennial Textiles, Inc.*,
   220 B.R. 165 (Bankr. S.D.N.Y. 1998) ................................................................... 19

*In re Crucible Materials Corp.*,
   No. 09-11582 (MFW), 2012 WL 5360945 (Bankr. D. Del. Oct. 31, 2012) ........................ 16

*In re Durso Supermarkets, Inc.*,
   193 B.R. 682 (Bankr. S.D.N.Y. 1996) ................................................................... 19

*In re First All. Mortg. Co.*,
   471 F.3d 977 (9th Cir. 2006) ................................................................................. 16

*In re Haven Trust Bancorp, Inc.*,
   461 B.R. 910 (Bankr. N.D. Ga. 2011) ..................................................................... 19

*In re Jessup & Lamont, Inc.*,
   507 B.R. 452 (Bankr. S.D.N.Y. 2014) ................................................................... 16

*In re Kaplan Breslaw Ash, LLC*,
   264 B.R. 309 (Bankr. S.D.N.Y. 2001) ................................................................... 15

*In re M. Silverman Laces, Inc.*,
   No. 01 Civ.6209 (DC), 2002 WL 31412465 (S.D.N.Y. Oct. 24, 2002) ........................ 15

*In re Marketxt Holdings Corp.*,
   361 B.R. 369 (Bankr. S.D.N.Y. 2007) ................................................................... 13

*In re Old Carco LLC*,
   509 F. App'x 77 (2d Cir. 2013) ............................................................................... 15

*In re Operations NY LLC*,
   490 B.R. 84 (Bankr. S.D.N.Y. 2013) ..................................................................... 19

*In re S.W. Bach & Co.*,
   435 B.R. 866 (Bankr. S.D.N.Y. 2010) ................................................................... 17

*In re Sharp Int'l Corp.*,
   403 F.3d 43 (2d Cir. 2005) ..................................................................................... 16

*In re TOUSA, Inc.*,
   680 F.3d 1298 (11th Cir. 2012) ............................................................................. 13

*In re Trib. Co. Fraudulent Conv. Litig.*,
   10 F.4th 147, 172 (2d Cir. 2021), *cert. denied sub nom. Kirschner v. FitzSimons*, No. 21-1006,
   2022 WL 516021 (U.S. Feb. 22, 2022) ........................................................ 12, 13, 16

iv

*In re Winstar Comm.*,
   No. 01 CV 3014 (GBD), 2006 WL 473885 (S.D.N.Y. Feb. 27, 2006)...................................... 7

*In re Worldcom, Inc.*,
   401 B.R. 637 (Bankr. S.D.N.Y. 2009) .................................................................................... 17

*Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*,
   797 F.3d 160 (2d Cir. 2015)..................................................................................................... 8

*Mayes v. 490 Habitat, Inc.*,
   No. 18-CV-1427 (SJF), 2020 WL 587112 (E.D.N.Y. Feb. 6, 2020) ........................................ 9

*Melamed v. Lake Cnty. Nat'l Bank*,
   727 F.2d 1399 (6th Cir. 1984)............................................................................................... 16

*MFS/Sun Life Trust–High Yield Series v. Van Dusen Airport Servs. Co.*,
   910 F. Supp. 913 (S.D.N.Y. 1995)......................................................................................... 19

*Monahan v. New York City Dep't of Corrections*,
   214 F.3d 275 (2d Cir. 2000) .................................................................................................... 6

*Panther Partners Inc. v. Ikanos Commc'ns, Inc.*,
   347 F. App'x 617, (2d Cir. 2009)............................................................................................ 6

*Porat v. Lincoln Towers Cmty. Ass'n*,
   464 F.3d 274 (2d Cir. 2006) .................................................................................................... 7

*Ricciuti v. N.Y.C. Transit Auth.*,
   941 F.2d 119 (2d Cir. 1991).................................................................................................... 8

*Riverkeeper, Inc. v. Wheeler*,
   No. 17-CV-4916 (VSB), 2020 WL 1188455 (S.D.N.Y. Mar. 12, 2020)............................... 10

*Rubin v. Manufacturers Hanover Tr. Co.*,
   661 F.2d 979 (2d Cir. 1981)................................................................................................... 14

*Ruotolo v. City of New York*,
   514 F.3d 184 (2d Cir. 2008)..................................................................................................... 5

*Silverman v. Paul's Landmark, Inc.* (*In re Nirvana Restaurant, Inc.*),
   337 B.R. 495 (Bankr. S.D.N.Y. 2006) .................................................................................. 20

*Tommy Lee Handbags Mfg. Ltd. v. 1948 Corp.*,
   2012 WL 4903177 (S.D.N.Y. Oct. 12, 2012) ......................................................................... 7

*U.S. v. Lloyds TSB Bank PLC,*
  639 F. Supp. 2d 326 (S.D.N.Y. 2009) ..................................................................... 5

*Universal Church v. Geltzer,*
  463 F.3d 218 (2nd Cir. 2006) .............................................................................. 19

*Virgin Atlantic Airways, Ltd. v. Nat'l Mediation Bd.,*
  956 F.2d 1245 (2d Cir. 1992) ................................................................................ 5

*Wall v. CSX Transp., Inc.,*
  471 F.3d 410 (2d Cir. 2006) ................................................................................ 24

*Williams v. Citigroup, Inc.,*
  659 F.3d 208 (2d Cir. 2011) ........................................................................... 5, 6, 9

**Statutes**

11 U.S.C. § 1107 ....................................................................................................... 17

11 U.S.C. § 548(d)(2) ............................................................................................... 12

**Treatises**

7 COLLIER ON BANKRUPTCY ¶ 1107.03[4] (Alan N. Resnick & Henry J. Sommers eds., 16th ed.)
  ............................................................................................................................. 17

Pursuant to Rules 15(a)(2) and 59(e) of the Federal Rules of Civil Procedure and Rules 7015 and 9023 of the Federal Rules of Bankruptcy Procedure, Plaintiffs respectfully submit this memorandum of law in support of their motion to amend the judgment entered by this Court on March 7, 2022 (Dkt. 59), and for leave to file a Second Amended Complaint.[1]

## INTRODUCTION

On March 4, 2022, the Court dismissed Plaintiffs' First Amended Complaint ("FAC") in its entirety and with prejudice and instructed the Clerk to enter a final judgment. Dkt. 58 at 90; Dkt. 59. Plaintiffs file this Motion to amend the portion of the Judgment that dismissed Plaintiffs' FAC *with* prejudice and respectfully ask the Court to dismiss the FAC *without* prejudice. Plaintiffs also ask the Court to grant Plaintiffs leave to file the Proposed Second Amended Complaint ("PSAC"), which addresses the deficiencies identified in the Court's Order.

Consistent with the liberal standards of Rule 15 and the Second Circuit's strong preference for resolving disputes on the merits, as well as its usual practice of allowing amendments where the plaintiffs have, as here, timely sought leave to amend, Plaintiffs should be afforded the opportunity to file an amended pleading. To that end, Plaintiffs submit the PSAC, which satisfies the applicable pleading standards and cures the deficiencies identified by the Court in its Order. Specifically, Plaintiffs seek leave to amend the FAC to plead additional facts to support their fraudulent-transfer claims under 11 U.S.C. §§ 544, 548, 550, and 551, and Georgia Code § 18-2-70, *et seq.* as well as to frame their fraud claim as a claim for fraudulent inducement under New

---

[1]    The Proposed Second Amended Complaint is submitted herewith as Exhibit A to the Declaration of James W. Cobb, dated March 18, 2022 ("Cobb Decl."). A redlined version of the Proposed Second Amended Complaint, showing the proposed changes to the First Amended Complaint, is attached to the Cobb Decl. as Exhibit B.

York law (as opposed to Georgia law). For the reasons explained below, the Court should grant this Motion.

## RELEVANT FACTUAL AND PROCEDURAL BACKGROUND[2]

Plaintiffs filed this case in August 2020 as an adversary proceeding in the U.S. Bankruptcy Court for the Northern District of Georgia. *See* Bankr. N.D. Ga. Docket Report, Adv. Proc. No. 20-01030 (JWC), Cobb Decl., Ex. C, at Dkt. 1. After Plaintiffs moved to withdraw the reference to the bankruptcy court, Defendant Blake Goodman ("Goodman") filed a motion to dismiss. *Id.* Dkt. 3, 26. In October 2020, on the parties' consent, U.S. District Judge Timothy C. Batten, Sr. withdrew the reference to the bankruptcy court, and the action proceeded in the Northern District of Georgia. *See* N.D. Ga. Docket Report, Case No. 3:20-cv-00176 (TCB), Cobb Decl., Ex. D, at Dkt. 4.

Once in the Northern District of Georgia, Plaintiffs filed the FAC, pleading their claims under Georgia's and the Eleventh Circuit's legal framework. *Id.* Dkt. 5. Goodman moved to dismiss again, and the Gamma Defendants separately filed a motion to transfer and a motion to dismiss.[3] *Id.* Dkt. 13, 14, 16. On February 24, 2021, Judge Batten granted Goodman's motion to dismiss and the Gamma Defendants' motion to transfer. *Id.* Dkt. 30. Importantly, Judge Batten did not rule on or otherwise address the merits of the Gamma Defendants' motion to dismiss or the majority of the claims asserted in the FAC. *Id.*

---

[2]   In light of the parties' prior briefing related to the motion to dismiss, and the Court's familiarity with the general factual background, this background section does not describe all of the facts underlying Plaintiffs' claims. Instead, Plaintiffs have included only the facts newly added to the PSAC, along with those facts that are necessary to give the new facts sufficient context.
[3]   Unless otherwise noted herein: (1) capitalized terms and abbreviations in this brief have the meanings ascribed to them in the PSAC; and (2) references to "¶ __" refer to paragraphs in the PSAC.

Following transfer to this court, the parties re-briefed the Gamma Defendants' motion to dismiss. Dkt. 39–41, 46–47. In their opposition brief, Plaintiffs requested that, if the Court decided to grant the Gamma Defendants' motion, they be granted leave to amend the FAC to address any deficiencies identified by the Court. Dkt. 46 at 1 n.1. While the Gamma Defendants opposed Plaintiffs' request for leave to amend, they did *not* argue that amendment of the complaint would be futile. Dkt. 47 at 25.

On March 4, 2022, the Court granted the Gamma Defendants' motion to dismiss and dismissed the FAC with prejudice ("Order"). Dkt. 58 at 90. With respect to Plaintiffs' request to amend, the Court briefly noted that Plaintiffs had not "identif[ied any] additional facts or legal theories that they might assert if given the opportunity to replead" and, without further analysis, "conclude[d] that any amendment would be futile." *Id.* at 90 n.17. On March 7, 2022, the Clerk of the Court entered judgment dismissing the action with prejudice. Dkt. 59.

The PSAC seeks to address the following deficiencies identified in the Court's Order:

First, Plaintiffs seek to amend their fraudulent-transfer claims under 11 U.S.C. §§ 544, 548, 550, and 551, and Georgia Code § 18-2-70, *et seq*. The Court dismissed Plaintiffs' fraudulent-transfer claims because it found that Plaintiffs failed to allege that the transfer was for other than reasonably equivalent value and because it determined that Plaintiffs did not allege sufficient facts to support the conclusion that they were rendered insolvent by the transfer of the Wade Park property. Plaintiffs seek to cure these perceived deficiencies by alleging that on February 19, 2019, when the Debtors transferred the deeds to the Wade Park property to Gamma and a bill of sale for *all* their real and personal property, the value of the property exceeded $565 million. PSAC ¶ 326. This valuation is based on an independent appraisal of the property as of October 18, 2018, which valued the property at $565 million. *Id.* ¶ 327. Between the time of that

appraisal and Plaintiffs' transfer of the deeds to the Gamma Defendants, Plaintiffs made improvements to the property worth more than $500,000. *Id.* ¶ 328. In exchange for transferring property worth more than $565 million to Gamma, Debtors received debt satisfaction in the amount of (at most) $140.1 million. *Id.* ¶¶ 341–42. A $550 million property is not of reasonably equivalent value to debt satisfaction of $140.1 million.

Additionally, as alleged in the PSAC, the transfer of the Wade Park property rendered Debtors insolvent. On February 21, 2019—the date that the deeds were transferred out of escrow to Gamma—Wade Park Land had assets of $204 million and liabilities of $76,125,950 and Wade Park Land Holdings had assets in excess of $361 million and liabilities of $139,470,849. *Id.* ¶¶ 330, 332, 334, 336. But immediately after the transfer, Wade Park Land had $*19.81* in assets and $16,512,969 in liabilities, and Wade Park Holdings had $*85.24* in assets and $58,997,283 in liabilities. *Id.* ¶¶ 331, 333, 335, 337. In short, the transfer of nearly all of Debtors' assets rendered the Debtors insolvent.

Second, Plaintiffs seek leave to plead their fraud claim under New York's framework for fraudulent inducement. Plaintiffs filed the FAC in Georgia and pleaded their fraud claim under Georgia law. The PSAC seeks to conform Plaintiffs' pleading to New York law to demonstrate that the Gamma Defendants fraudulently induced Plaintiffs into entering into the Deed-in-Lieu Agreement by repeatedly misrepresenting that the Deed-in-Lieu Agreement would not cause a transfer of the Wade Park deeds to Gamma, that Defendants would give Plaintiffs at least a six-month buy-back period, and that Defendants would not take ownership of the properties—all misrepresentations on which Plaintiffs relied. At the time that Defendants made each of those misrepresentations, they knew they were false, and instead, Defendants intended to affirmatively interfere with Plaintiffs' ability to repay the loan, cut off access to Plaintiffs' sources of credit, and

assume ownership of Wade Park because its value far exceed any debt owed. The Court should grant this Motion.[4]

### STANDARD OF REVIEW

"A party seeking to file an amended complaint post[-]judgment must first have the judgment vacated or set aside pursuant to [Federal Rules of Civil Procedure] 59(e) or 60(b)." *Ruotolo v. City of New York*, 514 F.3d 184, 191 (2d Cir. 2008) (citing *Nat'l Petrochemical Co. of Iran v. M/T Stolt Sheaf*, 930 F.2d 240, 244–45 (2d Cir. 1991)). Where a case is "dismissed on motion . . . and judgment entered accordingly[,] courts routinely consider Rule 59(e) motions to alter or amend such a judgment." *U.S. v. Lloyds TSB Bank PLC*, 639 F. Supp. 2d 326, 328 (S.D.N.Y. 2009). Under this rule, the primary grounds justifying reconsideration are "an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or to prevent manifest injustice." *Virgin Atlantic Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992) (internal quotation marks omitted).

When (as here) Rule 59(e) relief is sought to support an amended pleading, "the interest in finality generally applicable to post-judgment motions may give way to allow courts 'to take into account the nature of the proposed amendment in deciding whether to vacate [a] previously entered judgment.'" *Fogel v. Wal-Mart de Mexico SAB de CV*, No. 13 Civ. 2282, 2018 WL 1033227, at *4 (S.D.N.Y. Feb. 21, 2018), *aff'd sub nom.*, 759 F. App'x 18 (2d Cir. 2018) (quoting *Williams v. Citigroup, Inc.*, 659 F.3d 208, 213 (2d Cir. 2011)).

---

[4] In this Motion, Plaintiffs seek leave to amend Counts XII and XIII (for fraudulent transfer) and to add Count XVII (for fraudulent inducement under New York law). Plaintiffs do not, at this time, seek leave to amend the other claims the Court dismissed, but as the Court will see, the PSAC continues to include each of the dismissed claims. Plaintiffs have kept those claims in the PSAC for the sake of continuity and clarity, as well as to preserve their arguments for appeal that the Court erred by dismissing Plaintiffs' claims.

Under Rule 15(a)(2), "leave [to amend] shall be freely given when justice so requires." *Ruotolo*, 514 F.3d at 191. "[A]bsent evidence of undue delay, bad faith or dilatory motive on the part of the movant, undue prejudice to the opposing party, or futility, Rule 15's mandate must be obeyed." *Monahan v. New York City Dep't of Corrections*, 214 F.3d 275, 283 (2d Cir. 2000). The granting of "leave to amend is futile if it appears that [the] plaintiff cannot address the deficiencies identified by the court and allege facts sufficient to support the claim." *Panther Partners Inc. v. Ikanos Commc'ns, Inc.*, 347 F. App'x 617, 622 (2d Cir. 2009).

Rule 15's "permissive standard" is "consistent with [the Second Circuit's] strong preference of resolving disputes on the merits." *Williams*, 659 F.3d at 212–13. Indeed, as the Supreme Court has explained, the express purpose of pleading under the Federal Rules of Civil Procedure is "to facilitate a proper decision on the merits," not to set the stage for "a game of skill in which one misstep . . . may be decisive to the outcome." *Foman v. Davis*, 371 U.S. 178, 182 (1962). In other words, "[i]f the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, [the plaintiff] ought to be afforded an opportunity to test [its] claim on the merits." *Id.* at 182. The judicial policy favoring amendment is so strong that the burden is on the *non-moving party* to demonstrate futility. *See Ballard v. Parkstone Energy, LLC*, No. 06 Civ. 13099 (RWS), 2008 WL 4298572, at *3 (S.D.N.Y. Sept. 19, 2008) ("The party opposing a motion to amend bears the burden of establishing that an amendment would be futile.").

## ARGUMENT AND CITATION TO AUTHORITIES

I. **The Court should amend the judgment pursuant to Rule 59(e) to correct clear error or prevent manifest injustice.**

For each of the reasons discussed below, the Court committed clear error by rejecting Plaintiffs' request for leave to amend, and it would result in a manifest injustice for Plaintiffs not to be permitted leave to amend in view of the liberal spirit of Rule 15(a)(2). The manifest injustice

6

in precluding an amendment is particularly apparent in light of the procedural posture of this litigation and the strength of Plaintiffs' proposed amendments.

*First*, as a threshold matter, the Gamma Defendants did not (and could not) argue that Plaintiffs acted with undue delay, bad faith, or dilatory motive, or that they would suffer any undue prejudice as a result of Plaintiffs' filing of an amended pleading. *See In re Winstar Comm.*, No. 01 CV 3014 (GBD), 2006 WL 473885, at *1 (S.D.N.Y. Feb. 27, 2006) ("Where there is neither a showing of the movant's undue delay, bad faith or dilatory motive, nor a showing of undue prejudice to the opposing party by virtue of allowance of the amendment, leave to amend should be granted."); *see also Cardwell v. Davis Polk & Wardwell LLP*, No. 12 Civ. 3638 (ALC) (DCF), 2021 WL 4434935, at *41 (S.D.N.Y. Sept. 23, 2021) ("[M]ere allegations that an amendment will require the expenditure of additional time, effort, or money do not constitute 'undue prejudice.'") (internal quotation marks and alteration omitted). This, of course, makes sense—Plaintiffs made their request at the earliest practical stage—within several months of transfer to this district and in response to the first and only ruling on the Gamma Defendants' motion to dismiss—and before any discovery has taken place. *See*, *e.g.*, *Tommy Lee Handbags Mfg. Ltd. v. 1948 Corp.*, 2012 WL 4903177, at *2 (S.D.N.Y. Oct. 12, 2012) (granting leave to amend and to file a second amended complaint, in part, because "there is absolutely no prejudice to defendants as no discovery has been conducted yet").

*Second*, Plaintiffs were denied leave to amend even though the Second Circuit "strongly favors" the "liberal grant of an opportunity to replead after dismissal of a complaint under Rule 12(b)(6)." *Porat v. Lincoln Towers Cmty. Ass'n*, 464 F.3d 274, 276 (2d Cir. 2006); *see also Cruz v. TD Bank, N.A.*, 742 F.3d 520, 523 (2d Cir. 2013) ("[I]t is the usual practice upon granting a motion to dismiss to allow leave to replead."); *Ricciuti v. N.Y.C. Transit Auth.*, 941 F.2d 119, 123

(2d Cir. 1991) ("[W]hen a complaint is dismissed pursuant to Rule 12(b)(6) and the plaintiff requests permission to file an amended complaint, that request should ordinarily be granted."). The Court's denial of leave occurred in its first adjudication of Plaintiffs' claims against the Gamma Defendants. Plaintiffs submitted their request to amend in opposition to the Gamma Defendants' moving papers, but prior to the Court's issuance of the Order, Plaintiffs did not have "the benefit of a ruling" that highlighted "the precise defects" of the FAC. *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 190–91 (2d Cir. 2015). Now in possession of that information, Plaintiffs can plead additional supporting allegations to cure any perceived deficiencies. *See Cresci v. Mohawk Valley Cmty. Coll.*, 693 F. App'x 21, 25 (2d Cir. 2017) ("Before learning from the court what are [the pleading's] deficiencies, the plaintiff cannot know whether [it] is capable of amending the complaint efficaciously."). Now that Plaintiffs have the Court's view, they can plead additional allegations to cure any perceived deficiencies. *See*, *e.g.*, *Brown v. Kerry Inc.*, No. 20-CV-9730 (PGG) (JLC), 2021 WL 5446007, at *12 (S.D.N.Y. Nov. 22, 2021), *report and recommendation adopted* 2022 WL 669880 (S.D.N.Y. Mar. 7, 2022) ("Because this is the first adjudication of [plaintiff's] claims on the merits, the Complaint should be dismissed without prejudice and [plaintiff] should be given one final opportunity to allege the requisite facts, if they exist, to make her claims cognizable.").

*Third*, while it is true that Plaintiffs did not originally identify any additional proposed facts or theories in conjunction with their request for leave to amend, that alone does not prevent the Court from granting leave to amend, particularly where, as here, Plaintiffs' proposed amendments cure the perceived deficiencies identified by the Court.[5] *See Dynamic Worldwide*

---

[5]      Although a motion to amend the judgment under Rule 59(e) "avoid repetitive arguments on issues that have been considered fully," *Ong v. Chipotle Mexican Grill, Inc.*, 329 F.R.D. 43, 50 *(footnote continued on next page)*

*Logistics, Inc. v. Exclusive Expressions, LLC*, No. 19 Civ. 1370 (ER), 2015 WL 5439217, at *4
(S.D.N.Y. Sept. 14, 2015) (explaining that, even if a plaintiff fails to "indicate[] additional facts
that would be added to the complaint[,] . . . where the possibility exists that the defect can be
cured, leave to amend at least once should normally be granted unless doing so would prejudice
the defendant") (internal quotation marks omitted).

 *Fourth*, the substantive effect of the amendments that Plaintiffs propose weighs in favor of
allowing them to amend. *See Honig v. Hansen*, No. 20 Civ 5872 (ACH), 2021 WL 5518207, at *1
(S.D.N.Y. Nov. 24, 2021) ("[I]n a proper case, it may be appropriate to take into account the
nature of the proposed amendment in deciding whether to vacate the previously entered
judgment.") (citing *Williams*, 659 F.3d at 213); *see also Mayes v. 490 Habitat, Inc.*, No. 18-CV-
1427 (SJF), 2020 WL 587112, at *1 (E.D.N.Y. Feb. 6, 2020) ("Therefore, post[-]judgment
motions for leave to replead must be evaluated with due regard to both the value of finality and the
policies embodied in Rule 15.") (internal quotation marks omitted). As discussed in further detail
below (*see* Section II, *infra*), the newly asserted allegations in the PSAC show that granting leave
to amend would not be futile.

 Put simply, there is no "undue delay, bad faith or dilatory motive on the part of the
[Plaintiffs], repeated failure to cure deficiencies by amendments previously allowed, undue
prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of
amendment . . . ." *Foman*, 371 U.S. at 182 (holding that leave to amend should have been granted,
and requiring courts to "heed[]" Rule 15(a)'s "mandate" that "leave to amend shall be freely given
when justice so requires"). The PSAC does not expand the scope of Plaintiffs' original case, but

---

(S.D.N.Y. 2018) (internal quotation marks omitted), that limitation is absent here given that the
additional facts and theories set forth in the PSAC were not addressed by the parties in their prior
briefing or substantively analyzed by the Court in the Order.

simply adds factual allegations to satisfy the pleading requirements the Court applied in its Order.

Plaintiffs respectfully request that the Court amend the judgment to provide for dismissal of the

FAC *without prejudice* and grant Plaintiffs leave under Rule 15(a) to file the PSAC. *See, e.g.,*

*Riverkeeper, Inc. v. Wheeler*, No. 17-CV-4916 (VSB), 2020 WL 1188455, at *3 (S.D.N.Y. Mar.

12, 2020) (granting Rule 59(e) motion and explaining that "to now deny Plaintiffs' request

for leave to amend would work a manifest injustice"); *Dempsey v. Vieau*, No. 13 CV 6883-LTS,

2016 WL 3351081, at *2 (S.D.N.Y. June 15, 2016) (granting Rule 59(e) motion and considering

proposed amended pleading on the merits); *Dynamic Worldwide*, 2015 WL 5439217, at *7

(granting Rule 59(e) motion and considering proposed amended pleading on the merits); *Brecher

v. Citigroup Inc.*, No. 09 Civ. 7359 (SHS), 2011 WL 5525353, at *7 (S.D.N.Y. Nov. 14, 2011)

(granting Rule 59(e) motion and granting the plaintiffs leave to file a proposed amended

complaint).

## II.     The Court should grant Plaintiffs leave to file the PSAC because the more specifically pleaded allegations cure the deficiencies the Court identified.

The Gamma Defendants bear the burden of establishing that Plaintiffs' proposed

amendments would be futile. *See Ballard*, 2008 WL 4298572, at *3. "A proposed amendment to a

pleading would be futile if it could not withstand a motion to dismiss pursuant to Rule 12(b)(6)" of

the Federal Rules of Civil Procedure." *Id.*

"To survive a motion to dismiss, a complaint must contain sufficient factual matter,

accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S.

662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The PSAC

cures the perceived deficiencies identified by the Court in the Order and adequately alleges

actionable claims for fraudulent transfer under 11 U.S.C. §§ 544, 548, 550, and 551, and Georgia

Code § 18-2-70, *et. seq.* as well as for fraudulent inducement under New York law. Plaintiffs' proposed amendments would not be futile.

**A.  The PSAC states claims for fraudulent transfer.**

The Court dismissed Plaintiffs' fraudulent-transfer claims under 11 U.S.C. §§ 544, 548, 550, and 551, and Georgia Code § 18-2-70, *et seq.* because it held that Plaintiffs (1) failed to allege that the transfer was for other than reasonably equivalent value, and (2) did not allege sufficient facts to support the conclusion that they were rendered insolvent by the transfer of the Wade Park properties. Order at 84–85. The PSAC alleges additional facts that cure both these perceived deficiencies.

**1.  The PSAC alleges that the transfers were for other than reasonably equivalent value.**

First, the PSAC adds numerous allegations to establish that Debtors did not obtain reasonably equivalent value in exchange for their transfer of the Wade Park properties. The PSAC makes clear that Plaintiffs transferred property with value in excess of $565 million in exchange for debt relief of approximately $140.1 million. PSAC ¶¶ 326, 329, 341, 342, 345. To support these allegations of value, Plaintiffs allege that on January 2, 2019—only a month before the parties signed the Deed-in-Lieu Agreement—an independent, certified appraiser (BBG, Inc.) issued an appraisal report that appraised the Wade Park property at $565 million as of October 18, 2018. *Id.* ¶ 327. After the appraisal date of October 18, 2018, the Debtors made improvements to the Wade Park property with a market value in excess of $500,000. *Id.* ¶ 328. So as of February 21, 2019 (the date the deeds were transferred to Gamma), Wade Park's value was greater than $565 million. *Id.* ¶¶ 326, 329. In exchange for transferring this property with value in excess of $565 million, Debtors received debt relief of approximately $140.1 million—resulting in a windfall to Gamma of approximately $425 million. *Id.* ¶¶ 326, 329, 341, 342, 345. These

11

allegations are sufficient to allege that Debtors did not obtain reasonably equivalent value in exchange for the transfer of the Wade Park properties.

The Second Circuit applies a two-step process for determining reasonably equivalent value in antecedent-debt cases like this one. First, the Court should determine what type of "value" the debtor received in exchange for a property transfer. Second, the Court should determine whether any value is "reasonably equivalent to the transferred property." *In re Trib. Co. Fraudulent Conv. Litig.*, 10 F.4th 147, 172 (2d Cir. 2021), *cert. denied sub nom. Kirschner v. FitzSimons*, No. 21-1006, 2022 WL 516021 (U.S. Feb. 22, 2022).

In *Tribune*, the Second Circuit articulated guiding principles for making those determinations. The analysis does not require "mathematical precision;" instead, the court must "examine the totality of the circumstances," keeping in mind that "any significant disparity between the value received and the obligation assumed . . . will have significantly harmed the innocent creditors." *Id.* (quoting *In re Bernard L. Madoff Inv. Sec. LLC*, 454 B.R. 317, 334 (Bankr. S.D.N.Y. 2011) and *Rubin v. Mfrs. Hanover Tr. Co.*, 661 F.2d 979, 994 (2d Cir. 1981) (internal quotation marks omitted)). The "determination of whether reasonably equivalent value was exchanged is 'largely a question of fact'" that "usually should not be made at the motion to dismiss stage," especially if the determination requires more than a "'simple math calculation.'" *Id.* at 172–73 (quoting *Am. Tissue Inc. v. Donaldson, Lufkin & Jenrette Secs. Corp.*, 351 F. Supp. 2d 79, 105 (S.D.N.Y. 2004) and *Madoff*, 454 B.R. at 334).

### a. Debtors received value in the form of *satisfaction* of antecedent debt—not the *securing* of antecedent debt.

As to the first step of the analysis, there is no dispute that Debtors received "value" when they transferred all their assets to Gamma because "value" always includes "satisfaction or securing of a present or antecedent debt of the debtor." 11 U.S.C. § 548(d)(2). The question thus

becomes what *type* of antecedent-debt value Debtors received: either "satisfaction *or* securing" of an antecedent debt. *Id.* (emphasis added). That is, did the Debtors *satisfy* an antecedent debt via a transfer of cash or other property, or did they *secure* an antecedent debt with new or additional collateral in exchange for a non-economic benefit? The distinction is important because, as discussed below, it informs how the Court should evaluate whether such value is "reasonably equivalent to the transferred property."

Here, the Debtors received the first form of value—satisfaction of an antecedent debt. Specifically, the Deed-in-Lieu Agreement provided Wade Park Land with approximately $80.5 million of debt relief and Wade Park Land Holdings approximately $59.6 million in debt relief. PSAC ¶ 345. Altogether, Debtors received approximately $140.1 million in debt relief through the Deed-in-Lieu Agreement. *Id.*

> **b.  The satisfaction of Debtors' debt was not reasonably equivalent to the value of the property transferred.**

The next step in evaluating the fraudulent-transfer claims is to determine whether the value received is "reasonably equivalent to the transferred property." *In re Trib.*, 10 F.4th at 172. The type of value received determines how to perform this analysis. In cases where a debtor pledges new or additional collateral for an antecedent debt, for example, courts in the Second Circuit presume a reasonable equivalence.[6] *See, e.g.*, *In re Marketxt Holdings Corp.*, 361 B.R. 369, 398 (Bankr. S.D.N.Y. 2007) ("The cases are uniform that the *grant of collateral* for a legitimate

---

[6]    Notably, Georgia courts do not appear to presume equivalence but instead recognize that the issue is "largely a question of fact" that focuses on harm to the estate, regardless of whether an antecedent debt is involved. *In re TOUSA, Inc.*, 680 F.3d 1298, 1311 (11th Cir. 2012). So even if this Court were to apply the presumption here (which, as discussed below, it should not), Count 13 under Georgia Code § 18-2-70 would still adequately allege that the Debtors did not receive reasonably equivalent value because the presumption of reasonably equivalent value is inapplicable to that claim.

antecedent debt is not, without more, a constructive fraudulent conveyance.") (emphasis added). But the same presumption *does not apply* to debt-satisfaction cases like this one unless the debtor satisfies the debt through a dollar-for-dollar payment. *See, e.g.*, *HBE Leasing Corp. v. Frank*, 61 F.3d 1054, 1061 (2d Cir. 1995) (setting aside transfer of $227,000 bond and $278,000 note conveyed to satisfy antecedent debt of $75,010 because "the value of antecedent debt satisfied ($75,010) is not a 'fair equivalent' of the bond or note conveyed");[7] *Am. Federated Title Corp. v. GFI Mgmt. Servs., Inc.*, 716 F. App'x 23, 27 (2d Cir. 2017) (a "present advance of commensurate values does not ordinarily prejudice other creditors")  (quoting *HBE Leasing Corp. v. Frank*, 48 F.3d 623, 635 (2d. Cir. 1995)); *Atlanta Shipping Corp. v. Chem. Bank*, 818 F.2d 240, 249 (2d Cir. 1987) (finding that dollar-for-dollar repayment of loan was for equivalent value *because* the "loan did not adversely affect the debtor's balance sheet, nor encumber [its] ability to meet its other obligations").[8]

The Second Circuit's presumption of reasonably equivalent value in debt-collateralization (but not debt-satisfaction) cases springs from *Rubin v. Manufacturers Hanover Tr. Co.*, 661 F.2d 979 (2d Cir. 1981). There, the Court explained:

> [I]f the debtor receives property or discharges or secures an antecedent debt that is substantially equivalent in value to the property given or obligation incurred by him in exchange, then the transaction has not significantly affected his estate and his creditors have no cause to complain. By the same token, however, if the benefit of the transaction to the debtor does not substantially offset its cost to him, then his

---

[7]     Sections 273 and 274 of the New York Debtor and Creditor Law speak of "fair equivalents" instead of "reasonably equivalent value," but courts in the Second Circuit "use these terms interchangeably . . . ." *See In re AppliedTheory Corp.*, 323 B.R. 838, 841 (Bankr. S.D.N.Y. 2005).

[8]     To be sure, there are cases from courts in the Second Circuit that state broadly that the presumption of reasonably equivalent value applies in debt-satisfaction cases as well, but a closer look at those decisions and the reasoning behind the presumption reveals that the rule does not apply in debt-satisfaction cases unless the debt is, in fact, reasonably equivalent to the value received in exchange for satisfaction of the debt.

> creditors have suffered, and, in the language of [Section] 67(d), the transaction was
> not supported by "fair" consideration.

*Id.* at 991 (holding that there is no reasonably equivalent value if the debt is "disproportionately small" versus the property); *see also In re Old Carco LLC*, 509 F. App'x 77, 78 (2d Cir. 2013) (adopting *Rubin*'s emphasis on the harm to "innocent creditors" that results from the "disparity between what is transferred and what is received").

In debt-collateralization cases, the creditor's interest in what is transferred to it is limited to its claim, and the surplus value of the collateral over and above the creditor's claim (if any) is preserved for the debtor. *See, e.g.*, Order at 85 ("[T]he grant of collateral does not expand the amount of a creditor's debt and only prioritizes the payment of the debt from specific assets.") (quoting *In re Pfeifer*, No. 12-13852 (ALG), 2013 WL 3828509, at *4 (Bankr. S.D.N.Y. Jul. 23, 2013)); *AppliedTheory Corp.*, 323 B.R. at 841 (explaining that a security interest does not provide lenders "with a right to receive anything more than the amount of the money they . . . provided" to the debtor); *In re M. Silverman Laces, Inc.*, No. 01 Civ.6209 (DC), 2002 WL 31412465, at *6 (S.D.N.Y. Oct. 24, 2002) (same); *In re AppliedTheory Corp.*, 330 B.R. 362, 364 (S.D.N.Y. 2005) (adopting that rationale from *M. Silverman Laces*); *In re Kaplan Breslaw Ash, LLC*, 264 B.R. 309, 330 n.71 (Bankr. S.D.N.Y. 2001) ("[T]o the extent that the secured lender could realize more on the property than the total of the antecedent debt, and/or the value of the property turned out to exceed the debt, resulting in equity for the estate, the secured creditor would have to turn over the difference to the estate"). So, in debt-collateralization cases, there is no unfair diminution in the estate as a result of the transfer, and there can be a presumption of reasonably equivalent value. *Id.*

But in *debt-satisfaction cases*—like this one—a presumption of reasonable equivalence applies at the motion-to-dismiss stage only if there is an undisputed dollar-for-dollar satisfaction of the debt because those are the only types of claims that warrant a "simple math calculation."

*See In re Trib.*, 10 F.4th at 172. *See also BFP v. Resol. Tr. Corp.*, 511 U.S. 531, 545–46 (1994)

(evaluating whether foreclosure sale could be avoided under § 548 and noting that, if the facts

show collusion or other conduct that would chill the sale, a transfer is vulnerable to a claim under

§ 548 and must for reasonably equivalent value); *In re Sharp Int'l Corp.*, 403 F.3d 43, 53 (2d Cir.

2005) (noting in dollar-for-dollar debt satisfaction case that what is given to satisfy an antecedent

debt must be the "fair equivalent" of the satisfied debt); *In re Jessup & Lamont, Inc.*, 507 B.R.

452, 472 (Bankr. S.D.N.Y. 2014) (reasonably equivalent value requires that the debtor's benefits

"approximate its costs," with a focus on the "net effect on the debtor's estate") (internal cites and

quotations omitted); *In re Crucible Materials Corp.*, No. 09-11582 (MFW), 2012 WL 5360945, at

*8 (Bankr. D. Del. Oct. 31, 2012) ("When the transfer to a creditor is in dollar-for-dollar

satisfaction of an antecedent debt, there can be no claim for constructive fraudulent transfer."); *In

re First All. Mortg. Co.*, 471 F.3d 977, 1008 (9th Cir. 2006) ("[r]epayments of fully secured

obligations—where a transfer results in a dollar for dollar reduction in the debtor's liability—do

not hinder, delay, or defraud creditors because the transfers do not put assets otherwise available

in a bankruptcy distribution out of their reach") (internal quotation marks omitted); *Melamed v.

Lake Cnty. Nat'l Bank*, 727 F.2d 1399, 1402 (6th Cir. 1984) ($30,000 payment on a $30,000

judgment was reasonably equivalent because it did not harm creditors).

Here, of course, no such presumption applies because the transfer of the Wade Park

properties to Gamma did not result in an undisputed dollar-for-dollar satisfaction of Debtors' debt.

*See, e.g.*, *HBE Leasing Corp.*, 61 F.3d at 1061 (setting aside transfer of $227,000 bond and

$278,000 conveyed to satisfy antecedent debt of $75,010 because "the value of antecedent debt

satisfied ($75,010) is not a 'fair equivalent' of the bond or note conveyed"); *Continental Bank

N.A. v. Modansky*, 159 B.R. 129, 134 (S.D.N.Y. 1993) (transfer of property valued at $550,000 to

satisfy an antecedent debt of $260,000 was not fair consideration) (citing *Wilson v. Robinson*, 83 F.2d 397, 398 (2d Cir. 1936)). Instead, as the PSAC alleges, the Debtors transferred away property worth more than $565 million in exchange for debt relief of $140.1 million. PSAC ¶¶ 326, 329, 341, 342, 345. That windfall of $425 million caused an unfair diminution of Debtors' estates and harmed other creditors who, as discussed below, had remaining claims of more than $75 million. *Id.* ¶ 464. Debtors did not receive reasonably equivalent value, and Plaintiffs have adequately alleged fraudulent-transfer claims.

### c.  The Estoppel Certificate does not render the PSAC futile.

The Affidavit and Estoppel Certificate, which the Court previously found "undermined" the allegations of reasonably equivalent value (Order at 85), do not render the allegations that Debtors did not obtain reasonably equivalent value in exchange for the transfer of the property futile.

As an initial matter, Debtors are not bound by the Affidavit and Estoppel Certificate because they bring these avoidance claims as debtors-in-possession under the Bankruptcy Code, rather than in their pre-petition individual capacities. *See* 11 U.S.C. § 1107; *In re S.W. Bach & Co.*, 435 B.R. 866, 875–76 (Bankr. S.D.N.Y. 2010); 7 COLLIER ON BANKRUPTCY ¶ 1107.03[4] (Alan N. Resnick & Henry J. Sommers eds., 16th ed.). When trustees or debtors-in-possession (acting as trustees) pursue avoidance, as they do here, courts routinely hold that they are not bound by pre-petition agreements and statements made by the debtors. *See, e.g.*, *Bethlehem Steel Corp v. Moran Towing Corp. (In re Bethlehem Steel Corp.)*, 390 B.R. 784, 792–93 (Bankr. S.D.N.Y. 2008) (it is "well-settled law" in the Second Circuit that claims which are not derivative of a debtor's rights cannot be subject to prepetition arbitration agreements, even if brought by the debtor-in-possession); *In re Worldcom, Inc.*, 401 B.R. 637, 649 (Bankr. S.D.N.Y. 2009) (it is "more appropriate to view a debtor and the estate (whether administered by a debtor in possession

or trustee) as different entities for the purposes of pursuing avoidance actions"); *Corzin v. Fordu (In re Fordu)*, 201 F.3d 693, 706 (6th Cir. 1999) (trustee was not precluded from bringing action against debtor's ex-wife for prepetition transfers made under a separation agreement because debtor and trustee were not in privity); *Cohen v. Ernst & Young, LLP (In re Friedman's, Inc.)*, 372 B.R. 530, 547 (Bankr. S.D. Ga. 2007) ("[A] debtor in possession bringing avoidance actions under 11 U.S.C. §§ 544 and 548 on behalf of creditors is not asserting debtor-derived claims and is not a successor-party to a debtor's pre-petition arbitration agreements"). The Estoppel Certificate is exactly one of those pre-petition agreements that cannot bind a debtor-in-possession who is pursuing avoidance on behalf of the other creditors who were not a party to the Certificate, as the Plaintiffs do here.

Additionally, even if the Plaintiffs could be bound by the Certificate, under the allegations of the PSAC, considering it on a motion to dismiss would be improper. "[A] court may not consider" a document not attached to a complaint on a motion to dismiss "if a dispute exists regarding the authenticity *or accuracy* of the document." *Bongiorno v. Baquet*, No. 20-cv-7288 (LJL), 2021 WL 4311169, at *10–11 (S.D.N.Y. Sept. 20, 2021) (Liman, J.) (emphasis added) (internal quotation marks omitted). The PSAC alleges that the Estoppel Certificate is inaccurate and that Defendants, knowing the true value of Wade Park, knew it was inaccurate. PSAC ¶ 342. Specifically, in November 2016, Gamma itself obtained an independent appraisal of the market value of the Wade Park properties, which showed an as-is market value of *$466.8 million*. *Id.* ¶ 338. After that appraisal, improvements with a market value in excess of $500,000 were made to the Wade Park properties. *Id.* ¶ 328. Plaintiffs kept Gamma informed about the status of the project, so Gamma knew about these improvements and their value. *Id.* ¶ 340.

In light of the appraisal Gamma obtained and its knowledge of the improvements made to the property after that time, Gamma knew that the market value of Wade Park was at least $467 million—far in excess of the approximately $140.1 million still owing on the Gamma Bridge Loan and the BAMCAP Loan. *Id.* ¶¶ 338, 341–342. Additionally, Gamma knew in connection with the ongoing improvements that, following the transfer, Debtors would still have tens of millions of dollars in remaining creditor obligations. *Id.* ¶ 342. Thus, a "dispute exists regarding the . . . accuracy of the" Affidavit and Estoppel Certificate, which makes it improper for the Court to consider these documents on a motion to dismiss. *See Faulkner v. Beer*, 463 F.3d 130, 134 (2nd Cir. 2006) (reversing dismissal under Rule 12(b)(6) that relied on extraneous material when there were disputes of fact regarding the relevance of the document).

### 2.   The Debtors were rendered insolvent by the transfers.

Second, the PSAC adequately alleges that Debtors were rendered insolvent by the transfers. A plaintiff adequately pleads insolvency for purposes of a fraudulent-transfer claim by alleging that, after a transfer, its liabilities exceed its assets. *See Universal Church v. Geltzer*, 463 F.3d 218, 226 (2nd Cir. 2006); *In re Centennial Textiles, Inc.*, 220 B.R. 165, 174 (Bankr. S.D.N.Y. 1998); *In re Durso Supermarkets, Inc.*, 193 B.R. 682, 701 (Bankr. S.D.N.Y. 1996). "The proximity of the transfers to [the] bankruptcy filing [can] bolster the plausibility of insolvency." *See In re Haven Trust Bancorp, Inc.*, 461 B.R. 910, 913–14 (Bankr. N.D. Ga. 2011). Additionally, there is a presumption under New York law that a "debtor who transfers property without fair consideration is . . . insolvent." *In re Operations NY LLC*, 490 B.R. 84, 97–98 (Bankr. S.D.N.Y. 2013) (citing *Feist v. Druckerman*, 70 F.2d 333, 334 (2d Cir. 1934); *Geron v. Schulman* (*In re Manshul Constr. Corp.*), No. 97 Civ. 8851, 2000 WL 1228866, at *53 (S.D.N.Y. Aug. 30, 2000); *MFS/Sun Life Trust–High Yield Series v. Van Dusen Airport Servs. Co.*, 910 F. Supp. 913, 938 (S.D.N.Y. 1995); *Silverman v. Paul's Landmark, Inc.* (*In re Nirvana Restaurant, Inc.*), 337 B.R.

495, 505 (Bankr. S.D.N.Y. 2006)). This "same presumption has been applied to constructive fraudulent transfer litigation under 11 U.S.C. § 548." *Id.* at 98 (citing *Mendelsohn v. Jacobowitz (In re Jacobs )*, 394 B.R. 646, 672 (Bankr. E.D.N.Y. 2008)).

Under these principles, the PSAC adequately alleges that the transfer of Wade Park rendered Debtors insolvent. Specifically, the PSAC alleges that on February 21, 2019 (the date that Debtors transferred the deed to Gamma), Wade Park Land had assets of $204 million and liabilities of $76,125,950. PSAC ¶¶ 330, 332. Those assets consisted of its parcel of the Wade Park property and the liabilities consisted of $59,612,981 in debt for the Wade Park loans; $10,943,252 in debt to Fourth Quarter Properties 1000 and Universal City Property Management III; $291,557 in accounts payable; and $5,278,160 in other debts. ¶ 332. Likewise, on February 21, 2019, Wade Park Land Holdings had assets of $361 million and liabilities of $139,470,849. *Id.* ¶¶ 334, 336. Those assets consisted of Wade Park Land Holdings' parcel of the Wade Park property, and the liabilities consisted of $80,473,566 in debt for the Wade Park loans; $370,605,626 in debt to Fourth Quarter Properties 100 and Universal City Property Management III; $21,306,150 in accounts payable; and $76,132 for security deposits or pre-paid rent. *Id.* ¶ 336. Immediately after the transfer, Wade Park Land had just $19.81 in assets and $16,512,969 in liabilities, and Wade Park Land Holdings had $85.24 in assets and $58,997,283 in liabilities. *Id.* ¶¶ 331, 333, 335, 337. These allegations are sufficient to show insolvency.

Accordingly, because the PSAC adequately alleges claims for fraudulent transfer under 11 U.S.C. §§ 544, 548, 550, and 551, and Georgia Code § 18-2-70, *et seq.*, the Court should grant Plaintiffs leave to file the PSAC.

**B.  The PSAC states a claim for fraudulent inducement under New York law.**

The Court should also grant leave to amend because the PSAC asserts viable claims under New York law for fraud in the inducement in connection with the Deed-in-Lieu Agreement. New York law recognizes that "[o]ne who makes a misrepresentation of a present intention for the purpose of inducing another to act or refrain from action in reliance thereon may be liable in tort for damages, or for rescission of the contract." *Channel Master Corp. v. Aluminum Ltd. Sales, Inc.*, 4 N.Y.2d 403, 407 (1958). "To state a claim for fraud or inducement under New York law, a party must allege material misrepresentation of a fact, knowledge of its falsity, an intent to induce reliance, justifiable reliance by the plaintiff, and damages." *Coppelson v. Serhant*, No. 19-cv-8481 (JLJ), 2021 WL 2650393, at *2 (S.D.N.Y. June 28, 2021) (Liman, J.) (internal quotation marks omitted).

The PSAC alleges sufficient facts to state a fraudulent-inducement claim in connection with the Deed-in-Lieu Agreement. In negotiating the Deed-in-Lieu Agreement, Defendants repeatedly (1) misrepresented that the Deed-in-Lieu Agreement would not cause a transfer of the Wade Park deeds to Gamma, (2) misrepresented to Plaintiffs that Defendants would execute a written buy-back agreement with at least a six-month buy-back period, (3) misrepresented that despite any written agreement Plaintiffs would have whatever additional time was needed to buy back the properties, and (4) misrepresented that they would not take ownership of the properties. PSAC ¶¶ 186, 189, 194, 194.1, 198. But all along, Defendants never intended to give Plaintiffs more than a six-week buy-back period, and they intended to take ownership of the property. *Id.* ¶¶ 190.1, 194, 195, 198. That is, at the time that Defendants made each of those misrepresentations, Defendants intended to affirmatively interfere with Plaintiffs' ability to repay the loans and cut off

access to Plaintiffs' sources of credit, and Defendants intended to assume ownership of Wade Park because its value far exceed any debt owed. *Id.* ¶ 190.1.

When negotiating the Deed-in-Lieu Agreement in early February 2019, Kalikow and the Gamma Defendants misrepresented to Plaintiffs that they would execute a buy-back agreement with a buy-back period of six months (plus whatever additional time was needed), but only after the Deed-in-Lieu Agreement was signed. *Id.* ¶ 189. At the same time, Kalikow and the Gamma Defendants also told Plaintiffs that the Deed-in-Lieu Agreement would not actually cause a transfer of the Wade Park deeds to Gamma. *Id.* ¶ 186. Relying on Defendants' assurances, Plaintiffs entered into the Deed-in-Lieu Agreement on February 4, 2019. *Id.* ¶ 190. However, due to Kalikow's and the Gamma Defendants' efforts to strangle Thomas's sources of financing, Wade Park Land and Wade Park Land Holdings were able to make only one payment—and not a subsequent payment—to the Gamma Defendants, as required by the Deed-in-Lieu Agreement. *Id.* ¶¶ 191–192. Therefore, on or around February 21, 2019, Defendant Gamma Lending Omega released the deeds from escrow and recorded them in Texas. *Id.* ¶ 192.

Nevertheless, even after the recording, Kalikow and the Gamma Defendants continued to misrepresent to Plaintiffs that they would give Plaintiffs a six-month buy-back period, along with whatever additional time was needed to buy back the property. *Id.* ¶ 194. But Defendants did not intend to give Plaintiffs a six-month buy-back period, and instead, intended to interfere with Plaintiffs' ability to repay the loans by whittling down any buy-back period to six weeks, all while reassuring Plaintiffs that they could trust them to have whatever additional time was needed. *Id.* ¶¶ 194, 194.1 Plaintiffs, relying on Kalikow's and the Gamma Defendants' assurances that they would allow a buy-back well beyond the six-week buy-back period, ultimately accepted a written agreement with a six-week buy-back period. *Id.* ¶ 195. Because Kalikow and the Gamma

Defendants had access to all information concerning Plaintiffs' efforts to secure financing to pay the loans held by Gamma—and because Kalikow and the Gamma Defendants had improperly interfered to prevent all of those financings from happening—Kalikow and the Gamma Defendants knew, when they proposed the written buy-back agreement, that Plaintiffs would not be able to meet its terms. *Id.* ¶ 197.

Moreover, when the written buy-back agreement expired on or around April 15, 2019, Kalikow and the Gamma Defendants misrepresented yet again to Plaintiffs that they would have more time to buy back the Wade Park properties, but only with the additional condition that Thomas have a "strawman"—someone other than Thomas or a Thomas-affiliated entity. *Id.* ¶¶ 198–199. Plaintiffs turned to Hines as a "strawman" because Defendants had already expressed their support for a deal with Hines. *Id.* ¶¶ 183, 201. But instead, by the summer of 2019, the Gamma Defendants had rejected every proposal by Hines and required that Thomas no longer be involved with the property in any way. *Id.* ¶ 202. Hines rejected the Gamma Defendants' demand that Thomas be excluded, and it walked away from the deal. *Id.* ¶ 203. With the deeds recorded, Defendants had taken ownership of the property, despite Defendants' reassurances that they would not do so. *Id.* ¶ 186.

Despite their repeated assurances, Defendants never intended to give Thomas more than a six-week buy-back period and always intended to take ownership of the property—because its value far exceeded any debt that was owed. *Id.* ¶¶ 190.1, 194, 195, 198. Plaintiffs entered into the Deed-in-Lieu Agreement relying on Defendants' misrepresentations and misleading omissions and would not have entered into the Deed-in-Lieu Agreement had they known the truth. *Id.* ¶¶ 190.1, 204.1. Plaintiffs have therefore adequately pleaded a claim for fraudulent inducement under New York law. *See, e.g.*, *Channel Master Corp.*, 4 N.Y.2d at 407.

While the Deed-in-Lieu Agreement contains a merger clause,[9] "under New York law[,] merger clauses generally do not bar claims for fraudulent inducement unless the clause *specifically addresses* the very conduct complained of in the fraud allegation." *Icebox-Scoops v. Finanz St. Honoré, B.V.*, 676 F. Supp. 2d 100, 111–12 (E.D.N.Y. 2009) (emphasis added); *see also Wall v. CSX Transp., Inc.*, 471 F.3d 410, 416 (2d Cir. 2006) (New York law permits claims "for fraud in the inducement when the misrepresentation is collateral to the contract it induced."). Here, the merger clause in the Deed-in-Lieu Agreement "is general and does not contain reference to any specific representations," and thus, it does not bar Plaintiffs' fraudulent inducement claim. *Icebox-Scoops*, 676 F. Supp. 2d at 112 (holding that a merger clause which confirmed "that there are 'no representations, undertakings, or agreements of any kind between the parties hereto respecting the subject matter hereof except those contained in this Agreement'" did not contain "the specificity required to bar a fraudulent inducement claim under New York law"). Therefore, Plaintiffs should be granted leave to amend to plead a fraudulent inducement claim.

## CONCLUSION

For the reasons set forth herein, Plaintiffs respectfully request that the Court grant their motion to amend the judgment to dismiss the FAC *without prejudice*, and grant Plaintiffs leave to file the PSAC.

---

[9] The Deed-in-Lieu Agreement contains this clause:

> Entire Agreements. This Agreement, the GRE Loan Documents and BAMPCAP Loan Documents constitute the entire understanding and agreement by and between the parties with respect to their subject matter and the transactions contemplated thereby, superseding all prior writings, decisions and understandings between the parties with respect thereto.

Dkt. 40-3 at ¶ 14.

24

Respectfully submitted, this 18th day of March, 2022.

**CAPLAN COBB LLC**
By:

*/s/ James W. Cobb*
James W. Cobb *(admitted pro hac vice)*
jcobb@caplancobb.com
Julia Blackburn Stone *(admitted pro hac vice)*
jstone@caplancobb.com
Jessica A. Caleb *(admitted pro hac vice)*
jcaleb@caplancobb.com

75 Fourteenth Street NE, Suite 2700
Atlanta, Georgia 30309
Tel: (404) 596-5600
Fax: (404) 596-5604
Counsel for Plaintiffs

**SLARSKEY LLC**
By:

*/s/ Renee Bea*
Renee Bea
rbea@slarskey.com
420 Lexington Avenue, Suite 2525
New York, New York 10170
Tel: (212) 658-0661
Counsel for Plaintiffs

**STONE & BAXTER, LLP**
By:

*/s/ David L. Bury, Jr.*
Ward Stone, Jr. *(admitted pro hac vice)*
wstone@stoneandbaxter.com
David L. Bury, Jr. *(admitted pro hac vice)*
dbury@stoneandbaxter.com
577 Mulberry Street, Suite 800
Macon, Georgia 31201
(478) 750-9898; (478) 750-9899 (fax)
Counsel for Debtors and Plaintiffs
Wade Park Land, LLC and Wade Park
Land Holdings, LLC

25

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this day, I filed a copy of the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notification of the filing to all counsel of record.

This 18th day of March, 2022.

<u>/s/ *James W. Cobb*</u>
James W. Cobb *(admitted pro hac vice)*
jcobb@caplancobb.com
**CAPLAN COBB LLC**
75 Fourteenth Street NE, Suite 2700
Atlanta, Georgia 30309
Tel: (404) 596-5600
Fax: (404) 596-5604

*Counsel for Plaintiffs*

26