UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

WADE PARK LAND HOLDINGS, LLC; WADE  :
PARK LAND, LLC; and THE THOMAS        :
FAMILY TRUST, by and through its Trustees,  :
acting in their official capacities,         :
                                            :
               Plaintiffs,              :
                                            :
          v.                            :    Case No. 1:21-cv-01657-LJL-RWL
                                            :
JONATHAN KALIKOW;                          :
WP DEVELOPMENT PARTNERS LLC;               :
GAMMA LENDING OMEGA LLC; GAMMA             :
REAL ESTATE CAPITAL LLC; GRE WP LLC;       :
and BLAKE GOODMAN,                         :
                                            :
              Defendants.              :
                                            :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

# MEMORANDUM OF LAW OF DEFENDANTS JONATHAN KALIKOW, WP DEVELOPMENT PARTNERS LLC, GAMMA LENDING OMEGA LLC, GAMMA REAL ESTATE CAPITAL LLC AND GRE WP LLC IN OPPOSITION TO PLAINTIFFS' MOTION TO AMEND THE JUDGMENT AND FOR LEAVE TO FILE A SECOND AMENDED COMPLAINT

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

TABLE OF AUTHORITIES ....................................................................................................... i

PRELIMINARY STATEMENT .................................................................................................. 1

ARGUMENT .............................................................................................................................. 2

I.     PLAINTIFFS FAIL TO SATISFY RULE 59(E)'S REQUIREMENTS TO
       AMEND THE JUDGMENT OR THE STANDARD FOR RECONSIDERATION ........ 2

       A.     The Denial of Plaintiffs' One-Sentence Footnote Request for Leave to
             Amend Was Not Clear Error or Manifest Injustice ................................................. 4

       B.     Plaintiffs' Arguments about "Clear Error" and "Manifest Injustice" Are
             Meritless ................................................................................................................. 8

II.    EVEN IF RULE 15(A) ALONE GOVERNED PLAINTIFFS' MOTION, IT
       SHOULD BE DENIED ............................................................................................ 11

       A.     The PSAC Fails to State Claims for Fraudulent Transfer ..................................... 12

             1.     Plaintiffs do not plausibly allege the transfers were for other than
                   reasonably equivalent value ..................................................................... 13

                   a.     The PSAC continues to rest on implausible allegations .............. 13

                   b.     Plaintiffs' conclusory allegations are inconsistent with their
                        other sworn statements in their Estoppel Certificate and
                        bankruptcy filings ........................................................................ 15

                   c.     The satisfaction of the antecedent debt in exchange for the
                        Property constituted reasonably equivalent value ........................ 17

               2.     Plaintiffs do not plausibly allege Debtors were rendered insolvent
                   by the transfers ......................................................................................... 18

               3.     The proposed Georgia Uniform Voidable Transfers Act claim also
                   fails because the Act does not apply here .................................................. 19

       B.     The PSAC Fails to State a Claim for Fraudulent Inducement of the DIL ............. 20

CONCLUSION ........................................................................................................................... 25

KL3 3379486.1

## TABLE OF AUTHORITIES

**Cases**

*Am. Federated Title Corp. v. GFI Mgmt. Servs., Inc.*,
716 F. App'x 23 (2d Cir. 2017) ...................................................................18 n.16

*Analytical Surveys, Inc. v. Tonga Partners, L.P.*,
684 F.3d 36 (2d Cir. 2012).............................................................................3

*In re AppliedTheory Corp.*,
330 B.R. 362 (S.D.N.Y. 2005)....................................................................17 n.15

*Atlanta Concorde Fire Soccer Ass'n, Inc. v. Graham*,
355 Ga. App. 228 (2020) ..........................................................................19 n.17

*Axar Master Fund, Ltd. v. Bedford*,
806 F. App'x 35 (2d Cir. 2020) ......................................................2, 3, 3 n.1, 4

*Ballard v. Parkstone Energy, LLC*,
2008 WL 4298572 (S.D.N.Y. Sept. 19, 2008)............................................4 n.3

*Banco Safra S.A.-Cayman Islands Branch v. Samarco Mineracao S.A.*,
849 F. App'x 289 (2d Cir. 2021) .....................................7 n.5, 10 n.9, 11

*Bank v. Verde Energy*,
2021 WL 4097313 (2d Cir. Sep. 9, 2021)...................................................3

*Bellikoff v. Eaton Vance Corp.*,
481 F.3d 110 (2d Cir. 2007)........................................................................10

*Bongiorno v. Baquet*,
2021 WL 4311169 (S.D.N.Y. Sept. 20, 2021)...........................................16 n.14

*Bonine v. Guccione*,
2022 WL 102073 (2d Cir. Jan. 11, 2022) ..................................................3 n.2

*Born v. Quad/Graphics, Inc.*,
521 F. Supp. 3d 469 (S.D.N.Y. 2021)........................................................7 n.5

*Brecher v. Citigroup Inc.*,
2011 WL 5525353 (S.D.N.Y. Nov. 14, 2011).............................................11 n.11

*Brown v. Kerry Inc.*,
2021 WL 5446007 (S.D.N.Y. Nov 22, 2021), *report and recommendation adopted,* 2022 WL 669880 (S.D.N.Y. Mar. 7, 2022) ......................................10 n.9

*Cambridge Cap. LLC v. Ruby Has LLC*,
2021 WL 4481183 (S.D.N.Y. Sep. 30, 2021)...........................................23

KL3 3379486.1

*Cardwell v. Davis Polk & Wardwell LLP*,
  2021 WL 4434935 (S.D.N.Y. Sept. 23, 2021) ..................................................................9 n.7

*In re Chalik*,
  748 F.2d 616 (11th Cir. 1984) ........................................................................................17

*City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG*,
  752 F.3d 173 (2d Cir. 2014) ................................................................6, 7 n.5, 8, 10

*Coit v. Sutton Funding LLC*,
  2010 WL 2105116 (D. Ariz. May 24, 2010) ...................................................................9

*Colonial Funding Network, Inc. v. Epazz, Inc.*,
  252 F. Supp. 3d 274 (S.D.N.Y. 2017) .........................................................................21 n.19

*Conopco, Inc. v. Wein*,
  2007 WL 9818902 (S.D.N.Y. Aug. 31, 2007) ...............................................................21

*Coppelson v. Serhant*,
  2021 WL 148088 (S.D.N.Y. Jan. 15, 2021) ...................................................................21

*Corsair Special Situations Fund, L.P. v. Nat'l Res.*,
  595 F. App'x 40 (2d Cir. 2014) ........................................................................................5

*Cresci v. Mohawk Valley Community College*,
  693 F. App'x 21 (2d Cir. 2017) ...................................................................................10 n.9

*In re Crucible Materials Corp.*,
  2012 WL 5360945 (Bankr. D. Del. Oct. 31, 2012) .....................................................18 n.16

*In re Crude Oil Commodity Litig.*,
  2014 WL 5847444 (S.D.N.Y. Sept. 7, 2007) ..................................................................6

*Cruz v. TD Bank, N.A.*,
  742 F.3d 520 (2d Cir. 2013) .........................................................................................9 n.8

*Del Cibao v. 3 Kids Corp.*,
  2021 WL 4635919 (S.D.N.Y. Oct. 6, 2021) ................................................................9 n.6

*Dempsey v. Vieau*,
  2016 WL 3351081 (S.D.N.Y. June 15, 2016) ..............................................................11 n.11

*Dynamic Worldwide Logistics, Inc. v. Exclusive Expressions, LLC*,
  2015 WL 5439217 (S.D.N.Y. Sep. 14, 2015) .........................................................4, 11 n.10

*Emergent Cap. Inv. Mgmt., LLC v. Stonepath Grp., Inc.*,
  343 F.3d 189 (2d Cir. 2003) .......................................................................................24, 25

KL3 3379486.1

*Eurycleia Partners, LP v. Seward & Kissel, LLP*,
  12 N.Y.2d 553 (2009) ...........................................................................................20

*Faulkner v. Beer*,
  463 F.3d 130 (2d Cir. 2006)...............................................................................16 n.14

*Fin. Guar. Ins. Co. v. Putnam Advisory Co.*,
  783 F.3d 395 (2d Cir. 2015)........................................................................................22

*Fireman's Fund Ins. Co. v. Great Am. Ins. Co. of New York*,
  822 F.3d 620 (2d Cir. 2016)...............................................................................19 n.17

*In re First Alliance Mortgage Co.*,
  471 F.3d 977 (9th Cir. 2006) .............................................................................18 n.16

*Fogel v. Wal-Mart de Mexico SAB de CV*,
  2018 WL 1033227 (S.D.N.Y. Feb. 21, 2018), *aff'd,* 759 F. App'x 18
  (2d Cir. 2018)..........................................................................................................3 n.1

*Foman v. Davis*,
  371 U.S. 178 (1962).................................................................................................4 n.3

*Geo-Grp. Commc'ns, Inc. v. Chopra*,
  2018 WL 3632498 (S.D.N.Y. July 30, 2018) ....................................................17 n.15

*In re Gildan Activewear, Inc. Sec. Litig.*,
  2009 WL 4544287 (S.D.N.Y. Dec. 4, 2009) ......................................................10 n.9

*In re Health Mgmt.*,
  113 F. Supp. 2d 613 (S.D.N.Y. 2000).........................................................................3

*Hollander v. Bd. of Regents of the Univ. of N.Y.*,
  524 F. App'x 727 (2d Cir. 2013) ...........................................................................3 n.2

*Honig v. Hansen*,
  2021 WL 5518207 (S.D.N.Y. Nov. 24, 2021).....................................................11 n.11

*HSM Holdings, LLC v. Mantu I.M. Mobile Ltd.*,
  2021 WL 918556 (S.D.N.Y. Mar. 10, 2021) ......................................................23, 24

*Icebox-Scoops, Inc. v. Finanz St. Honoré, B.V.*,
  676 F. Supp. 2d 100 (E.D.N.Y. 2009) ...............................................................25 n.23

*In re Jakovljevic-Ostojic*,
  517 B.R. 119 (Bankr. N.D. Ill. 2014) ......................................................................17

*In re Jesup & Lamont, Inc.*,
  507 B.R. 452 (Bankr. S.D.N.Y. 2014).................................................................18 n.16

KL3 3379486.1

*Kellogg v. Food Serv. Supplies, Inc.*,
246 Ga. App. 695 (2000) ........................................................19 n.17

*Lerner v. Fleet Bank, N.A.*,
459 F.3d 273 (2d Cir. 2006)................................................................21

*Lomaglio Assocs. Inc. v. LBK Mktg. Corp.*,
876 F. Supp. 41 (S.D.N.Y. 1995)........................................................23 n.21

*Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*,
797 F.3d 160 (2d Cir. 2015)........................................................10 n.9

*Mayes v. 490 Habitat, Inc.*,
2020 WL 587112 (E.D.N.Y. Feb. 6, 2020)........................................11 n.11

*Melamed v. Lake County National Bank*,
727 F.2d 1399 (6th Cir. 1984) ........................................................18 n.16

*Metzler Inv. GmbH v. Chipotle Mexican Grill, Inc.*,
970 F.3d 133 (2d Cir. 2020)........................................................3, 3 n.1, 9

*Monahan v. New York City Dep't of Corrections*,
214 F.3d 275 (2d Cir. 2000)........................................................4 n.3

*Morrissey v. GMC*,
21 F. App'x 70 (2d Cir. 2001) ........................................................21 n.19

*Copeland ex rel. NBTY, Inc. v. Rudolph*,
160 F. App'x 56 (2d Cir. 2005) ........................................................6

*Niagara Mohawk Power Corp. v. Hudson River-Black River Regulating Dist.*,
673 F.3d 84 (2d Cir. 2012)........................................................5

*Nielsen v. Rabin*,
746 F.3d 58 (2d Cir. 2014)........................................................10 n.9

*Norton v. Sam's Club*,
145 F.3d 114 (2d Cir. 1998)........................................................5

*Optima Media Grp. Ltd. v. Bloomberg L.P.*,
383 F. Supp. 3d 135 (S.D.N.Y. 2019)........................................................23 n.21

*Panther Partners Inc. v. Ikanos Commc'ns, Inc.*,
347 F. App'x 617 (2d Cir. 2009) ........................................................4 n.3

*Pashian v. Eccelston Props., Ltd.*,
88 F.3d 77 (2d Cir. 1996) ........................................................17 n.15

KL3 3379486.1

*Phoenix Cos. v. Concentrix Ins. Admin. Sols. Corp.*,
  2021 WL 3604663 (S.D.N.Y. Aug. 12, 2021) ...............................................................25 n.23

*Porat v. Lincoln Towers Community Association*,
  464 F.3d 274 (2d Cir. 2006) .........................................................................................9 n.8

*President Container Grp. II, LLC v. Systec Corp.*,
  467 F. Supp. 3d 158 (S.D.N.Y. 2020) .........................................................................23 n.21

*Ricciuti v. N.Y.C. Transit Authority*,
  941 F.2d 119 (2d Cir. 1991) .......................................................................................10 n.8

*Riverkeeper, Inc. v. Wheeler*,
  2020 WL 1188455 (S.D.N.Y. Mar. 12, 2020) .............................................................11 n.11

*Rothstein v. UBS AG*,
  708 F.3d 82 (2d Cir. 2013) ..................................................................................15, 16 n.13

*Ruotolo v. City of New York*,
  514 F.3d 184 (2d Cir. 2008) ........................................................................................4 n.3

*S. Telecom Inc. v. Threesixty Brands Grp., LLC*,
  2021 WL 979567 (S.D.N.Y. Mar. 16, 2021) ...............................................................9 n.6

*In re Sharp Int'l Corp.*,
  403 F.3d 43 (2d Cir. 2005) ............................................................17 n.15, 18 n.16, 19

*Sklair v. Mike Bloomberg 2020, Inc.*,
  2022 WL 889849 (S.D.N.Y. Mar. 25, 2022) ...............................................................21 n.19

*Starr Found. v. Am. Int'l Grp., Inc.*,
  76 A.D.3d 25 (2010) ....................................................................................................23 n.20

*Stevelman v. Alias Research Inc.*,
  174 F.3d 79 (2d Cir. 1999) ..........................................................................................20

*In re Tamoxifen Citrate Antitrust Litig.*,
  429 F.3d 370 (2d Cir. 2005), *amended and superseded,* 466 F.3d 187
  (2d Cir. 2006) ...............................................................................................................5

*Tommy Lee Handbags Mfg. Ltd. v. 1948 Corp.*,
  2012 WL 4903177 (S.D.N.Y. Oct. 12, 2012) ..............................................................9 n.7

*Town & Country Linen Corp. v. Ingenious Designs LLC*,
  2021 WL 4892857 (S.D.N.Y. Oct. 19, 2021) ..............................................................3

*In re Trib. Co. Fraudulent Conv. Litig.*,
  10 F.4th 147 (2d Cir. 2021), *cert. denied*, 2022 WL 516021 (Feb. 22, 2022) .............13, 15, 17

- vi -

*United States v. Cavera*,
    550 F.3d 180 (2d Cir. 2008)..................................................................5

*Vibes Int'l, Inc. v. Iconix Brand Grp., Inc.*,
    2020 WL 3051768 (S.D.N.Y. June 8, 2020) ........................................22

*Wade Park Land Holdings v. Kalikow*,
    522 F. Supp. 3d 1341 (N.D. Ga. 2021) .................................................7

*Wall v. CSX Transp., Inc.*,
    471 F.3d 410 (2d Cir. 2006).........................................................25 n.23

*Williams v. Citigroup, Inc.*,
    659 F.3d 208 (2d Cir. 2011)..........................................................4 n.3

*In re Winstar Comm.*,
    2006 WL 473885 (S.D.N.Y. Feb. 27, 2006).....................................9 n.7

## Statutes & Rules

Fed. R. Bankr. P. 7009 ..........................................................................20

Fed. R. Bankr. P. 7015 ............................................................................2

Fed. R. Bankr. P. 9023 ............................................................................1

Fed. R. Civ. P. 9(b) ...................................................................20, 23 n.21

Fed. R. Civ. P. 15(a) ....................................................................... *passim*

Fed. R. Civ. P. 59(e) ....................................................................... *passim*

Fed. R. Civ. P. 60(b) ...............................................................................4

O.C.G.A. § 18-2-80 ...............................................................................20

## Other Authorities

Entity Search, Delaware Secretary of State, Division of Corporations,
    https://icis.corp.delaware.gov/ecorp/entitysearch/namesearch.aspx.............24 n.22

Leo Rosten, *The New Joys of Yiddish* (2001) .....................................13 n.12

KL3 3379486.1

Defendants Jonathan Kalikow, WP Development Partners LLC ("WP"), Gamma Lending Omega LLC ("Omega"), Gamma Real Estate Capital LLC ("GRE") and GRE WP LLC ("GWL," and together with the foregoing defendants, "Defendants") respectfully submit this memorandum in opposition to the motion of Plaintiffs Wade Park Land Holdings, LLC ("WPH"), Wade Park Land, LLC ("WPL," and together with WPH, the "Wade Park Plaintiffs") and the Thomas Family Trust (the "Trust") to amend the judgment entered by this Court on March 7, 2022 (Dkt. No. 59), and for leave to file a second amended complaint (the "PSAC").

## **PRELIMINARY STATEMENT**

Plaintiffs' motion to amend the judgment only confirms they should never have brought this completely baseless action.

This Court is well aware of the facts.  In January 2017, WPH and WPL borrowed $82.75 million from GRE as a four-month bridge loan to refinance land they owned in Frisco, Texas (the "Property").  WPH and WPL never repaid the loan, even after numerous extensions and forbearances.  On or about February 21, 2019, the Property was transferred to WP.

Eighteen months later, on August 27, 2020, Plaintiffs filed their original complaint.  They subsequently filed a 471-paragraph Amended Complaint (the "AC") that included seventeen counts against Defendants.  On March 4, 2022, this Court issued a well-reasoned 90-page Opinion and Order that dismissed the AC with prejudice because it is barred by Plaintiffs' multiple releases and Plaintiffs' failure to state a claim.

Plaintiffs now move under Fed. R. Civ. P. 59(e) (incorporated by Fed. R. Bankr. P. 9023) for leave to amend their fraudulent transfer claims and add a new claim for fraudulent inducement of the Deed in Lieu Agreement (the "DIL").  Their motion should be denied for numerous reasons.  Plaintiffs come nowhere near meeting the standard to amend the judgment or

for reconsideration.  They do not identify any change in controlling law, any new evidence that was not available to them for years, any error in the Court's ruling or any manifest injustice.

Although that failure alone is dispositive, Plaintiffs also fail to meet the requirements of Fed. R. Civ. P. 15(a) (incorporated by Fed. R. Bankr. P. 7015) for leave to amend.  They unduly delayed by passing up numerous opportunities to seek leave to amend their fraudulent transfer claims, or add their new claim.  They provide no reason why they could not have made their proposed new allegations before (and there is none).  Having recorded a *lis pendens* immediately before filing this lawsuit to prevent Defendants from selling the Property, they appear to have made a tactical decision to draw out this litigation to unduly prejudice and thereby put pressure on Defendants.  In any event, their two proposed amended claims and one new claim would be futile because, like the AC, they fail to state a claim.

## **ARGUMENT**

## I.   **PLAINTIFFS FAIL TO SATISFY RULE 59(E)'S REQUIREMENTS TO AMEND THE JUDGMENT OR THE STANDARD FOR RECONSIDERATION**

Plaintiffs' motion to amend the judgment and for leave to file the PSAC should be denied because they utterly fail to meet the requirements for a Rule 59(e) motion or a motion for reconsideration.  Accordingly, the Court need not reach Plaintiffs' Rule 15(a) motion for leave to amend their AC.  But Plaintiffs also fail to satisfy that standard.

The Second Circuit recently reaffirmed the procedure governing post-judgment motions for relief from a judgment and leave to file an amended complaint.  *See Axar Master Fund, Ltd. v. Bedford*, 806 F. App'x 35 (2d Cir. 2020) (affirming denial of post-judgment motion for leave to replead).  Plaintiffs "must first have the judgment vacated or set aside pursuant to Fed. R. Civ. P. 59(e) or 60(b)." *Id.* at 39.  "To hold otherwise would enable the liberal amendment policy of Rule 15(a) to be employed in a way that is contrary to the philosophy

favoring finality of judgments and the expeditious termination of litigation." *Metzler Inv. GmbH v. Chipotle Mexican Grill, Inc.*, 970 F.3d 133, 142 (2d Cir. 2020).[1]

"A district court may grant a Rule 59(e) motion only when the movant identifies [1] an intervening change of controlling law, [2] the availability of new evidence, or [3] the need to correct a clear error or prevent manifest injustice." *Bank v. Verde Energy,* 2021 WL 4097313, at *2 (2d Cir. Sep. 9, 2021).[2]  The "motion may not be used to relitigate old matters, or to raise arguments or present evidence that could have been raised prior to the entry of judgment." *Axar*, 806 F. App'x at 39 (quoting *Exxon Shipping Co. v. Baker,* 554 U.S. 471, 485 n.5 (2008)).

Reconsideration — which Plaintiffs effectively seek of the denial of their request for leave to amend — is also an "extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources." *In re Health Mgmt.,* 113 F. Supp. 2d 613, 614 (S.D.N.Y. 2000).  It is not a "vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a 'second bite at the apple.'" *Analytical Surveys, Inc. v. Tonga Partners, L.P.*, 684 F.3d 36, 52 (2d Cir. 2012) (quoting *Sequa Corp. v. GBJ Corp.*, 156 F.3d 136, 144 (2d Cir. 1998)); *Town & Country Linen Corp. v. Ingenious Designs LLC*, 2021 WL 4892857 (S.D.N.Y. Oct. 19, 2021) (Liman, J.).

---

[1] Plaintiffs cite the pre-*Axar* statement in *Fogel v. Wal-Mart de Mexico SAB de CV,* 2018 WL 1033227, at *4 (S.D.N.Y. Feb. 21, 2018), *aff'd,* 759 F. App'x 18 (2d Cir. 2018), that when a Rule 59(e) motion seeks to amend a pleading post-judgment, "the interest in finality generally applicable to post-judgment motions may give way to allow courts 'to take into account the nature of the proposed amendment in deciding whether to vacate [a] previously entered judgment.'"  (Br. 5.)  But even if that statement is good law after *Axar* and *Metzler, Fogel* cautioned that "[w]here . . . a party does not seek leave to file an amended complaint until after judgment is entered, Rule 15's liberality must be tempered by considerations of finality."  2018 WL 1033227, at *4.  *Fogel* denied the motion to amend because, as here, plaintiff "neither points to new evidence nor identifies facts or law that the Court overlooked."  *Id.*

[2] *See also Bonine v. Guccione,* 2022 WL 102073, at *2 (2d Cir. Jan. 11, 2022) (this showing is "required" to grant relief); *Hollander v. Bd. of Regents of the Univ. of N.Y.*, 524 F. App'x 727, 729 (2d Cir. 2013) ("court may grant a Rule 59(e) motion only if the movant satisfies the heavy burden of demonstrating" one of these elements).

Finally, whether to grant or deny a Rule 59(e) motion is within "the sound discretion of the district court." *Dynamic Worldwide Logistics, Inc. v. Exclusive Expressions, LLC*, 2015 WL 5439217, at *3 (S.D.N.Y. Sep. 14, 2015).  As the Second Circuit recently explained, "[b]ecause we conclude that the district court did not abuse its discretion in rejecting plaintiffs' motion to alter or vacate the judgment under Rules 59(e) or Rule 60(b), we need not reach the merits of plaintiffs'" proposed amended complaint.  *Axar,* 806 F. App'x at 39 n.3.[3]

Plaintiffs come nowhere near satisfying these Rule 59(e) and reconsideration requirements.  They do not argue their request is supported by any change in controlling law or new evidence they were not previously aware of.  They do not identify facts or law the Court overlooked.  They argue only that this Court "committed clear error" in denying leave to amend and that denial of their motion now would "result in a manifest injustice." (Br. 6.)  But that is incorrect.  This Court did not commit error, let alone "clear error," and they point to no injustice, much less "manifest injustice" that has resulted from the denial.  (*Id.*)  Instead they base their argument on a new theory (proposed Count XVII) they could have raised before and new allegations (pled in their proposed revisions to Counts XII and XIII) they could have made before the entry of judgment.  They are not entitled to yet another bite at the apple.

### A.    The Denial of Plaintiffs' One-Sentence Footnote Request for Leave to Amend Was Not Clear Error or Manifest Injustice

A district court has not committed "clear error" unless a reviewing court would be

---

[3] Plaintiffs' cases are not to the contrary and do not support their motion.  Two involved simple motions to amend a complaint that were not made post-judgment and did not seek reconsideration.  *See Monahan v. New York City Dep't of Corrections,* 214 F.3d 275, 283 (2d Cir. 2000); *Ballard v. Parkstone Energy, LLC,* 2008 WL 4298572 (S.D.N.Y. Sept. 19, 2008).  *Ruotolo v. City of New York*, 514 F.3d 184, 191 (2d Cir. 2008), found the plaintiff must first satisfy Rule 59(e) or 60(b), and affirmed denial of its post-judgment motion for leave to amend.  *Williams v. Citigroup, Inc.,* 659 F.3d 208, 213 (2d Cir. 2011), too ruled "a party seeking to file an amended complaint postjudgment must first have the judgment vacated or set aside pursuant to [Rules] 59(e) or 60(b)."  *Panther Partners Inc. v. Ikanos Commc'ns, Inc.,* 347 F. App'x 617 (2d Cir. 2009), concerned a change in controlling law that Plaintiffs do not argue here.  And *Foman v. Davis,* 371 U.S. 178, 182 (1962), involved a district court that, unlike this Court, denied leave to amend "without any justifying reason appearing for the denial."

"left with the definite and firm conviction that a mistake has been committed." *See United States v. Cavera*, 550 F.3d 180, 204 (2d Cir. 2008).  The manifest injustice standard is "deferential to district courts and provides relief only in the proverbial rare case." *Corsair Special Situations Fund, L.P. v. Nat'l Res.*, 595 F. App'x 40, 44 (2d Cir. 2014) (affirming denial of Rule 59(e) motion).  There is no manifest injustice "where the movant's arguments for relief were available" "and the party proffers no reason for its failure to raise the arguments." *Id.*  Plaintiffs do not and cannot come close to satisfying either standard.

Plaintiffs do not argue the Court committed a clear error, or caused a manifest injustice, in dismissing any of their claims, let alone their two fraudulent transfer claims they propose to amend in their PSAC.  And they could not possibly argue the Court committed any error (or caused any injustice) concerning their new proposed Count XVII for fraudulent inducement of the DIL because they did not even purport to plead that claim in their AC.

The only ruling Plaintiffs contend was a clear error and manifest injustice was the Court's denial of their one-sentence footnote request for leave to amend.  (Br. 6; Dkt. No. 46 at 1 n.1.)  Their argument concerning the footnote is incorrect, for several independent reasons.

*First,* since Plaintiffs chose to make their request only in a footnote, the Court did not even have to consider it.  Courts generally "do not consider an argument mentioned only in a footnote to be adequately raised." *Niagara Mohawk Power Corp. v. Hudson River-Black River Regulating Dist.*, 673 F.3d 84, 107 (2d Cir. 2012); *see also Norton v. Sam's Club*, 145 F.3d 114, 117 (2d Cir. 1998) ("argument made only in a footnote was inadequately raised.").  That includes Rule 15(a) requests.  As the Second Circuit has explained, "[i]t is within the court's discretion to deny leave to amend" when the request "appeared in a footnote in the middle of their brief opposing the defendants' motion to dismiss." *In re Tamoxifen Citrate Antitrust Litig.*, 429 F.3d

370, 404 (2d Cir. 2005), *amended and superseded,* 466 F.3d 187 (2d Cir. 2006); *see also Copeland ex rel. NBTY, Inc. v. Rudolph*, 160 F. App'x 56, 59 (2d Cir. 2005) (affirming denial of footnote request for leave to amend); *In re Crude Oil Commodity Litig*., 2014 WL 5847444, at *3 (S.D.N.Y. Sept. 7, 2007) (denying reconsideration where "Plaintiffs' purported request for leave to amend was contained within a footnote in their opposition brief" because "[a]rguments which appear in footnotes are generally deemed to have been waived.").

*Second*, the Court correctly denied Plaintiffs' footnote request because they "identif[ied] no additional facts or legal theories that they might assert if given the opportunity to replead," and "because the Court conclude[d] that any amendment would be futile." (Dkt. No. 58 at 90 n.17.)  That was neither "clear error" nor a "manifest injustice."  Plaintiffs admit (Br. 8) their footnote request did not identify any additional proposed facts or theories they sought to add to their AC, much less submit a proposed second amended complaint.  (Dkt. No. 46 at 1 n.1.) Nor did it present any argument that Rule 15(a) entitled them to leave to amend their AC.  Those failures alone warranted denial of leave to amend.  *See City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG*, 752 F.3d 173, 188 (2d Cir. 2014) (affirming denial where plaintiffs identified no additional facts or legal theories they might assert if given leave to amend).

*Third*, denial of leave to amend was neither "clear error" nor a "manifest injustice" because Plaintiffs had already amended their complaint once (Dkt. No. 62-6 at 9), to address deficiencies Mr. Goodman identified in his initial motion to dismiss (Dkt. No. 62-5 at 9), and chose to pass up numerous later opportunities to seek leave to make additional amendments:

- On November 13, 2020, Defendants moved to transfer the action to this Court, and they and Mr. Goodman moved to dismiss the AC.  (Dkt. Nos. 13, 14, 16.) Plaintiffs could have sought leave to replead in response to the motions, which identified numerous deficiencies in the AC, but chose not to do so.

- On February 24, 2021, Judge Batten issued a 51-page opinion and order granting Mr. Goodman's motion to dismiss and Defendants' motion to transfer. The Court identified numerous deficiencies in Plaintiffs' AC, including in their RICO claims, their allegations of fraud underlying those claims, their breach of fiduciary duty and conspiracy to breach fiduciary duty claims, and their claim for misappropriation of secrets under the Georgia Trade Secrets Act. *Wade Park Land Holdings v. Kalikow,* 522 F. Supp. 3d 1341, 1350-52, 1355-56 (N.D. Ga. 2021). But Plaintiffs chose not to seek leave to replead.

- After the transfer, Defendants wrote to this Court asking whether it would like the parties to re-brief Defendants' motion to dismiss based on the law most appropriate to this venue. Plaintiffs had another opportunity then to seek to leave to replead but failed to do so and took the position that re-briefing was unnecessary. (Dkt. No. 35.)

- When the Court directed re-briefing, Defendants re-briefed their motion to dismiss, identifying numerous deficiencies in the AC, including the fraudulent transfer and other fraud claims. Again Plaintiffs could have sought leave to amend, but chose not to do so (other than their one-sentence footnote request which did not even mention their fraudulent transfer claims, let alone identify any additional facts or theories). (Dkt. Nos. 36, 41, 46, 47.)

- On February 9, 2022, the Court heard oral argument on Defendants' motion to dismiss. Plaintiffs had an opportunity to raise the new facts they now seek to allege in support of their fraudulent transfer claims, but chose not to do so. Nor did they ask to plead a new claim for fraudulent inducement of the DIL, even though Defendants pointed out that none of Plaintiffs' "allegations say that there was specific fraud, that someone said something relating to the deed-in-lieu agreement that constituted a fraud." (Tr. 40.)[4]

Plaintiffs' repeated tactical decisions not to seek leave to amend, despite ample opportunity to do so, warranted the denial of their belated, insufficient one-sentence footnote request.[5]

  *Fourth*, Plaintiffs did not need to wait for this Court's Order to inform them of the

---

[4] Plaintiffs knew how to raise repleading at oral argument. They asked to "re-plead to change the allegations about Thomas having negotiations to allegations about Wade Park Land and Wade Park Land Holdings having these negotiations." (Tr. 35.)

[5] *See Banco Safra S.A.-Cayman Islands Branch v. Samarco Mineracao S.A.*, 849 F. App'x 289, 296 (2d Cir. 2021) (affirming denial of leave to amend where the plaintiff "had ample opportunity to amend its complaint," and explaining that "a district court is not required to grant leave to amend when it grants a motion to dismiss based on pleading deficiencies"); *City of Pontiac*, 752 F.3d at 188 (affirming denial of leave to amend even though the plaintiffs "have not yet amended directly in response to specifically identified pleading defects"); *Born v. Quad/Graphics, Inc.*, 521 F. Supp. 3d 469, 495 (S.D.N.Y. 2021) (denying leave to amend where plaintiffs "had an opportunity to amend their pleadings in response to Defendants' motion to dismiss, and because the arguments made in response to the motion to dismiss give no indication that the Complaint's defects are curable").

deficiencies in their AC's fraudulent transfer claims and that they had not even purported to plead a claim for fraudulent inducement of the DIL.  Defendants pointed out those deficiencies in the fraudulent transfer claims in *four* briefs Defendants filed in support of their motion to dismiss, starting in 2020 (opening and reply briefs in both the Georgia Court and this Court).  And the Court did not dismiss those claims based on a new ground Defendants had not briefed.  It is therefore far more than "unlikely that the deficiencies . . . were unforeseen."  *City of Pontiac*, 752 F.3d at 188.  Instead, Plaintiffs made tactical decisions to wait to make certain factual allegations — that they could have made all along — in support of their fraudulent transfer claims and their entirely new fraud claim based on the DIL.

  *Fifth*, the Court's conclusion that leave to amend would be futile was correct for the additional reason that even now, when Plaintiffs have belatedly submitted their PSAC, their proposed amended fraudulent transfer claims and their new claim for fraud in the inducement of the DIL do not state a claim, as we show in Point II.

## B. Plaintiffs' Arguments about "Clear Error" and "Manifest Injustice" Are Meritless

  Plaintiffs make four arguments that the denial of leave to amend was "clear error" and will "result in a manifest injustice" (Br. 6), but none of them has merit.

  *First*, Plaintiffs argue they did not act with "undue delay, bad faith, or dilatory motive" and that Defendants would not "suffer any undue prejudice as a result of Plaintiffs' filing of an amended pleading."  (Br. 7.)  But even if that were true, it would not entitle them to relief under Rule 59(e) or reconsideration.  And they are wrong on both points.

  Their assertion that they "made their request at the earliest practical stage" (*id.*) is untrue, as explained above.  And when they did make their one-sentence footnote request, more than twenty months after commencing this action, it was grossly deficient, as also explained

KL3 3379486.1

above.[6]

Defendants have been prejudiced by Plaintiffs' delay, and would be prejudiced by any further delay. On August 27, 2020, more than nineteen months ago, Plaintiffs recorded a *lis pendens* that limits Defendants' ability to sell the Property. (Kalikow Decl. Ex. Q.) If Plaintiffs are allowed to amend, that would continue to block its sale. *See Coit v. Sutton Funding LLC,* 2010 WL 2105116, at *2 (D. Ariz. May 24, 2010) (denying leave to amend where the plaintiff had recorded a *lis pendens* that prevented the defendants' sale of the property).[7]

*Second*, Plaintiffs argue the Second Circuit strongly favors the "liberal grant of an opportunity to replead." (Br. 7.) As explained above, however, that liberal policy cannot be "employed in a way that is contrary to the philosophy favoring finality of judgments and the expeditious termination of litigation." *Metzler*, 970 F.3d at 142. Moreover, as explained above, the Court's denial of Plaintiffs' one-sentence footnote request for leave to replead was consistent with that liberal policy for numerous reasons, including because Plaintiffs have already amended their complaint, they had numerous opportunities to replead again, and they did not raise their request properly in their one-sentence footnote.[8]

---

[6] *See Del Cibao v. 3 Kids Corp.*, 2021 WL 4635919, at *1 (S.D.N.Y. Oct. 6, 2021) (Liman, J.) (denying motion for leave to amend after case management plan because "Plaintiff has not demonstrated good cause for the out-of-time amendment and because the amendment would cause prejudice to Defendants."); *S. Telecom Inc. v. Threesixty Brands Grp., LLC*, 2021 WL 979567, at *6 (S.D.N.Y. Mar. 16, 2021) (Liman, J.) (denying motion for leave to amend "outside the period provided under the case management plan" because that undue delay would cause the defendant to suffer undue prejudice).

[7] The cases Plaintiffs cite on this point (Br. 7) do not support their argument. None involved a *lis pendens* or any comparable prejudice-creating lien. In *In re Winstar Comm.,* 2006 WL 473885 (S.D.N.Y. Feb. 27, 2006), plaintiffs in a securities class action moved for leave to amend in response to the defendant's motion to dismiss, and defendants did not argue undue delay or prejudice. In *Cardwell v. Davis Polk & Wardwell LLP*, 2021 WL 4434935 (S.D.N.Y. Sept. 23, 2021), the Court granted leave to amend *only* to add claims based on new information produced in discovery, and *denied* leave to add other claims. *Tommy Lee Handbags Mfg. Ltd. v. 1948 Corp.,* 2012 WL 4903177 (S.D.N.Y. Oct. 12, 2012), concerned an *unopposed* motion to amend a three-month old complaint.

[8] Plaintiffs' cases on this point (Br. 7) do not help them. In *Porat v. Lincoln Towers Community Association*, 464 F.3d 274, 276 (2d Cir. 2006), the court dismissed the complaint without even mentioning the plaintiff's footnote request for leave to amend. The Second Circuit affirmed, explaining that, as is true here, the "plaintiff's counsel did not advise the district court how the complaint's defects would be cured." *Id.* The description in *Cruz v. TD Bank, N.A.,* 742 F.3d 520, 523 (2d Cir. 2013), of "the usual practice upon granting a motion to dismiss to allow leave to

- 9 -

Plaintiffs suggest they needed "the benefit of a ruling" that highlighted "the precise defects" of their complaint.  (Br. 8 (citing *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC,* 797 F.3d 160 (2d Cir. 2015)).  That is incorrect for numerous reasons explained above, including because the Court dismissed the fraudulent transfer claims on grounds Defendants had already briefed four times.  Plaintiffs are "not entitled to an advisory opinion from the Court informing them of the deficiencies in the complaint and then an opportunity to cure those deficiencies." *Bellikoff v. Eaton Vance Corp*., 481 F.3d 110, 118 (2d Cir. 2007).[9] Moreover, the PSAC now seeks to add an entirely new cause of action that is not related to any of the "defects" in the AC that this Court's Order "highlighted." (Br. 8.)

*Third*, Plaintiffs admit they "did not originally identify any additional proposed facts or theories in conjunction with their request for leave to amend," but argue "that alone does not prevent the Court from granting leave to amend."  (Br. 8.)  Actually, as explained above, that failure alone did warrant the denial of leave to replead.  *See City of Pontiac*, 752 F.3d at 188 (affirming denial of leave to amend where plaintiffs identified no additional facts or

---

replead" does not *require* such leave nor address the circumstances of this case, including Plaintiffs' numerous opportunities to replead.  The same is true of *Ricciuti v. N.Y.C. Transit Authority,* 941 F.2d 119 (2d Cir. 1991), in which the plaintiffs, unlike Plaintiffs here, had not amended their complaint.

[9] *See also Banco Safra*, 849 F. App'x at 296 ("a district court is not required to grant leave to amend when it grants a motion to dismiss based on pleading deficiencies"); *In re Gildan Activewear, Inc. Sec. Litig.*, 2009 WL 4544287, at *15-17 (S.D.N.Y. Dec. 4, 2009) (rejecting "Plaintiffs' argu[ment] that they should have yet another bite at the apple after having had the additional benefit of the Court's explication of the shortcomings of the complaint").

*Loreley* is also inapposite because the procedure the Second Circuit rejected there was not used here.  The *Loreley* district court required the parties to attend a pre-motion conference and exchange letters concerning the proposed motion to dismiss.  797 F.3d at 190.  "The impropriety occurred . . . when, in the course of the conference, [the court] presented Plaintiffs with a Hobson's choice: agree to cure deficiencies not yet fully briefed and decided or forfeit the opportunity to replead."  *Id.*

Plaintiffs cite *Cresci v. Mohawk Valley Community College,* 693 F. App'x 21, 25 (2d Cir. 2017), but the plaintiff there was *pro se* and thus entitled to more leeway under Second Circuit law.  *See Nielsen v. Rabin,* 746 F.3d 58, 62 (2d Cir. 2014) (*pro se* complaint should not be dismissed without the Court granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated).  Plaintiffs also cite *Brown v. Kerry Inc.,* 2021 WL 5446007, at *12 (S.D.N.Y. Nov 22, 2021), *report and recommendation adopted,* 2022 WL 669880 (S.D.N.Y. Mar. 7, 2022), but it is simply a run-of-the mill case in which the Court exercised its discretion to allow the plaintiff to replead, albeit "reluctantly."  *Id.* at *12 n.8.

legal theories they might assert).  Moreover, this Court did not rest its denial on that ground alone.  The Court also correctly concluded that amendment would be futile.[10]

       *Fourth*, Plaintiffs argue "the substantive effect of the amendments that Plaintiffs propose weighs in favor of allowing them to amend" (Br. 9), but do not explain what they mean by "the substantive effect."[11]  Plaintiffs also argue their PSAC "does not expand the scope of Plaintiffs' original case" (Br. 9), but that is untrue.  The PSAC seeks to add an entirely new claim, based on entirely new allegations, for fraud in the inducement of the DIL.

## II.   EVEN IF RULE 15(A) ALONE GOVERNED PLAINTIFFS' MOTION, IT SHOULD BE DENIED

       Even if Plaintiffs could satisfy Rule 59(e) and were entitled to reconsideration (and they are not), they cannot satisfy Rule 15(a).  While Rule 15(a)(2) states leave to amend should be "freely give[n] … when justice so requires," it "should generally be denied in instances of futility, undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, or undue prejudice to the non-moving party." *Banco Safra*, 849 F. App'x at 295.  As shown in Point I, Plaintiffs unduly delayed presenting

---

[10] Plaintiffs cite, (Br. 8-9) *Dynamic Worldwide Logistics, Inc. v. Exclusive Expressions, LLC,* 2015 WL 5439217 (S.D.N.Y. Sept. 14, 2015), but that case does not help them.  Even the portion Plaintiffs quote acknowledges that leave to amend will not be granted if "doing so would prejudice the defendant," as it would here. *Id.* at *4.  The court found the plaintiff did not meet the "heavy burden" of Rule 59(e) and denied leave to amend. *Id.* at *7.

[11] The two cases Plaintiffs cite (Br. 9) are inapposite.  In *Honig v. Hansen*, 2021 WL 5518207, at *1 (S.D.N.Y. Nov. 24, 2021), unlike here, the plaintiffs' prior amendments were "primarily directed at curing jurisdictional deficiencies" not "merits-related deficiencies," and no evidence suggested the defendants would suffer any prejudice if the amendment was allowed.  In *Mayes v. 490 Habitat, Inc.*, 2020 WL 587112, at *1 (E.D.N.Y. Feb. 6, 2020), plaintiffs sought to vacate a default judgment they had obtained, and to amend their complaint, to correct their mistake in naming the wrong entities as defendants.

The other cases Plaintiffs cite (Br. 10) also do not support their motion. *Riverkeeper, Inc. v. Wheeler,* 2020 WL 1188455, at *3 (S.D.N.Y. Mar. 12, 2020), granted a Rule 59(e) motion and allowed the plaintiffs to amend "in light of the unique circumstances" that the complaint raised an Administrative Procedure Act claim that the Court's Order acknowledged but did address. *Dempsey v. Vieau,* 2016 WL 3351081, at *1 (S.D.N.Y. June 15, 2016), did not mention the governing Rule 59(e) standard, but simply found the plaintiffs were "entitled to an opportunity to move for leave to amend their complaint" — an opportunity Plaintiffs here have already had many times — and then denied the motion because amendment would be futile. *Brecher v. Citigroup Inc.,* 2011 WL 5525353, at *1 (S.D.N.Y. Nov. 14, 2011), also did not address the governing Rule 59(e) standard.

their PSAC until after judgment was entered, repeatedly failed to cure pleading deficiencies identified by Defendants or mentioned by the Georgia Court, and prejudiced Defendants.  For these reasons alone, Plaintiffs would not be entitled to relief under Rule 15(a) even if it, and not Rule 59(e), governed their motion.  We now show that the two claims Plaintiffs seek to replead, and the new claim they seek to add, also fail to state a claim.

      **A.**      **The PSAC Fails to State Claims for Fraudulent Transfer**

        The Trust has already conceded it does not have standing to bring the fraudulent transfer claims.  *See* Dkt. No. 58 at 42, n.9 (explaining that Plaintiffs do not dispute that the Trust lacks standing to bring those claims).

        As for the Wade Park Plaintiffs, their additional allegations only confirm the absurdity of their proposed amended fraudulent transfer claims.  Plaintiffs argue the purpose of fraudulent transfer statutes is to prevent harm to "innocent creditors."  (Br. 12 (quoting *In re Trib. Co. Fraudulent Conv. Litig.*, 10 F.4th 147, 172 (2d Cir. 2021), *cert. denied*, 2022 WL 516021 (Feb. 22, 2022)).  But Plaintiffs now propose to allege that WPH and WPL, two entities Thomas managed (PSAC ¶¶ 7, 8, 25.5, 28), fraudulently transferred property to WP, to the detriment of "related entities Fourth Quarter Properties 100 and Universal City Property Management III," two other Thomas-managed entities.  The PSAC does not identify any other creditors.  (PSAC ¶¶ 333, 337.)

        Thus, Thomas now asks this Court to apply the fraudulent transfer laws to protect him from himself.  To advance this gambit, Plaintiffs ask the Court to ignore their Estoppel Certificate — sworn to by Thomas himself, who swore, on behalf of Plaintiffs, that they would

"testify, declare, depose, or certify . . . in any case . . . which may hereafter be instituted" that it was the "truth" — on the ground they supposedly lied.  (Br. 17-19; Dkt. No. 40-3, Ex. M.)[12]

In any event, Plaintiffs' proposed additional allegations still fail to state a claim for fraudulent transfer.

### 1.    Plaintiffs do not plausibly allege the transfers were for other than reasonably equivalent value

The Court, in dismissing Plaintiffs' fraudulent transfer claims in their AC, found they "fail[] to allege that the transfer was for other than reasonably equivalent value."  (Dkt. No. 58 at 84.)  Plaintiffs' PSAC suffers from the same defect.  It fails plausibly to allege an absence of reasonably equivalent value for the same reasons that their AC failed to do so.

### a.    The PSAC continues to rest on implausible allegations

A complaint for constructive fraudulent transfer should be dismissed where, as here, "the complaint does not plausibly allege that the debtor received less than reasonably equivalent value."  *Tribune*, 10 F.4th at 172-73.  Plaintiffs cite *Tribune* for the proposition that determining reasonably equivalent value "usually should not be made at the motion to dismiss stage" (Br. 12), but *Tribune* affirmed the dismissal of claims against two of the four defendants.  And it was "a close call" whether to dismiss the claims against the other two because determining reasonably equivalent value as to them required the court to engage in a fact-intensive evaluation of  certain financial advisors' services, including "*inter alia*, the number of hours worked, industry standards, fees paid compared to the overall size of the transaction, when the engagement letters were signed, and opportunity costs," and whether the advisors "satisfactorily performed their duties."  *Id.* at 174.

---

[12] These allegations recall the old joke that the definition of "chutzpah" is "that quality enshrined in a man who, having killed his mother and father, throws himself on the mercy of the court because he is an orphan."  Leo Rosten, *The New Joys of Yiddish*, 81 (2001).

Here, in contrast, there is no need for a complicated reckoning of the amount Plaintiffs owed Defendants.  Plaintiffs propose to allege a dollar amount — "approximately $140.1 million" — for the value of the debt satisfied by the DIL.  (PSAC ¶ 345.)

As for the other side of the ledger, this Court has already rejected Plaintiffs' "assert[ion] that the Wade Park property is now worth over $550 million, far in excess of the loan amount extended by the Gamma Defendants," because it is "wholly implausible and inconsistent with Plaintiffs' other allegations that they were not able to find other lenders to assume the loan."  (Dkt. No. 58 at 81 n.14.)

The PSAC continues to make those other allegations, and Plaintiffs' new allegations add nothing that should alter the Court's conclusion. Plaintiffs already alleged in the AC (at ¶ 36) the existence of an appraisal valuing the property "in excess of $550 million."  They now propose to allege a slightly higher $565 million value. (PSAC ¶ 327.)

But even though Plaintiffs told the Court at oral argument they have "a copy of" that appraisal (Dell Decl. Ex. 5 at 47), the PSAC does not attach it.  Plaintiffs provide only a cover and cover letter, which show the appraisal was prepared for "Churchill Commercial Capital," a stranger to this litigation, "only for its specified use," by an appraiser who works at the same address.  (PSAC, Ex. A.)  The letter also says "the appraisal report that follows [but Plaintiffs omit from the PSAC] sets forth the … assumptions and limiting conditions, pertinent facts about the area and the subject property, comparable market data, the results of the investigation, and the reasoning leading to the conclusions set forth."  (*Id*. at 141.)  Plaintiffs also now allege that, after the appraisal but before the deeds were transferred, "the Debtors made improvements to the Wade Park properties worth more than $500,000."  (PSAC ¶¶ 328-29.)

- 14 -

None of this makes the purported valuation in excess of $550 million any more plausible.  As Defendants explained in their brief in support of their motion to dismiss, "Thomas's failure to pay the $150 million [to buy the property back] would be inexplicable if the Property was worth $550 million, or any material amount above $150 million." (Dkt. No. 41 at 35.)  The growing gap between that fixed option price and the now increasing alleged value of the Property only makes that new alleged value even less plausible.

> ### b. Plaintiffs' conclusory allegations are inconsistent with their other sworn statements in their Estoppel Certificate and bankruptcy filings

Plaintiffs argue they should not be bound by their sworn statements in their Estoppel Certificate (Br. 17-18), but this Court did not rule they were bound.  The Court found their statements "undermine" their contradictory claims.  (Dkt. No. 58 at 85.)  *See Tribune*, 10 F.4th at 172 (2d Cir. 2021) ("To determine whether reasonably equivalent value was provided, 'the Court must ultimately examine the totality of the circumstances.'") (quoting *In re Bernard L. Madoff Inv. Sec. LLC*, 454 B.R. 317, 334 (Bankr. S.D.N.Y. 2011).  That remains true now.

Plaintiffs also argue (Br. 18) that this Court should not consider their Estoppel Certificate because the PSAC alleges it was false and Defendants know it was inaccurate.  (Br. 18, citing PSAC ¶ 342.)  But Plaintiffs do not allege facts that support that conclusory allegation and this Court need not "credit conclusory allegations or legal conclusions couched as factual allegations."  *Rothstein v. UBS AG*, 708 F.3d 82, 94 (2d Cir. 2013) (declining to consider conclusory allegation of defendant's knowledge in the absence of factual allegations).  For example, the PSAC does not allege facts that show whether Thomas and Plaintiffs thought their sworn statements were false or why they would submit a false statement under oath.  Nor does it

allege facts that show Defendants knew it was false.[13]  Plaintiffs' conclusory allegations do not create a dispute about the accuracy of the document.[14]

Plaintiffs' allegation that the Property is worth $565 million is also contradicted by their monthly operating reports in their bankruptcy, which Thomas "declares under penalty of perjury . . . [are] true and correct" every month.  Those filings represent that the value of WPL's assets (comprised of land, development costs, and capitalized costs) is $52,265,876 and WPH's assets (comprised of land, improvements, development costs, and capitalized costs) is $116,410,205, for a total of $168,676,081.  *See*, *e.g.*, Dell Decl. Ex. 6 at 9, 15.  Plaintiffs state "[t]he figures reflect the Debtors' book entries, without adjustments from the Debtors' pre-petition bookkeeping practices," but do not explain why their pre-petition balance sheets would have reflected anything other than what they thought was an accurate valuation of the Property. *Id.* at 13.  Plaintiffs say they "reserve all rights with respect to the contents of their schedules," but do not explain what right they have to claim different values for the same property in different courts.  *Id.*  "The veracity of the bankrupt's statements is essential to the successful

---

[13] The PSAC alleges that, more than two years earlier, in November 2016, the "Gamma Defendants obtained an independent appraisal from Sage Group" valuing the Property at $466.9 million.  (PSAC ¶ 338.)  Even if that allegation had a basis, it would not show what Defendants thought the Property was worth in February 2019, after Plaintiffs had failed to repay GRE's January 2017 $82.75 million four-month bridge loan after repeated forbearances.  But the Sage Group appraisal shows that allegation is false.  The appraisal states it was prepared at the request of Kevin Case of Lebanon 390WR, a Thomas-managed entity (Kalikow Decl. Ex. P at 2; PSAC ¶ 25.5), not Gamma.  Moreover, the appraisal is speculative and relies on numerous questionable assumptions.  (Kalikow Decl. Ex. P at 2 ("The value conclusions are subject to the assumptions and contingent and limiting conditions contained within both the body of this Appraisal (Full) report and the Addenda section")); *id.* at 87-89 (listing seventeen "Assumptions and Limiting Conditions," including "the assumption of responsible ownership and competent management" and twelve "Environmental Assumptions").  Beyond that, Plaintiffs' conclusory allegation that Defendants must have thought the Property was worth more than $150 million is belied by the fact that Defendants gave another Thomas affiliate an option to buy the Property back for $150 million, and it was unable to do so or find any other lenders.

[14] Plaintiffs cite *Bongiorno v. Baquet*, 2021 WL 4311169, at *11 (S.D.N.Y. Sept. 20, 2021) (Liman, J.), but the documents in that case were challenged on the basis of relevance (the opposing party claimed the documents did not refer to the notes at issue in the case) and authenticity (the opposing party submitted a declaration that the signature on the document was not his), not accuracy.  The other case Plaintiffs cite is also inapposite.  *See Faulkner v. Beer*, 463 F.3d 130, 134 (2d Cir. 2006) (documents offered in support of motion to dismiss were not relevant because it was not clear whether the plaintiffs had received or relied on them to make investment decisions).

- 16 -

administration of the Bankruptcy Act." *In re Chalik*, 748 F.2d 616, 618 (11th Cir. 1984)

(affirming denial of discharge where debtor concealed information). "A debtor has an

affirmative duty to fully disclose 'all assets and liabilities and to answer all questions pertaining

to his/her financial affairs fully and with the utmost candor.'" *In re Jakovljevic-Ostojic*, 517

B.R. 119, 126–27 (Bankr. N.D. Ill. 2014).

c. **The satisfaction of the antecedent debt in exchange for the Property constituted reasonably equivalent value**

Plaintiffs try to make something of the distinction between satisfying and securing

antecedent debt, but to the extent courts recognize this distinction, it should not affect the result

here. (Br. 12-13.) This Court need not consider whether the *per se* rule of reasonable

equivalence (which Plaintiffs label a "presumption"), applies to cases involving the satisfaction

of antecedent debt, because the value of the Property (an amount less than $150 million) and the

alleged amount of the debt (approximately $140.1 million) are reasonably equivalent. *Tribune*,

10 F.4th at 172 ("[I]n determining whether the debtor received 'reasonably equivalent value,' the

court 'need not strive for mathematical precision.'").[15]

Moreover, the cases Plaintiffs cite for the proposition that "in *debt-satisfaction*

cases — like this one — a presumption of reasonable equivalence applies at the motion-to-

dismiss stage only if there is an undisputed dollar-for-dollar satisfaction of the debt" (Br. 15-16)

say nothing of the sort. *Tribune* did not require "mathematical precision," but found the fees

---

[15] None of Plaintiffs' cases discusses a "*presumption* of reasonable equivalence." They refer to or treat it as a *per se* rule. *See, e.g., In re Sharp Int'l Corp.*, 403 F.3d 43, 54 (2d Cir. 2005) (discussing "the rule that the repayment of an antecedent debt constitutes fair consideration"); *see also In re AppliedTheory Corp.*, 330 B.R. 362, 363 (S.D.N.Y. 2005) (referencing the "per se rule consistently applied in this District, which provides that a debtor's grant of a security interest in its assets to a lender who has previously given the debtor a cash loan may not be considered a fraudulent conveyance."); *Pashian v. Eccelston Props., Ltd.*, 88 F.3d 77, 87 (2d Cir. 1996) (under New York law a payment made in "satisfaction of a preexisting debt qualifies as fair consideration for a transfer of property[.]"); *Geo-Grp. Commc'ns, Inc. v. Chopra*, 2018 WL 3632498, at *10 (S.D.N.Y. July 30, 2018) (same).

owed to the financial advisors "were not antecedent debt constituting categorically reasonably

equivalent value."  10 F.4th at 172-73.[16]

### 2. Plaintiffs do not plausibly allege Debtors were rendered insolvent by the transfers

Plaintiffs' belated allegations of insolvency are not plausible because they are

inconsistent with their sworn statements in their Estoppel Certificate.  Similarly, Plaintiffs'

proposal to allege that WPL owed $10,943,252 and WPH owed $37,605,626 to two related

Thomas entities (PSAC ¶¶ 333, 336) is inconsistent with the sworn balance sheets they file every

month in the bankruptcy court, which do not mention those debts.  *See, e.g.*, Wade Park Balance

Sheet at 2, October 31, 2021, ECF No. 98-2 (Bankr. N.D. Ga. 20-11192).  This Court has already

found that when Plaintiffs entered into the DIL, WPL and WPH swore they were "solvent and

ha[d] no other creditors whose rights would be prejudiced by [the] conveyance [of the deeds to

Omega]."  (Dkt. No. 58 at 85 (citing Dkt. No. 40-3, Ex. M).)  There is no basis for Plaintiffs'

request that this Court now credit instead their new, conclusory, unsupported and implausible

allegations that their prior sworn statements are false.

---

[16] In *Sharp*, 403 F.3d at 54, the debtor "acknowledge[d] that the payment at issue discharged an antecedent debt and was made for a 'fair equivalent.'"  The only issue was whether the transferee acted in bad faith.  The Second Circuit held bad faith was not adequately alleged because, as here, the transfer was made to an outsider, and "bad faith does not appear to be an articulable exception to the broad principle that 'the *satisfaction* of a preexisting debt qualifies as fair consideration for a transfer of property.'"  *Id.* (emphasis added).  *See also In re Jesup & Lamont, Inc.*, 507 B.R. 452, 472 (Bankr. S.D.N.Y. 2014) ("A finding of reasonably equivalent value does not require an exact equivalent exchange of consideration.");  *Am. Federated Title Corp. v. GFI Mgmt. Servs., Inc.*, 716 F. App'x 23, 26 (2d Cir. 2017) ("We have recognized that, under New York law, 'even the preferential repayment of pre-existing debts to some creditors does not constitute a fraudulent conveyance, whether or not it prejudices other creditors, because the basic object of fraudulent conveyance law is to see that the debtor uses his limited assets to satisfy some of his creditors; it normally does not try to choose among them.'") (quoting *HBE Leasing Corp. v. Frank,* 48 F.3d 623, 634 (2d Cir. 1995)).  And although *In re Crucible Materials Corp.*, an unpublished out-of-circuit case, stated, "[w]hen the transfer to a creditor is in dollar-for-dollar satisfaction of an antecedent debt, there can be no claim for constructive fraudulent transfer," it said nothing about what happens when the exchange is not dollar-for-dollar. 2012 WL 5360945, at *8 (Bankr. D. Del. Oct. 31, 2012).  Furthermore, none of the cases cited for this proposition in *In re Crucible Materials Corp* holds that satisfaction of an antecedent debt must be dollar-for-dollar.  Similarly, *In re First Alliance Mortgage Co.*, 471 F.3d 977, 1008 (9th Cir. 2006), and *Melamed v. Lake County National Bank*, 727 F.2d 1399, 1402 (6th Cir. 1984), concern one-to-one exchanges, but say nothing about whether the satisfaction of an antecedent debt is *per se* for reasonably equivalent value.

Furthermore, because WPH and WPL transferred the Property to an outsider in satisfaction of an antecedent debt, whether debtors were insolvent is irrelevant, even if "the preferred creditor knows that the debtor is insolvent." *Sharp*, 403 F.3d at 54.  As the Second Circuit explained:

> [A] conveyance which satisfies an antecedent debt made while the debtor is insolvent is neither fraudulent nor otherwise improper, even if its effect is to prefer one creditor over another. It is of no significance that the transferee has knowledge of such insolvency. Nor is the transfer subject to attack by reason of knowledge on the part of the transferee that the transferor is preferring him to other creditors, even by virtue of a secret agreement to that effect.

*Id.* at 54-55 (quoting *Ultramar Energy Ltd. v. Chase Manhattan Bank, N.A.*, 191 A.D.2d 86, 90–91 (1st Dep't 1993)).

### 3. The proposed Georgia Uniform Voidable Transfers Act claim also fails because the Act does not apply here

Count XIII also fails to state a claim because the Georgia Act does not apply here. *First,* the DIL states that, "[t]o the fullest extent permitted by the law of such state, the law of the State of New York shall govern the construction, validity and enforceability of all GRE loan documents and BAMCAP loan documents and all of the obligations arising hereunder or thereunder."  (Dkt. No. 40-3, Ex. J § 18.)  One of the obligations arising "hereunder or thereunder" is the transfer of the Property.  New York courts typically enforce such choice of law provisions.[17]

*Second*, a claim brought under the Georgia Act "is governed by the law of the

---

[17] *See Fireman's Fund Ins. Co. v. Great Am. Ins. Co. of New York*, 822 F.3d 620, 641 (2d Cir. 2016) ("Generally, [New York] courts will enforce a choice-of-law clause so long as the chosen law bears a reasonable relationship to the parties or the transaction.") (quoting *Welsbach Elec. Corp. v. MasTec N. Am., Inc.*, 7 N.Y.3d 624, 629 (2006)); *see also Kellogg v. Food Serv. Supplies, Inc.*, 246 Ga. App. 695, 697 (2000) ("In the absence of contrary public policy, our courts normally will enforce a contractual choice of law provision'); *Atlanta Concorde Fire Soccer Ass'n, Inc. v. Graham*, 355 Ga. App. 228, 230-31 (2020) (enforcing California choice of law provision).

jurisdiction in which the debtor is located when the transfer is made."  O.C.G.A. § 18-2-80.  The

PSAC alleges WPH and WPL are Delaware entities and are currently located in Georgia (PSAC

¶¶ 7, 8), but does not allege they were located in Georgia when the transfers were made.

> **B.      The PSAC Fails to State a Claim for Fraudulent Inducement of the DIL**

Plaintiffs also now propose to bring an entirely new claim, in Count XVII, that in

February 2019, Defendants fraudulently induced WPH and WPL to enter into the DIL by

misrepresenting that:  (1) the DIL would not cause a transfer of the Wade Park deeds to Gamma,

(2) Defendants would give WPH and WPL at least a six-month buy-back period, and (3)

Defendants would not take ownership of the Property.  (Br. 4; PSAC ¶¶ 506-10.)  Although the

Trust is a party to the DIL, it does not and cannot make this claim.[18]

Plaintiffs acknowledge that New York law governs Count XVII.  (Br. 5 n.5.)  The

elements of a fraud claim under New York law are: "a material misrepresentation of fact,

knowledge of its falsity, an intent to induce reliance, justifiable reliance by the plaintiff, and

damages."  *Eurycleia Partners, LP v. Seward & Kissel, LLP*, 12 N.Y.2d 553, 559 (2009).  Fraud

allegations are subject to a heightened pleading standard and must be "stated with

particularity."  Fed. R. Civ. P. 9(b) (incorporated by Fed. R. Bankr. P. 7009).  A complaint

"must: (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the

speaker, (3) state where and when the statements were made, and (4) explain why the statements

were fraudulent."  *Stevelman v. Alias Research Inc.*, 174 F.3d 79, 84 (2d Cir. 1999).  Rule

---

[18] *First*, the PSAC alleges the purported misrepresentations were made to Thomas (*e.g.,* PSAC ¶¶ 507-10), and specifically acknowledges he is not and was not at any relevant time an officer or agent of the Trust or authorized to act on its behalf.  (*Id.* ¶ 25.5 n.3.)  *Second*, Plaintiffs contend they reasonably relied on Defendants' alleged misrepresentations in deciding to deliver deeds to Defendants and to agree to a buy-back period (*id.* ¶ 515), but do not allege the Trust delivered deeds or was a party to the buy-back agreement.  (*See* Dkt. No. 40-3, Ex. J at 1; Ex. K at 1.)  *Third*, Plaintiffs make the conclusory allegation that Defendants intended to interfere with Plaintiffs' ability to repay the loans and to cut off access to their sources of credit (PSAC ¶ 513), but do not allege the Trust owed money or Defendants did anything that would affect the Trust's credit.

9(b) also requires plaintiffs to "allege facts that give rise to a strong inference of fraudulent intent." *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 290 (2d Cir. 2006). "Conclusory allegations are insufficient." *Coppelson v. Serhant*, 2021 WL 148088, at *6 (S.D.N.Y. Jan. 15, 2021) (citing *Luce v. Edelstein*, 802 F.2d 49, 54 (2d Cir. 1986)). Plaintiffs' proposed Count XVII fails to meet these standards, for many independent reasons.

*First*, Plaintiffs do not plead a plausible basis to show they reasonably relied on the alleged representations that the DIL would not cause a transfer of the Wade Park deeds to Gamma or that Defendants would not take ownership of the Property. Those representations are directly contradicted by the Wade Park Plaintiffs' agreement in the DIL to transfer the deeds and title to the Property to Gamma or an entity it designates. (*See* Dkt. No. 40-3, Ex. J § 3, "Transfer of Property.") It is "established law that a party cannot claim fraud based on an alleged representation that is clearly contradicted by an express term of the contract." *Conopco, Inc. v. Wein*, 2007 WL 9818902, at *8 n.14 (S.D.N.Y. Aug. 31, 2007).[19]

*Second,* Plaintiffs' allegations that, when Defendants entered into the DIL as of February 4, 2019, they "did not intend to give Plaintiffs at least six months to buy back the property in a buy-back agreement and instead intended to take ownership of the property" are merely conclusory. (PSAC ¶ 190.1.) The only factual support Plaintiffs allege is that one month later, Defendants entered into a written buy-back agreement with a shorter period, and that after WPL and WPH failed to satisfy the DIL's conditions, Omega released the deeds from escrow

---

[19] *See also Morrissey v. GMC*, 21 F. App'x 70, 73 (2d Cir. 2001) (affirming summary judgment dismissing fraud claim because reliance on alleged oral promises that directly contradict the terms of the parties' written agreements was unreasonable as a matter of law); *Colonial Funding Network, Inc. v. Epazz, Inc.*, 252 F. Supp. 3d 274, 284 (S.D.N.Y. 2017) ("reasonable reliance is precluded when 'an express provision in a written contract contradicts a prior alleged oral representation in a meaningful fashion.'"); *Sklair v. Mike Bloomberg 2020, Inc.*, 2022 WL 889849, at *6-7 (S.D.N.Y. Mar. 25, 2022) (No reasonable reliance on alleged oral promise of guaranteed employment for a definite term where offer letters specified employment was at-will).

and they were recorded.  (PSAC ¶¶ 192, 195.)  This Court has already held in dismissing

Plaintiffs' Count VII for fraud that such allegations about a failure ultimately to comply with an

alleged promise are insufficient to state a fraud claim.  *See* Dkt. No. 58 at 68-69 (Plaintiffs do not

allege facts to support a strong inference of fraudulent intent); *see also Vibes Int'l, Inc. v. Iconix*

*Brand Grp., Inc.*, 2020 WL 3051768, at *9 (S.D.N.Y. June 8, 2020) (dismissing fraud claim

where plaintiff made "no non-conclusory allegations to support an inference that [defendant]

made the statement in question with the then-present intent not to perform the implied promise").

   *Third,* "[t]o plead loss causation, [plaintiff] must allege that the subject of the

fraudulent statement or omission was the cause of the actual loss suffered," but Plaintiffs do not

plausibly allege that "the [alleged] misrepresentations directly caused the loss" of which they

complain.  *Fin. Guar. Ins. Co. v. Putnam Advisory Co.*, 783 F.3d 395, 402 (2d Cir. 2015)

(quoting *Laub v. Faessel*, 297 A.D.2d 28, 31 (1st Dep't 2002)).  Plaintiffs allege they lost the

Property, but do not allege facts that show they would not have lost the Property had they not

entered into the DIL.  On the contrary, Plaintiffs acknowledged and agreed in the DIL that the

lender had already "accelerated the indebtedness owed" under the loan, and had already "posted

the Property for nonjudicial foreclosure on January 5, 2019."  (Dkt. No. 40-3, Ex. J, Recital L,

§ 2(a).)  And they acknowledged and agreed "there are no defenses, setoffs or counterclaims as

to any part or all of the Indebtedness."  (*Id.* § 1(e).)  Thus, entering into the DIL on February 4,

2019 *benefitted* Plaintiffs — by giving WPL and WPH yet another opportunity to retain the

Property.  (PSAC ¶ 178; Dkt. No. 40-3, Ex. J.)  It was only after WPL and WPH failed to satisfy

the DIL's conditions that Omega released the deeds from escrow and they were recorded.

(PSAC ¶ 192.)  It was that failure by WPL and WPH to repay the loan, not any alleged

misrepresentations, that caused WPL's and WPH's alleged loss.  Moreover, Plaintiffs do not

allege facts that show that had they not entered into the DIL they could have repaid the loan or bought the Property at foreclosure.  Nor do they allege facts that show that after they entered into the DIL, they could have bought the Property if they had a six-month buy-back period.  Any such allegations would be pure speculation.[20]

   *Fourth*, Plaintiffs' allegations "do not contain the particularity necessary to state a fraud claim in federal court and under New York law" because they "are insufficiently specific about when the statements were made."  *Cambridge Cap. LLC v. Ruby Has LLC*, 2021 WL 4481183, at *26 (S.D.N.Y. Sep. 30, 2021) (Liman, J.).  Plaintiffs allege Defendants made the misrepresentations about the DIL either "at the same time" as negotiations in "early 2019" or "in January and February 2019," or "throughout this period."  (PSAC ¶¶ 181, 182, 186, 194.)  These unspecific allegations suggest that most of the representations about the buy-back agreement were made *after* the parties entered into the DIL on February 4, 2019.  (*Compare* PSAC ¶ 190 *with id.* ¶¶ 194, 194.1, 195, 198.)  If so, they could not possibly have induced Plaintiffs to enter into the DIL.[21]

   *Fifth*, "[i]n bringing claims of fraud against multiple defendants, 'the plaintiff must inform each defendant of the nature of his alleged participation in the fraud.'"  *HSM Holdings, LLC v. Mantu I.M. Mobile Ltd.,* 2021 WL 918556, at *5 (S.D.N.Y. Mar. 10, 2021) (Liman, J.) (quoting *DiVittorio v. Equidyne Extractive Indus., Inc.,* 822 F.2d 1242, 1247 (2d Cir. 1987)).  The PSAC does not do so.  Plaintiffs' allegations in support of their proposed new claim

---

[20] *See Starr Found. v. Am. Int'l Grp., Inc.*, 76 A.D.3d 25, 28 (2010) (under New York's out-of-pocket rule, plaintiffs cannot be awarded damages for a "lost bargain" that was "undeterminable and speculative").

[21] *See also Lomaglio Assocs. Inc. v. LBK Mktg. Corp.*, 876 F. Supp. 41, 44 (S.D.N.Y. 1995) (fraud claim was not stated with particularity when the alleged misleading statement could have been made over a "period of several months"); *President Container Grp. II, LLC v. Systec Corp.*, 467 F. Supp. 3d 158, 165 (S.D.N.Y. 2020) (a "time range of several months is insufficient to plead fraud with particularity"); *Optima Media Grp. Ltd. v. Bloomberg L.P.*, 383 F. Supp. 3d 135, 144 (S.D.N.Y. 2019) (the "inexact and open-ended period" during which negotiations took place "is not sufficiently specific to satisfy Rule 9(b)").

simply "conflat[e] defendants in vague collective allegations." *Id.* (*See, e.g.,* PSAC ¶¶ 186, 189, 190.1, 194, 194.1, 195, 198, 204.1.) That is particularly improper when one of the Defendants, WP, did not even exist before the parties entered into the DIL and thus could not have fraudulently induced anyone to enter into it.[22]

        *Sixth,* in light of the DIL's merger clause and Plaintiffs' sophistication, Plaintiffs cannot plausibly allege they reasonably relied on the purported representations by Defendants, none of which are mentioned in the DIL. (Dkt. No. 44, Ex. J § 14.) In *Emergent Cap. Inv. Mgmt., LLC v. Stonepath Grp., Inc*., 343 F.3d 189 (2d Cir. 2003), for example, the plaintiff sued for fraud and securities fraud, alleging the defendants made misrepresentations that induced its purchase of preferred stock. *Id.* The stock purchase agreement "contained a standard merger clause," *id.* at 193, like the one in the DIL. The District Court dismissed the claim, and the Second Circuit affirmed, finding that in light of plaintiff's "sophistication," the fact that the defendant made contractual representations about other matters, and "the size of the transaction" ($2 million), the plaintiff's failure to "protect[] itself by insisting that [the alleged misrepresentations] be included in the stock purchase agreement" "precludes as a matter of law a finding of reasonable reliance upon defendants' misrepresentations." *Id.* at 196 (citations omitted). Here too, the DIL contains a standard merger clause, and according to the PSAC, Plaintiffs are sophisticated — they are managed by "Stanley Thomas, one of the most experienced and respected developers of retail and mixed-use properties in the United States." (PSAC ¶ 3.) Moreover, Omega made other representations in the DIL about what it would do (Dkt. No. 44, Ex. J §§ 7, 8) — and therefore had Defendants made the representations Plaintiffs

---

[22] WP was not incorporated until February 4, 2019. *See* Entity Search, Delaware Secretary of State, Division of Corporations, https://icis.corp.delaware.gov/ecorp/entitysearch/namesearch.aspx (enter "7266316" in "file number" field and click "search").

now allege, Plaintiffs would have been expected to include them in the DIL too.  And the

transaction was much larger than in *Emergent*.[23]

## **CONCLUSION**

For the foregoing reasons, the Court should deny plaintiffs' motion.

Dated:  April 1, 2022

Respectfully submitted,

KRAMER LEVIN NAFTALIS & FRANKEL LLP

By: */s/ Michael J. Dell*
    Michael J. Dell
    Karen S. Kennedy
    Aaron Webman
1177 Avenue of the Americas
New York, New York 10036
Telephone: (212) 715-9100
Facsimile: (212) 715-8000
Email: mdell@kramerlevin.com
kkennedy@kramerlevin.com
awebman@kramerlevin.com

*Counsel for Defendants Jonathan Kalikow, WP Development*
*Partners LLC, Gamma Lending Omega LLC, Gamma Real*
*Estate Capital LLC and GRE WP LLC*

---

[23] *See also Phoenix Cos. v. Concentrix Ins. Admin. Sols. Corp.*, 2021 WL 3604663, at *17 (S.D.N.Y. Aug. 12, 2021) (dismissing fraudulent inducement claim; "where the parties' agreement includes a merger clause, courts look to the entire context of the transaction to determine whether a plaintiff's reliance on an extra-contractual representation is reasonable").

Plaintiffs argue that merger clauses "generally" do not bar claims for fraudulent inducement unless the clause specifically addresses the very conduct complained of in the fraud allegation, and cite *Wall v. CSX Transp., Inc.,* 471 F.3d 410 (2d Cir. 2006), and *Icebox-Scoops, Inc. v. Finanz St. Honoré, B.V.,* 676 F. Supp. 2d 100 (E.D.N.Y. 2009).  But neither of those cases involved sophisticated plaintiffs or multi-million dollar transactions.  The *Wall* plaintiff was a railroad brakemen, promoted to conductor and then engineer, suing concerning a $20,000 settlement.  471 F.3d at 413.  The *Icebox-Scoops* plaintiff was a cosmetics store in Brooklyn suing for breach of a license agreement.  676 F. Supp. 2d at 104.

KL3 3379486.1