UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

WADE PARK LAND HOLDINGS, LLC; WADE :
PARK LAND, LLC; and THE THOMAS :
FAMILY TRUST, by and through its Trustees, :
acting in their official capacities, :
    :
              Plaintiffs, :
    :
           v. :     Case No. 1:21-cv-01657-LJL-RWL
    :
JONATHAN KALIKOW; :
WP DEVELOPMENT PARTNERS LLC; :
GAMMA LENDING OMEGA LLC; GAMMA :
REAL ESTATE CAPITAL LLC; GRE WP LLC; :
and BLAKE GOODMAN, :
    :
            Defendants. :
    :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**MEMORANDUM OF DEFENDANTS JONATHAN KALIKOW, WP DEVELOPMENT PARTNERS LLC, GAMMA LENDING OMEGA LLC, GAMMA REAL ESTATE CAPITAL LLC AND GRE WP LLC IN SUPPORT OF THEIR MOTION TO DISMISS THE SECOND AMENDED COMPLAINT**

**TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ....................................................................................................... ii

PRELIMINARY STATEMENT ................................................................................................... 1

FACTS ......................................................................................................................................... 3

    A.    In January 2017, GRE Made a Four-Month $82.75 Million Bridge Loan to
WPH and WPL ............................................................................................................. 4

    B.    Throughout 2017 and 2018, Omega Repeatedly Extended the Gamma
Loan and Granted Forbearances ................................................................................... 5

    C.    In 2019, WP Took Title to the Property but Gave WPH and WPL's
Designee an Option to Buy Back the Property for $150 Million .......................... 6

PROCEDURAL HISTORY .......................................................................................................... 7

    A.    Plaintiffs' Initial and Amended Complaints ........................................................... 7

    B.    The Court's March 4, 2022, Opinion and Order........................................................ 7

    C.    Plaintiffs' Second Amended Complaint ................................................................. 8

ARGUMENT ............................................................................................................................... 8

I.    SAC COUNT TWELVE FAILS TO STATE A CLAIM ................................................. 9

    A.    Plaintiffs Do Not Plausibly Allege the Transfers Were for Other Than
Reasonable Equivalent Value .............................................................................. 10

        1.    Plaintiffs' Conclusory Allegations of Value Are Implausible and
Inconsistent with Their More Specific Allegations ................................. 11

        2.    Plaintiffs' Conclusory Allegations of Value Are Also Inconsistent
with Their Sworn Statements in their Estoppel Certificate ..................... 16

        3.    WPH and WPL's Transfer of the Property to Satisfy Their
Antecedent Debt Was Per Se Made For Reasonable Equivalent
Value ...................................................................................................... 19

    B.    Plaintiffs Do Not Plausibly Allege Debtors Were Rendered Insolvent by
the Transfers................................................................................................... 20

    C.    The Trust Does Not State a Claim for Fraudulent Transfer................................. 20

II.    SAC COUNT THIRTEEN FAILS TO STATE A CLAIM UNDER THE
GEORGIA UNIFORM VOIDABLE TRANSFERS ACT ............................................ 21

III.    ALTERNATIVELY, THE SAC SHOULD BE DISMISSED AS TO ALL
DEFENDANTS OTHER THAN WP .............................................................................. 21

CONCLUSION............................................................................................................................ 22

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*In re Able BodyTemporary Servs., Inc.*,
2018 WL 11206152 (Bankr. M.D. Fla. Oct. 10, 2018) ........................................................16

*In re Ames Dep't Stores, Inc.*,
450 B.R. 24 (Bankr. S.D.N.Y. 2011), *aff'd*, 470 B.R. 280 (S.D.N.Y.2012),
*aff'd*, 506 F. App'x 70 (2d Cir. 2012)............................................................................19 n.12

*In re AppliedTheory Corp.*,
330 B.R. 362 (S.D.N.Y. 2005)..............................................................................................20

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)....................................................................................................9, 13

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*,
493 F.3d 87 (2d Cir. 2007).....................................................................................................8

*Bailey v. N.Y. Law Sch.*,
2021 WL 5500078 (2d Cir. Nov. 24, 2021)...................................................................9 n.5

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)....................................................................................................8, 13

*In re Bernard L. Madoff Inv. Sec. LLC.*,
976 F.3d 184 (2d Cir. 2020)................................................................................................10

*Bongiorno v. Baquet*,
2021 WL 4311169 (S.D.N.Y. Sept. 20, 2021)................................................. 18 & n.11, n.12

*In re Chalik*,
748 F.2d 616 (11th Cir. 1984) .....................................................................................19 n.12

*DiFolco v. MSNBC Cable L.L.C.*,
622 F.3d 104 (2d Cir. 2010)..........................................................................................18 n.11

*Faulkner v. Beer*,
463 F.3d 130 (2d Cir. 2006).........................................................................................18 n.11

*Feick v. Fleener*,
653 F.2d 69 (2d Cir. 1981)..............................................................................................9 n.5

*Geltzer v. Trey Whitfield Sch. (In re Michel)*,
573 B.R. 46 (Bankr. E.D.N.Y. 2017)..............................................................................11 n.6

*Geo-Grp. Commc'ns, Inc. v. Chopra*,
2018 WL 362498 (S.D.N.Y. July 30, 2018) ........................................................................19

KL3 3398499.1

*Gray v. Wesco Aircraft Holdings, Inc.*,
  454 F. Supp. 3d 366 (S.D.N.Y. 2020), *aff'd*, 847 F. App'x 35 (2d Cir. 2021)............4, 18 n.10

*Hirsch v. Arthur Andersen & Co.*,
  72 F.3d 1085 (2d Cir. 1995).............................................................................................9 n.5

*In re Jakovljevic-Ostojic*,
  517 B.R. 119 (Bankr. N.D. Ill. 2014) ............................................................................19 n.12

*JRK Franklin, LLC v. 164 E. 87th St. LLC*,
  27 A.D.3d 392 (1st Dep't 2006) .....................................................................................17 n.9

*Mockingbird 38, LLC v. Int'l Bus. Times, Inc.*,
  2022 WL 154137 (S.D.N.Y. Jan. 18, 2022) ...........................................................................9

*In re MSR Resort Golf Course LLC*,
  471 B.R. 783 (Bankr. S.D.N.Y. 2012).............................................................................17 n.9

*O'Toole v. Karnani (In re Trinsum Grp., Inc.)*,
  460 B.R. 379 (Bankr. S.D.N.Y. 2011) ..................................................................................19

*In re Old Carco LLC*,
  509 F. App'x 77 (2d Cir. 2013) ......................................................................................11 n.6

*Pashian v. Eccelston Props., Ltd.*,
  88 F.3d 77 (2d Cir. 1996) .....................................................................................................19

*ReliaStar Life Ins. Co. of N.Y. v. Home Depot U.S.A., Inc.*,
  570 F.3d 513 (2d Cir. 2009)............................................................................................17 n.9

*Rothstein v. UBS AG*,
  708 F.3d 82 (2d Cir. 2013)...................................................................................................17

*In re Sharp Int'l Corp.*,
  403 F.3d 43 (2d Cir. 2005)...................................................................................................19

*In re Think Retail Sols., LLC*,
  2019 WL 2912717 (Bankr. N.D. Ga. July 5, 2019)..............................................................21

*In re Tribune Co. Fraudulent Conveyance Litig.*,
  2018 WL 6329139 (S.D.N.Y. Nov. 30, 2018), *aff'd*, 10 F.4th 147 (2d Cir.
  2021) ...............................................................................................................19, 11 n.6

*Wade Park Land Holdings, LLC v. Kalikow*,
  2022 WL 657664 (S.D.N.Y. Mar. 4, 2022) ...........................................................................7

*Wade Park Land Holdings, LLC v. Kalikow*,
  522 F. Supp. 3d 1341 (N.D. Ga. 2021) .................................................................................7

KL3 3398499.1

*Wolet Capital Corp. v. Walmart Inc.*,
    2021 WL 242297 (S.D.N.Y. Jan. 25, 2021) ........................................................13

**Statutes**

11 U.S.C. § 547(f) ...........................................................................................19 n.12

11 U.S.C. § 548 ...................................................................................................8, 9

11 U.S.C. § 550 .............................................................................................8, 9, 21

11 U.S.C. § 551 ...................................................................................................8, 9

Fed. R. Bankr. P. 7009 .............................................................................................1

Fed. R. Bankr. P. 7012 .........................................................................................1, 8

Fed. R. Civ. P. 9(b) ..................................................................................................1

Fed. R. Civ. P. 12(b)(1) ............................................................................................1

Fed. R. Civ. P. 12(b)(6) ...............................................................................1, 4, 8, 9

O.C.G.A. § 18-2-78(b)(i) ........................................................................................21

O.C.G.A. § 18-2-80 ................................................................................................21

Defendants Jonathan Kalikow, WP Development Partners LLC ("WP"), Gamma Lending Omega LLC ("Omega"), Gamma Real Estate Capital LLC ("GRE") and GRE WP LLC ("GWL," and together with the foregoing, "Defendants") respectfully submit this memorandum in support of their motion, pursuant to Fed. R. Bankr. P. 7009 and 7012 (which incorporate Fed. R. Civ. P. 9(b), 12(b)(1) and 12(b)(6)), to dismiss with prejudice the Second Amended Complaint ("SAC") of Plaintiffs Wade Park Land Holdings, LLC ("WPH"), Wade Park Land, LLC ("WPL") and the Thomas Family Trust (the "Trust").

## PRELIMINARY STATEMENT

On January 17, 2017, GRE made a four-month $82.75 million bridge loan to WPH and WPL (the "Gamma Loan") to refinance land they owned in Frisco, Texas, known as Wade Park (the "Property").  GRE immediately transferred the loan to Omega.  The loan was short-term, to give WPH and WPL time to obtain other financing.  However, by the end of the four months, they had not done so.  Three times they exercised options to extend the loan for three months.  The first time, they could not meet the terms for the extension.  But Omega agreed anyway.  By January 2018, when the four-month loan had stretched to a year, WPH and WPL still had not obtained other financing or repaid the loan.  At that point, WPL defaulted on a separate $48 million loan from another lender, BAMCAP Partners LP.  That triggered a default on the Gamma Loan too.  But WPH and WPL still did not repay either loan.  At their request, Omega then extended forbearance after forbearance, *six times*, which gave them about another year to obtain other financing and repay Omega.  In each forbearance agreement they acknowledged that events of default had occurred, Omega had accelerated their indebtedness and posted the Property for nonjudicial foreclosure, and they had requested Omega to forbear.

Finally, when their failure to obtain other financing or repay their obligation had stretched the four-month loan to more than two years, Omega would forbear no longer.  On

January 5, 2019, Omega posted the Property for nonjudicial foreclosure.  On February 4, 2019, Omega agreed to one last delay, in a deed-in-lieu of foreclosure agreement (the "DIL").  But on February 19, 2019, WPH and WPL defaulted on the DIL too.  The deeds to the Property were released to Omega's designee, WP, and it recorded them.  Even then, on March 6, 2019, WP gave WPH and WPL's designee, Wade Park Frisco Holdings, LLC ("WPF"), an option to buy back the Property for $150,075,000 by April 15, 2019.  But WPF did not do so.

One might have thought that would be the end of it.  But on August 27, 2020, more than eighteen months after their default under the DIL, Plaintiffs filed a fourteen-count complaint that tried to blame their lender for their own failure to repay the loan.  In October 2020, they filed an eighteen-count amended complaint (the "AC").  On March 4, 2022, this Court dismissed the AC, because Plaintiffs had released most of its claims and all of them failed to state a claim.  On July 6, 2022, this Court granted Plaintiffs' motion to file a SAC that repleads their two fraudulent transfer claims against WP and Omega under federal and Georgia statutes (Counts Twelve and Thirteen).[1]

Counts Twelve and Thirteen should now be dismissed.  They are grounded on the extraordinarily implausible allegation that the Property was worth $565 million in February, 2019, when WPH and WPL transferred it to WP in lieu of foreclosure, (i) even though WPH and WPL chose to give up the Property at that time in lieu of repaying the $140 million they say they owed Omega at that time and in lieu of the foreclosure for which Omega had posted the Property; (ii) even though WPH and WPL swore in an Affidavit and Estoppel Certificate at that time "that the consideration [for the deeds] represents the fair market value of" the Property, they

---

[1] The July 6, 2022, Order states that "Defendants need not respond to the [other] claims that have already been dismissed."  (Dkt. No. 74 at 9.)

KL3 3398499.1

"irrevocably waive any claim or right they may have to challenge the adequacy of such consideration", and they "will testify . . . before any competent tribunal . . . in any case . . . which may hereafter be instituted, to the truth" of these facts; (iii) even though Thomas was, by Plaintiffs' own description, "one of the most experienced and respected developers of retail and mixed use properties in the United States," but he and WPH and WPL were unable to repay, or find other lenders to provide financing to repay, the $140 million they say WPH and WPL owed Omega in February 2019, or the smaller amounts they owed during the prior two years after GRE made its four-month bridge loan on January 17, 2017; and (iv) even though WP gave their affiliate an option to buy back the Property for $150 million in March or April 2019, and it did not do so.

The Court's March 4, 2022, Opinion and Order dismissed the AC's earlier wholly implausible iteration of Counts Twelve and Thirteen for failure to state a claim.  The Court held that Plaintiffs did not allege facts sufficient to plead either of the required elements of the claims: that Plaintiffs were insolvent or became insolvent as a result of their transfer of the Property, and that they received less than reasonable equivalent value.  The Court specifically observed that: "As Defendants noted at argument, however, [Plaintiffs'] valuation [of the Property at over $550 million] is wholly implausible and inconsistent with Plaintiffs' other allegations that they were not able to find other lenders to assume the loan."  (Dkt. No. 58 at 81 n.14.)  That is equally true of the SAC now.  It continues to make the "other allegations" to which this Court referred, and the allegations Plaintiffs now add do not make its unbelievable story any more plausible.  The Court should again dismiss Counts Twelve and Thirteen, and with prejudice.

## FACTS

The Court is familiar with the facts.  The SAC concerns a heavily documented real estate financing.  But it does not provide the Court with any of the underlying agreements.

Plaintiffs cannot so easily avoid their terms.  It is settled that on a Rule 12(b)(6) motion, the court can consider documents referenced in the complaint, documents the plaintiff relied on in bringing the lawsuit, and matters of which judicial notice can be taken.  *See Gray v. Wesco Aircraft Holdings, Inc.*, 454 F. Supp. 3d 366, 382-83 (S.D.N.Y. 2020), *aff'd*, 847 F. App'x 35 (2d Cir. 2021).  The agreements Plaintiffs fail to attach to the SAC are exhibits to the November 12, 2020, declaration of Jonathan Kalikow (Dkt. Nos. 17-1 to 17-16) and to the August 9, 2022 declaration of Jonathan Kalikow.[2]

### A. In January 2017, GRE Made a Four-Month $82.75 Million Bridge Loan to WPH and WPL

The SAC asserts that Thomas's affiliates, Lebanon 390WR and WPL, borrowed to acquire the Property.  (SAC ¶¶ 3, 25.5, 34, 37, 38.)  By the Spring of 2016, Lebanon 390WR owed $45 million to Bridge Capital (a debt that was in default), and WPL owed $48 million to BAMCAP.  (*Id.* ¶¶ 30-31, 43.)  The loans were due to mature in early 2017.  (*Id.* ¶ 44.)  Bridge Capital said "it could not continue to extend the maturity date."  (*Id.* ¶ 46.)  Thomas needed more financing.  (*Id.* ¶¶ 44-45.)

However, his efforts to obtain other loans were unsuccessful.  (*Id.* ¶¶ 79-81.) According to the SAC, GRE was the only lender willing to lend WPH and WPL enough and close the deal quickly.  (*Id.* ¶ 47.)  They decided to borrow from GRE.  (*Id.* ¶ 82.)[3]

On January 17, 2017, GRE, WPH and WPL signed a four-month Construction Loan Agreement (the "CLA"), and GRE assigned its interest in the CLA to Omega.  (*Id.* ¶ 84.)

---

[2] Mr. Kalikow's November 12, 2020, and April 1, 2022, declarations and their exhibits ("Ex. _") are exhibits to the August 10, 2022, declaration of Michael Dell.  Exhibits to the Dell declaration are referred to as "D-Ex. _."  The SAC is Exhibit 1 to the Dell declaration.

[3] Based on facts GRE learned about Thomas during the underwriting of the loan, GRE insisted that its affiliate, GWL, acquire a 75% Class B membership interest in a new entity, Wade Park Ventures, LLC, to deter him from filing for bankruptcy, as his affiliates had done many times in the past.  (*See* D-Ex. 5 (August 27, 2020 Declaration of WPL and WPH's bankruptcy counsel, David L. Bury, Jr.) ¶ 3 (listing other Chapter 11 bankruptcy cases).)

The Agreement gave WPH and WPL an option to extend the four-month term up to three times, for three months each.  (*Id.* ¶ 82; Ex. B.)

**B.     Throughout 2017 and 2018, Omega Repeatedly Extended the Gamma Loan and Granted Forbearances**

Three times, in May, August and November 2017, WPH and WPL asked to exercise their option to extend the Gamma Loan.  (SAC ¶ 109.)  They could not meet the CLA's terms for the first extension, in May.  But Omega agreed to modify those terms, in a Loan Modification Agreement that gave them more time to repay the loan.  (Ex. C.)

In January 2018, WPL was about to default on the BAMCAP Loan.  (SAC ¶ 117.)[4]  For a one-month extension, BAMCAP required a $530,000 fee, which BAMCAP would allow WPL to add to that loan.  (*Id.* ¶¶ 117-18.)  However, Omega, having already extended the Gamma Loan three times, and with the four-month loan having stretched to a year, did not consent to a larger first lien ahead of its second lien.  (*Id.* ¶ 123.)  WPL could have paid BAMCAP's fee in cash.  But it did not, and BAMCAP declared WPL in default.  Omega later declared the Gamma Loan in default too.  (*Id.* ¶¶ 129-30.)

Even so, on March 5, 2018, Omega entered into a Forbearance Agreement with WPH and WPL.  (Ex. D.)  WPH, WPL and Thomas acknowledged (i) "certain Events of Default have occurred under the Loan, Lender has accelerated the indebtedness owed under the Loan Documents, and Lender has posted the Property for nonjudicial foreclosure on March 6, 2018;" (ii) they owed $88,664,248.48 on the Gamma Loan; (iii) they had "no defenses against [their] obligation to pay"; and (iv) Omega "acted in good faith" and "a commercially reasonable manner."  (*Id.* at 1, 5.)  They also waived and released any contrary claim, broadly released

---

[4] The BAMCAP Loan was only to WPL, not WPH. (SAC ¶¶ 43, 93, 371; Ex. R.)

Omega and its affiliates, and reaffirmed their prior agreements.  (SAC ¶ 136; Ex. D ¶¶ Sixth

Recital, 1, 5, 8, 9, 14, 19.)  On July 30, 2018, Omega bought the BAMCAP Loan.  (SAC ¶ 176.)

For the rest of 2018, Omega gave WPH and WPL every opportunity to repay the

Gamma and BAMCAP Loans.  Omega signed *five* more Forbearance Agreements with similar

terms, the last in December 2018.  (Exs. E-I.)  But instead of raising the financing to repay the

Loans, WPH and WPL let the forbearance period in every one of the Forbearance Agreements

expire.  (SAC ¶¶ 177-78; Ex. J at Recitals M-N.)  The Agreements gave WPH and WPL about a

year beyond the already nine-months-extended final maturity date of the original four-month

bridge loan.  But WPH and WPL neither repaid the Loans nor obtained other financing.

### C.   In 2019, WP Took Title to the Property but Gave WPH and WPL's Designee an Option to Buy Back the Property for $150 Million

By February 4, 2019, the four-month bridge loan had stretched to more than two

years.  On January 5, 2019, Omega had again posted the Property for nonjudicial foreclosure.

(SAC ¶ 139; Ex. J at Recital L.)  But Omega gave WPH and WPL, still unable to pay, one final

opportunity to do so.  They entered into the DIL.  (SAC ¶ 190; Ex. J.)  WPH and WPL

reaffirmed their liability under the Gamma and BAMCAP Loans.  (Ex. J § 1.)  They agreed to

transfer the deeds to the Property to Omega or its designee.  (*Id.* § 3.)

The parties attached to the DIL, as an exhibit, a form of Affidavit and Estoppel

Certificate.  WPH and WPL agreed to execute, notarize and deliver the Certificate with the

signed DIL.  (Ex. J. § 3(a).)  On March 1, 2019, Thomas swore in the Certificate, on behalf of

WPH and WPL, that they were "solvent and ha[d] no other creditors whose rights would be

prejudiced by [the] conveyance [of the deeds to the Property]," "that the consideration [for the

deeds] represents the fair market value of" the Property, and that they "irrevocably waive any

claim or right they may have to challenge the adequacy of such consideration."  (Ex. M at 1.)

- 6 -

Omega agreed to hold the deeds in escrow if WPH and WPL made certain payments.  (SAC ¶ 191.)  However, on February 19, 2019, they defaulted on one of those payments.  (*Id.* ¶ 192.)  Accordingly, on or around February 21, 2019, the Property was transferred to WP, which recorded the deeds.  (*Id.* ¶ 459.)

Even then, on March 6, 2019, WP entered into an agreement with WPH and WPL's affiliate, WPF, that gave WPF the right to buy back the Property for about $150 million (par plus accrued interest) on or before April 15, 2019.  (SAC ¶¶ 195-96; Ex. K.)  But WPF did not exercise that option.  (SAC ¶ 198.)

## PROCEDURAL HISTORY

### A.     Plaintiffs' Initial and Amended Complaints

On August 27, 2020, more than eighteen months after WPH and WPL transferred the Property to WP, Plaintiffs filed this action in the Northern District of Georgia.  That Court referred the lawsuit to the Bankruptcy Court, where WPH and WPL had filed chapter 11 petitions the day before.  Plaintiffs moved to withdraw the reference.  The Court did so on consent.  (Dkt. No. 4.)  On October 16, 2020, Plaintiffs filed their AC.  (Dkt. No. 5.)

On November 13, 2020, Defendants moved to transfer the action to this Court and to dismiss.  (Dkt. Nos. 14, 16.)  The other defendant, Blake Goodman, also moved to dismiss. (Dkt. No. 13.)  On February 24, 2021, Judge Batten granted Mr. Goodman's motion to dismiss and Defendants' motion to transfer.  *Wade Park Land Holdings, LLC v. Kalikow*, 522 F. Supp. 3d 1341 (N.D. Ga. 2021) (Dkt. No. 30).  This Court directed the parties to re-brief Defendants' motion to dismiss, and the parties did so.  (Dkt. Nos. 36-37, 39, 46, 47.)

### B.     The Court's March 4, 2022, Opinion and Order

On March 4, 2022, the Court issued a well-reasoned 90-page Opinion that dismissed with prejudice Plaintiffs' seventeen claims against Defendants.  *Wade Park Land*

- 7 -

*Holdings, LLC v. Kalikow*, 2022 WL 657664 (S.D.N.Y. Mar. 4, 2022) (Dkt. No. 58).  Three days

later, the Clerk of Court entered judgment in favor of Defendants.  (Dkt. No. 59.)

 The Court's March 4 Opinion held that Plaintiffs had released all of their claims

except Counts One, Twelve, and Thirteen.  (Dkt. 58 at 28.)  The Court also held that all

seventeen claims against Defendants failed to state a claim.  (*Id.* at 42-81, 86-90.)  That included

Plaintiffs' two fraudulent transfer claims:  for constructive fraudulent transfers under 11 U.S.C.

§§ 548, 550, 551 (Count Twelve), and for constructively voidable transfers under Georgia state

law (Count Thirteen).  (*Id.* at 36-42, 82-86.)

 **C.** **Plaintiffs' Second Amended Complaint**

 On March 18, 2022, Plaintiffs moved to amend the judgment and for leave to file

a second amended complaint (Dkt. No. 67) to replead their two fraudulent transfer claims and to

add a claim for fraudulent inducement under New York law.  (Dkt. No. 69 at 1-2.)

 On July 6, 2022, the Court granted Plaintiffs' request to replead Counts Twelve

and Thirteen with the additional factual allegations identified in their proposed SAC.  (Dkt. No.

74.)  On July 13, 2022, Plaintiffs filed their SAC.  (Dkt. No. 75.)

**ARGUMENT**

 Federal Rule of Bankruptcy Procedure 7012 incorporates Federal Rule of Civil

Procedure 12(b)(6).  Under these rules, "labels and conclusions" and a "formulaic recitation of

the elements of a cause of action" do not state a claim.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544,

555, 557 (2007).  "Allegations that are conclusory or unsupported by factual assertions are

insufficient."  *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 99 (2d Cir. 2007).  And "if

a document relied on in the complaint contradicts allegations in the complaint, the document, not

the allegations, control, and the court need not accept the allegations in the complaint as true."

*Mockingbird 38, LLC v. Int'l Bus. Times, Inc.*, 2022 WL 154137, at *3 (S.D.N.Y. Jan. 18, 2022) (Liman, J.) (citations omitted).[5]

To survive a Rule 12(b)(6) motion to dismiss, a complaint must include "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). A "claim has facial plausibility, [if] the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly*, 550 U.S. at 556). "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

That is particularly true here, because Counts Twelve and Thirteen depend on the Court finding it plausible that Plaintiffs, who describe Thomas as "one of the most experienced and respected developers of retail and mixed-use properties in the United States" (SAC ¶ 3), could not over a period of more than two years raise between $82.75 million and $140 million to pay back a loan on a property that purportedly was worth more than $565 million, and could not then raise $150 million to buy that $565 million property.

## I.   SAC COUNT TWELVE FAILS TO STATE A CLAIM

Count Twelve alleges that WPH and WPL's February 21, 2019, transfer of the Property to WP was constructively fraudulent under 11 U.S.C. §§ 548, 550 and 551. (SAC ¶ 459.)

---

[5] *See also Bailey v. N.Y. Law Sch.*, 2021 WL 5500078, at *5 (2d Cir. Nov. 24, 2021) ("we need not accept allegations in a complaint that are refuted by documents that are attached to it"); *Hirsch v. Arthur Andersen & Co.*, 72 F.3d 1085, 1095 (2d Cir. 1995) (affirming dismissal of complaint where allegations "are contradicted both by more specific allegations in the Complaint and facts of which [the court] may take judicial notice"); *Feick v. Fleener*, 653 F.2d 69, 75 & n.4 (2d Cir. 1981) ("Since the documents upon which appellants based their claim show on their face absence of any grounds for relief, dismissal was proper.").

KL3 3398499.1

To state this claim, WPH and WPL had to plausibly allege (1) they were "insolvent on the date of the transfer or became insolvent as a result of the transfer," and (2) they "received less than 'a reasonable equivalent value in exchange for such transfer.'"  *In re Bernard L. Madoff Inv. Sec. LLC.*, 976 F.3d 184, 190 (2d Cir. 2020) (citing 11 U.S.C. § 548(a)(1)(B)).  Plaintiffs do not plausibly allege either element.

**A.    Plaintiffs Do Not Plausibly Allege the Transfers Were for Other Than Reasonable Equivalent Value**

The Court's March 4, 2022, Order dismissing AC Counts Twelve and Thirteen (Dkt. No. 58 at 82-86) "highlighted Plaintiffs' conclusory allegations and failure to plead facts sufficient to state a claim."  (Dkt. No. 74 at 7.)  The Court found, *inter alia*:

- "[T]he Complaint fails to allege that the transfer was for other than reasonably equivalent value."  (Dkt. No. 58 at 84.)

- Plaintiffs' allegation that the Property is "worth over $550 million, far in excess of the loan amount," "is wholly implausible and inconsistent with Plaintiffs' other allegations that they were not able to find other lenders to assume the loan."  (*Id.* at 81 n.14.)

- Plaintiffs' "conclusory allegations that the deeds for the Wade Park properties were conveyed for other than reasonable equivalent value . . . are undermined by the more specific statements from the Affidavit and Estoppel Certificate."  (*Id.* at 85.)  These included their statements that they were "solvent and ha[d] no other creditors whose rights would be prejudiced by [the] conveyance [of the deeds]."  (*Id.* (alterations in original).)

- There is no merit to Plaintiffs' argument that "the Affidavit and Estoppel Certificate is not incorporated by reference and not cognizable on the motion to dismiss."  (*Id.* at 85 n.16.)  The AC references the DIL and it incorporates the Certificate by reference.  (*Id.*)

The SAC does not remedy these flaws.  It should be dismissed because it too fails plausibly to allege that the February 21, 2019, transfers of the Property were for other than reasonable equivalent value, for the same reasons that the AC failed to do so.[6]

### 1.      Plaintiffs' Conclusory Allegations of Value Are Implausible and Inconsistent with Their More Specific Allegations

WPH and WPL allege they received "approximately $140.1 million" — the purported value of their debt — in exchange for the transfer of the Property.  (SAC ¶ 345.)

On the other side of the ledger, the SAC makes the conclusory allegation that the value of the Property exceeded $565 million at the time of the transfer.  (SAC ¶ 326.)  However, as this Court has already held with respect to the AC's allegation that the Property was worth more than $550 million, the SAC's $565 million allegation is "wholly implausible and inconsistent with Plaintiffs' other allegations that they were not able to find other lenders to assume the loan" (Dkt. No. 58 at 81 n.14) over a more than two-year period from the time GRE made the $82.75 million bridge loan on January 17, 2017, to March 13, 2019, when WPF's

---

[6] *See In re Tribune Co. Fraudulent Conveyance Litig.*, 10 F.4th 147, 173 (2d Cir. 2021) ("courts have dismissed constructive fraudulent transfer claims where the complaint does not plausibly allege that the debtor received less than reasonable equivalent value;" affirming dismissal against two defendants); *In re Old Carco LLC*, 509 F. App'x 77, 79 (2d Cir. 2013) (affirming dismissal of fraudulent transfer claim; second amended complaint failed sufficiently to allege that the debtor received less than reasonable equivalent value because it "continued to apply implausible values to certain assets and to omit other key assets"); *Geltzer v. Trey Whitfield Sch. (In re Michel)*, 573 B.R. 46, 62 (Bankr. E.D.N.Y. 2017) (dismissing constructive fraudulent transfer claim because "the allegations of the Amended Complaint do not establish a plausible basis to conclude that Ms. Michel did not receive reasonably equivalent value").

Plaintiffs cited *Tribune*, in their motion for leave to amend, for the proposition that determining reasonable equivalent value "usually should not be made at the motion to dismiss stage."  (Dkt. No. 69 at 12.)  But *Tribune* affirmed, at the motion to dismiss stage, dismissal of constructive fraudulent transfer claims against two of the four defendants, Morgan Stanley and VRC.  The court found both defendants, financial advisors to the debtor, "earned their respective fees upon delivery of their contracted-for opinions."  *Tribune*, 10 F.4th at 175.  And *Tribune* vacated dismissal of constructive fraudulent transfer claims against two other defendants, Citigroup and Merrill Lynch, only because determining whether those transferees provided reasonable equivalent value would require the Court to engage in a fact-intensive evaluation of their services, including "*inter alia*, the number of hours worked, industry standards, fees paid compared to the overall size of the transaction, when the engagement letters were signed, and opportunity costs," and whether they "satisfactorily performed their duties."  *Id.* at 174.  Here, by contrast, the Court need not make any such evaluation to determine the value provided by the transferees.

option to buy the Property for $150 million expired, even though Thomas was "one of the most experienced and respected developers of retail and mixed-use properties in the United States." (SAC ¶ 3).  The SAC continues to make those same "other allegations that they were not able to find other lenders to assume the loan."  (Dkt. No. 58 at 81 n.14.)

As this Court has also already found with respect to the AC, the SAC's "conclusory allegations that the deeds for the Wade Park properties were conveyed for more than reasonable equivalent value are . . . [also] undermined by the more specific statements from the Affidavit and Estoppel Certificate."  (*Id.* at ¶ 85.)

The SAC's new allegation, based on a purported appraisal, that the value of the Property exceeded $565 million, adds nothing that should alter the Court's conclusion.  The AC already alleged that "appraisals" of the Property valued it at "in excess of $550 million."  (Dkt. No. 5 at ¶ 36.)  Plaintiffs also repeatedly asserted at oral argument on Defendants' motion to dismiss the AC that their $550 million number was an "appraised" value.  (Dkt. No. 60 at 28:5-6 ("we allege that the appraised value of this property is $550 million"), 33:25-34:1 ("the property which we alleged is appraised at $550 million"), 47:15-16 ("[o]ur allegation of value is based on an independent appraisal").)

Plaintiffs now add in their SAC an allegation of a slightly higher $565 million value, based on one of those "appraisals."  (SAC ¶ 327.)  But even though they informed the Court at oral argument that they have "a copy of" that "appraisal" (Dkt. No. 60 at 47:16), the SAC does not attach it.  Plaintiffs provide only a cover and a cover letter.  (SAC Ex. A.)  The cover letter does not provide a plausible basis for the "valuation."  It shows the "appraisal" was prepared for "Churchill Commercial Capital," a stranger to this litigation that is not even mentioned or identified anywhere in the SAC, and "only for its specified use."  (*Id.*)  The

purported appraiser has the same address in Scottsdale, Arizona as Churchill.  (*Id*.)[7]  The cover

letter also says "the appraisal report that follows sets forth the . . . assumptions and limiting

conditions, pertinent facts about the area and the subject property, comparable market data, the

results of the investigation, and the reasoning leading to the conclusions set forth" (*id*.), but the

SAC does not provide any of that.

In *Wolet Capital Corp. v. Walmart Inc.*, 2021 WL 242297, at *12 (S.D.N.Y. Jan.

25, 2021) (Liman, J.), this Court dismissed claims where plaintiff likewise "admitted at oral

argument" that "it is in possession of the underlying writings that are the basis of its allegations"

but did not attach them to the complaint; "[p]articularly when the documents are in possession of

Plaintiff and integral to the complaint, Plaintiff's conduct is precisely the type of conduct

*Twombly* and *Iqbal* condemns."  That is equally true here.

The SAC's conclusory allegation of a value in excess of $565 million is also no

more plausible than the AC's wholly implausible allegation of a value in excess of $550 million,

because it too is completely inconsistent with Plaintiffs' detailed factual allegations that they

were unable — for more than two years — to find any other lender to assume the loan.

It is also inconsistent with Plaintiffs' detailed factual allegations that Defendants

gave them opportunity after opportunity to repay the loan and retain the Property and then in

March, 2019, WP gave WPH and WPL's affiliate a six-week option to pay $150 million to buy

back the Property, an option the affiliate allowed to expire.  (SAC ¶¶ 195-96, 198; Ex. K.)  As

the Court summarized, "[i]f Defendants had wanted to take the Wade Park property, they could

have foreclosed on the property when Plaintiffs went into default on the loan and in February

2018 after the term of the loan expired . . . Instead, they agreed to forbear from exercising their

---

[7]  Plaintiffs do not allege they have an appraisal from a Dallas or Texas based firm, much less one of national repute.

rights—not once but several times, including in August 2018, October 2018, and December 2018." (Dkt. No. 58 at 53 (citing AC ¶ 178).) That conduct — and Plaintiffs' failure to take advantage of it — would be inexplicable if the Property was worth $565 million (or $450 million, or $350 million, or $250 million, or any amount materially above the amount of the loan, or later the $150 million).

Plaintiffs allege "the subsequent buy-back agreement did not provide any value to Plaintiffs either because the Gamma Defendants again intentionally prevented Plaintiffs from securing refinancing during the buy-back period by telling potential lenders that the Gamma Defendants would not consent to a refinance of the BAMCAP Loan." (SAC ¶ 351.) But that conclusory allegation does not help Plaintiffs, for several reasons.

First, they do not allege who said what to which potential lenders about refinancing during the six-week buy-back period in March-April 2019, let alone facts that show any such statements made a difference to any potential lenders.[8]

Second, as the Court has already found, "Defendants did not have a consent right with respect to the Thomas's efforts to obtain financing to pay off the loans on the Wade Park properties." (Dkt. No. 58 at 54.) "Defendants did not need to 'let' him borrow" to raise that money, as "[he] had the unilateral right to borrow without their consent." (*Id.*) The SAC now alleges Plaintiffs could not "refinance" the BAMCAP loan without the consent of GRE. (SAC ¶ 354.) That is incorrect. The SAC cites CLA Section 6.19, but it does not say that. It merely requires consent for "[a]ny amendment, modification or termination of the documents evidencing" that loan, not for a repayment of the loan. (Ex. B § 6.19.) Moreover, the CLA

---

[8] The SAC's allegations about Defendants' earlier communications with purported potential lenders concerned "financing" that supposedly "would pay off the Gamma Bridge Loan." (SAC heading at page 43.)

expressly grants WPH and WPL the right to prepay the Gamma Loan "at any time."  (*Id*. §3.3(a).)  As this Court has found, "under the Construction Loan Agreement, Plaintiffs did not require Defendants' consent to have the loan repaid by another lender, and Defendants would only need to negotiate with the other lenders if, for instance, they asked for concessions in satisfying the loan." (Dkt. No. 58 at 71.)  The SAC does not allege that the BAMCAP loan agreement (which they do not attach to their SAC) barred prepayment, or payment after a default, and it did not do so.  (Exs. R-V.)

Third, as this Court has found with respect to the AC's allegations concerning Defendants' communications with potential borrowers, Plaintiffs have not alleged "wrongful" or "culpable" conduct by Defendants.  (Dkt. No 58 at 73.)  For example, "Plaintiffs fail to plead fraud with particularity . . . [P]laintiffs must do more than say that the statements were false and misleading; they must demonstrate, with specificity, why and how that is so. . . . [M]ore fundamentally for all of the alleged misrepresentations, Plaintiffs fail to plead facts that demonstrate that [Defendants] statements were false when made."  (*Id.* at 52 (citation omitted).) And "[a]lthough Plaintiffs assert that Defendants' purchase of the loans was motivated by an intent to interfere with Plaintiffs' efforts to obtain financing . . . they do not allege facts in support of that assertion."  (*Id.* at 71.)  The SAC does not add anything that changes those conclusions.

Finally, the BAMCAP Loan was to WPL, not WPH.  (SAC ¶¶ 43, 93, 371; Ex. R.)  Accordingly, even if Plaintiffs could not pay back the BAMCAP Loan without Omega's consent (and no such consent was required or alleged by the SAC to have been denied), that would not have prevented WPH from selling the WPH land and repaying Omega.

- 15 -

In sum, it defies common sense and is wholly implausible for Plaintiffs to allege

that Thomas, "one of the most experienced and respected developers of retail and mixed-use

properties in the United States" (SAC ¶ 3), could not raise $150 million to exercise an exclusive

option to purchase the Property, or $140 million or smaller amounts to pay back the loan before

that, if the Property was worth $565 million.  *See Herendeen v. Regions Bank (In re Able*

*BodyTemporary Servs., Inc.*, 2018 WL 11206152, at *5 (Bankr. M.D. Fla. Oct. 10, 2018)

("contradiction between Plaintiff's allegation" and information in exhibits to complaint renders

claims for fraudulent transfer "implausible on their face and therefore insufficient to defeat a

motion to dismiss").

    **2.**      **Plaintiffs' Conclusory Allegations of Value Are Also Inconsistent with Their Sworn Statements in their Estoppel Certificate**

This Court also found in its March 4, 2022, Order that, "to the extent that

Plaintiffs make conclusory allegations that the deeds for the Wade Park properties were

conveyed for other than reasonable equivalent value, those conclusory allegations are

undermined by the more specific statements from the Affidavit and Estoppel Certificate of WP

Land and WPL Holdings."  (Dkt. No. 58 at 85.)  WPH and WPL swore in their March 1, 2019,

Certificate that "the consideration [for the deeds] represents the fair market value of the property

so deeded" and "irrevocably waive[d] any claim or right they may have to challenge the

adequacy of such consideration."  (Ex. M at 1.)  Those statements similarly undermine Plaintiffs'

allegations of value in the SAC.

The Court considered Plaintiffs' argument that the Certificate is "not cognizable

on the motion to dismiss," and rejected it because the AC references the DIL, and the DIL

incorporates the Certificate.  (Dkt. No. 58 at 85 n.16.)  The SAC likewise references the DIL.

(*E.g.*, SAC ¶¶ 177, 178, 190, 191, 345, 421, 422, 423.)

Plaintiffs argued in their motion for leave to amend that their sworn statements in their Certificate do not bind them.  (Dkt. No. 62-1 at 17-18.)  But the Court did not rule they were "bound."  The Court found Plaintiffs' sworn (and contemporaneous) statements "undermine" their contradictory claims.  (Dkt. No. 58 at 85.)  That remains true now.[9]

Plaintiffs also argued in their motion for leave to amend that this Court should not consider their Certificate because the SAC adds allegations that their Certificate was false and Defendants knew it was false.  (Dkt. No. 69 at 18-19, citing SAC ¶ 342.)  But the SAC does not allege facts that support its conclusory allegations of falsity or knowledge of falsity, and this Court need not "credit conclusory allegations or legal conclusions couched as factual allegations."  *Rothstein v. UBS AG*, 708 F.3d 82, 94 (2d Cir. 2013) (declining to consider conclusory allegation of defendant's knowledge in the absence of factual allegations).  For example, Plaintiffs do not allege facts that show whether they or Thomas thought their sworn statements were false.  They do not allege facts that show why they or Thomas would make false statements under oath.  And they do not allege facts that support their conclusory allegation that Defendants "knew that the statements in the Estoppel Certificate . . . were false."  (SAC ¶ 342.)[10]

---

[9]  *See also ReliaStar Life Ins. Co. of N.Y. v. Home Depot U.S.A., Inc.*, 570 F.3d 513, 519 (2d Cir. 2009) ("general purpose of an estoppel certificate . . . is to assure one or both parties to an agreement that there are no facts known to one and not the other that might affect the desirability of entering into the agreement, and to prevent the assertion of different facts at a later date") (quoting *Lawyers Title Ins. Corp. v. Honolulu Fed. Dav. & Loan Ass'n*, 900 F.2d 159, 163 (9th Cir. 1990); *In re MSR Resort Golf Course LLC*, 471 B.R. 783, 793 (Bankr. S.D.N.Y. 2012) ("the purpose of an estoppel certificate, as the term suggests, is to assure a purchaser that the lessee will not later make claims that are inconsistent with the representations in the certificate, upon which the prospective purchaser is entitled to rely"); *JRK Franklin, LLC v. 164 E. 87th St. LLC*, 27 A.D.3d 392, 393 (1st Dep't 2006) ("The motion court err[s] in failing to enforce the estoppel certificate . . . [where] the record evidence establishes that defendant made representations in the certificate contrary to those it asserts here, that defendant intended such representations be acted upon, that [the party seeking enforcement] detrimentally relied upon those representations, and that [the party opposing enforcement] at least had constructive, if not actual, knowledge of the true state of affairs.'").

[10]  The SAC alleges that, in November 2016, more than two years before Thomas acquired the Certificate for WPH and WPL, the "Gamma Defendants obtained an independent appraisal from Sage Group" valuing the Property at $466.9 million.  (SAC ¶ 338.)  Even if that allegation had a basis, it would not show what Defendants thought the Property was worth more than two years later in February 2019, after Plaintiffs had failed to repay the January 2017 $82.75 million four-month bridge loan following repeated forbearances.

Plaintiffs also argued that *Bongiorno v. Baquet,* 2021 WL 4311169, at *11 (S.D.N.Y. Sept. 20, 2021) (Liman, J.), stands for the proposition that a court may not consider a document on a motion to dismiss if a dispute exists as to whether its statements are false.  Not so. *Bongiorno* concerned challenges to the authenticity and relevance of documents, not to their falsity.  Neither *Bongiorno* nor the cases it cited on this point declined to consider a document where (as here) neither its authenticity nor its relevance is disputed.  To the extent those cases refer to "accuracy" it is to whether the documents are what they purport to be, not whether all parties agree that the statements in them are true.[11]  And in any event, as explained above, the SAC's conclusory allegations do not create a dispute about the accuracy of the Certificate.[12]

---

Moreover, the Sage Group "appraisal" itself refutes the SAC's allegation and shows it is false.  The "appraisal" states it was prepared at the request of Kevin Case of Lebanon 390WR, a Thomas-managed entity (Ex. P at 2; SAC ¶ 25.5), not Gamma.  Moreover, the "appraisal" is speculative and relies on numerous questionable assumptions. (Ex. P at 2 ("The value conclusions are subject to the assumptions and contingent and limiting conditions contained within both the body of this Appraisal (Full) report and the Addenda section")); *id.* at 87-89 (listing seventeen "Assumptions and Limiting Conditions," including "the assumption of responsible ownership and competent management" and twelve "Environmental Assumptions").  The Court may consider the Sage Group "appraisal" because the SAC references it and it undermines the SAC's allegations about it.  *See Gray,* 454 F. Supp. 3d at 382-83.

Beyond that, Plaintiffs' conclusory allegation that Defendants must have thought the Property was worth more than $150 million more than two years after the date of the Sage Group "appraisal" is undermined by the facts that Omega gave WPH and WPL numerous forbearances, WP gave another Thomas affiliate an option to buy the Property back for $150 million, and WPH, WPL and that Thomas affiliate were unable to find other lenders.  If Defendants thought the Property was worth more the amount of their loan, they did not need to enter into the DIL in the first place, let alone the buy-back agreement.

[11]  For example, *DiFolco v. MSNBC Cable L.L.C.,* 622 F.3d 104, 111 (2d Cir. 2010), which *Bongiorno* relied on, did not decline to consider any documents referenced in the complaint.  *Faulkner v. Beer,* 463 F.3d 130, 135 (2d Cir. 2006), which *DiFolco* in turn relied on and which *Bongiorno* also cited, found the District Court should have declined to consider certain documents because it was not clear that the plaintiffs had received them all, not because their accuracy was challenged.

Plaintiffs' novel theory that a court cannot consider documents on a motion to dismiss if the plaintiffs allege the representations in them are false would mean that plaintiffs could always prevent a court from considering relevant authentic documents, whether underlying contracts, sworn statements or other documents, simply by alleging that statements in them are false.

[12]  Plaintiffs' allegation that the Property is worth $565 million is also undermined by the monthly operating reports they file in their bankruptcy matters every month, which Thomas "declare[s] under penalty of perjury . . . [are] true and correct."  (D-Ex. 6 at 9.)  Plaintiffs represent to the Bankruptcy Court that the value of WPL's assets (comprised of land, development costs, and capitalized costs) total $52,265,876 and WPH's assets (comprised of land, improvements, development costs, and capitalized costs) total $116,410,205, for a total of $168,676,081.  (*See, e.g.,* *id.* at 9, 15 (Balance Sheet).)  Although Plaintiffs stated in the monthly operating reports that "[t]he figures reflect the Debtors' book entries, without adjustments from the Debtors' pre-petition bookkeeping practices" (*id.* at 13

- 18 -

**3.** **WPH and WPL's Transfer of the Property to Satisfy Their Antecedent Debt Was Per Se Made For Reasonable Equivalent Value**

Plaintiffs' fraudulent transfer claim also fails because WPH and WPL transferred the Property to WP to satisfy their antecedent debt to Omega.  "[T]ransfers made in satisfaction of unavoidable obligations are *per se* made for reasonably equivalent value."  *In re Tribune Co. Fraudulent Conveyance Litig.*, 2018 WL 6329139, *17 (S.D.N.Y. Nov. 30, 2018) (granting motion to dismiss fraudulent transfer claim), *aff'd*, 10 F.4th 147 (2d Cir. 2021); *see also In re Sharp Int'l Corp.*, 403 F.3d 43, 54 (2d Cir. 2005) (referencing "the rule that the repayment of an antecedent debt constitutes fair consideration"); *Pashian v. Eccelston Props., Ltd.*, 88 F.3d 77, 85 (2d Cir. 1996) (under New York fraudulent transfer law, "the general rule is that the satisfaction of a preexisting debt qualifies as fair consideration for a transfer of property."); *Geo-Grp. Commc'ns, Inc. v. Chopra*, 2018 WL 362498, at *10 (S.D.N.Y. July 30, 2018) (under New York fraudulent transfer law, "the Court considers whether the transfers . . . were repayments of an antecedent debt, which would render the transfers supported by fair consideration and, consequently, not voidable."); *O'Toole v. Karnani (In re Trinsum Grp., Inc.)*, 460 B.R. 379, 388-89 (Bankr. S.D.N.Y. 2011) (transfers to pay an antecedent debt are presumed to be made for

---

(Supplement to Monthly Operating Report)), that "book value" is nowhere near their conclusory valuation in the SAC.  Moreover, Plaintiffs were not limited to stating book value in those reports.  "The veracity of the bankrupt's statements is essential to the successful administration of the Bankruptcy Act."  *In re Chalik*, 748 F.2d 616, 618 (11th Cir. 1984) (affirming denial of discharge where debtor concealed information) (citation omitted).  "A debtor has an affirmative duty to fully disclose 'all assets and liabilities and to answer all questions pertaining to his/her financial affairs fully and with the utmost candor.'"  *In re Jakovljevic-Ostojic*, 517 B.R. 119, 126–27 (Bankr. N.D. Ill. 2014) (citation omitted).  Accordingly, if WPH and WPL believed the fair market value of the Property was hundreds of millions of dollars more than book value, the fair market value should have been set forth in the monthly statements.

Plaintiffs' motion for leave to amend cited *In re Ames Dep't Stores, Inc.,* 450 B.R. 24 (Bankr. S.D.N.Y. 2011), *aff'd*, 470 B.R. 280 (S.D.N.Y.2012), *aff'd*, 506 F. App'x 70 (2d Cir. 2012), (Dkt. No. 66 at 5.)  But *Ames* did not hold that a debtor's bankruptcy filings were irrelevant, as Plaintiffs argue here.  Rather, it held that a schedule of assets and liabilities filed by a chapter 11 debtor was not enough to rebut the presumption of *insolvency* provided by Bankruptcy Code 547(f), where the debtor stated in those filings that it could not obtain current market valuations. *Ames*, 450 B.R. at 31-32.  That does not help Plaintiffs.  There is no presumption of less than equivalent value, as there is of insolvency, and Plaintiffs do not allege they cannot obtain current market valuations.

value); *In re AppliedTheory Corp.*, 330 B.R. 362, 363 (S.D.N.Y. 2005) (the "per se rule consistently applied in this District . . . provides that a debtor's grant of a security interest in its assets to a lender who has previously given the debtor a cash loan may not be considered a fraudulent conveyance.").

**B.**   **Plaintiffs Do Not Plausibly Allege Debtors Were Rendered Insolvent by the Transfers**

Count Twelve fails to state a claim for the additional reason that WPH and WPL do not plausibly allege that they were insolvent when they transferred the Property or that the transfers rendered them insolvent.

The SAC's allegations of insolvency are not plausible because they are inconsistent with WPH and WPL's own contemporaneous sworn statements in their Affidavit and Estoppel Certificate.  On March 1, 2019, after the SAC alleges the deeds to the Property were recorded (SAC ¶ 192), WPH and WPL swore in their Certificate that they were "solvent." (Ex. M at 1.)  This Court has already found that Plaintiffs' allegations of insolvency are "undermined by the more specific statements" in their Certificate that they were "solvent and ha[d] no other creditors whose rights would be prejudiced by [the] conveyance [of the deeds]." (Dkt. No. 58 at 85 (alteration in original) (citing Ex. M).)

**C.**   **The Trust Does Not State a Claim for Fraudulent Transfer**

The Court previously dismissed the Trust's claims in Counts Twelve and Thirteen for lack of subject matter jurisdiction, after the Trust conceded it lacks standing to bring them. (*See* Dkt. No. 58 at 42 n.9.)  The SAC does not add any allegations that change that.  The Trust's Count Twelve and Thirteen claims should therefore be dismissed again, with prejudice.

## II.   SAC COUNT THIRTEEN FAILS TO STATE A CLAIM UNDER THE GEORGIA UNIFORM VOIDABLE TRANSFERS ACT

Count Thirteen fails to state a claim for the same reasons as Count Twelve.  "The analysis of alleged fraudulent transfers under [Georgia] law and bankruptcy law is substantially the same."  *In re Think Retail Sols., LLC*, 2019 WL 2912717, at *11 (Bankr. N.D. Ga. July 5, 2019).

Count Thirteen also fails to state a claim that the Georgia Act even applies here. A Georgia Act claim "is governed by the law of the jurisdiction in which the debtor is located when the transfer is made or the obligation is incurred."  O.C.G.A. § 18-2-80.  The SAC alleges WPH and WPL are Delaware entities currently located in Georgia (SAC ¶¶ 7, 8), but does not allege they were located in Georgia when the transfers were made or the obligation was incurred.

## III.   ALTERNATIVELY, THE SAC SHOULD BE DISMISSED AS TO ALL DEFENDANTS OTHER THAN WP

If the Court does not dismiss Count Twelve and Thirteen (and it should), it should dismiss the SAC as against all Defendants other than WP.

The Defendants other than WP and Omega should be dismissed because the SAC alleges Counts Twelve and Thirteen only against WP and Omega.

The SAC should also be dismissed as against Omega because fraudulent transfers may be recovered only from "(1) the initial transferee of such transfer or the entity for whose benefit such transfer was made; or (2) any immediate or mediate transferee of such initial transferee."  11 U.S.C. § 550; *see also* O.C.G.A. § 18-2-78(b)(i).  The SAC makes the conclusory allegation that "Each of Defendants WP Development Partners and Gamma Lending Omega is either the initial transferee of the Transfers, the immediate or mediate transferee of such initial transferee, or is an entity for whose benefit the Transfers were made."  (SAC ¶ 467.) But Plaintiffs allege WP, not Omega, was the transferee of the Property (*id.* ¶ 459), and do not

- 21 -

allege any facts that show the transfer was for Omega's benefit or that WP transferred the

Property to Omega.

**<u>CONCLUSION</u>**

For all of the foregoing reasons, the Court should dismiss the SAC with prejudice

and without leave to amend.

Dated:  August 10, 2022
      New York, New York

           Respectfully submitted,

           KRAMER LEVIN NAFTALIS & FRANKEL LLP

           By: */s/ Michael J. Dell*
               Michael J. Dell
               Adam C. Rogoff
               Karen S. Kennedy
           1177 Avenue of the Americas
           New York, New York 10036
           Telephone: (212) 715-9100
           Facsimile: (212) 715-8000
           Email: mdell@kramerlevin.com
           arogoff@kramerlevin.com
           kkennedy@kramerlevin.com

           *Attorneys for Defendants Jonathan Kalikow, WP Development Partners LLC, Gamma Lending Omega LLC, Gamma Real Estate Capital LLC and GRE WP LLC*